# No. 24-1007

## United States Court of Appeals

### For the

## Second Circuit

_____

Authors Guild, David Baldacci, Mary Bly, Michael Connelly,
Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand,
Christina Baker Kline, Maya Shanbhag Lang, Victor LaValle,
George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana
Robinson, George Saunders, Scott Turow, Rachel Vail, individually
and on behalf of others similarly situated,
Plaintiffs-Appellees,

Jonathan Alter, Kai Bird, Taylor Branch, Rich Cohen, Sides
Hampton, Eugene Linden, Daniel Okrent, Stacy Schiff, James
Shapiro, Jia Tolentino, Simon Winchester,
Consolidated-Plaintiffs-Appellees,

Julian Sancton,
Consolidated-Plaintiff-Interested-Party-Appellee,

Nicholas A. Basbanes, Nicholas Ngagoyeanes, (professionally
known as Nicholas Gage) individually and on behalf of all others
similarly situated,
Consolidated-Plaintiffs-Interested-Party,

v.

Microsoft Corporation,
Defendant-Consolidated-Defendant-Appellee,

OpenAI LP,
Defendant,

OpenAI, Inc., OpenAI GP, LLC, OpenAI LLC, OpenAI OpCo
LLC, OpenAI Global LLC, OAI Corporation LLC, OpenAI
Holdings, LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund
GP I LLC, OpenAI Startup Fund Management LLC,
Defendants-Consolidated-Defendants,

v.

Paul Tremblay, Michael Chabon, Ta-Nehisi Coates, Junot Daz,
Andrew Sean Greer, David Henry Hwang, Matthew Klam,
Lippman Laura, Rachel Louise Snyder, Ayelet Waldman,
Jacqueline Woodson, Sarah Silverman, Christopher Golden,
Richard Kadrey,
Third-Party-Plaintiffs-Appellants.

_____

On Appeal from the United States District Court
for the Southern District of New York

District Court Docket No. 1:23-cv-8292-SHS

---

## BRIEF AND SPECIAL APPENDIX FOR
## THIRD-PARTY-PLAINTIFFS-APPELLANTS

---

Joseph R. Saveri (CA SBN 130064)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

*Counsel for Third-Party-Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................... 1

JURISDICTIONAL STATEMENT ............................................... 6

   I.     District Court Subject Matter Jurisdiction .................................... 6

   II.    Appellate Court Jurisdiction............................................ 6

   III.   Timeliness of Appeal ................................................... 6

STATEMENT OF ISSUES PRESENTED FOR REVIEW........................... 8

STATEMENT OF THE CASE ..................................................... 9

   I.     The Nature of the Case ................................................... 9

   II.    Relevant Procedural History ....................................... 11

   III.   District Judge Who Rendered the Decision ................................ 12

SUMMARY OF ARGUMENT ..................................................... 13

STATEMENT OF FACTS ..................................................... 14

   I.     The *Tremblay* Action ................................................... 14

   II.    The New York Actions................................................... 16

ARGUMENT....................................................................... 19

   I.     The District Court's Order Effectively Nullifies the First-Filed Rule in Class Actions Under Fed. R. Civ. P. 23, Undermining the Purposes Underlying Both Rules ................................ 19

   II.    Not Allowing the California Plaintiffs to Intervene as of Right was An Abuse of Discretion ........................................ 25

   III.   Not Allowing the California Plaintiffs to Permissively Intervene was an Abuse of Discretion ........................................ 34

CONCLUSION............................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adoma v. Univ. of Phx., Inc.*, 711 F.Supp.2d 1142 (E.D. Cal. 2010) ..................... 20

*Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) ....................................... 23, 24

*AT&T Corp. v. Sprint Corp.*, 407 F.3d 560 (2d Cir. 2005) ..................................... 8

*Authors Guild, et al. v. Open AI, Inc., et al.*, No. 1:23-cv-08292-SHS (S.D.N.Y.) ........................................................................................ *passim*

*Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785 (6th Cir. 2016) ....................................................................................... 2, 19, 20, 28

*Basbanes et al. v. Microsoft Corp. et al.*, No. 24-cv-00084 (S.D.N.Y. Jan. 5, 2024) .................................................................................. 18, 38

*Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001) ............................... 30

*Buck v. Gordon*, 959 F.3d 219 (6th Cir. 2020) ........................................................ 34

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129 (1967) ....................................................................................................... 28

*Catanese v. Unilever*, 774 F. Supp. 2d 684 (D.N.J. 2011) ..................................... 20

*Chabon v. OpenAI, Inc. et al.*, No. 23-cv-04625-CRB (N.D. Cal. 2023) ............................................................................................. 10, 15, 16

*Coffey v. Comm'r of Internal Revenue*, 663 F.3d 947 (8th Cir. 2011) ................... 34

*Cole Silver Min. Co. v. Virginia & Gold Hill Water Co.*, 6 F. Cas. 72 (C.C.D. Nev. 1871) ..................................................................................... 2, 29

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) .................................................................................................... 2, 28

*In re Comty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) ............................. 28

ii

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 147 F.R.D. 60
(S.D.N.Y. 1993) ................................................................................36

*Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60
(E.D.N.Y. 2005)................................................................................35

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271 (2d Cir.
2008) ................................................................................................21

*First City Nat. Bank & Tr. Co. v. Simmons*, 878 F.2d 76 (2d Cir.
1989) ...........................................................................................22, 23

*FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733 (E.D. Pa.
2005) ............................................................................................3, 29

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704 (Fed. Cir.
2013) ...........................................................................................22, 23

*Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147 (1982).............................2, 21, 24, 28

*Hallock v. Bonner*, 387 F.3d 147 (2d Cir. 2004) .......................................6

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237 (9th
Cir. 2015) ...................................................................................21, 23

*Lau v. Wells Fargo & Co.*, No. 20-CV-03870 (AJN), 2021 WL
1198964 (S.D.N.Y. Mar. 30, 2021) ....................................................37

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997)......................34

*N.Y. Times Co. v. Microsoft Corp. et al.*, No. 1:23-cv-11195
(S.D.N.Y. Dec. 27, 2023) ..........................................................*passim*

*Nicholas Basbanes and Nicholas Ngagoyeanes v. Microsoft Corp., et
al.*, No. 24-CV-84 (S.D.N.Y. Jan. 5, 2024) .........................................1

*Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85 (S.D.N.Y. 2018)..........................26

*In re OpenAI ChatGPT Litigation*, Master File No. 3:23-cv-03223-
AMO (N.D. Cal. 2023) .........................................................1, 10, 15

*Pike Co., Inc. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376
(W.D.N.Y. 2018) ..............................................................................36

*Red Rock Sourcing LLC v. JGX, LLC*, No. 21 Civ. 1054 (JPC), 2023
WL 1468980 (S.D.N.Y. Feb. 2, 2023)...................................................26

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. District (San Jose)*,
187 F.3d 1096 (9th Cir. 1999) ..............................................................34

*Sancton et al. v. OpenAI, Inc. et al.*, No. 23-cv-10211-SHS (S.D.N.Y.
Nov. 21, 2023) .......................................................................................17

*Sec. & Exch. Comm'n v. Berman*, No. 20 Civ. 10658 (LAP), 2021 WL
2895148 (S.D.N.Y. June 8, 2021) ........................................................26

*Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022) .............................24

*Smith v. McIver*, 22 U.S. 532 (1824) ....................................................2, 21

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ..............30

*Tremblay v. OpenAI, Inc.*, No. 3:23-cv-03223-AMO (N.D. Cal. June
28, 2023) ..........................................................................................*passim*

*Weinstein v. Metlife, Inc.*, No. C 06–04444 SI, 2006 WL 3201045
(N.D. Cal. Nov. 6, 2006).......................................................................20

## Statutes and Rules

17 U.S.C. § 106.................................................................................9, 14

17 U.S.C. § 501..............................................................................16, 17

17 U.S.C. § 1202..............................................................................9, 14

28 U.S.C. § 1331....................................................................................6

28 U.S.C. § 1338....................................................................................6

Fed. R. Civ. P. 23...........................................................................*passim*

Fed. R. Civ. P. 24...........................................................................*passim*

iv

**Other Authorities**

Arthur R. Miller, *The Preservation and Rejuvenation of Aggregate Litigation: A Systemic Imperative*, 64 Emory L.J. 293 (2014)...........................23

John K. Rabiej, *The Making of Class Action Rule 23 — What Were We Thinking?*, 24 Miss. C. L. Rev. 323 (2005)...................................................22

Rhonda Wasserman, *Dueling Class Actions*, 80 B.U.L. Rev. 461 (2000)...........................................................................................................31

# PRELIMINARY STATEMENT

Appellants Paul Tremblay, Sarah Silverman, Christopher Golden, Richard Kadrey, Michael Chabon, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Ayelet Waldman, and Jacqueline Woodson (collectively, the "California Plaintiffs") are named plaintiffs in the first-filed class action entitled, *Tremblay v. OpenAI, Inc.*, Case No. 3:23-cv-03223-AMO (N.D. Cal. June 28, 2023) (the "*Tremblay* Action").[1] They are book authors and playwrights who initiated the first litigation in the United States alleging that OpenAI Inc. and its affiliate entities (collectively, "OpenAI") infringed authors' copyrights when they made unauthorized copies of Appellants' copyrighted works to train artificial-intelligence products known as large language models ("LLMs").

On June 28, 2023, after a significant and lengthy pre-filing investigation, Appellants' attorneys filed the *Tremblay* Action. Lawsuits subsequently filed in the Southern District of New York—including *Authors Guild, et al. v. Open AI, Inc., et al.*, Case No. 1:23-cv-08292-SHS (S.D.N.Y.) ("*Authors Guild* Action"); *Jonathan Alter, et al., v. OpenAI, Inc., et al.*, No. 23-CV-10211; *Nicholas Basbanes and Nicholas Ngagoyeanes v. Microsoft Corp., et al.*, No. 24-CV-84; and *The New York*

---

[1] As described below, the *Tremblay* Action and all other related actions have been consolidated under the master caption *In re OpenAI ChatGPT Litigation*, Master File No. 3:23-cv-03223-AMO (N.D. Cal. 2023).

*Times Company v. Microsoft Corp., et al.*, No. 23-CV-11195 (together, the "New York Actions")—consist of substantially similar allegations and claims against OpenAI. The *Tremblay* Action was pending in the Northern District of California long before the filing of the *Authors Guild* Action, or any of the later-filed New York Actions.

"As between federal district courts. . . . the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Both the first-filed rule and the class action device are designed to serve this purpose. *See Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 155 (1982) ("'[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" (citation omitted)); *Smith v. McIver*, 22 U.S. 532, 535 (1824) ("In all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it."); *see also Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) ("[The first-filed rule] also conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results.") (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988); *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Alt. & Gulf Coast Dist. Of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir 1985)); *Cole Silver Min. Co. v. Virginia*

2

*& Gold Hill Water Co.*, 6 F. Cas. 72, 74 (C.C.D. Nev. 1871) ("[T]hat in a case of this kind, when the absent person alleged to be interested should, if brought into court, oust its jurisdiction, I would . . . strain hard to give relief as between the parties before the court."). The lower court's order, however, has created precisely the "vexation of subsequent litigation" both devices were designed to arrest. *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737-38 (E.D. Pa. 2005) (citing *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941)).

The California Plaintiffs' complaint was the first in the United States to allege that OpenAI committed direct copyright infringement when it made copies of the California Plaintiffs' books—without the California Plaintiffs' permission— to train OpenAI's LLMs. Now, there are numerous copycat cases—including each of the lawsuits pending before the court below that are the subject of this appeal. Meanwhile, the *Tremblay* Action has substantially advanced, with motion practice and discovery well underway. *See* Volume 2, Appellant Appendix ("2AA-") 2AA-399-400. A case schedule has been entered in the *Tremblay* Action, including dates for class certification and *Daubert* motions. Volume 1, Appellant Appendix ("1AA-") 1AA-216.

The later-filed New York Actions are strikingly similar to the first-filed *Tremblay* Action. Like the *Tremblay* Action, each of the New York Actions asserts copyright infringement claims arising from the impermissible copying and other

3

use of Plaintiffs' and other authors' copyrighted works for the purpose of training OpenAI's LLMs and the commercial products based on that technology. Those claims share common or overlapping theories of liability. Like the *Tremblay* Action, each of the New York Actions asserts these claims on behalf of plaintiffs subsumed by the class first defined in the *Tremblay* Action against OpenAI, who is also a defendant in all relevant actions. The parties in the New York Actions readily admit that the *Tremblay* Action was filed first and is well underway in the Northern District of California.

On October 6, 2023, the court in the *Tremblay* Action entered a pretrial schedule. Before the court did so, OpenAI made the unusual request to litigate substantive issues before class certification. Specifically, OpenAI sought to schedule motions for summary judgment before motions for class certification and requested leave to brief the issue. *See* 1AA-186. The district court declined briefing and OpenAI's preferred approach, instead adopting and entering the schedule proposed by the California Plaintiffs, which provides that motions for class certification will be heard first. The parties are proceeding according to that schedule. 2AA-399-400.

OpenAI had previously proclaimed to both the California Plaintiffs and the lower court itself that it intended to file a motion to dismiss or, in the alternative, a motion to stay because of the first-filed rule. 1AA-231. Unsatisfied and aiming to

undercut and undo the *Tremblay* court's scheduling order, OpenAI reversed course and advocated for a competing schedule in the Southern District of New York, sequencing summary judgment before class certification. In apparent exchange for the *Authors Guild* Plaintiffs' agreement to the schedule rejected by the *Tremblay* court, OpenAI agreed to forego its first-filed motion, a motion to transfer, or indeed *any* challenges to the complaint in the New York Actions. 2AA-384. The California Plaintiffs then sought to intervene in the New York Actions under Federal Rule of Civil Procedure 24 ("Rule 24") for the purpose of moving to stay, transfer, or dismiss the later filed New York Actions under the first-filed rule. The district court's denial of the California Plaintiffs' motion to intervene is the subject of this appeal. 2AA-467-73.

The district court's order denying the California Plaintiffs intervention was an abuse of discretion, as it nullifies the first-filed rule in class actions, fails to consider the California Plaintiffs' legitimate interests, and ignores the potential benefits of intervention. The order should therefore be reversed.

## JURISDICTIONAL STATEMENT

This appeal arises from the California Plaintiffs' efforts to intervene for the purpose of seeking dismissal, transfer, or stay, in the New York Actions.

### I.    District Court Subject Matter Jurisdiction

In the underlying litigation, Plaintiffs in the New York Actions pled that the district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because the actions arise under the Copyright Act. Appellants are unaware of any facts that controvert that jurisdictional basis.

### II.    Appellate Court Jurisdiction

Appellants exercise their right to appeal the district court's interlocutory decision. This is an appeal of an order denying a motion to intervene. That order conclusively determined the question. The issue is an important one, completely separate from the merits of this action. It is effectively unreviewable on appeal from a final judgement. *See Hallock v. Bonner*, 387 F.3d 147 (2d Cir. 2004), *vacated sub nom. Will v. Hallock*, 546 U.S. 345, (2006). Appellants therefore assert that this Court has jurisdiction under the collateral order doctrine.

### III.    Timeliness of Appeal

On April 1, 2024, the district court denied the California Plaintiffs' motion to intervene. 2AA-467-73. Appellants filed their Notice of Appeal on April 15, 2024.

*See* Not. of Appeal. Such notice was within 30 days of the order being appealed.

2AA-474. The appeal is therefore timely.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the first-filed rule applies to class actions under Federal Rule of Civil Procedure 23 ("Rule 23") only in the event that the class in the first-filed action is certified.

2.      Whether the district court erred in finding that the California Plaintiffs failed to meet the requirements to intervene as a matter of right under Rule 24(a). This issue should be reviewed under an abuse of discretion standard. *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005).

3.      Whether the District Court erred in finding that the California Plaintiffs failed to meet the requirements for permissive intervention under Rule 24(b). This issue should be reviewed under an abuse of discretion standard. *Id.*

4.      Whether the District Court erred as a matter of law in denying the California Plaintiffs' Motion to Intervene under Rule 24. This issue should be reviewed under an abuse of discretion standard. *Id.*

## STATEMENT OF THE CASE

### I.     The Nature of the Case

On June 28, 2023, author Paul Tremblay filed *Tremblay et al. v. OpenAI, Inc. et al.*, Case No. 3:23-cv-03223-AMO, in the United States District Court for the Northern District of California against OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C., OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., and OpenAI Startup Fund Management, L.L.C. 1AA-68. The *Tremblay* Action asserts claims on behalf of all persons or entities domiciled in the United States who own a United States copyright in any work that was used as training data for the OpenAI LLMs during the Class Period. *Id*. The *Tremblay* Action alleges that OpenAI engaged in, created, maintained, and operated their LLMs in violation of the California Plaintiffs' rights, stating claims for direct copyright infringement (17 U.S.C. § 106); vicarious copyright infringement (17 U.S.C. § 106); violation of the Digital Millennium Copyright Act (17 U.S.C. § 1202 (b)) ("the DMCA"); and California state law claims, including unfair competition (Cal. Bus. & Prof. Code §§ 17200, et seq.), negligence, and unjust enrichment. *Id.* This was the first case in the United States bringing such claims and asserting these theories against an LLM developer on behalf of copyright-protected authors.

On July 7, 2023, Plaintiffs Sarah Silverman, Christopher Golden, and Richard Kadrey filed their complaint alleging similar claims on behalf of an identical proposed class of plaintiffs. 1AA-85. On September 8, 2023, Plaintiffs Michael Chabon, David Henry Hwang, Matthew Klam, Rachel Louise Snyder, and Ayelet Waldman filed their complaint captioned *Chabon v. OpenAI, Inc., et al.*, Case No. 23-cv-04625-CRB (N.D. Cal. 2023) on behalf of an identical proposed class of plaintiffs. 1AA-104. On October 5, 2023, the *Chabon* complaint was amended to add Plaintiffs Laura Lippman, Jacqueline Woodson, Andrew Sean Greer, Ta-Nehisi Coates, and Junot Díaz as additional Plaintiffs. 1AA-190.

The actions pending in the Northern District of California have been related and consolidated under the master caption *In re OpenAI ChatGPT Litigation*. 1AA-102-03; 1AA-217 (the "California Actions"). On October 6, 2023, the *Tremblay* court entered a pretrial schedule in the consolidated actions. 1AA-216. The parties have also briefed and argued a Rule 12 motion, conducted a Rule 26(f) conference, and exchanged initial disclosures. The parties have negotiated a protective order (2AA-402-24) and are negotiating a discovery protocol which will cover the production of electronically stored information. The California Actions have significantly advanced—the cases are well into discovery.

After learning of the entrance of a new schedule sequencing summary judgment before class certification, the precise schedule the California Plaintiffs

litigated to avoid, the California Plaintiffs sought to intervene in the New York Actions under Rule 24 for the purpose of moving to stay, transfer, or dismiss the later filed New York Actions under the first-filed rule. 2AA-392-95. The New York Action Plaintiffs opposed the California Plaintiffs' Motion for Intervention as of Right on the grounds that California Plaintiffs: (1) have no cognizable interest in the New York Actions, (2) face no impairment of a legally cognizable interest, and (3) are adequately represented even if they are not allowed to intervene in the New York Actions. 2AA-439-44. The New York Action Plaintiffs opposed the Motion for Permissive Intervention on four principal grounds: (1) the same reasons that support denial of intervention as of right support denial of permissive intervention, (2) permissive intervention will unduly prejudice the original parties, and (3) the first-filed rule is inapplicable because the parties are different, and the actions advance different claims that turn on different legal issues, and (4) considerations of equity and efficiency weigh against intervention. (*Id.*). The district court denied the California Plaintiffs' Motion. 2AA-473.

## II. Relevant Procedural History

On February 12, 2024, the California Plaintiffs filed their motion to intervene for the purpose of moving to dismiss, stay or transfer the New York Actions pursuant to Rule 24 and the first-filed rule. 2AA-392. On April 1, 2024, the district court denied the California Plaintiffs' motions to intervene in each of

the New York Actions. 2AA-467. Petitioners timely filed their notice of appeal on April 15, 2024. *See* 2AA-474.

## III.  District Judge Who Rendered the Decision

The decision below was rendered by the Honorable Sidney H. Stein, United States District Judge, Southern District of New York.

## SUMMARY OF ARGUMENT

The district court's order effectively nullifies the first-filed rule in class actions. The purpose of class litigation is aligned with the purpose of the first-filed rule—both are devices to conserve the resources of the courts and parties, and to protect the interests of parties. Both these principles have been long settled. The district court's decision, however, by denying a class representative in a first-filed action the right to intervene to protect its interests, undermines both principles. This order, which denies intervention to parties with a first-filed action, compromises judicial economy and efficiency—the core purposes of the first-filed rule and Rule 23 governing class actions.

The California Plaintiffs meet the requirements for intervention as a matter of right under Rule 24(a)(2). They have a timely claim, an interest in avoiding contradictory rulings, and their interests are not adequately represented by existing parties. The district court's order denying intervention failed to consider the totality of the circumstances and the California Plaintiffs' legitimate interest in intervening.

The California Plaintiffs also meet the requirements for permissive intervention under Rule 24(b). They have a claim or defense that shares a common question of law or fact with the main case, and intervention will not unduly delay or prejudice the adjudication of the original parties' rights. The district court's

order denying permissive intervention failed to consider the potential benefits of intervention.

In sum, the district court's order denying the California Plaintiffs intervention was an abuse of discretion, as it nullifies the first-filed rule in class actions, fails to consider the California Plaintiffs' legitimate interests, and ignores the potential benefits of intervention. The order should therefore be reversed.

## STATEMENT OF FACTS

### I. The *Tremblay* Action

On June 28, 2023, author Paul Tremblay filed *Tremblay et al. v. OpenAI, Inc. et al.*, Case No. 3:23-cv-03223-AMO, in the United States District Court for the Northern District of California against OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C., OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., and OpenAI Startup Fund Management, L.L.C. The *Tremblay* Action asserts claims on behalf of all persons or entities domiciled in the United States who own a United States copyright in any work that was used as training data for the OpenAI LLMs during the Class Period. *See* 1AA-76. Specifically, the *Tremblay* Action alleges that OpenAI violated the California Plaintiffs' rights by creating, maintaining, and operating its LLMs. The claims include direct copyright infringement (17 U.S.C. § 106), vicarious copyright infringement (17 U.S.C. § 106), violation of the Digital Millennium Copyright Act (17 U.S.C. § 1202(b)), and

14

several California state law claims such as unfair competition (Cal. Bus. & Prof. Code §§ 17200, et seq.), negligence, and unjust enrichment. This was the first case in the United States bringing such claims and asserting these theories against an LLM developer on behalf of copyright-protected authors.

On July 7, 2023, Plaintiffs Sarah Silverman, Christopher Golden, and Richard Kadrey filed their complaint alleging similar claims on behalf of an identical proposed class of plaintiffs. *See* 1AA-93-101.

On September 8, 2023, Plaintiffs Michael Chabon, David Henry Hwang, Matthew Klam, Rachel Louise Snyder, and Ayelet Waldman filed their complaint captioned, *Chabon v. OpenAI, Inc. et al.*, Case No. 23-cv-04625-CRB (N.D. Cal. 2023), on behalf of an identical proposed class of plaintiffs. *See* 1AA-104. On October 5, 2023, the *Chabon* complaint was amended to add Plaintiffs Laura Lippman, Jacqueline Woodson, Andrew Sean Greer, Ta-Nehisi Coates, and Junot Díaz as additional Plaintiffs. *See* 1AA-190.

As noted above, the actions pending in the Northern District of California— the original *Tremblay* complaint, the *Silverman* complaint, and the amended *Chabon* complaint—have now been related and consolidated under the master caption, *In re OpenAI ChatGPT Litigation*. 1AA-102-03, 1AA-217.

On October 6, 2023, the *Tremblay* court entered a pretrial schedule in the consolidated actions. 1AA-216. The schedule provides for discovery, class

certification, expert disclosures and *Daubert* motions. *Id.* Notably, over OpenAI's objections, this scheduling order sequences class certification before summary judgment. *See id.* The parties also have briefed and argued a Rule 12 motion, conducted a Rule 26(f) conference, and exchanged initial disclosures. 2AA-399-400. The parties have negotiated a protective order and are negotiating a discovery protocol which will cover the production of electronically stored information. Plaintiffs and OpenAI have each served requests for production and interrogatories. *Id.* The parties have also prepared and served written objections and responses to the various discovery requests and met and conferred on discovery requests. *Id.*

## II.    The New York Actions

Following the *Tremblay* Action, four actions were filed in the Southern District of New York. They are each essentially copies of *Tremblay*, some more obvious than others. Three months after the *Tremblay* Action, on September 19, 2023, the Authors Guild filed its Complaint against OpenAI, naming the identical affiliated OpenAI entities. 1AA-128. Like the *Tremblay* Action, the *Authors Guild* Action is brought on behalf of a nationwide class of authors that overlaps with the class pled in *Tremblay*. The *Tremblay* proposed class already includes all persons in the *Authors Guild* class. Like *Tremblay*, the *Authors Guild* complaint alleges claims for copyright infringement under 17 U.S.C. § 501, vicarious copyright

16

infringement, and contributory copyright infringement. *Id.* ¶¶ 44-46. In essence, like the *Tremblay* Action, the *Authors Guild* Action alleges facts and asserts claims against OpenAI for infringing Plaintiffs' registered Copyrights when training OpenAI's large language models. *Id.*

On November 21, 2023, Julian Sancton filed, in the Southern District of New York, a substantively similar class action complaint against OpenAI and affiliated Defendants OpenAI, Inc., OpenAI GP, LLC, OpenAI, LLC, OpenAI OpCo LLC, OpenAI Global LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, and Microsoft Corporation. *Sancton et al. v. OpenAI, Inc. et al.*, No. 23-cv-10211-SHS (S.D.N.Y. Nov. 21, 2023), ECF No. 1. On December 19, 2023, the *Sancton* complaint was amended to add Jonathan Alter and others as Plaintiffs and recaptioned to become *Alter et al. v. OpenAI Inc. et al.* ("*Alter* Action"). 1AA-244. Also like the *Tremblay* Action, the *Alter* Action brings claims based on the use of Plaintiffs' copyrighted material in the training of Defendants' LLMs. The *Alter* Action asserts claims for copyright infringement and contributory copyright infringement. 1AA-252-53. The *Authors Guild* court has since related and consolidated the *Authors Guild* Action and the *Alter* Action. 2AA-384.

On December 27, 2023, The New York Times Company filed a complaint against OpenAI (including its affiliates) and Microsoft Corporation. *The N.Y. Times Co. v. Microsoft Corp. et al.*, Case No. 1:23-cv-11195 (S.D.N.Y. Dec. 27, 2023)

("*New York Times* Action"). Like its predecessors, the *New York Times* Action asserts a claim for direct copyright infringement, vicarious copyright infringement, contributory copyright infringement, violation of the Digital Millennium Copyright Act, common law unfair competition by misappropriation, and trademark dilution. 2AA-341-48. The *New York Times* Action is brought on behalf of a sole plaintiff that is subsumed within the class asserted in the *Tremblay* Action.

On January 5, 2024, Nicholas Basbanes and other Plaintiffs filed, in the Southern District of New York, a complaint against OpenAI (including its affiliates) and Microsoft Corporation. *Basbanes et al. v. Microsoft Corp. et al.*, No. 24-cv-00084 (S.D.N.Y. Jan. 5, 2024). Like the others, the *Basbanes* Action asserts a claim for direct copyright infringement, vicarious copyright infringement, and contributory copyright infringement. 2AA-356-57. Also like the *Authors Guild* and *Alter* Actions, the *Basbanes* Action brings these claims on behalf of a nationwide class of all authors, coextensive with the class asserted in the *Tremblay* Action. The *Basbanes* Action was consolidated with the *Authors Guild* Actions on February 6, 2024. 2AA-390.

The New York Actions largely duplicate the first-filed *Tremblay* Action. Each arises out of the same nucleus of facts and is based on the same conduct and similar theories of liability. *Tremblay* was the first case in the United States to allege claims arising from the impermissible use of plaintiffs' copyrighted material

in connection with the training of OpenAI's LLMs and commercialized generative AI products. The New York Actions followed suit, alleging substantially similar facts. Based on those facts, like the *Tremblay* Action, they plead substantially similar claims for direct copyright infringement, vicarious copyright infringement, and contributory copyright infringement. They do so on behalf of proposed classes or plaintiffs who are either identical to or are entirely subsumed by the proposed class defined in the first-filed *Tremblay* Action pending in the Northern District of California.

## ARGUMENT

### I. The District Court's Order Effectively Nullifies the First-Filed Rule in Class Actions Under Federal Rule of Civil Procedure 23, Undermining the Purposes Underlying Both Rules

The district court's primary justification for denying the California Plaintiffs intervention was that the California Plaintiffs have no cognizable interest in the outcome of the New York Actions because no class has been certified pursuant to Rule 23 in any of the New York or California Actions. 2AA-471. Thus, under the district court's order, a party could never invoke the first-filed rule without a Rule 23 class first being certified, effectively rendering the doctrine a nullity in class cases.

In *Baatz*, the Sixth Circuit considered exactly this issue. 814 F.3d 785. In finding that a putative class member *can* invoke the first-filed rule, the court noted

19

that "for purposes of identity of the parties when applying the [first-filed] rule,

courts have looked at whether there is substantial overlap with the putative class

even though the class has not yet been certified." *Id.* at 790. The court explained:

> The reason is fairly straightforward: if the opposite rule were
> adopted, the [first-filed] rule might never apply to
> overlapping class actions as long as they were filed by
> different plaintiffs. Litigating a class action requires both the
> parties and the court to expend substantial resources.
> Perhaps the most important purpose of the [first-filed] rule is
> to conserve these resources by limiting duplicative cases. To
> serve this purpose, we must evaluate the identity of the
> parties by looking at overlap with the putative class. *See In
> re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1088 (6th Cir.
> 1996) (noting the "waste of judicial resources" that could
> occur when potentially overlapping class actions create
> duplicative proceedings). Furthermore, if duplicative class
> actions were allowed to proceed unabated, the class
> members could be subject to inconsistent
> rulings. *See E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 977
> (3d Cir. 1988).

*Id.* at 791.[2]

The court's order undermines the longstanding and well-established first-

filed rule in class actions under Rule 23, thus defeating the fundamental purposes

---

[2] Various district courts have held that the first-filed rule can apply to similar proposed group actions before certification. *See, e.g.*, *Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011) ("If the first-filed rule failed to focus on the overlap of the subject matter [rather than absolute identity of the parties] it might encourage rather than discourage duplicative suits because parties who are aware of pending suits but not yet party to them might seek to file suit in more favorable fora." (internal quotation marks and citations omitted)); *Adoma v. Univ. of Phx., Inc.*, 711 F.Supp.2d 1142, 1147–48 (E.D. Cal. 2010) (finding the first-filed rule's "similarity of parties" requirement satisfied in part because "the proposed classes for the collective actions are substantially similar in that both classes seek to represent at least some of the same individuals"); *Weinstein v. Metlife, Inc.*, No. C 06–04444 SI, 2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006) ("In a class action . . . it is the class, not the representative, that is compared.").

of both rules, which are designed to promote judicial economy and prevent duplicative litigation. Rule 24, advisory committee's notes to 1966 amendment ("Rather [an absent class member] should, as a general rule, be entitled to intervene in the action."); *see, e.g.*, *Gen. Tel. Co.*, 457 U.S. at 161 ("[T]he purpose of Rule 23 is to promote judicial economy by allowing for litigation of common questions of law and fact at one time."); *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015) ("The [first-filed] rule is intended to serve the purpose of promoting efficiency well and should not be disregarded lightly. When applying the [first-filed] rule, courts should be driven to maximize economy, consistency, and comity." (citations and internal quotation marks omitted)).

The first-filed rule first arose in 1824, when the Supreme Court exclaimed that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith*, 22 U.S. at 535. It is a legal doctrine that gives priority to the first of multiple related cases to be filed. *See, e.g.*, *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (stating that as a general rule, "[w]here there are two competing lawsuits, the first suit should have priority" (citation omitted)). This rule is grounded in principles of comity and sound judicial administration, aiming to avoid the inefficiencies of duplicative litigation. *See, e.g.*, *Kohn*, 787 F.3d at 1239-40. It ensures that the court which first

21

acquires jurisdiction over a dispute retains control, reducing the burden on parties and judicial resources. *See, e.g.*, *First City Nat. Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989) ("The [first-filed] rule embodies considerations of judicial administration and conservation of resources."). The rule not only respects the time and resources of the courts but also minimizes the risk of contradictory judgments from different courts handling similar issues. *See, e.g.*, *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 709 (Fed. Cir. 2013) (noting that the "key objectives" of the first-filed rule include "minimization or avoidance of 'duplication of effort, waste of judicial resources, and risk of inconsistent rulings that would accompany parallel litigation.'").

Modern class action practice began with the 1966 Amendments to Rule 23. *See* John K. Rabiej, *The Making of Class Action Rule 23 — What Were We Thinking?*, 24 Miss. C. L. Rev. 323, 333-45 (2005). The 1966 Amendments, among other things, provided for opt-out class cases under Rule 23(b)(3). Modern class actions have become essential in providing relief for similarly situated groups of persons or entities seeking relief as result of a common course of conduct and to adjudicate significant collective disputes and to vindicate collective rights. They have become important tools in the administration of justice, including age discrimination, antitrust cases, intellectual property cases, consumer cases, and

mass torts. *See* Arthur R. Miller, *The Preservation and Rejuvenation of Aggregate Litigation: A Systemic Imperative*, 64 Emory L.J. 293, 295 (2014).

By denying intervention to parties with a first-filed action, the district court's order effectively nullifies the first-filed rule in class cases. This undermines the rule's primary purpose of preventing duplicative litigation and ensuring judicial efficiency. *See, e.g.*, *Kohn*, 787 F.3d at 1239-40; *Futurewei*, 737 F.3d at 709; *First City*, 878 F.2d at 80. If parties with first-filed actions are denied intervention, the first-filed rule loses its deterrent effect against filing multiple, identical lawsuits in different jurisdictions, leading to increased judicial waste and inconsistent rulings. Here, if the New York and California Plaintiffs are required to litigate separately, the respective district courts would be forced to expend resources on nearly identical cases, each involving similar factual inquiries and legal determinations. This fragmentation would result in inefficiency and potentially inconsistent legal outcomes, eroding public confidence in the judicial process.

Rule 23 governing class actions is pivotal in managing cases where numerous plaintiffs share similar legal claims, thereby preventing a multitude of identical lawsuits, promoting judicial economy, and facilitating more efficient resolution of disputes. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974) (explaining that the "principal purpose" of the Rule 23 class action procedure is "efficiency and economy of litigation"). Rule 23 serves to aggregate

similar claims, *see Skaar v. McDonough*, 48 F.4th 1323, 1332 (Fed. Cir. 2022), reducing the need for courts to repeatedly address the same legal questions and allowing for a uniform resolution that applies to all class members. *See, e.g., Gen. Tel. Co.*, 457 U.S. at 161 ("[T]he purpose of Rule 23 is to promote judicial economy by allowing for litigation of common questions of law and fact at one time."). This consolidation is particularly important in cases involving widespread harm, where individual lawsuits would be impractical and inefficient.

The district court's order also frustrates the purposes of Rule 23. Class actions under Rule 23 are designed to centralize and streamline the resolution of common issues, which is integral to judicial economy. *Am. Pipe & Const. Co.*, 414 U.S. at 553 (noting that "efficiency and economy of litigation . . . is a principal purpose" of the Rule 23 class action procedure). Denying intervention to a party with a first-filed action forces them to pursue parallel litigation, resulting in duplicative proceedings that Rule 23 aims to avoid. This duplication not only burdens the courts but also creates a risk of conflicting judgments, undermining the efficiency and coherence that Rule 23 seeks to promote. If the first-filed party cannot intervene, it leads to the very inefficiencies Rule 23 seeks to prevent. Indeed, the lower court's ruling frustrates the longstanding principles undergirding the rights of absent class members to intervene. Rule 24, advisory committee notes

24

to 1966 amendment ("[An absent class member] should, as a general rule, be entitled to intervene in the action.").

Moreover, denying intervention undermines the principles of fairness and equity that underpin both the first-filed rule and Rule 23. Parties with first-filed actions have a legitimate expectation that their early filing will be respected and that their efforts to consolidate claims and streamline litigation will not be disregarded. The district court's order disregards this expectation, creating uncertainty and discouraging early, proactive litigation efforts designed to promote judicial efficiency.

The district court's denial of intervention to the California Plaintiffs was an abuse of discretion because it nullifies the first-filed rule in class actions and defeats the purposes of that rule and Rule 23. Both the first-filed rule and Rule 23 are designed to promote judicial economy and consistency, and the district court's order runs counter to these objectives. To preserve the integrity of these rules and ensure efficient and coherent administration of justice, the order should be reversed.

## II. Not Allowing the California Plaintiffs to Intervene as of Right was An Abuse of Discretion

Under Rule 24(a)(2), intervention as a matter of right is appropriate where: an applicant (1) timely claims (2) an interest relating to the property or transaction which is the subject of the action and (3) is so situated that the dispositions of the

25

action may as a practical matter impair or impede the applicant's ability to protect that interest, (4) unless his or her interest is adequately represented by existing parties. *AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 155 (S.D.N.Y. 2004) (citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990)). Likewise, the class action device embodied by Rule 23 similarly has, since its inception, mechanisms to protect the interests of those absent. *See, e.g.*, Rule 23(b)(1), advisory committee notes to 1966 amendment ("In various situations an adjudication as to one or more members of the class will necessarily and probably have an adverse practical effect on the interest of other members who should therefore be represented in the lawsuit.").

Timeliness of a motion to intervene is assessed by considering the totality of the circumstances. *Red Rock Sourcing LLC v. JGX, LLC*, No. 21 Civ. 1054 (JPC), 2023 WL 1468980, at *4 (S.D.N.Y. Feb. 2, 2023); *see also Sec. & Exch. Comm'n v. Berman*, No. 20 Civ. 10658 (LAP), 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021) (finding motion to intervene filed within three months after being served with complaint timely); *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) (granting motion for intervention as of right even where "discovery deadlines have come and gone[.]").

Here, the California Plaintiffs have timely filed a Motion to intervene for the limited purpose of bringing a Motion to Dismiss, Stay or Transfer this Action

Pursuant to the first-filed rule. Each of the New York Actions was filed well after

the first-filed *Tremblay* Action. Upon learning of the substantially similar cases

filed in the Southern District of New York, Plaintiffs' counsel in *Tremblay*

immediately investigated whether intervention was warranted. 2AA-400. In

particular, the *Tremblay* Plaintiffs sought to determine OpenAI's position with

respect to the subsequently filed New York Actions. OpenAI's counsel informed

Plaintiffs' counsel that it intended to proceed in the Northern District of California,

where the first-filed *Tremblay* Action is pending, and would move to dismiss or to

transfer the *Authors Guild* Action under the first-filed rule. This position was

subsequently confirmed by OpenAI's counsel in statements made to the district

court below:

> Defendants anticipate filing a motion to dismiss under the
> first-filed rule, or, in the alternative, to stay this action
> pending resolution of the three substantially similar
> putative class actions pending in the District Court for the
> Northern District of California, or, in the further
> alternative, to transfer this matter to the Northern District
> of California either under the first-filed rule or 28 U.S.C.
> § 1404(a).

1AA-231-32. The *Tremblay* Plaintiffs relied on these representations when made.

As soon as the *Tremblay* Plaintiffs learned that OpenAI had reversed course

and would not move to dismiss the *Authors Guild* Action under the first-filed rule,

they began working on their motion to intervene, which sought to avoid piecemeal

litigation, judicial inefficiency, and possibly contradictory rulings under the first-filed doctrine.

The second and third requirements of Rule 24(a)(2) are also met because the California Plaintiffs have an interest in avoiding contradictory rulings. *See Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 134 (1967) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . .").[3] Indeed, these interests coincide with the interests the first-filed rule were meant to protect.

"As between federal district courts. . . . the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist*, 424 U.S. at 817. Both the first-filed rule and the class action device are designed to avoid duplicative litigation because it may result in contradictory results. *Gen. Tel. Co.*, 457 U.S. at 155 ("'[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'") (citation omitted); *see also Baatz*, 814 F.3d 785 ("[The first-filed rule] also conserves judicial resources by

---

[3] *See also In re Comty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation. Therefore, when absent class members seek intervention as a matter of right, the gravamen of a court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation.").

minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results.") (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969m 977 (3d Cir. 1988); *W. Gulf Mar. Ass'n,* 751 F.2d at 729 ); *Cole Silver Min. Co.*,6 F. Cas. at 73 ("[T]hat in a case of this kind, when the absent person alleged to be interested would, if brought into court, oust its jurisdiction, I would . . . strain hard to give relief as between the parties before this court."). The lower court's order, by disallowing the California Plaintiffs the opportunity to litigate its first-file challenge, has created precisely the "vexation of subsequent litigation" both devices were designed to arrest. *FMC Corp.,* 379 F. Supp. 2d at 737-38 (citing *Kerotest Mfg. Co.*, 342 U.S. 180 ).

As explained in more detail below, it is not disputed that both the first-filed *Tremblay* Action and the New York Actions involve the same substantive questions of copyright law. Further, it is not disputed that the consolidated *Authors Guild* Action is being litigated on behalf a class that is coextensive with and entirely subsumed by the class defined in the first-filed *Tremblay* Action. The *New York Times* Action is brought on behalf of a sole Plaintiff that is subsumed by the class asserted in the *Tremblay* Action. By its forum shopping, OpenAI is creating the likelihood–or certainty–of inconsistent rulings in overlapping class actions and the attendant waste of judicial resources. Consequently, the California Plaintiffs "should . . . be entitled to intervene[.]" *Id.* This is particularly true because

29

OpenAI, by its forum shopping, has achieved its desired result of litigating summary judgment first (and in particular, the issue of fair use). Indeed, it appears that it is OpenAI's intention to adjudicate issues in the *New York Times* Action to the detriment of the California Plaintiffs. Rule 23(b)(1), advisory committee notes to 1966 amendment ("In various situations an adjudication as to one or more members of the class will necessarily and probably have an adverse practical effect on the interest of other members who should therefore be represented in the lawsuit."). The risk of inconsistent rulings and needless expenditure of judicial resources, as well as the practical impairment of the California Plaintiffs' interests, are all but guaranteed if the New York Actions are permitted to proceed.

With respect to the last requirement, courts in the Second Circuit permit intervention unless the interests of the existing parties are "so similar to those of [the California Plaintiffs] that adequacy of representation is assured." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132-33 (2d Cir. 2001). Sufficient reasons to doubt the adequacy of representation is sufficient. Certainty about how existing parties will litigate is not required. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972) (finding sufficient doubt about the adequacy of representation satisfies the adequacy element of Rule 24(a)(2)). Here, the interests between the California Plaintiffs and the New York Plaintiffs are incongruent, as demonstrated by their ready participation in the "reverse auction" engineered by

Open AI to obtain a litigation schedule and other concessions denied them in the

California Action. In *China Agritech v. Michael H. Resh*, Justice Sotomayor

explained the peril to class members of allowing a "reverse auction" in this

context:

> Each class lawyer knows that only the lawyers in the first-resolved case will get paid, because the other suits will then be dismissed on claim-preclusion grounds. Defense lawyers know this, too, so they are able to engage in a 'reverse auction,' pitting the various class counsel against one another and agreeing to settle with the lawyer willing to accept the lowest bid on behalf of the class. This gamesmanship is not in class members' interest, nor in the interest of justice.

584 U.S. 732, 754 (2018) (Sotomayor, J., concurring) (internal quotation

marks and citations omitted).[4]

---

[4] *See also* Rhonda Wasserman, *Dueling Class Actions*, 80 B.U. L. Rev. 461, 472–74 (2000) (citations omitted):

> The existence of another simultaneous suit on behalf of the same class before a different court makes the race to judgment very risky. . . . The defendant is aware that class counsel is under substantial pressure to settle. Based on this knowledge, the defendant may make a "low ball" offer in an effort to settle the class claim for far less than it is worth. . . . The pressure on class counsel to collude with the defendant in this manner may be extreme. Even if class counsel is able to resist this pressure, the defendant may simply go knocking on the door of another lawyer representing the class to see if she will succumb. Thus . . . the defendant is able to engage in a "reverse auction," pitting the various class counsel against one another and agreeing to settle with the lawyer willing to accept the lowest bid on behalf of the class. In many respects, class counsel face a dilemma similar to the classic "prisoner's dilemma" of game theory.

In addition, the interests of the Authors Guild as a business appears to put it at odds with the authors and other content creators that comprise the class of injured persons. The Authors Guild, an advocate and promoter of generative AI, has already disclosed its plan to work with a management organization to license copyrights and other intellectual property to companies commercializing or monetizing generative AI products such as OpenAI. Forcing the California Plaintiffs to commit to a licensing regime controlled by a third party would unfairly limit and restrict the remedies available to the California Plaintiffs.[5] Also, another glaring problem with the Authors Guild is its unfair and biased perspective on who deserves to be compensated for AI training. As the Authors Guild sees it, fees collected through a collective-licensing system ought not be distributed equally and fairly to participating authors, but differentially based on "number of works published, the length of those works, and any available sales data."[6] This approach would appear to divide and separate the interests of the class, and unjustly favor high-selling authors, who would collect an apparently substantial part of the licensing fees generated by low-selling authors.

---

[5] *See* Authors Guild, FAQs on the Authors Guild's Positions and Advocacy Around Generative AI (last visited Feb. 5, 2024) https://authorsguild.org/advocacy/ artificial-intelligence/faq/ ("Authors Guild is proposing to create a collective license whereby a collective management organization (CMO) would license out rights on behalf of authors, negotiate fees with the AI companies, and then distribute those payment to authors who register with the CMO.").

[6] See https://authorsguild.org/advocacy/artificial-intelligence/faq/, § 8.

Indeed, this bias was demonstrated when the Authors Guild filed its original complaint, carefully and explicitly limiting the putative class only to those authors who sold works of fiction with at least 5,000 copies. *See* 1AA-169. For context, according to reporting in the New York Times, "about 98 percent of the books that publishers released in 2020 sold fewer than 5,000 copies."[7] The Authors Guild only entered this case to represent a small percentage of all authors, to the exclusion of others. No surprise that the other authors who joined Authors Guild as plaintiffs in that original filing were bestselling authors who stood to gain the most from the Authors Guild's preferred form of collective licensing, not rank-and-file authors who stood to gain the least. *See* 1AA-128. Such preference is not necessary in the class action given the substantial similarity of the members of the class asserted in *Tremblay*. The California Plaintiffs, by contrast, have no such bias or selfish interests or motives. The California Plaintiffs are content creators themselves and have no conflict with other class members.

Finally, the *Authors Guild* Action purports to represent classes that duplicate and are entirely subsumed by the proposed class in *Tremblay*. Thus, the California Plaintiffs' interests are not likely to be adequately represented by the New York

---

[7] See https://www.nytimes.com/2021/04/18/books/book-sales-publishing-pandemic-coronavirus.html.

Plaintiffs. Accordingly, intervention as a matter of right is appropriate. The district court order denying the California Plaintiffs such relief was an abuse of discretion.

### III. Not Allowing the California Plaintiffs to Permissively Intervene was an Abuse of Discretion

Permissive intervention allows a third party to join an ongoing lawsuit when they have a claim or defense that shares a common question of law or fact with the main case. *See* Rule 24(b). "District courts are afforded wide latitude to determine whether a party with a common question of law or fact may join a particular suit. But sometimes, a court steps outside its "zone of discretion," and thus abuses its discretion. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997). When that happens, reversal on appeal is appropriate. *See, e.g.*, *Buck v. Gordon*, 959 F.3d 219, 226 (6th Cir. 2020) (reversing district court order denying permissive intervention for abuse of discretion); *Coffey v. Comm'r of Internal Revenue*, 663 F.3d 947, 952 (8th Cir. 2011) (same); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. District (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) (vacating district court order denying permissive intervention).

Permissive intervention is appropriate where (1) the motion is timely; (2) the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact"; and (3) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b). In the class action context, this standard is easily satisfied where the intervenors assert the

34

same claims as duplicative or overlapping classes and address issues regarding representation or other class issues. *See Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (Courts appear to be particularly amenable to permissive intervention "when no additional issues are presented to the case, when the intervenor's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of the representation." (quoting Herbert Newberg & Alba Conte, Newberg on Class Actions § 16:8 (4th ed.))).

Here, the Court should permit intervention for the limited purpose of filing a motion to dismiss, stay, or transfer. The California Plaintiffs meet the requirements of Rule 24(b) because, as discussed in more detail in below, they "ha[ve] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In the class action context, this standard is easily satisfied where the intervenors assert the same claims as duplicative or overlapping classes and address issues regarding representation or other class issues. *Eckert,* 227 F.R.D. at 64 (quoting Herbert Newberg & Alba Conte, Newberg on Class Actions § 16:8 (4th ed.)) (Courts appear to be particularly amenable to permissive intervention "when no additional issues are presented to the case, when the intervenor's claims are 'virtually identical' to class claims, and when intervention

35

would strengthen the adequacy of the representation."); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 147 F.R.D. 60, 62 (S.D.N.Y. 1993).

As discussed below, the New York Actions involve substantially similar Defendants, the same putative nationwide class, the same artificial intelligence technology, and the allegations, claims and proposed classes are substantially similar to those before the court in the first-filed *Tremblay* Action—all of which was known to the Authors Guild and their counsel at the time of filing. *See, e.g.*, Authors Guild, *AG Statement on Writers' Lawsuits Against OpenAI* (June 29, 2023) https://authorsguild.org/news/statement-on-writers-lawsuits-against-openai/ ("We applaud [the California Plaintiffs] for asserting their rights in the lawsuits against OpenAI, and we are standing by to provide support if requested."); 1AA-231 (identifying the *Tremblay* Actions in their joint Rule 26(f) Report and Proposed Case Management Plan). Accordingly, the California Plaintiffs clearly have claims that share "common question[s] of law or fact" with the New York Actions. *See* Fed. R. Civ. P. 24(b); *see also Pike Co., Inc. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 396 (W.D.N.Y. 2018) (permitting intervention where "claims involve the interpretation of the rights and obligations of the parties within same contract.").

Permitting intervention will also not unduly delay or prejudice the parties' rights. The *Tremblay* Action is already substantially advanced and the litigation is

proceeding apace. The New York Actions, filed months afterwards, are well-behind. Given that there appear to be no Plaintiffs in the New York Actions who are not part of the proposed *Tremblay* class, and the claims are identical, permitting intervention here will not cause any prejudice to the New York Plaintiffs. They will continue to be represented should the district court, on remand, stay, dismiss, or transfer the New York Actions.[8] *See Lau v. Wells Fargo & Co.*, No. 20-CV-03870 (AJN), 2021 WL 1198964, at *2 (S.D.N.Y. Mar. 30, 2021) (dismissing subsequent action under first-filed rule, and noting plaintiffs in subsequently-filed class action would not be prejudiced because they could opt-in to the class in first-filed action).

OpenAI's rights will also not be prejudiced or delayed. They are already parties to and have been defending against the *Tremblay* Action. Further, OpenAI already appeared in *Tremblay*, and is fully engaging with the California Plaintiffs' counsel, including by actively engaging in all aspects of discovery. Indeed, in response to the motion on appeal, OpenAI filed a two-page statement saying they

---

[8] The converse, however, is not true. The California Plaintiffs may not have their interests represented if the New York Actions are permitted to proceed. The Authors Guild has stated its intent to explore licensing deals with OpenAI, and it is a promoter of generative AI. *See* Authors Guild, FAQs on the Authors Guild's Positions and Advocacy Around Generative AI (last visited Feb. 5, 2024) https://authorsguild.org/advocacy/artificial-intelligence/faq/ ("Authors Guild is proposing to create a collective license whereby a collective management organization (CMO) would license out rights on behalf of authors, negotiate fees with the AI companies, and then distribute those payment to authors who register with the CMO."). Allowing the later-filed New York Actions to proceed not only risks conflicting court decisions, but also risks the interests and rights of the California Plaintiffs in fully prosecuting their rights and recovering complete relief.

"do not take a position" on the New York Motion. And the two plaintiffs who filed the *Basbanes* Action in the Southern District of New York (now consolidated with the *Authors Guild* Action) agree that the California Plaintiffs' Motion is meritorious and should be granted. *See* 2AA-461.

In sum, the California Plaintiffs satisfy the requirements for permissive intervention. The district court's order denying their motion to intervene was an abuse of discretion.

## CONCLUSION

For the reasons stated above, The Court should reverse the district court's order denying Appellants' motion to intervene under Rule 24.

Dated:  July 31, 2024            JOSEPH SAVERI LAW FIRM, LLP

By:   */s/ Jospeh R. Saveri*
Joseph R. Saveri (CA SBN 130064)
601 California Street, Suite 1505
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
jsaveri@saverilawfirm.com

*Counsel for Third-Party-Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2024, I electronically filed and served the

foregoing Brief for Appellants by using this Court's electronic-filing system.


Dated: July 31, 2024          By:  ___*/s/ Joseph R. Saveri*_____

                                   Joseph R. Saveri

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 8,474 words, excluding the portions of the brief exempted by Rule 32(f), according to the count of Microsoft Word. I further certify that this brief complies with the typeface and type-style requirements of Rule 32(a)(5)-(6) because it is printed in a proportionally spaced 14-point font, Times New Roman.

Dated: July 31, 2024       By:    */s/ Joseph R. Saveri*
                                Joseph R. Saveri

# SPECIAL APPENDIX

# SPECIAL APPENDIX
## TABLE OF CONTENTS

Page

Opinion and Order regarding Motion to Intervene and Dismiss, Stay     SPA-1
or Transfer, *Authors Guild v. OpenAI, Inc.*, ECF 100, April 1, 2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AUTHORS GUILD, *ET AL.*, | | |
| | Plaintiffs, | |
| -v- | | 23-CV-8292 (SHS) |
| OPEN AI, INC., *ET AL.*, | | <u>OPINION & ORDER</u> |
| | Defendants. | |
| JONATHAN ALTER, *ET AL.*, | | |
| | Plaintiffs, | |
| -v- | | 23-CV-10211 (SHS) |
| OPEN AI, INC., *ET AL.*, | | |
| | Defendants. | |
| NICHOLAS A. BASBANES and NICHOLAS NGAGOYEANES, | | |
| | Plaintiffs, | |
| -v- | | 24-CV-84 (SHS) |
| MICROSOFT CORPORATION, *ET AL.*, | | |
| | Defendants. | |
| THE NEW YORK TIMES COMPANY, | | |
| | Plaintiff, | |
| -v- | | 23-CV-11195 (SHS) |
| MICROSOFT CORPORATION, *ET AL.*, | | |
| | Defendants. | |

SIDNEY H. STEIN, U.S. District Judge.

     Plaintiffs in the above-captioned actions (the "New York Actions") are copyright holders—a professional writers association, authors, and a news organization—seeking to enforce their intellectual property rights against defendants Microsoft Corporation, OpenAI, Inc., and various entities affiliated with OpenAI.

Other copyright holders have asserted similar claims in an action entitled *In re OpenAI ChatGPT Litigation*, No. 23-CV-3223 (N.D. Cal.) currently pending in the U.S. District Court for the Northern District of California (the "California Action"). The plaintiffs in that action (the "California Plaintiffs") have filed motions to intervene in each of the New York Actions for the purpose of moving to dismiss, stay or transfer the New York Actions pursuant to Fed. R. Civ. P. 24 and the first-to-file rule. (ECF No. 71.[1]) For the reasons set forth below, the Court denies the California Plaintiffs' motions to intervene in each of the New York Actions.[2]

## A. Background

The four actions currently pending before this Court allege copyright infringement against Microsoft Corporation and OpenAI for conduct relating to OpenAI's ChatGPT product. In brief, ChatGPT uses Large Language Models (LLMs), which are trained on extremely large sets of data, to generate text in response to a user's prompt. Three of the cases pending before this Court were brought on behalf of authors who allege principally that their copyrighted works were unlawfully used in the training of OpenAI's LLMs: (1) *Authors Guild, et al., v. OpenAI, Inc., et al.*, No. 23-CV-8292; (2) *Jonathan Alter, et al., v. OpenAI, Inc., et al.*, No. 23-CV-10211; and (3) *Nicholas Basbanes and Nicholas Ngagoyeanes v. Microsoft Corporation, et al.*, No. 24-CV-84 (together, the "Author Actions"). The fourth related action pending in this Court is *The New York Times Company v. Microsoft Corporation, et al.*, No. 23-CV-11195, in which the New York Times alleges principally that defendants infringed on its copyrights in the training of OpenAI's LLMs and the output generated by the ChatGPT product, as well as violated the Digital Millennium Copyright Act.

The *Authors Guild* action, filed on September 19, 2023, was the first of these cases to be filed in the Southern District of New York. It has since been consolidated with the remaining Author Actions for pretrial purposes. The Author Actions are all putative class actions, although no motion seeking certification of a class has been filed to date. The parties have stipulated that defendants will not move to transfer or dismiss the action and motions for summary judgment will precede motions for class certification. (ECF No. 56.) Pursuant to the Scheduling Order entered in that action, fact discovery

---

[1] Unless otherwise noted, "ECF No. __" refers to filings on the docket of *Authors Guild, et al., v. OpenAI, Inc., et al.*, No. 23-CV-8292 (S.D.N.Y.).

[2] The California Plaintiffs moved in the California Action to enjoin the defendants in that action from defending in the actions before this Court. Judge Araceli Martinez-Olguin has denied that motion. *In re OpenAI ChatGPT Litig.*, No. 23-CV-03223, 2024 WL 923556 (N.D. Cal. Mar. 1, 2024).

has already begun, will be completed by September 2024, and summary judgment briefing is due in early 2025. (ECF No. 65.) The *NY Times* action is not a putative class action and defendants have moved to dismiss certain claims in that action. (*NY Times*, ECF Nos. 51, 64.)

On June 28, 2023, approximately three months before any of the New York Actions were filed, a group of authors filed the California Action. In that action, the plaintiffs assert a variety of federal and state-law claims, alleging that OpenAI used copyrighted works to train its LLMs and that the LLMs and their outputs are derivative infringing works. Class certification briefing is not scheduled to be completed until June 2025. (ECF No. 81 at 3-4.)

As noted above, currently pending before this Court is a motion by the California Plaintiffs to intervene in each New York Action pursuant to Fed. R. Civ. P. 24, and, once they have intervened, for the Court to either dismiss, stay, or transfer the New York Actions because the California Action was the first-filed action. Defendant Microsoft Corporation and plaintiffs in the *Authors Guild*, *Alter*, and *NY Times* actions have opposed the motion (ECF Nos. 79, 81; *NY Times*, ECF No. 59), and plaintiffs in the *Basbanes* action support the motion (ECF No. 89-1).[3] The Court denies the California Plaintiffs' motions to intervene.

### B. The California Plaintiffs May Not Intervene as of Right

Rule 24 contemplates two avenues for parties to intervene in a federal action: intervention as of right and permissive intervention. Under Rule 24(a), a party may intervene as of right on a "timely motion" showing that it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." "All four parts of the test must be satisfied to qualify for intervention as of right." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990).

The California Plaintiffs have not met the requirements of Rule 24(a). First, they have not demonstrated a cognizable interest or that any such interest would be impaired. The intervenor's interest in the action must be "direct, substantial, and legally protectable." *Id*. at 97. "An interest that is remote from the subject matter of the

---

[3] Defendant OpenAI takes no position. (ECF No. 80; *NY Times*, ECF No. 49.)

3

proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Id.*

Here, the California Plaintiffs claim an "interest in avoiding contradictory rulings" between the New York Actions and the California Action and that those contradictory rulings would impair their interests. (ECF No. 71 at 9-10.) However, the substantial differences between the actions lessen any risk of contradictory rulings. For example, the California Plaintiffs assert state-law and DMCA claims that are not raised in the Author Actions and Microsoft is not a defendant in the California Action.

More importantly, for the claims that do overlap, the California Plaintiffs have no legally cognizable interest in avoiding rulings that apply to entirely different plaintiffs in a different district. Critically, no class has been certified in any of the New York or California actions, so each group of plaintiffs only has a direct and cognizable interest in its own proceeding. Prior to a class being certified, the California Plaintiffs represent only themselves and cannot be impaired by any decision of this Court, which would only be binding as to the New York plaintiffs in their individual capacities.

A 2020 decision from this District is instructive. In *Calderon v. Clearview AI, Inc.*, 2020 U.S. Dist. LEXIS 94926 (S.D.N.Y. May 29, 2020), a purported first-filed plaintiff also sought to intervene in a Southern District of New York action and to dismiss that action, arguing that he had an interest in the outcome of "competing class actions, with overlapping classes, claims, parties and legal and factual issues." *Id.* at *13. Judge Colleen McMahon denied the motion to intervene, finding that "[p]rior to the certification of a class and the appointment of class counsel, [the proposed intervenor's] interest in being in control of the Clearview AI lawsuits is too attenuated to justify intervention as of right." *Id.* at *15. She elaborated as follows:

> "Unless and until (1) a class is certified; (2) [the proposed intervenor] is found to be an appropriate class representative, and (3) his counsel are deemed appropriate class counsel, the only legally cognizable interest he has is in his own claim. That claim is not pending in the Southern District of New York (all the actions that are here, like [the proposed intervenor's] in Illinois, being merely putative class actions, not certified class actions), he has no right to intervene in any of the actions pending here — even if all the actions in this district were identical to his." *Id.* at *17.

Other judges have similarly decided that a proposed intervenor does not have an interest in the outcome of an action with an overlapping putative class prior to any class

being certified. *See Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 342-43 (E.D.N.Y. 2018)
("[A]ny interest in protecting the rights of proposed intervenors and their putative class
is too speculative to warrant intervention as of right. At this point, no class has been
certified [in either action]."); *Mejia v. Time Warner Cable, Inc.*, No. 15-CV-6445, 2017 U.S.
Dist. LEXIS 120445, at *51 (S.D.N.Y. Aug. 1, 2017) ("[P]rior to the certification of a class,
any interest the [proposed intervenors'] claim is too remote to justify intervention.").
The same reasoning applies here. Because no class has been certified, the California
Plaintiffs do not have a cognizable interest in the outcome of any New York Action and
fail to satisfy the first requirement of intervention as of right.

Having failed to establish a cognizable interest, the California Plaintiffs similarly
fail to establish that their hypothetical interest "would be impaired or impeded." Fed. R.
Civ. P. 24(a). Any decision of this Court on the individual plaintiffs here is not binding
in the Northern District of California and does not apply to any other plaintiffs, so any
potentially contradictory rulings do not impair the California Plaintiffs' rights.
Moreover, even if the Court certified a class in the Author Actions that would include
the California Plaintiffs, "their rights would be deemed protected, and not impaired"
because classes are only certified after finding that the representative plaintiff would
adequately protect the class's interests. *Travis*, 284 F. Supp. 3d at 344-45.

Finally, the California Plaintiffs have not shown that the existing parties would
not adequately represent their hypothetical interest. "[W]hen there is an identi[t]y of
interest between a putative intervenor and an existing party to the action, a
presumption of adequate representation attaches in the absence of evidence of
collusion, adversity of interest, nonfeasance, or incompetence." *St. John's Univ., N.Y. v.
Bolton*, 450 Fed. App'x 81, 84 (2d Cir. 2011). Here, the presumption attaches because
plaintiffs in the New York Actions share an interest with the California Plaintiffs, which
is to hold OpenAI accountable for allegedly infringing copyrighted works in training its
LLMs. *See Travis*, 284 F. Supp. 3d at 346. The California Plaintiffs have not presented
any evidence of collusion, adversity, nonfeasance, or incompetence to rebut this
presumption. Instead, they allege that the existing parties do not adequately represent
their interest because the Authors Guild, a plaintiff in the Author Actions, has publicly
indicated an intention to license intellectual property rights to OpenAI. This is not a
sufficient reason to cast doubt on the New York plaintiffs' ability to represent the
California Plaintiffs' interests. First, the Authors Guild is only one of many plaintiffs.
Second, even for that single plaintiff, an interest in licensing intellectual property rights
does not undermine Author Guild's interest in or ability to vigorously litigate the case

and attempt to hold defendants accountable. Because "there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Wash. Elec. Coop.*, 922 F.2d at 98.

### C. Permissive Intervention is Denied

The second avenue for intervention is permissive intervention. Pursuant to Rule 24(b), the Court has discretion to permit a party to intervene that "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b) further provides that, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." "This is the 'principal consideration' when deciding whether to grant permissive intervention." *Travis*, 284 F. Supp. 3d at 346 (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)); *see U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994). In addition, "[t]he court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)." *"R" Best Produce, Inc. v. Shulman-Rabin Mktg., Corp.*, 467 F.3d 238, 240 (2d Cir. 2006). The U.S. Court of Appeals for the Second Circuit has "recognize[d] the broad discretion of the district court when considering permissive intervention." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005).

The California Plaintiffs do not satisfy the requirements of permissive intervention. First, the same factors motivating the Court's denial of intervention as of right—the lack of cognizable interest, the lack of impairment of any interest, and the adequacy of representation—also motivate denial of permissive intervention.  Second, it is clear that granting intervention here will prejudice the adjudication of the original parties' rights. The California Plaintiffs explicitly state that they seek intervention "for the limited purpose of filing this Motion to Dismiss, Stay, or Transfer." (ECF No. 71 at 11.) A dismissal, stay, or transfer of this case would certainly prejudice the original parties. *See Travis*, 284 F. Supp. 3d at 346-47 ("[I]ntervention by proposed intervenors would, as a practical matter, delay or prejudice" the original parties where intervenors sought "to intervene for the purpose of moving to dismiss, stay, or transfer this action under the first-to-file rule."); *Calderon*, 2020 U.S. Dist. LEXIS 9492, at *24 ("Courts have previously recognized that intervention for the sole cause of dismissing, staying, or transferring an action — the very action sought here — is prejudicial to the original parties' right to proceed before the court of their choosing."). Third, intervention and dismissal or transfer would disrupt the expedited timeline agreed to by the parties and

6

ordered by this Court in the Author Actions, where discovery has already commenced and a schedule for summary judgment briefing has been established.

Accordingly, the Court denies the California Plaintiffs' motions to intervene for the purpose of transferring, staying, or dismissing the New York Actions.


Dated: New York, New York
        April 1, 2024

                                      SO ORDERED:

                                      _Sidney H. Stein_

                                      Sidney H. Stein, U.S.D.J.