# No. 24-1007

## United States Court of Appeals

### for the

### Second Circuit

---

Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Maya Shanbhag Lang, Victor LaValle, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail, individually and on behalf of others similarly situated,
*Plaintiffs-Appellees,*

Jonathan Alter, Kai Bird, Taylor Branch, Rich Cohen, Sides Hampton, Eugene Linden, Daniel Okrent, Stacy Schiff, James Shapiro, Jia Tolentino, Simon Winchester,
*Consolidated-Plaintiffs-Appellees,*

Julian Sancton,
*Consolidated-Plaintiff-Interested-Party-Appellee,*

Nicholas A. Basbanes, Nicholas Ngagoyeanes, (professionally known as Nicholas Gage) individually and on behalf of all others similarly situated,
*Consolidated-Plaintiffs-Interested-Party,*

v.

Microsoft Corporation,
*Defendant-Consolidated-Defendant-Appellee,*

OpenAI LP,
Defendant,

OpenAI, Inc., OpenAI GP, LLC, OpenAI LLC, OpenAI OpCo LLC,
OpenAI Global LLC, OAI Corporation LLC, OpenAI Holdings, LLC,
OpenAI Startup Fund I LP, OpenAI Startup Fund GP I LLC, OpenAI
Startup Fund Management LLC,
Defendants-Consolidated-Defendants,

v.

Paul Tremblay, Michael Chabon, Ta-Nehisi Coates, Junot Daz, Andrew
Sean Greer, David Henry Hwang, Matthew Klam, Lippman Laura,
Rachel Louise Snyder, Ayelet Waldman, Jacqueline Woodson, Sarah
Silverman, Christopher Golden, Richard Kadrey,
Third-Party-Plaintiffs-Appellants.

_____

On Appeal from the United States District Court
for the Southern District of New York

District Court Docket No. 1:23-cv-8292-SHS

---

**APPENDIX TO THIRD-PARTY-PLAINTIFFS-APPELLANTS' BRIEF
VOLUME I OF II**

---

Joseph R. Saveri (CA SBN 130064)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

*Counsel for Third-Party-Plaintiffs-Appellants*

# APPELLANTS' APPENDIX TO BRIEF
## VOLUME I

## TABLE OF CONTENTS

**Page No.**

District Court Docket Entries, *Authors Guild v. Microsoft Corp.*  1AA-1

Class Action Complaint, *Tremblay v. OpenAI, Inc.*, ECF 1, June 28, 2023  1AA-68

Class Action Complaint, *Silverman v. OpenAI, Inc.*, ECF 1, July 7, 2023  1AA-85

Order Granting Administrative Motion To Consider Whether Cases Should Be Related And Relating Cases, *Tremblay v. OpenAI, Inc.*, ECF 26, July 28, 2023  1AA-102

Class Action Complaint, *Chabon v. OpenAI, Inc.*, ECF 1, September 8, 2023  1AA-104

Class Action Complaint, *Authors Guild v. OpenAI, Inc.*, ECF 1, September 19, 2023  1AA-128

Joint Case Management Statement and Rule 26(f) Report, *Authors Guild v. OpenAI, Inc.*, ECF 50, September 28, 2023  1AA-175

Class Action Amended Complaint, *Chabon v. OpenAI, Inc.*, ECF 11, October 5, 2023  1AA-190

Minute Entry regarding Case Schedule, *Tremblay v. OpenAI, Inc.*, ECF 51, October 6, 2023  1AA-216

Related Case Order, *Tremblay v. OpenAI, Inc.*, ECF 53, October 10, 2023  1AA-217

Defendants' Memorandum of Law regarding Further Proposed    1AA-218
Scheduling, *Tremblay v. OpenAI, Inc.*, ECF 56, October 17, 2023

Rule 26(f) Report and Proposed Case Management Plan,    1AA-226
*Authors Guild v. OpenAI, Inc.*, ECF 31, November 22, 2023

Class Action Amended Complaint, *Alter v. OpenAI, Inc.*,    1AA-244
December 19, 2023

## APPELLANTS' APPENDIX TO BRIEF
## VOLUME II

### TABLE OF CONTENTS

   **Page No.**

Complaint, *The New York Times Company v. Microsoft Corp.*,    2AA-282
ECF 1, December 27, 2023

Class Action Complaint, *Basbanes v. Microsoft Corp.*, ECF 1,    2AA-351
January 5, 2024

Joint Stipulation and Order Regarding Motions for Summary    2AA-382
Judgment, Class Certification, and Discovery Schedule,
*Authors Guild v. OpenAI, Inc.*, ECF 56, January 22, 2024

Order regarding Motion to Consolidate Cases,    2AA-390
*Basbanes v. Microsoft Corp.*, ECF 32, February 6, 2024

Notice of Motion and Motion to Intervene and Dismiss, Stay or    2AA-392
Transfer, *Authors Guild v. OpenAI, Inc.*, ECF 71, February 12,
2024

Declaration of Christopher J. Hydal, *Authors Guild v. OpenAI,*    2AA-396
*Inc.*, ECF 71-2, February 12, 2024

Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, *Tremblay v. OpenAI, Inc.*, ECF 106, February 15, 2024 ... 2AA-402

Author Class Plaintiffs' Opposition to Motion to Intervene and Dismiss, Stay or Transfer, *Authors Guild v. OpenAI, Inc.,* ECF 81, February 26, 2024 ... 2AA-425

Declaration of Michael P. Richter, *Authors Guild v. OpenAI, Inc.,* ECF 89-1, March 4, 2024 ... 2AA-460

Opinion and Order regarding Motion to Intervene and Dismiss, Stay or Transfer, *Authors Guild v. OpenAI, Inc.,* ECF 100, April 1, 2024 ... 2AA-467

Notice of Appeal, *Authors Guild v. OpenAI, Inc.,* ECF 109, April 15, 2024 ... 2AA-474

APPEAL,ECF,LEAD

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:23-cv-08292-SHS

Authors Guild et al v. OpenAI Inc. et al
Assigned to: Judge Sidney H. Stein
Related Cases: 1:23-cv-10211-SHS
               1:23-cv-11195-SHS
               1:24-cv-00084-SHS
Cause: 17:501 Copyright Infringement

Date Filed: 09/19/2023
Jury Demand: Both
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**Authors Guild**

represented by **Anna Josefine Freymann**
Lieff Cabraser Heimann & Bernstein
250 Hudson Street
New York, NY 10013
212-355-9500
Email: afreymann@lchb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
Cowan, DeBaets, Abrahams & Sheppard
LLP
41 Madison Avenue, 38th Floor
New York, NY 10010
212-974-7474
Email: ccole@cdas.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
Cowan DeBaets Abrahams & Sheppard LLP
60 Broad St
30th Floor
New York, NY 10004
212-974-7474
Fax: 212-974-8474
Email: ssholder@cdas.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
Lieff Cabraser Heimann & Bernstein, LLP
1322 4th Avenue North
Nashville, TN 37208
615-600-4780
Email: wdozier@lchb.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
Susman Godfrey LLP
One Manhattan West
Ste 50th Fl
New York, NY 10001
212-336-8330
Email: clepic@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street
29th Floor
Ste 29th Floor
San Francisco, CA 94111-3339
415-956-1000
Fax: 415-956-1008
Email: ibensberg@lchb.com
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
Lieff Cabraser Heimann & Bernstein, LLP
450 Golden Gate
San Francisco, CA 94102
339-933-0815
Email: rstoler@lchb.com
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street
8th Floor
New York, NY 10013-1413
(212) 355-9500
Fax: (212)-355-9592
Email: rgeman@lchb.com
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
Susman Godfrey LLP (CA)
1900 Avenue of The Stars, Suite 1400
Los Angeles, CA 90067
310-789-3100
Fax: 310-789-3150
Email: rnath@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Baldacci**                     represented by  **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**1AA-2**

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mary Bly**　　　　　　　　　　represented by **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)

**1AA-3**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Michael Connelly      represented by    **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)

**1AA-4**

*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sylvia Day**                              represented by  **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jonathan Franzen**                        represented by  **Anna Josefine Freymann**
(See above for address)

**1AA-5**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Grisham**                     represented by **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**1AA-6**

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Elin Hilderbrand**                    represented by   **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**1AA-7**

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christina Baker Kline**                represented by    **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Maya Shanbhag Lang**

represented by **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Victor LaValle**

represented by **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*

**1AA-9**

*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**George R.R. Martin**                    represented by    **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)

**1AA-10**

*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jodi Picoult**                    represented by    **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-11**

**Plaintiff**

**Douglas Preston**

represented by **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Roxana Robinson**

represented by **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**George Saunders**                 represented by  **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-13**

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Scott Turow                    represented by    **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**

**1AA-14**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rachel Vail**
*individually and on behalf of others
similarly situated*

represented by **Anna Josefine Freymann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CeCe Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Jonathan Sholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Dozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ian R. Bensberg**
(See above for address)
*TERMINATED: 01/24/2024*

**Reilly Todd Stoler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Geman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Consolidated Plaintiff**

**Jonathan Alter**

represented by **Craig Smyser**
Susman Godfrey LLP
One Manhattan West
Ste 50th Floor
New York, NY 10001
212-336-8330

**1AA-15**

Email: csmyser@susmangodfrey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Kai Bird**                                    represented by   **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Taylor Branch**                              represented by   **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Rich Cohen**                                 represented by   **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-16**

**Consolidated Plaintiff**

**Sides Hampton**                    represented by **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Eugene Linden**                    represented by **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Daniel Okrent**                    represented by **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Julian Sancton**                   represented by **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**

**1AA-17**

|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Consolidated Plaintiff**

**Stacy Schiff**                               represented by **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**James Shapiro**                               represented by **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Jia Tolentino**                               represented by **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Simon Winchester**                               represented by **Craig Smyser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charlotte Lepic**
(See above for address)

**1AA-18**

*ATTORNEY TO BE NOTICED*

**Rohit Nath**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

Nicholas Basbanes       represented by    **Michael Philip Richter**
Grant Herrmann Schwartz & Klinger LLP
107 Greenwich Street
Ste 25th Floor
New York, NY 10006
212-682-1800
Email: mrichter@ghsklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

Nicholas Ngagoyeanes       represented by    **Michael Philip Richter**
*(professionally known as Nicholas Gage)*                        (See above for address)
*individually and on behalf of all others*                   *LEAD ATTORNEY*
*similarly situated*                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

OpenAI Inc.       represented by    **Allison Levine Stillman**
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
212-906-1200
Fax: 212-751-4864
Email: alli.stillman@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
Latham & Watkins, LLP (SanFran)
505 Montgomery Street, Ste. 2000
San Francisco, CA 94111
(415)-391-0600
Fax: (415)-395-8095
Email: andrew.gass@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
Latham & Watkins
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
202-637-2200
Fax: 202-637-2201

**1AA-19**

Email: elana.nightingaledawson@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
415-268-7000
Fax: 415-268-7522
Email: JGratz@mofo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
Latham & Watkins LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
415-391-0600
Email: joe.wetzel@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA 94111
415-391-5400
Fax: 415-397-7188
Email: rvannest@keker.com
*LEAD ATTORNEY*

**Sarang Damle**
Latham & Watkins LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
202-637-2200
Fax: 202-637-2201
Email: sy.damle@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
Morrison & Foerster LLP
707 Wilshire Boulevard
Suite 6000
Los Angeles, CA 90017-3543
213-892-5200
Fax: 213-892-5454
Email: ABennett@mofo.com
*ATTORNEY TO BE NOTICED*

**1AA-20**

**Andrew L. Perito**
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
415-268-7000
Fax: 415-268-7522
Email: APerito@mofo.com
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
Morrison & Foerster LLP
250 W. 55th St
New York, NY 10019
212-336-4061
Email: enikolaides@mofo.com
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
Keker, Van Nest & Peters LLP
633 Battery St.
San Francisco, CA 94111
415-962-8806
Email: kjoyce@keker.com
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
415-391-5400
Fax: 415-397-7188
Email: mybarra@keker.com
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
415-391-5400
Email: ngoldberg@keker.com
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
415-391-5400
Fax: 415-397-1788
Email: pmalhotra@keker.com
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
Keker & Van Nest, LLP
710 Sansome Street

**1AA-21**

San Francisco, CA 94111
(415)-391-5400
Fax: (415)-397-7188
Email: rslaughter@keker.com
*ATTORNEY TO BE NOTICED*

**Rose Lee**
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
213-892-5355
Email: roselee@mofo.com
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
(415)-391-5400
Fax: (415)-397-7188
Email: tgorman@keker.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**OpenAI LP**
*TERMINATED: 02/06/2024*

represented by **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**

**1AA-22**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**OpenAI GP LLC**                    represented by  **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*

**1AA-23**

*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
415-268-7000
Fax: 415-268-7522
Email: vranieri@mofo.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**OpenAI LLC**                    represented by   **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OpenAI OpCo LLC**                    represented by **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)

**1AA-26**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OpenAI Global LLC**                     represented by     **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-28**

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OAI Corporation LLC**                represented by    **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OpenAI Holdings LLC**                represented by    **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-31**

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OpenAI Startup Fund I LP**          represented by          **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OpenAI Startup Fund GP I LLC**          represented by          **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-34**

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OpenAI Startup Fund Management LLC**        represented by        **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elana Nightingale Dawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**1AA-35**

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson R. Bennett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew L. Perito**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric Nikolaides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katie Lynn Joyce**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rose Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Microsoft Corporation**                    represented by **Jeffrey S. Jacobson**
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
212-248-3191
Email: jeffrey.jacobson@faegredrinker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annette Louise Hurst**
Orrick, Herrington & Sutcliffe LLP (San Francisco)
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-4585
Fax: (415) 773-5759
Email: ahurst@orrick.com
*ATTORNEY TO BE NOTICED*

**Carrie A. Beyer**
Drinker Biddle & Reath, LLP (IL)
191 North Wacker Drive
Suite 3700
Chicago, IL 60606
312-569-1000
Fax: 312-569-3000
Email: carrie.beyer@dbr.com
*ATTORNEY TO BE NOTICED*

**Christopher Cariello**
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
212-506-3778
Email: ccariello@orrick.com
*ATTORNEY TO BE NOTICED*

**Elizabeth Mead Cavert Scheibel**
Faegre Drinker Biddle & Reath LLP
90 S 7th St
Suite 2200
Minneapolis, MN 55402
612-766-7628
Email:
elizabeth.scheibel@faegredrinker.com
*ATTORNEY TO BE NOTICED*

**Jared Barrett Briant**
Faegre Drinker Biddle & Reath LLP
1144 Fifteenth Street
Suite 3400
Denver, CO 80202

303-607-3588
Email: jared.briant@faegredrinker.com
*ATTORNEY TO BE NOTICED*

**Kirstin Stoll-DeBell**
Faegre Drinker Biddle & Reath LLP
1144 15th Street
Ste 3400
Denver, CO 80202
303-927-5212
Fax: 303-607-3600
Email:
kirstin.stolldebell@faegredrinker.com
*ATTORNEY TO BE NOTICED*

**Marc Shapiro**
Orrick, Herrington, & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
212-506-3521
Email: mrshapiro@orrick.com
*ATTORNEY TO BE NOTICED*

**Sheryl Koval Garko**
Orrick, Herrington & Sutcliffe LLP
222 Berkley Street
Boston, MA 02116
617-880-1800
Fax: 617-880-1801
Email: sgarko@orrick.com
*ATTORNEY TO BE NOTICED*

V.

**Consolidated Defendant**

**Microsoft Corporation**                     represented by **Annette Louise Hurst**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Cariello**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Shapiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carrie A. Beyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-38**

**Elizabeth Mead Cavert Scheibel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kirstin Stoll-DeBell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura Brooks Najemy**
Orrick, Herrington & Sutcliffe LLP
222 Berkley Street
Boston, MA 02116
617-880-1800
Email: lnajemy@orrick.com
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OAI Corporation LLC**                    represented by    **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
Latham & Watkins
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
202-637-2200
Fax: 202-637-2201
Email: sy.damle@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**1AA-39**

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI GP LLC**                represented by **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**

**1AA-40**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI Global LLC**                     represented by **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-41**

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI Holdings LLC**                    represented by    **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**

**1AA-42**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI Inc.**                    represented by **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-43**

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vera Ranieri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI LLC**                    represented by    **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**

**1AA-44**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI OpCo LLC**                    represented by   **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-45**

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI Startup Fund GP I LLC**          represented by   **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**

**1AA-46**

(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI Startup Fund I LP**    represented by    **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**1AA-47**

**R. James Slaughter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**OpenAI Startup Fund Management LLC**     represented by     **Allison Levine Stillman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Gass**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph C. Gratz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Richard Wetzel , Jr.,**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Van Nest**
(See above for address)
*LEAD ATTORNEY*

**Sarang Damle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle S. Ybarra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S Goldberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paven Malhotra**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R. James Slaughter**

**1AA-48**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

Paul Tremblay        represented by **Christopher James Hydal**
Joseph Saveri Law Firm, LLP
601 California Street
Ste 1505
San Francisco, CA 94108
415-500-6800
Fax: 415-395-9940
Email: chydal@saverilawfirm.com
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

MICHAEL CHABON        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

TA-NEHISI COATES        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

JUNOT DAZ        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

ANDREW SEAN GREER        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

DAVID HENRY HWANG        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

MATTHEW KLAM        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

LIPPMAN LAURA        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**RACHEL LOUISE SNYDER**        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**AYELET WALDMAN**        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**JACQUELINE WOODSON**        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Sarah Silverman**        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Christopher Golden**        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Richard Kadrey**        represented by **Christopher James Hydal**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Julian Sancton**

**Interested Party**

**Mr. Nicholas Basbanes**

**Interested Party**

**Mr. Nicholas Ngagoyeanes**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/19/2023 | 1 | COMPLAINT against OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC. (Filing Fee $ 402.00, Receipt Number ANYSDC-28311680)Document filed by Victor LaValle, John Grisham, Scott Turow, David Baldacci, Authors Guild, Rachel Vail, George Saunders, Jodi Picoult, Jonathan Franzen, Mary Bly, Christina Baker Kline, George R.R. Martin, Douglas Preston, Roxana Robinson, Elin Hilderbrand, Michael Connelly, Maya Shanbhag Lang, Sylvia Day. (Attachments: # 1 Exhibit A - Plaintiff Registrations).(Geman, Rachel) (Entered: 09/19/2023) |

| 09/19/2023 | 2 | CIVIL COVER SHEET filed..(Geman, Rachel) (Entered: 09/19/2023) |
|---|---|---|
| 09/19/2023 | 3 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to OpenAI Inc.; OpenAI LP; OpenAI GP LLC; OpenAI OpCo LLC; OpenAI Global LLC; OpenAI Holdings LLC; OpenAI Startup Fund GP I LLC; OpenAI Startup Fund Management LLC, re: 1 Complaint,,. Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Geman, Rachel) Modified on 9/20/2023 (pc). (Entered: 09/20/2023) |
| 09/20/2023 | 4 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to OpenAI LLC; OAI Corporation LLC; OpenAI Startup Fund I LP, re: 1 Complaint,,. Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Geman, Rachel) Modified on 9/20/2023 (pc). (Entered: 09/20/2023) |
| 09/20/2023 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Sidney H. Stein. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pc) (Entered: 09/20/2023) |
| 09/20/2023 | | Magistrate Judge Ona T. Wang is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pc) (Entered: 09/20/2023) |
| 09/20/2023 | | Case Designated ECF. (pc) (Entered: 09/20/2023) |
| 09/20/2023 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Rachel Geman to RE-FILE Document No. 3 Request for Issuance of Summons,, 4 Request for Issuance of Summons,,. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the issuance for the issuance of summons is not correct; Remove California OpenAI Entities and Delaware OpenAI Entities from the defendant name and address fields;. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (pc) (Entered: 09/20/2023) |
| 09/20/2023 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to OpenAI Inc., OpenAI LP, OpenAI GP LLC, OpenAI OpCo LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Startup Fund GP I LLC, and OpenAI Startup Fund Management LLC, re: 1 Complaint,,. Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Geman, Rachel) (Entered: 09/20/2023) |

| 09/20/2023 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to OpenAI LLC, OAI Corporation LLC, and OpenAI Startup Fund I LP c/o Corporation Service Company, re: 1 Complaint,,. Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Geman, Rachel) (Entered: 09/20/2023) |
| 09/21/2023 | 7 | ELECTRONIC SUMMONS ISSUED as to OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund Management LLC..(jgo) (Entered: 09/21/2023) |
| 09/21/2023 | 8 | ELECTRONIC SUMMONS ISSUED as to OAI Corporation LLC, OpenAI LLC, OpenAI Startup Fund I LP..(jgo) (Entered: 09/21/2023) |
| 09/21/2023 | 9 | NOTICE OF APPEARANCE by Scott Jonathan Sholder on behalf of Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Sholder, Scott) (Entered: 09/21/2023) |
| 09/21/2023 | 10 | NOTICE OF APPEARANCE by CeCe Cole on behalf of Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Cole, CeCe) (Entered: 09/21/2023) |
| 09/21/2023 | 11 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Authors Guild..(Sholder, Scott) (Entered: 09/21/2023) |
| 09/27/2023 | 12 | AO 121 FORM COPYRIGHT - NOTICE OF SUBMISSION BY ATTORNEY. AO 121 Form Copyright for case opening submitted to court for review..(Cole, CeCe) (Entered: 09/27/2023) |
| 09/28/2023 | 13 | AO 121 FORM COPYRIGHT - CASE OPENING - SUBMITTED. In compliance with the provisions of 17 U.S.C. 508, the Register of Copyrights is hereby advised that a court action has been filed on the following copyright(s) in the U.S. District Court Southern District of New York. Form e-mailed to Register of Copyrights..(pc) (Entered: 09/28/2023) |
| 10/04/2023 | 14 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI Inc. waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/04/2023) |
| 10/04/2023 | 15 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI LP waiver sent on 10/3/2023, answer due 12/4/2023; OpenAI OpCo LLC waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/04/2023) |
| 10/04/2023 | 16 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI LLC waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; |

| | | |
|---|---|---|
| | | Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/04/2023) |
| 10/04/2023 | 17 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI Global LLC waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/04/2023) |
| 10/04/2023 | 18 | WAIVER OF SERVICE RETURNED EXECUTED. OAI Corporation LLC waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/04/2023) |
| 10/04/2023 | 19 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI Holdings LLC waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/04/2023) |
| 10/04/2023 | 20 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI Startup Fund I LP waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/04/2023) |
| 10/04/2023 | 21 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI Startup Fund GP I LLC waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/05/2023) |
| 10/05/2023 | 22 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI Startup Fund Management LLC waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/05/2023) |
| 10/05/2023 | 23 | WAIVER OF SERVICE RETURNED EXECUTED. OpenAI GP LLC waiver sent on 10/3/2023, answer due 12/4/2023. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Geman, Rachel) (Entered: 10/05/2023) |
| 10/05/2023 | 24 | ORDER SCHEDULING INITIAL PRETRIAL CONFERENCE: Initial Conference set for 11/29/2023 at 03:30 PM in Courtroom 23A, 500 Pearl Street, New York, NY 10007 before Judge Sidney H. Stein. SO ORDERED. (Signed by Judge Sidney H. Stein on 10/5/2023) (jca) (Entered: 10/05/2023) |

| | | |
|---|---|---|
| 11/20/2023 | <u>25</u> | MOTION for Joseph Charles Gratz to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28593539. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC. (Attachments: # <u>1</u> Affidavit of Joseph C. Gratz in Support of Motion for Admission Pro Hac Vice, # <u>2</u> Exhibit Certificate of Good Standing, # <u>3</u> Proposed Order for Admission Pro Hac Vice).(Gratz, Joseph) (Entered: 11/20/2023) |
| 11/20/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 25 MOTION for Joseph Charles Gratz to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28593539. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba) (Entered: 11/20/2023)** |
| 11/21/2023 | 26 | ORDER granting <u>25</u> Motion for Joseph Charles Gratz to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 11/21/2023) |
| 11/22/2023 | <u>27</u> | MOTION for Andrew M. Gass to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28609088. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC. (Attachments: # <u>1</u> Affidavit / Declaration of Andrew M. Gass in Support of Motion to Admit Counsel Pro Hac Vice, # <u>2</u> Exhibit A - Certificate of Good Standing, # <u>3</u> Proposed Order Granting Motion to Appear Pro Hac Vice).(Gass, Andrew) (Entered: 11/22/2023) |
| 11/22/2023 | <u>28</u> | NOTICE OF APPEARANCE by Sarang Damle on behalf of OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC..(Damle, Sarang) (Entered: 11/22/2023) |
| 11/22/2023 | <u>29</u> | NOTICE OF APPEARANCE by Allison Levine Stillman on behalf of OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC..(Stillman, Allison) (Entered: 11/22/2023) |
| 11/22/2023 | <u>30</u> | NOTICE OF APPEARANCE by Joseph Richard Wetzel, Jr on behalf of OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC..(Wetzel, Joseph) (Entered: 11/22/2023) |
| 11/22/2023 | <u>31</u> | RULE 26(f) DISCOVERY PLAN REPORT.Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Geman, Rachel) (Entered: 11/22/2023) |
| 11/27/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 27 MOTION for Andrew M. Gass to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28609088. Motion and supporting papers to be reviewed** |

| | | |
|---|---|---|
| | | **by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 11/27/2023) |
| 11/27/2023 | 32 | ORDER granting <u>27</u> Motion for Andrew M. Gass to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 11/27/2023) |
| 11/28/2023 | <u>33</u> | LETTER addressed to Judge Sidney H. Stein from J. Craig Smyser dated November 28, 2023 re: Recently-Filed Sancton Action and Nov. 29 Pre-Trial Conference. Document filed by Julian Sancton..(Smyser, Craig) (Entered: 11/28/2023) |
| 11/28/2023 | <u>34</u> | RULE 26(f) DISCOVERY PLAN REPORT.Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Geman, Rachel) (Entered: 11/28/2023) |
| 11/29/2023 | <u>35</u> | MOTION for Ian R. Bensberg to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail. (Attachments: # <u>1</u> Affidavit of Ian R. Bensberg in Support of Motion for Admission Pro Hac Vice, # <u>2</u> Exhibit Certificate of Good Standing, # <u>3</u> Proposed Order Granting Motion for Admission Pro Hac Vice).(Bensberg, Ian) (Entered: 11/29/2023) |
| 11/29/2023 | | Minute Entry for proceedings held before Judge Sidney H. Stein: Initial Pretrial Conference held on 11/29/2023. Counsel for all parties participated. (lab) (Entered: 11/30/2023) |
| 11/30/2023 | <u>36</u> | ORDER IT IS HEREBY ORDERED that: 1. Discovery in this matter commenced on November 6, 2023; 2. Plaintiffs shall file an amended complaint on or before December 4, 2023; 3. The last day for defendants to answer or move in response to the amended complaint is January 12, 2024; 4. The last day for defendants to respond to the complaint in Julian Sancton v. Open AI Inc., 23-Cv-10211 is January 12, 2024; 5. The last day for the parties to file their positions on which should proceed first, summary judgment or class certification, is January 12, 2024; 6. The last day for plaintiffs to respond to any motion in response to the amended complaint is January 26, 2024; and 7. The reply to any motion is due on or before February 2, 2024. SO ORDERED. (Amended Pleadings due by 12/4/2023., Replies due by 2/2/2024., Responses due by 1/26/2024) (Signed by Judge Sidney H. Stein on 11/29/2023) (jca) (Entered: 11/30/2023) |
| 12/01/2023 | <u>37</u> | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR - (SEE DOCUMENT#38)** - MOTION for Wesley J. Dozier to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28640210. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, Julian Sancton, George Saunders, Scott Turow, Rachel Vail. (Attachments: # <u>1</u> Affidavit of Wesley J. Dozier in Support of Motion for Admission Pro Hac Vice, # <u>2</u> Exhibit Certificate of Good Standing, # <u>3</u> Proposed Order for Admission Pro Hac Vice).(Dozier, Wesley) Modified on 12/5/2023 (lb). (Entered: 12/01/2023) |
| 12/04/2023 | <u>38</u> | AMENDED MOTION for Wesley J. Dozier to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John |

| | | |
|---|---|---|
| | | Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail. (Attachments: # 1 Affidavit of Wesley J. Dozier, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order for Admission Pro Hac Vice).(Dozier, Wesley) (Entered: 12/04/2023) |
| 12/04/2023 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 37 MOTION for Wesley J. Dozier to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-28640210. Motion and supporting papers to be reviewed by Clerk's Office staff, 38 AMENDED MOTION for Wesley J. Dozier to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff. The document has been reviewed and there are no deficiencies. (va)** (Entered: 12/04/2023) |
| 12/04/2023 | 39 | **FILING ERROR DEFICIENT PLEADING - PDF ERROR -** AMENDED COMPLAINT amending 1 Complaint,, against OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC, Microsoft Corporation with JURY DEMAND.Document filed by Victor LaValle, John Grisham, Scott Turow, David Baldacci, Authors Guild, Rachel Vail, George Saunders, Jodi Picoult, Jonathan Franzen, Mary Bly, Christina Baker Kline, George R.R. Martin, Douglas Preston, Roxana Robinson, Elin Hilderbrand, Michael Connelly, Maya Shanbhag Lang, Sylvia Day. Related document: 1 Complaint,,. (Attachments: # 1 Exhibit A - Plaintiff Registrations).(Geman, Rachel) Modified on 12/5/2023 (jgo). (Entered: 12/04/2023) |
| 12/04/2023 | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Rachel Geman. The party information for the following party/parties has been modified: Thomas C. Rubin Microsoft Corporation. The information for the party/parties has been modified for the following reason/reasons: party name contained a typographical error. (gp)** (Entered: 02/06/2024) |
| 12/05/2023 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Rachel Geman to RE-FILE Document No. 39 Amended Complaint. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the pleading is not correct; the PDF must be titled to correspond with the event type used (Amended Complaint). Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (jgo)** (Entered: 12/05/2023) |
| 12/05/2023 | 40 | AMENDED COMPLAINT amending 1 Complaint,, 39 Amended Complaint,,, against Microsoft Corporation, OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC with JURY DEMAND.Document filed by Victor LaValle, John Grisham, Scott Turow, David Baldacci, Authors Guild, Rachel Vail, George Saunders, Jodi Picoult, Jonathan Franzen, Mary Bly, Christina Baker Kline, George R.R. Martin, Douglas Preston, Roxana Robinson, Elin Hilderbrand, Michael Connelly, Maya Shanbhag Lang, Sylvia Day. Related document: 1 Complaint,, 39 Amended Complaint,,,. (Attachments: # 1 Exhibit A - Plaintiff Registrations).(Geman, Rachel) (Entered: 12/05/2023) |
| 12/05/2023 | 41 | REQUEST FOR ISSUANCE OF SUMMONS as to Microsoft Corporation, re: 40 Amended Complaint,,,. Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi |

**1AA-56**

|  |  | Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail.. (Geman, Rachel) (Entered: 12/05/2023) |
|---|---|---|
| 12/06/2023 | 42 | ELECTRONIC SUMMONS ISSUED as to Microsoft Corporation..(pc) (Entered: 12/06/2023) |
| 12/11/2023 | 43 | ORDER granting 38 Motion for Wesley J. Dozier to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 12/11/2023) |
| 12/11/2023 |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 35 MOTION for Ian R. Bensberg to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff. The document has been reviewed and there are no deficiencies. (va)** (Entered: 12/11/2023) |
| 12/15/2023 | 44 | TRANSCRIPT of Proceedings re: CONFERNECE held on 11/29/2023 before Judge Sidney H. Stein. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/5/2024. Redacted Transcript Deadline set for 1/16/2024. Release of Transcript Restriction set for 3/14/2024..(McGuirk, Kelly) (Entered: 12/15/2023) |
| 12/15/2023 | 45 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 11/29/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 12/15/2023) |
| 12/18/2023 | 46 | MOTION for Annette L. Hurst to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Microsoft Corporation. (Attachments: # 1 Affidavit of Annette L. Hurst in Support of Motion to Admit Counsel Pro Hac Vice, # 2 Exhibit - Certificate of Good Standing, # 3 Proposed Order Proposed Order for Admission Pro Hac Vice).(Hurst, Annette) (Entered: 12/18/2023) |
| 12/19/2023 |  | Pro Hac Vice Fee Paid electronically via Pay.gov for: 46 MOTION for Annette L. Hurst to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff..** Filing fee $ 200.00. Pay.gov receipt number ANYSDC-28709454, paid on 12/19/2023..(rju) (Entered: 12/19/2023) |
| 12/19/2023 |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 46 MOTION for Annette L. Hurst to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 12/19/2023) |
| 12/19/2023 | 47 | ORDER granting 46 Motion for Annette L. Hurst to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 12/19/2023) |
| 12/19/2023 | 48 | NOTICE OF APPEARANCE by Christopher Cariello on behalf of Microsoft Corporation..(Cariello, Christopher) (Entered: 12/19/2023) |
| 12/19/2023 | 49 | NOTICE OF APPEARANCE by Marc Shapiro on behalf of Microsoft Corporation.. (Shapiro, Marc) (Entered: 12/19/2023) |
| 01/05/2024 | 50 | ORDER granting 35 Motion for Ian R. Bensberg to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 01/05/2024) |

| | | |
|---|---|---|
| 01/10/2024 | 51 | AFFIDAVIT OF SERVICE. Microsoft Corporation served on 12/7/2023. Service was accepted by John Doe, a legal representative of Corporation Service Company. Document filed by Victor LaValle; John Grisham; Scott Turow; David Baldacci; Authors Guild; Rachel Vail; George Saunders; Jodi Picoult; Jonathan Franzen; Mary Bly; Christina Baker Kline; George R.R. Martin; Douglas Preston; Roxana Robinson; Elin Hilderbrand; Michael Connelly; Maya Shanbhag Lang; Sylvia Day..(Dozier, Wesley) (Entered: 01/10/2024) |
| 01/10/2024 | 52 | LETTER MOTION for Extension of Time addressed to Judge Sidney H. Stein from Joseph C. Gratz dated January 10, 2024. Document filed by OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI OpCo LLC..(Gratz, Joseph) (Entered: 01/10/2024) |
| 01/11/2024 | 53 | ORDER granting 52 Letter Motion for Extension of Time. The requested extension of deadlines as set forth above is granted. SO ORDERED. Motions due by 1/26/2024. (Signed by District Judge Sidney H. Stein on 1/11/2024) (tg) Modified on 1/11/2024 (tg). (Entered: 01/11/2024) |
| 01/11/2024 | | Set/Reset Deadlines: Microsoft Corporation answer due 1/26/2024; OAI Corporation LLC answer due 1/26/2024; OpenAI GP LLC answer due 1/26/2024; OpenAI Global LLC answer due 1/26/2024; OpenAI Holdings LLC answer due 1/26/2024; OpenAI Inc. answer due 1/26/2024; OpenAI LLC answer due 1/26/2024; OpenAI LP answer due 1/26/2024; OpenAI OpCo LLC answer due 1/26/2024; OpenAI Startup Fund GP I LLC answer due 1/26/2024; OpenAI Startup Fund I LP answer due 1/26/2024; OpenAI Startup Fund Management LLC answer due 1/26/2024. Responses due by 2/9/2024 Replies due by 2/16/2024. (tg) (Entered: 01/11/2024) |
| 01/12/2024 | 54 | NOTICE of Motion to Appoint Interim Counsel. Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail. (Attachments: # 1 Supplement Memorandum of Law, # 2 Proposed Order Proposed Order, # 3 Supplement Geman Declaration, # 4 Exhibit A to Geman Decl., # 5 Exhibit B to Geman Decl., # 6 Supplement Nelson Declaration, # 7 Exhibit A to Nelson Decl., # 8 Exhibit B to Nelson Decl., # 9 Exhibit C to Nelson Decl., # 10 Exhibit D to Nelson Decl., # 11 Supplement Sholder Declaration, # 12 Exhibit A to Sholder Decl.).(Geman, Rachel) (Entered: 01/12/2024) |
| 01/19/2024 | 55 | PROPOSED STIPULATION AND ORDER. Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Geman, Rachel) (Entered: 01/19/2024) |
| 01/22/2024 | 56 | JOINT STIPULATION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION, AND DISCOVERY SCHEDULE NOW, THEREFORE, in consideration of the foregoing, which are incorporated into this Stipulation, the Parties hereby stipulate and agree as follows: 1. Defendants consent and stipulate not to seek transfer of the above-captioned cases to another district; however, in the event additional cases are filed raising similar claims on behalf of individual plaintiffs or proposed classes that overlap, either partially or completely, with the classes proposed in the operative Complaints (No. 1:23-cv-08292-SHS, ECF No. 40; No. 1:23-cv-10211-SHS, ECF. No. 26), Defendants reserve the right to file a motion under 28 U.S.C. § 1407 seeking coordination or consolidation before any appropriate district court. 2. Defendants consent and stipulate not to bring a motion to dismiss under the first to-file rule.3. Defendants consent and stipulate not to seek to dismiss, under Federal Rule of Civil |

**1AA-58**

| | | |
|---|---|---|
| | | Procedure 12(b), Plaintiffs' currently-pleaded claims. 4. The Parties consent and stipulate to the consolidation of the Authors Guild et al. v. OpenAI, Inc. et al., No. 1 :23-cv-08292-SHS, and Alter v. OpenAI, Inc. et al., No. 1:23-cv-10211-SHS pursuant to Federal Rule of Civil Procedure 42 for pre-trial purposes. 5. The Parties consent and stipulate that Plaintiffs will file a consolidated class action complaint no later than January 26, 2024, and Defendants will respond to Plaintiffs' consolidated class action complaint no later than February 9, 2024. Defendants shall not move to dismiss under Federal Rule of Civil Procedure 12(b) any claims pleaded in the consolidated class action complaint that are currently pleaded in the operative Nonfiction and Fiction complaints. 6. The Parties consent and stipulate that discovery is ongoing and that there are no present restrictions on the scope of class discovery, notwithstanding that summary judgment willbe briefed before Plaintiffs' motion for class certification. 7. The Parties stipulate and agree, and upon entry of this stipulation by the Court, it is hereby ordered, that fact discovery, expert discovery, and the briefing of any motion for summary judgment will be completed on or before February 28, 2025. 8. The Parties will, by January 26, 2024 submit proposed schedule(s) for fact discovery, expert discovery, and the briefing of summary judgment. Prior to submitting any proposed schedules, the parties will meet and confer in good faith in an effort to reach agreement on any proposed schedules and minimize or eliminate disputes presented to the Court. (And as further set forth herein.) SO ORDERED. (Expert Discovery due by 2/28/2025., Fact Discovery due by 2/28/2025., Motions due by 2/28/2025.) (Signed by Judge Sidney H. Stein on 1/22/2024) (jca) (Entered: 01/22/2024) |
| 01/23/2024 | 57 | LETTER addressed to Judge Sidney H. Stein from Michael P. Richter dated January 23, 2024 re: Pending Motion in Basbanes-Gage Matter. Document filed by Nicholas Basbanes, Nicholas Ngagoyeanes..(Richter, Michael) (Entered: 01/23/2024) |
| 01/23/2024 | 58 | LETTER addressed to Judge Sidney H. Stein from Rachel Geman dated January 23, 2024 re: Response to Basbanes Counsel letter. Document filed by Authors Guild, David Baldacci, Mary Bly, Sylvia Day, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, Scott Turow, Rachel Vail, Jonathan Alter, Kai Bird, Taylor Branch, Rich Cohen, Sides Hampton, Eugene Linden, Daniel Okrent, Julian Sancton, Stacy Schiff, James Shapiro, Jia Tolentino, Simon Winchester.Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Geman, Rachel) (Entered: 01/23/2024) |
| 01/24/2024 | 59 | ORDER IT IS HEREBY ORDERED that: 1. The Clerk of Court is directed to correct the caption in 23-cv-10211 on ECF to conform with the caption in the First Amended Class Action Complaint [Doc. No. 26]; 2. Plaintiffs in Author's Guild v. OpenAL 23-cv-8292 and Alter v. OpenAL 23-cv-10211 shall have until February 2, 2024, in which to file a consolidated class action complaint; 3. Defendants in Author's Guild v. OpenAL 23-cv-8292 and Alter v. OpenAL 23-cv-10211 shall have until February 16, 2024, to respond to the consolidated class action complaint; and 4. All other dates set forth in the Joint Stipulation and Order Regarding Motions for Summary Judgment, Class Certification, and Discovery Schedule [Doc. No. 56 in 23-cv-8292 and Doc. No. 31 in 23-cv-10211] remain as set forth in that document. SO ORDERED. (Signed by Judge Sidney H. Stein on 1/24/2024) Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS (jca) (Entered: 01/24/2024) |
| 01/24/2024 | 60 | MOTION for Ian R. Bensberg to Withdraw as Attorney . Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail..(Geman, Rachel) (Entered: 01/24/2024) |
| 01/24/2024 | 61 | MEMO ENDORSEMENT granting 60 MOTION for Ian R. Bensberg to Withdraw as Attorney. ENDORSEMENT SO ORDERED. Attorney Ian R. Bensberg terminated. |

| | | (Signed by Judge Sidney H. Stein on 1/24/2024) (jca) (Entered: 01/24/2024) |
|---|---|---|
| 01/26/2024 | 62 | JOINT LETTER addressed to Judge Sidney H. Stein from Rohit Nath dated January 26, 2024 re: Schedule for Fact Discovery, Expert Discovery, and Summary Judgment Briefing. Document filed by Jonathan Alter.Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Nath, Rohit) (Entered: 01/26/2024) |
| 01/26/2024 | 63 | RESPONSE re: (54 in 1:23-cv-08292-SHS) Notice (Other),,, (29 in 1:23-cv-10211-SHS) Notice (Other),, . Document filed by OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC, OAI Corporation, LLC, OpenAI GP, LLC, OpenAI Holdings, LLC, OpenAI, LLC. Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Gratz, Joseph) (Entered: 01/26/2024) |
| 01/29/2024 | 64 | MEMO ENDORSEMENT on re: (62 in 1:23-cv-08292-SHS, 35 in 1:23-cv-10211-SHS) Letter, filed by Jonathan Alter. ENDORSEMENT Last date for substantial production of documents for all RFP's served by 1/29/24 is June 14, 2024. The parties are to submit a schedule to be so ordered. SO ORDERED. (Signed by Judge Sidney H. Stein on 1/29/2024) Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS (jca) (Entered: 01/29/2024) |
| 01/31/2024 | 65 | SCHEDULING ORDER: Substantial production of documents for all RFPs served by January 29,2024, shall be completed by June 14, 2024. Fact discovery shall be completed by September 17, 2024. Expert Reports on issues on which a party has the burden of proof shall beserved by October 18, 2024. Opposing Expert Reports shall be served by November 18, 2024. Expert discovery shall be completed by December 9, 2024. Motions for Summary Judgment and Daubert Motions shall be filed by January 7, 2025. Opposition to Motions for Summary Judgment and Daubert Motions shall be filed by February 7, 2025. Replies in support of Motions for Summary Judgment and Daubert Motions shall be filed by February 28, 2025. Motions due by 1/7/2025. Responses due by 2/7/2025 Replies due by 2/28/2025. Fact Discovery due by 9/17/2024. Expert Discovery due by 12/9/2024. (Signed by Judge Sidney H. Stein on 1/31/2024) Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS (rro) (Entered: 01/31/2024) |
| 02/02/2024 | 66 | REPLY re: (54 in 1:23-cv-08292-SHS) Notice (Other),,, *Motion to Appoint Interim Co-Lead Counsel for the Fiction and Nonfiction Authors Classes*. Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail, Jonathan Alter, Kai Bird, Taylor Branch, Rich Cohen, Sides Hampton, Eugene Linden, Daniel Okrent, Julian Sancton, Stacy Schiff, James Shapiro, Jia Tolentino, Simon Winchester. Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Geman, Rachel) (Entered: 02/02/2024) |
| 02/02/2024 | 67 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR -** AMENDED COMPLAINT amending 40 Amended Complaint,,, against All Defendants with JURY DEMAND.Document filed by John Grisham, Scott Turow, David Baldacci, James Shapiro, Authors Guild, Rachel Vail, George Saunders, Taylor Branch, Jia Tolentino, Douglas Preston, Maya Shanbhag Lang, Victor LaValle, Simon Winchester, Jonathan Alter, Eugene Linden, Rich Cohen, Jodi Picoult, Daniel Okrent, Jonathan Franzen, Kai Bird, Mary Bly, Christina Baker Kline, George R.R. Martin, Roxana Robinson, Elin Hilderbrand, Julian Sancton, Michael Connelly, Stacy Schiff, Sylvia Day. Related document: 40 Amended Complaint,,,. (Attachments: # 1 Exhibit A to Authors Guild AO121, # 2 Exhibit B to Consolidated Complaint).(Nath, Rohit) Modified on 2/5/2024 (vf). (Entered: 02/02/2024) |

| | | |
|---|---|---|
| 02/05/2024 | 68 | LETTER addressed to Judge Sidney H. Stein from Michael P. Richter dated 2/5/2024 re: Consolidation and Steering Committee. Document filed by Nicholas Basbanes, Nicholas Ngagoyeanes..(Richter, Michael) (Entered: 02/05/2024) |
| 02/05/2024 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Rohit Nath to RE-FILE Document No. 67 Amended Complaint. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the pleading is not correct; pleading caption "Et Al" Error: the pleading caption must name the parties; the All Defendant radio button was selected; the wrong event type was used to file the pleading. Re-file the pleading using the event type Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (vf) (Entered: 02/05/2024) |
| 02/05/2024 | 69 | CONSOLIDATED COMPLAINT against Microsoft Corporation, OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC. (Filing Fee $ 405.00, Receipt Number ANYSDC-28907438)Document filed by John Grisham, Scott Turow, David Baldacci, James Shapiro, Sides Hampton, Authors Guild, Rachel Vail, George Saunders, Taylor Branch, Jia Tolentino, Douglas Preston, Maya Shanbhag Lang, Victor LaValle, Simon Winchester, Jonathan Alter, Eugene Linden, Rich Cohen, Jodi Picoult, Daniel Okrent, Jonathan Franzen, Kai Bird, Mary Bly, Christina Baker Kline, George R.R. Martin, Roxana Robinson, Elin Hilderbrand, Julian Sancton, Michael Connelly, Stacy Schiff, Sylvia Day. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Nath, Rohit) Modified on 2/6/2024 (gp). (Entered: 02/05/2024) |
| 02/06/2024 | 70 | ORDER APPOINTING LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, SUSMAN GODFREY L.L.P., AND COWAN DEBAETS ABRAHAMS & SHEPPHARD LLP AS INTERIM CO-LEAD COUNSEL FOR THE FICTION AND NONFICTION AUTHORS' CLASSES Having considered the Motion, and the materials submitted in support thereof, and no party having opposed the motion, the Motion is GRANTED. IT IS HEREBY ORDERED THAT: 1. Pursuant to Federal Rule of Civil Procedure 23(g)(3), the Court designates the law firms Lieff Cabraser Heimann & Bernstein, LLP, Susman Godfrey L.L.P., and Cowan Debaets Abrahams & Sheppard, LLP as Interim Co-Lead Class Counsel in these actions to act on behalf of the Fiction Authors Class and Non-fiction Authors Class as alleged in the First Consolidated Class Action Complain filed in these actions. 2. Interim Co-Lead Class Counsel shall be generally responsible for coordinating activities during pretrial proceedings and shall: a. Determine and present (in briefs, oral argument, or other fashion as may be appropriate, personally or by a designee) to the court and opposing parties the position of the Plaintiffs and proposed class(es) on all matters arising during pretrial proceedings; b. Coordinate the conduct of discovery on behalf of Plaintiffs and the proposed classes consistent with the requirements of Federal Rule of Civil Procedure 26, including preparation of interrogatories and requests for production of documents and the examination of witnesses in depositions; c. Conduct settlement negotiations on behalf of Plaintiffs and the proposed classes; d. Enter into stipulations with opposing counsel as necessary for the conduct of the litigation; and e. Perform such other duties as may be incidental to the proper coordination of pretrial activities or authorized by future order of Court. 3. This Order shall apply to each related class action pending or subsequently filed in or transferred to the United States District Court for the Southern District of New York. (Signed by Judge Sidney H. Stein on 2/6/2024) Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS (jca) (Entered: 02/06/2024) |

| | | |
|---|---|---|
| 02/12/2024 | 71 | MOTION to Intervene *AND DISMISS, STAY OR TRANSFER*. Document filed by Paul Tremblay, MICHAEL CHABON, TA-NEHISI COATES, JUNOT DAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LIPPMAN LAURA, RACHEL LOUISE SNYDER, AYELET WALDMAN, JACQUELINE WOODSON, Sarah Silverman, Christopher Golden, Richard Kadrey. Return Date set for 4/8/2024 at 12:00 PM. (Attachments: # 1 Supplement MEMORANDUM OF POINTS AND AUTHORITIES, # 2 Affidavit Christopher J. Hydal, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Proposed Order GRANTING MOTION TO INTERVENE AND DISMISSING THIS CASE, # 8 Supplement Request for Oral Arguement)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Hydal, Christopher) (Entered: 02/13/2024) |
| 02/16/2024 | 72 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Microsoft Corporation..(Hurst, Annette) (Entered: 02/16/2024) |
| 02/16/2024 | 73 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Other Affiliate OpenAI GP, L.L.C., Other Affiliate OpenAI Global, L.L.C., Other Affiliate OAI Corporation, L.L.C., Other Affiliate OpenAI Holdings, L.L.C. for OpenAI Inc.; Other Affiliate Microsoft Corporation for OpenAI Startup Fund I LP; Other Affiliate OpenAI Startup Fund I, L.P. for OpenAI Startup Fund GP I LLC; Other Affiliate Microsoft Corporation, Other Affiliate OpenAI, L.L.C., Other Affiliate OpenAI OpCo, L.L.C. for OpenAI Global LLC. Document filed by OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC..(Gass, Andrew) (Entered: 02/16/2024) |
| 02/16/2024 | 74 | ANSWER to 69 Complaint,,, with JURY DEMAND. Document filed by Microsoft Corporation..(Hurst, Annette) (Entered: 02/16/2024) |
| 02/16/2024 | 75 | ANSWER to 69 Complaint,,,. Document filed by OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC..(Gratz, Joseph) (Entered: 02/16/2024) |
| 02/22/2024 | 76 | NOTICE OF APPEARANCE by Jeffrey S. Jacobson on behalf of Microsoft Corporation.. (Jacobson, Jeffrey) (Entered: 02/22/2024) |
| 02/23/2024 | 77 | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR -(SEE #78)** LETTER MOTION for Conference *Regarding Discovery Dispute* addressed to Judge Sidney H. Stein from Rohit Nath dated February 23, 2024. Document filed by Jonathan Alter, Authors Guild, David Baldacci, Kai Bird, Mary Bly, Taylor Branch, Rich Cohen, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Sides Hampton, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, Eugene Linden, George R.R. Martin, Daniel Okrent, Jodi Picoult, Douglas Preston, Roxana Robinson, Julian Sancton, George Saunders, Stacy Schiff, James Shapiro, Jia Tolentino, Scott Turow, Rachel Vail, Simon Winchester.Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Nath, Rohit) Modified on 2/26/2024 (kj). (Entered: 02/23/2024) |
| 02/23/2024 | 78 | LETTER MOTION for Conference *Regarding Discovery Dispute* addressed to Judge Sidney H. Stein from Rohit Nath dated February 23, 2024. Document filed by Jonathan Alter, Authors Guild, David Baldacci, Kai Bird, Mary Bly, Taylor Branch, Rich Cohen, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Sides Hampton, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, Eugene Linden, George R.R. Martin, Daniel Okrent, Jodi Picoult, Douglas Preston, Roxana Robinson, Julian Sancton, George Saunders, Stacy Schiff, James Shapiro, Jia Tolentino, |

| | | |
|---|---|---|
| | | Scott Turow, Rachel Vail, Simon Winchester. (Attachments: # 1 Exhibit A - Resp. to Plfs RFA (Nos. 1-285))Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS. (Nath, Rohit) (Entered: 02/23/2024) |
| 02/26/2024 | 79 | MEMORANDUM OF LAW in Opposition re: (49 in 1:23-cv-10211-SHS, 71 in 1:23-cv-08292-SHS, 33 in 1:24-cv-00084-SHS) MOTION to Intervene *AND DISMISS, STAY OR TRANSFER*. . Document filed by Microsoft Corporation. Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Hurst, Annette) (Entered: 02/26/2024) |
| 02/26/2024 | 80 | RESPONSE to Motion re: (49 in 1:23-cv-10211-SHS, 71 in 1:23-cv-08292-SHS, 33 in 1:24-cv-00084-SHS) MOTION to Intervene *AND DISMISS, STAY OR TRANSFER*. *// OpenAI Defendants' Position Statement Regarding Motion to Intervene and Dismiss, Stay, or Transfer.* Document filed by OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC. Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Gass, Andrew) (Entered: 02/26/2024) |
| 02/26/2024 | 81 | RESPONSE in Opposition to Motion re: 71 MOTION to Intervene *AND DISMISS, STAY OR TRANSFER*. . Document filed by Jonathan Alter, Authors Guild. (Attachments: # 1 Affidavit Joint Declaration in Support).(Geman, Rachel) (Entered: 02/26/2024) |
| 02/27/2024 | 82 | MOTION for Jared B. Briant to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-29002067. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Microsoft Corporation. (Attachments: # 1 Affidavit of J. Briant ISO Motion for Admisison Pro Hac Vice, # 2 Exhibit A - Certificate of Good Standing, # 3 Proposed Order Proposed Order).(Briant, Jared) (Entered: 02/27/2024) |
| 02/27/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 82 MOTION for Jared B. Briant to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-29002067. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 02/27/2024) |
| 02/27/2024 | 83 | LETTER addressed to Judge Sidney H. Stein from Joseph C. Gratz dated February 27, 2024 re: Plaintiffs' February 23 request for informal discovery conference. Document filed by OAI Corporation LLC, OpenAI GP LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI LP, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC, OAI Corporation, LLC, OpenAI GP, LLC, OpenAI Holdings, LLC, OpenAI, LLC.Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Gratz, Joseph) (Entered: 02/27/2024) |
| 02/28/2024 | 84 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT #94)** NOTICE of ERRATA and CORRECTION to DKT. 81 IN THE AUTHOR ACTIONS re: (81 in 1:23-cv-08292-SHS) Response in Opposition to Motion. Document filed by Jonathan Alter, Authors Guild. (Attachments: # 1 Errata AUTHOR CLASS PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND DISMISS, STAY, OR TRANSFER)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Nath, Rohit) Modified on 3/13/2024 (lb). (Entered: 02/28/2024) |
| 02/29/2024 | 85 | ORDER granting 82 Motion for Jared B. Briant to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 02/29/2024) |
| 02/29/2024 | 86 | MOTION for Allyson R. Bennett to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29017033. **Motion and supporting papers to be reviewed by Clerk's** |

| | | |
|---|---|---|
| | | **Office staff.** Document filed by OAI Corporation, LLC, OpenAI GP, LLC, OpenAI Global LLC, OpenAI Holdings, LLC, OpenAI LLC, OpenAI OpCo LLC, OpenAI, Inc., OAI Corporation LLC, OpenAI GP LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LP, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC, OpenAI, LLC. (Attachments: # 1 Exhibit Declaration in Support of Motion, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order Proposed order granting admission pro hac vice)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Bennett, Allyson) Modified on 3/1/2024 (bc). (Entered: 02/29/2024) |
| 02/29/2024 | 87 | MOTION for Rose S. Lee to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29017699. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by OAI Corporation LLC, OpenAI GP, LLC, OpenAI Global LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI LLC, OpenAI OpCo LLC, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC, OAI Corporation, LLC, OpenAI GP, LLC, OpenAI Holdings, LLC, OpenAI, LLC. (Attachments: # 1 Affidavit Afffidavit of Rose S. Lee in Support, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order Proposed order granting admission pro hac vice)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Lee, Rose) Modified on 3/1/2024 (bc). (Entered: 02/29/2024) |
| 03/01/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 86 MOTION for Allyson R. Bennett to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29017033. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 03/01/2024) |
| 03/01/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 87 MOTION for Rose S. Lee to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29017699. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 03/01/2024) |
| 03/01/2024 | 88 | MOTION for Vera Ranieri to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29020340. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by OAI Corporation, LLC, OpenAI GP, LLC, OpenAI Global LLC, OpenAI Holdings, LLC, OpenAI LLC, OpenAI OpCo LLC, OpenAI, Inc., OAI Corporation LLC, OpenAI GP LLC, OpenAI Holdings LLC, OpenAI Inc., OpenAI Startup Fund GP I LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund Management LLC, OpenAI, LLC. (Attachments: # 1 Exhibit Declaration of Vera Ranieri in Support of Pro Hac Vice Admission, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order Proposed order granting admission)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Ranieri, Vera) Modified on 3/1/2024 (bc). (Entered: 03/01/2024) |
| 03/01/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 88 MOTION for Vera Ranieri to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29020340. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 03/01/2024) |
| 03/04/2024 | 89 | REPLY to Response to Motion re: 71 MOTION to Intervene *AND DISMISS, STAY OR TRANSFER*. . Document filed by MICHAEL CHABON, TA-NEHISI COATES, JUNOT DAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, Richard Kadrey, LIPPMAN LAURA, RACHEL LOUISE SNYDER, Sarah Silverman. (Attachments: # 1 Affidavit Richter).(Hydal, Christopher) (Entered: 03/05/2024) |

| 03/05/2024 | 90 | ORDER granting 86 Motion for Allyson R. Bennett to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 03/05/2024) |
|---|---|---|
| 03/05/2024 | 91 | ORDER granting 87 Motion for Rose S. Lee to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 03/05/2024) |
| 03/05/2024 | 92 | ORDER granting 88 Motion for Vera Ranieri to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 03/05/2024) |
| 03/07/2024 | 93 | NOTICE of Supplemental Authority. Document filed by Microsoft Corporation, Microsoft Corporation. (Attachments: # 1 Exhibit A - Tremblay Order)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Hurst, Annette) (Entered: 03/07/2024) |
| 03/12/2024 | 94 | NOTICE of of Errata and Correction to Dkt. 81 in the Author Actions re: 81 Response in Opposition to Motion. Document filed by Jonathan Alter, Authors Guild. (Attachments: # 1 Errata Author Class Plaintiffs' Opposition to Intervene and Dismiss, Stay or Transfer). (Nath, Rohit) (Entered: 03/12/2024) |
| 03/12/2024 | 95 | LETTER MOTION for Leave to File Sur-Reply in Opposition to Proposed Intervenors' Motion to Intervene and Dismiss, Stay or Transfer *[dkt. 71]* addressed to Judge Sidney H. Stein from Rachel German, Rohit Nath and Scott J. Sholder dated March 12, 2024. Document filed by Jonathan Alter, Authors Guild..(Nath, Rohit) (Entered: 03/12/2024) |
| 03/15/2024 | 96 | LETTER MOTION for Leave to File Plaintiffs Statement in Response to Sur-Reply in Opposition to Motions to Intervene and Dismiss, Stay, or Transfer Authors Actions addressed to Judge Sidney H. Stein from Christopher J. Hydal dated March 15, 2024. Document filed by MICHAEL CHABON, TA-NEHISI COATES, JUNOT DAZ, ANDREW SEAN GREER, Christopher Golden, DAVID HENRY HWANG, MATTHEW KLAM, Richard Kadrey, LIPPMAN LAURA, RACHEL LOUISE SNYDER, Sarah Silverman, Paul Tremblay, AYELET WALDMAN, JACQUELINE WOODSON..(Hydal, Christopher) (Entered: 03/15/2024) |
| 03/22/2024 | 97 | MOTION for Reilly T. Stoler to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29121414. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Authors Guild, David Baldacci, Mary Bly, Michael Connelly, Sylvia Day, Jonathan Franzen, John Grisham, Elin Hilderbrand, Christina Baker Kline, Victor LaValle, Maya Shanbhag Lang, George R.R. Martin, Jodi Picoult, Douglas Preston, Roxana Robinson, George Saunders, Scott Turow, Rachel Vail. (Attachments: # 1 Affidavit of Reilly T. Stoler in Support of Motion for Admission Pro Hac Vice, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order for Admission Pro Hac Vice)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS. (Stoler, Reilly) (Entered: 03/22/2024) |
| 03/25/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 97 MOTION for Reilly T. Stoler to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29121414. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 03/25/2024) |
| 03/28/2024 | 98 | MOTION for Sheryl Garko to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29145727. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Microsoft Corporation, Microsoft Corporation. (Attachments: # 1 Affidavit of Sheryl Garko in Support, # 2 Exhibit - Certificate of Good Standing, # 3 Proposed Order for Admission Pro Hac Vice)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Garko, Sheryl) (Entered: 03/28/2024) |

| 03/28/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. (98 in 1:23-cv-08292-SHS, 73 in 1:23-cv-10211-SHS, 44 in 1:24-cv-00084-SHS) MOTION for Sheryl Garko to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29145727. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS(vba)** (Entered: 03/28/2024) |
| 03/28/2024 | [99](#) | MOTION for Laura Najemy to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29146148. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Microsoft Corporation. (Attachments: # [1](#) Affidavit of Laura Najemy in Support, # [2](#) Exhibit - Certificate of Good Standing, # [3](#) Proposed Order for Admission Pro Hac Vice)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Najemy, Laura) (Entered: 03/28/2024) |
| 03/28/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. (99 in 1:23-cv-08292-SHS, 45 in 1:24-cv-00084-SHS, 74 in 1:23-cv-10211-SHS) MOTION for Laura Najemy to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number NYSDC-29146148. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS(vba)** (Entered: 03/28/2024) |
| 04/01/2024 | [100](#) | OPINION & ORDER re: (71 in 1:23-cv-08292-SHS, 49 in 1:23-cv-10211-SHS, 33 in 1:24-cv-00084-SHS) MOTION to Intervene *AND DISMISS, STAY OR TRANSFER*. filed by LIPPMAN LAURA, ANDREW SEAN GREER, Paul Tremblay, Sarah Silverman, AYELET WALDMAN, DAVID HENRY HWANG, Richard Kadrey, MATTHEW KLAM, Christopher Golden, RACHEL LOUISE SNYDER, TA-NEHISI COATES, MICHAEL CHABON, JUNOT DAZ, JACQUELINE WOODSON. Accordingly, the Court denies the California Plaintiffs' motions to intervene for the purpose of transferring, staying, or dismissing the New York Actions. SO ORDERED. (Signed by Judge Sidney H. Stein on 4/1/2024) (jca) (Entered: 04/01/2024) |
| 04/05/2024 | 101 | ORDER granting (98) Motion for Sheryl Garko to Appear Pro Hac Vice in case 1:23-cv-08292-SHS (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS (lab) (Entered: 04/05/2024) |
| 04/05/2024 | 102 | ORDER granting [97](#) Motion for Reilly T. Stoler to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 04/05/2024) |
| 04/05/2024 | 103 | ORDER granting [99](#) Motion for Laura Najemy to Appear Pro Hac Vice (HEREBY ORDERED by Judge Sidney H. Stein)(Text Only Order) (lab) (Entered: 04/05/2024) |
| 04/12/2024 | [104](#) | **FILING ERROR - NO ORDER SELECTED FOR APPEAL -** NOTICE OF INTERLOCUTORY APPEAL from (100 in 1:23-cv-08292-SHS) Memorandum & Opinion,,.. Document filed by MICHAEL CHABON, TA-NEHISI COATES, JUNOT DAZ, ANDREW SEAN GREER, Christopher Golden, DAVID HENRY HWANG, MATTHEW KLAM, Richard Kadrey, LIPPMAN LAURA, RACHEL LOUISE SNYDER, Sarah Silverman, Paul Tremblay, AYELET WALDMAN, JACQUELINE WOODSON. Filing fee $ 605.00, receipt number NYSDC-29214914. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS.(Hydal, Christopher) Modified on 4/15/2024 (km). (Entered: 04/12/2024) |
| 04/12/2024 | [105](#) | MOTION to Seal *Plaintiffs' Motion to Seal*. Document filed by Authors Guild, Jonathan Alter.Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Geman, |

| | | |
|---|---|---|
| | | Rachel) (Entered: 04/12/2024) |
| 04/12/2024 | 106 | ***EX-PARTE*** LETTER MOTION to Compel OpenAI Defendants to produce *documents* addressed to Judge Sidney H. Stein from Rachel Geman; Rohit Nath; Scott J. Sholder dated April 12, 2024. Document filed by Authors Guild, Jonathan Alter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHSMotion or Order to File Under Seal: 105 .(Geman, Rachel) (Entered: 04/13/2024) |
| 04/13/2024 | 107 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE 108 Letter Motion) -** LETTER MOTION to Compel OpenAI Defendants to produce *documents* addressed to Judge Sidney H. Stein from Rachel Geman; Rohit Nath; Scott J. Sholder dated April 12, 2024. Document filed by Authors Guild, Jonathan Alter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D - Placeholder)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Geman, Rachel) Modified on 4/15/2024 (db). As per ECF=ERROR Email Correspondence Received on 4/13/2024 @ 1:36am. (Entered: 04/13/2024) |
| 04/13/2024 | 108 | REDACTION to (105 in 1:23-cv-08292-SHS, 81 in 1:23-cv-10211-SHS) MOTION to Seal *Plaintiffs' Motion to Seal. Letter Motion to Compel with Redactions* by Authors Guild, Jonathan Alter (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D - Placeholder)Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS.(Geman, Rachel) (Entered: 04/13/2024) |
| 04/15/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Christopher Hydal to RE-FILE Document No. (49 in 1:24-cv-00084-SHS, 104 in 1:23-cv-08292-SHS, 80 in 1:23-cv-10211-SHS) Notice of Interlocutory Appeal. The filing is deficient for the following reason(s): the order/judgment being appealed was not selected. Re-file the appeal using the event type Notice of Interlocutory Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed. Filed In Associated Cases: 1:23-cv-08292-SHS, 1:23-cv-10211-SHS, 1:24-cv-00084-SHS(km)** (Entered: 04/15/2024) |
| 04/15/2024 | 109 | NOTICE OF INTERLOCUTORY APPEAL from 100 Memorandum & Opinion,,,. Document filed by MICHAEL CHABON, TA-NEHISI COATES, JUNOT DAZ, ANDREW SEAN GREER, Christopher Golden, DAVID HENRY HWANG, MATTHEW KLAM, Richard Kadrey, LIPPMAN LAURA, RACHEL LOUISE SNYDER, Sarah Silverman, Paul Tremblay, AYELET WALDMAN, JACQUELINE WOODSON. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Hydal, Christopher) (Entered: 04/15/2024) |
| 04/15/2024 | 110 | LETTER addressed to Judge Sidney H. Stein from Rachel Geman, Rohit Nath, and Scott Sholder dated 04/15/2024 re: Plaintiffs' April 12, 2024, letter-motion for an informal discovery conference concerning (a) the FTCs interrogatories and (b) OpenAIs refusal to disclose the names of two third party witnesses. Dkt. No. 107. Document filed by Jonathan Alter, Kai Bird, Taylor Branch, Rich Cohen, Sides Hampton, Eugene Linden, Daniel Okrent, Julian Sancton, Stacy Schiff, James Shapiro, Jia Tolentino, Simon Winchester..(Smyser, Craig) (Entered: 04/15/2024) |
| 04/15/2024 | | USCA Appeal Fees received $605.00 receipt number NYSDC-29214914 on 4/12/2024 re: 109 Notice of Interlocutory Appeal, filed by LIPPMAN LAURA, ANDREW SEAN GREER, Paul Tremblay, Sarah Silverman, AYELET WALDMAN, DAVID HENRY HWANG, Richard Kadrey, MATTHEW KLAM, Christopher Golden, RACHEL LOUISE SNYDER, TA-NEHISI COATES, MICHAEL CHABON, JUNOT DAZ, JACQUELINE WOODSON. (km) (Entered: 04/15/2024) |

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:          mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs*
*and the Proposed Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PAUL TREMBLAY, an individual and MONA AWAD, an individual, | Case No. |
| Individual and Representative Plaintiffs, | **COMPLAINT** |
| v. | **CLASS ACTION** |
| OPENAI, INC., a Delaware nonprofit corporation; OPENAI, L.P., a Delaware limited partnership; OPENAI OPCO, L.L.C., a Delaware limited liability corporation; OPENAI GP, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND GP I, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND I, L.P., a Delaware limited partnership; and OPENAI STARTUP FUND MANAGEMENT, LLC, a Delaware limited liability company, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**IAA-68**

Plaintiffs Paul Tremblay and Mona Awad ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint (the "Complaint") against Defendants OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund GP I, L.L.C. and OpenAI Startup Fund Management, LLC for direct copyright infringement, vicarious copyright infringement, violations of section 1202(b) of the Digital Millenium Copyright Act, unjust enrichment, violations of the California and common law unfair competition laws, and negligence. Plaintiffs seek to recover injunctive relief and damages as a result and consequence of Defendants' unlawful conduct.

## I.  OVERVIEW

1.      ChatGPT is a software product created, maintained, and sold by OpenAI.

2.      ChatGPT is powered by two AI software programs called GPT-3.5 and GPT-4, also known as *large language models*. Rather than being programmed in the traditional way, a large language model is "trained" by copying massive amounts of text and extracting expressive information from it. This body of text is called the *training dataset*. Once a large language model has copied and ingested the text in its training dataset, it is able to emit convincingly naturalistic text outputs in response to user prompts.

3.      A large language model's output is therefore entirely and uniquely reliant on the material in its training dataset. Every time it assembles a text output, the model relies on the information it extracted from its training dataset.

4.      Plaintiffs and Class members are authors of books. Plaintiffs and Class members have registered copyrights in the books they published. Plaintiffs and Class members did not consent to the use of their copyrighted books as training material for ChatGPT. Nonetheless, their copyrighted materials were ingested and used to train ChatGPT.

5.      Indeed, when ChatGPT is prompted, ChatGPT generates summaries of Plaintiffs' copyrighted works—something only possible if ChatGPT was trained on Plaintiffs' copyrighted works.

6.      Defendants, by and through the use of ChatGPT, benefit commercial and profit richly from the use of Plaintiffs' and Class members' copyrighted materials.

## II.     JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Copyright Act (17 U.S.C. § 501) and the Digital Millenium Copyright Act (17 U.S.C. § 1202).

8.      Jurisdiction and venue is proper in this judicial district under 28 U.S.C. § 1391(c)(2) because defendant OpenAI, Inc. is headquartered in this district, and thus a substantial part of the events giving rise to the claim occurred in this district; and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial portion of the affected interstate trade and commerce was carried out in this District. Each Defendant has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. Defendants' conduct has had the intended and foreseeable effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

9.      Under Civil Local Rule 3.2(c) and (e), assignment of this case to the San Francisco Division is proper because defendant OpenAI, Inc. is headquartered in San Francisco, a substantial amount part of the events giving rise to Plaintiffs' claims and the interstate trade and commerce involved and affected by Defendants' conduct giving rise to the claims herein occurred in this Division.

## III.     PARTIES

### A.     Plaintiffs

10.     Plaintiff Paul Tremblay is a writer who lives in Massachusetts. Plaintiff Tremblay owns registered copyrights in several books, including *The Cabin at the End of the World*. This book contains the copyright-management information customarily included in published books, including the name of the author and the year of publication.

11.     Plaintiff Mona Awad is a writer who lives in Massachusetts. Plaintiff Awad owns registered copyrights in several books, including *13 Ways of Looking at a Fat Girl* and *Bunny*. These books contain the copyright-management information customarily included in published books, including the name of the author and the year of publication.

1AA-70

12.     A nonexhaustive list of registered copyrights owned by Plaintiffs is included as **Exhibit A**.

**B.    Defendants**

13.     Defendant OpenAI, Inc. is a Delaware nonprofit corporation with its principal place of business located at 3180 18th St, San Francisco, CA 94110.

14.     Defendant OpenAI, L.P. is a Delaware limited partnership with its principal place of business located at 3180 18th St, San Francisco, CA 94110. OpenAI, L.P. is a wholly owned subsidiary of OpenAI Inc. that is operated for profit. OpenAI, Inc. controls OpenAI, L.P. directly and through the other OpenAI entities.

15.     Defendant OpenAI OpCo, L.L.C. is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI OpCo, L.L.C. is a wholly owned subsidiary of OpenAI, Inc. that is operated for profit. OpenAI, Inc. controls OpenAI OpCo, L.L.C. directly and through the other OpenAI entities.

16.     Defendant OpenAI GP, L.L.C. ("OpenAI GP") is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI GP is the general partner of OpenAI, L.P. OpenAI GP manages and operates the day-to-day business and affairs of OpenAI, L.P. OpenAI GP was aware of the unlawful conduct alleged herein and exercised control over OpenAI, L.P. throughout the Class Period. OpenAI, Inc. directly controls OpenAI GP.

17.     Defendant OpenAI Startup Fund I, L.P. ("OpenAI Startup Fund I") is a Delaware limited partnership with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund I was instrumental in the foundation of OpenAI, L.P., including the creation of its business strategy and providing initial funding. OpenAI Startup Fund I was aware of the unlawful conduct alleged herein and exercised control over OpenAI, L.P. throughout the Class Period.

18.     Defendant OpenAI Startup Fund GP I, L.L.C. ("OpenAI Startup Fund GP I") is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund GP I is the general partner of OpenAI Startup Fund I. OpenAI Startup Fund GP I is a party to the unlawful conduct alleged herein. OpenAI Startup Fund GP I manages and operates the day-to-day business and affairs of OpenAI Startup Fund I.

19.     Defendant OpenAI Startup Fund Management, LLC ("OpenAI Startup Fund Management") is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund Management is a party to the unlawful conduct alleged herein. OpenAI Startup Fund Management was aware of the unlawful conduct alleged herein and exercised control over OpenAI, L.P. throughout the Class Period.

## IV.     AGENTS AND CO-CONSPIRATORS

20.     The unlawful acts alleged against the Defendants in this class action complaint were authorized, ordered, or performed by the Defendants' respective officers, agents, employees, representatives, or shareholders while actively engaged in the management, direction, or control of the Defendants' businesses or affairs. The Defendants' agents operated under the explicit and apparent authority of their principals. Each Defendant, and its subsidiaries, affiliates, and agents operated as a single unified entity.

21.     Various persons and/or firms not named as Defendants may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. Each acted as the principal, agent, or joint venture of, or for other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

## V.     FACTUAL ALLEGATIONS

22.     OpenAI creates and sells artificial-intelligence software products. *Artificial intelligence* is commonly abbreviated "AI." AI software is designed to algorithmically simulate human reasoning or inference, often using statistical methods.

23.     Certain AI products created and sold by OpenAI are known as *large language models*. A large language model (or "LLM" for short) is AI software designed to parse and emit natural language. Though a large language model is a software program, it is not created the way most software programs are—that is, by human software engineers writing code. Rather, a large language model is "trained" by copying massive amounts of text from various sources and feeding these copies into the model. This corpus of input material is called the *training dataset*. During training, the large language model copies each piece of text in the training dataset and extracts expressive information from it. The large language model progressively adjusts its output to more closely resemble the sequences of words copied from

the training dataset. Once the large language model has copied and ingested all this text, it is able to emit convincing simulations of natural written language as it appears in the training dataset.

24.     Much of the material in OpenAI's training datasets, however, comes from copyrighted works—including books written by Plaintiffs—that were copied by OpenAI without consent, without credit, and without compensation.

25.     Authors, including Plaintiffs, publish books with certain copyright management information. This information includes the book's title, the ISBN number or copyright number, the author's name, the copyright holder's name, and terms and conditions of use. Most commonly, this information is found on the back of the book's title page and is customarily included in all books, regardless of genre.

26.     OpenAI has released a series of large language models, including GPT-1 (released June 2018), GPT-2 (February 2019), GPT-3 (May 2020), GPT-3.5 (March 2022), and most recently GPT-4 (March 2023). "GPT" is an abbreviation for "generative pre-trained transformer," where *pre-trained* refers to the use of textual material for training, *generative* refers to the model's ability to emit text, and *transformer* refers to the underlying training algorithm. Together, OpenAI's large language models will be referred to as the "OpenAI Language Models."

27.     Many kinds of material have been used to train large language models. Books, however, have always been a key ingredient in training datasets for large language models because books offer the best examples of high-quality longform writing.

28.     For instance, in its June 2018 paper introducing GPT-1 (called "Improving Language Understanding by Generative Pre-Training"), OpenAI revealed that it trained GPT-1 on BookCorpus, a collection of "over 7,000 unique unpublished books from a variety of genres including Adventure, Fantasy, and Romance." OpenAI confirmed why a dataset of books was so valuable: "Crucially, it contains long stretches of contiguous text, which allows the generative model to learn to condition on long-range information." Hundreds of large language models have been trained on BookCorpus, including those made by OpenAI, Google, Amazon, and others.

29.     BookCorpus, however, is a controversial dataset. It was assembled in 2015 by a team of AI researchers for the purpose of training language models. They copied the books from a website

1AA-73

called Smashwords.com that hosts unpublished novels that are available to readers at no cost. Those novels, however, are largely under copyright. They were copied into the BookCorpus dataset without consent, credit, or compensation to the authors.

30.     OpenAI also copied many books while training GPT-3. In the July 2020 paper introducing GPT-3 (called "Language Models are Few-Shot Learners"), OpenAI disclosed that 15% of the enormous GPT-3 training dataset came from "two internet-based books corpora" that OpenAI simply called "Books1" and "Books2".

31.     Tellingly, OpenAI has never revealed what books are part of the Books1 and Books2 datasets. Though there are some clues. First, OpenAI admitted these are "internet-based books corpora". Second, both Books1 and Books2 are apparently much larger than BookCorpus. Based on numbers given in OpenAI's paper about GPT-3, Books1 is apparently about nine times larger; Books2 is about 42 times larger. Since BookCorpus contained about 7,000 titles, this suggests Books1 would contain about 63,000 titles; Books2 would contain about 294,000 titles.

32.     But there are only a handful of "internet-based books corpora" that would be able to deliver this much material.

33.     As noted in Paragraph 31, *supra*, the OpenAI Books1 dataset can be estimated to contain about 63,000 titles. Project Gutenberg is an online archive of e-books whose copyright has expired. In September 2020, Project Gutenberg claimed to have "over 60,000" titles. Project Gutenberg has long been popular for training AI systems due to the lack of copyright. In 2018, a team of AI researchers created the "Standardized Project Gutenberg Corpus", which contained "more than 50,000 books". On information and belief, the OpenAI Books1 dataset is based on either the Standardized Project Gutenberg Corpus or Project Gutenberg itself, because of the roughly similar sizes of the two datasets.

34.     As noted in Paragraph 31, *supra*, the OpenAI Books2 dataset can be estimated to contain about 294,000 titles. The only "internet-based books corpora" that have ever offered that much material are notorious "shadow library" websites like Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, and Bibliotik. The books aggregated by these websites have also been available in bulk via torrent systems. These flagrantly illegal shadow libraries have long been of interest to the AI-training community: for instance, an AI training dataset published in December 2020 by EleutherAI called

"Books3" includes a recreation of the Bibliotik collection and contains nearly 200,000 books. On information and belief, the OpenAI Books2 dataset includes books copied from these "shadow libraries", because those are the most sources of trainable books most similar in nature and size to OpenAI's description of Books2.

35. In March 2023, OpenAI's paper introducing GPT-4 contained no information about its dataset at all: OpenAI claimed that "[g]iven both the competitive landscape and the safety implications of large-scale models like GPT-4, this report contains no further details about . . . dataset construction." Later in the paper, OpenAI concedes it did "filter[ ] our dataset . . . to specifically reduce the quantity of inappropriate erotic text content."

A. Interrogating the OpenAI Language Models using ChatGPT

36. ChatGPT is a language model created and sold by OpenAI. As its name suggests, ChatGPT is designed to offer a conversational style of interaction with a user. OpenAI offers ChatGPT through a web interface to individual users for $20 per month. Through the web interface, users can choose to use two versions of ChatGPT: one based on the GPT-3.5 model, and one based on the newer GPT-4 model.

37. OpenAI also offers ChatGPT to software developers through an application-programming interface (or "API"). The API allows developers to write programs that exchange data with ChatGPT. Access to ChatGPT via the API is billed on the basis of usage.

38. Regardless of how accessed—either through the web interface or through the API—ChatGPT allows users to enter text prompts, which ChatGPT then attempts to respond to in a natural way, i.e., ChatGPT can generate answers in a coherent and fluent way that closely mimics human language. If a user prompts ChatGPT with a question, ChatGPT will answer. If a user prompts ChatGPT with a command, ChatGPT will obey. If a user prompts ChatGPT to summarize a copyrighted book, it will do so.

39. ChatGPT's output, like other LLMs, relies on the data upon which it is trained to generate new content. LLMs generate output based on patterns and connections drawn from the training data. For example, if an LLM is prompted to generate a writing in the style of a certain author,

1   the LLM would generate content based on patterns and connections it learned from analysis of that

2   author's work within its training data.

3       40.     On information and belief, the reason ChatGPT can accurately summarize a certain

4   copyrighted book is because that book was copied by OpenAI and ingested by the underlying OpenAI

5   Language Model (either GPT-3.5 or GPT-4) as part of its training data.

6       41.     When ChatGPT was prompted to summarize books written by each of the Plaintiffs, it

7   generated very accurate summaries. These summaries are attached as **Exhibit B**. The summaries get

8   some details wrong. These details are highlighted in the summaries. This is expected, since a large

9   language model mixes together expressive material derived from many sources. Still, the rest of the

10  summaries are accurate, which means that ChatGPT retains knowledge of particular works in the

11  training dataset and is able to output similar textual content. At no point did ChatGPT reproduce any

12  of the copyright management information Plaintiffs included with their published works.

## VI.     CLASS ALLEGATIONS

### A.    Class Definition

15      42.     Plaintiffs bring this action for damages and injunctive relief as a class action under

16  Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following Class:

> **All persons or entities domiciled in the United States that own a**
> **United States copyright in any work that was used as training data**
> **for the OpenAI Language Models during the Class Period.**

19      43.     This Class definition excludes:

20      a.      any of the Defendants named herein;

21      b.      any of the Defendants' co-conspirators;

22      c.      any of Defendants' parent companies, subsidiaries, and affiliates;

23      d.      any of Defendants' officers, directors, management, employees, subsidiaries,

24              affiliates, or agents;

25      e.      all governmental entities; and

26      f.      the judges and chambers staff in this case, as well as any members of their

27              immediate families.

1AA-76

**B.     Numerosity**

44.     Plaintiffs do not know the exact number of members in the Class. This information is in the exclusive control of Defendants. On information and belief, there are at least thousands of members in the Class geographically dispersed throughout the United States. Therefore, joinder of all members of the Class in the prosecution of this action is impracticable.

**C.     Typicality**

45.     Plaintiffs' claims are typical of the claims of other members of the Class because Plaintiffs and all members of the Class were damaged by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Class.

**D.     Adequacy**

46.     Plaintiffs will fairly and adequately represent the interests of the members of the Class because the Plaintiffs have experienced the same harms as the members of the Class and have no conflicts with any other members of the Class. Furthermore, Plaintiffs have retained sophisticated and competent counsel who are experienced in prosecuting federal and state class actions, as well as other complex litigation.

**E.     Commonality and Predominance**

47.     Numerous questions of law or fact common to each Class arise from Defendants' conduct:

      a.   whether Defendants violated the copyrights of Plaintiffs and the Class when they downloaded copies of Plaintiff's copyrighted books and used them to train ChatGPT;

      b.   whether ChatGPT itself is an infringing derivative work based on Plaintiffs' copyrighted books;

      c.   whether the text outputs of ChatGPT are infringing derivative works based on Plaintiffs' copyrighted books;

      d.   whether Defendants violated the DMCA by removing copyright-management information (CMI) from Plaintiffs' copyrighted books.

      e.   Whether Defendants were unjustly enriched by the unlawful conduct alleged herein.

      f.   Whether Defendants' conduct alleged herein constitutes Unfair Competition under

California Business and Professions Code section 17200 *et seq.*

g.   Whether Defendants' conduct alleged herein constitutes unfair competition under the common law.

h.   Whether this Court should enjoin Defendants from engaging in the unlawful conduct alleged herein. And what the scope of that injunction would be.

i.   Whether any affirmative defense excuses Defendants' conduct.

j.   Whether any statutes of limitation limits Plaintiffs' and the Class's potential for recovery.

48.   These and other questions of law and fact are common to the Class predominate over any questions affecting the members of the Class individually.

**F.   Other Class Considerations**

49.   Defendants have acted on grounds generally applicable to the Class. This class action is superior to alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action. Further, final injunctive relief is appropriate with respect to the Class as a whole.

50.   The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

**VII.   CLAIMS FOR RELIEF**

**COUNT I**
**Direct Copyright Infringement**
**17 U.S.C. § 106**
**On Behalf of Plaintiffs and the Class**

51.   Plaintiffs incorporate by reference the preceding factual allegations.

52.   As the owners of the registered copyrights in books used to train the OpenAI Language Models, Plaintiffs hold the exclusive rights to those texts under 17 U.S.C. § 106.

53.   Plaintiffs never authorized OpenAI to make copies of their books, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works). All those rights belong exclusively to Plaintiffs under copyright law.

1AA-78

54.     On information and belief, to train the OpenAI Language Models, OpenAI relied on harvesting mass quantities of textual material from the public internet, including Plaintiffs' books, which are available in digital formats.

55.     OpenAI made copies of Plaintiffs' books during the training process of the OpenAI Language Models without Plaintiffs' permission. Specifically, OpenAI copied at least Plaintiff Tremblay's book *The Cabin at the End of the World*; and Plaintiff Awad's books *13 Ways of Looking at a Fat Girl* and *Bunny*. Together, these books are referred to as the **Infringed Works**.

56.     Because the OpenAI Language Models cannot function without the expressive information extracted from Plaintiffs' works (and others) and retained inside them, the OpenAI Language Models are themselves infringing derivative works, made without Plaintiffs' permission and in violation of their exclusive rights under the Copyright Act.

57.     Plaintiffs have been injured by OpenAI's acts of direct copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

**COUNT 2**
**Vicarious Copyright Infringement**
**17 U.S.C. § 106**
**On Behalf of Plaintiffs and the Class**

58.     Plaintiffs incorporate by reference the preceding factual allegations.

59.     Because the output of the OpenAI Language Models is based on expressive information extracted from Plaintiffs' works (and others), every output of the OpenAI Language Models is an infringing derivative work, made without Plaintiffs' permission and in violation of their exclusive rights under the Copyright Act.

60.     OpenAI has the right and ability to control the output of the OpenAI Language Models. OpenAI has benefited financially from the infringing output of the OpenAI Language Models. Therefore, every output from the OpenAI Language Models constitutes an act of vicarious copyright infringement.

61.     Plaintiffs have been injured by OpenAI's acts of vicarious copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

**COUNT 3**
**Digital Millenium Copyright Act—Removal of Copyright Management Information**
**17 U.S.C. § 1202(b)**
**On Behalf of Plaintiffs and the Class**

62.     Plaintiffs incorporate by reference the preceding factual allegations.

63.     Plaintiffs included one or more forms of copyright-management information ("CMI") in each of the Plaintiffs' Infringed Works, including: copyright notice, title and other identifying information, the name or other identifying information about the owners of each book, terms and conditions of use, and identifying numbers or symbols referring to CMI.

64.     Without the authority of Plaintiffs and the Class, OpenAI copied the Plaintiffs' Infringed Works and used them as training data for the OpenAI Language Models. By design, the training process does not preserve any CMI. Therefore, OpenAI intentionally removed CMI from the Plaintiffs' Infringed Works in violation of 17 U.S.C. § 1202(b)(1).

65.     Without the authority of Plaintiffs and the Class, Defendants created derivative works based on Plaintiffs' Infringed Works. By distributing these works without their CMI, OpenAI violated 17 U.S.C. § 1202(b)(3).

66.     OpenAI knew or had reasonable grounds to know that this removal of CMI would facilitate copyright infringement by concealing the fact that every output from the OpenAI Language Models is an infringing derivative work, synthesized entirely from expressive information found in the training data.

67.     Plaintiffs have been injured by OpenAI's removal of CMI. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

**COUNT 4**
**Unfair Competition**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**On Behalf of Plaintiffs and the Class**

68.     Plaintiffs incorporate by reference the preceding factual allegations.

69. Defendants have engaged in unlawful business practices, including violating Plaintiffs' rights under the DMCA, and using Plaintiffs' Infringed Works to train ChatGPT without Plaintiffs' or the Class's authorization.

70. The unlawful business practices described herein violate California Business and Professions Code section 17200 *et seq.* (the "UCL") because that conduct is otherwise unlawful by violating the DMCA.

71. The unlawful business practices described herein violate the UCL because they are unfair, immoral, unethical, oppressive, unscrupulous or injurious to consumers, because, among other reasons, Defendants used Plaintiffs' protected works to train ChatGPT for Defendants' own commercial profit without Plaintiffs' and the Class's authorization. Defendants further knowingly designed ChatGPT to output portions or summaries of Plaintiffs' copyrighted works without attribution, and they unfairly profit from and take credit for developing a commercial product based on unattributed reproductions of those stolen writing and ideas.

72. The unlawful business practices described herein violate the UCL because consumers are likely to be deceived. Defendants knowingly and secretively trained ChatGPT on unauthorized copies of Plaintiffs' copyright-protected work. Further Defendants deceptively designed ChatGPT to output without any CMI or other credit to Plaintiffs and Class members whose Infringed Works comprise ChatGPT's training dataset. Defendants deceptively marketed their product in a manner that fails to attribute the success of their product to the copyright-protected work on which it is based.

**COUNT 5**
**Negligence**
**On Behalf of Plaintiffs and the Class**

73. Plaintiffs incorporate by reference the preceding factual allegations.

74. Defendants owed a duty of care toward Plaintiffs and the Class based upon Defendants' relationship to them. This duty is based upon Defendants' obligations, custom and practice, right to control information in its possession, exercise of control over the information in its possession, authority to control the information in its possession, and the commission of affirmative acts that result in said harms and losses. Additionally, this duty is based on the requirements of California Civil Code

section 1714, requiring all "persons," including Defendants, to act in a reasonable manner toward others.

75.     Defendants breached their duties by negligently, carelessly, and recklessly collecting, maintaining and controlling Plaintiffs' and Class members' Infringed Works and engineering, designing, maintaining and controlling systems—including ChatGPT—which are trained on Plaintiffs' and Class members' Infringed Works without their authorization.

76.     Defendants owed Plaintiffs and Class members a duty of care to maintain Plaintiffs' Infringed Works once collected and ingested for training ChatGPT.

77.     Defendants also owed Plaintiffs and Class members a duty of care to not use the Infringed Works in a way that would foreseeably cause Plaintiffs and Class members injury, for instance, by using the Infringed Works to train ChatGPT.

78.     Defendants breached their duties by, *inter alia*, using Plaintiffs' Infringed Works to train ChatGPT.

**COUNT 6**
**Unjust Enrichment**
**On Behalf of Plaintiffs and the Class**

79.     Plaintiffs incorporate by reference the preceding factual allegations.

80.     Plaintiffs and the Class have invested substantial time and energy in creating the Infringed Works.

81.     Defendants have unjustly utilized access to the Infringed Materials to train ChatGPT.

82.     Plaintiffs did not consent to the unauthorized use of the Infringed Materials to train ChatGPT.

83.     By using Plaintiffs' Infringed Works to train ChatGPT, Plaintiffs and the Class were deprived of the benefits of their work, including monetary damages.

84.     Defendants derived profit and other benefits from the use of the Infringed Materials to train ChatGPT.

85.     It would be unjust for Defendants to retain those benefits.

86.     The conduct of Defendants is causing and, unless enjoined and restrained by this Court,

will continue to cause Plaintiffs and the Class great and irreparable injury that cannot fully be compensated or measured in money.

## VIII.   DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs request that the Court enter judgment on their behalf and on behalf of the Class defined herein, by ordering:

a)  This action may proceed as a class action, with Plaintiffs serving as Class Representatives, and with Plaintiffs' counsel as Class Counsel.

b)  Judgment in favor of Plaintiffs and the Class and against Defendants.

c)  An award of statutory and other damages under 17 U.S.C. § 504 for violations of the copyrights of Plaintiffs and the Class by Defendants.

d)  Permanent injunctive relief, including but not limited to changes to ChatGPT to ensure that all applicable information set forth in 17 U.S.C. § 1203(b)(1) is included when appropriate.

e)  An order of costs and allowable attorney's fees under 17 U.S.C. § 1203(b)(4)–(5).

f)  An award of statutory damages under 17 U.S.C. § 1203(b)(3) and 17 U.S.C. § 1203(c)(3), or in the alternative, an award of actual damages and any additional profits under 17 U.S.C. § 1203(c)(2) (including tripling damages under 17 U.S.C. § 1203(c)(4) if applicable).

g)  Pre- and post-judgment interest on the damages awarded to Plaintiffs and the Class, and that such interest be awarded at the highest legal rate from and after the date this class action complaint is first served on Defendants.

h)  Defendants are to be jointly and severally responsible financially for the costs and expenses of a Court approved notice program through post and media designed to give immediate notification to the Class.

i)  Further relief for Plaintiffs and the Class as may be just and proper.

## IX.   JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all the claims asserted in this Complaint so triable.

Dated: June 28, 2023

By:        */s/ Joseph R. Saveri*
                Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:   (415) 500-6800
Facsimile:    (415) 395-9940
Email:       jsaveri@saverilawfirm.com
           czirpoli@saverilawfirm.com
           cyoung@saverilawfirm.com
           kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:   (323) 968-2632
Facsimile:    (415) 395-9940
Email:       mb@butericklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

---

16
COMPLAINT

**1AA-84**

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:        jsaveri@saverilawfirm.com
              czirpoli@saverilawfirm.com
              cyoung@saverilawfirm.com
              kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:    (415) 395-9940
Email:        mb@butcoricklaw.com

*Counsel for Individual and Representative Plaintiffs*
*and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH SILVERMAN, an individual; CHRISTOPHER GOLDEN, an individual; RICHARD KADREY, an individual;<br><br>    Individual and Representative Plaintiffs,<br><br>  v.<br><br>OPENAI, INC., a Delaware nonprofit corporation; OPENAI, L.P., a Delaware limited partnership; OPENAI OPCO, L.L.C., a Delaware limited liability corporation; OPENAI GP, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND GP I, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND I, L.P., a Delaware limited partnership; and OPENAI STARTUP FUND MANAGEMENT, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Sarah Silverman, Christopher Golden, and Richard Kadrey ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint (the "Complaint") against Defendants OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund GP I, L.L.C. and OpenAI Startup Fund Management, LLC for direct copyright infringement, vicarious copyright infringement, violations of section 1202(b) of the Digital Millennium Copyright Act, unjust enrichment, violations of the California and common law unfair competition laws, and negligence. Plaintiffs seek injunctive relief an to recover damages as a result and consequence of Defendants' unlawful conduct.

## I.    OVERVIEW

1.    ChatGPT is a software product created, maintained, and sold by OpenAI.

2.    ChatGPT is powered by two AI software programs called GPT-3.5 and GPT-4, also known as *large language models*. Rather than being programmed in the traditional way, a large language model is "trained" by copying massive amounts of text and extracting expressive information from it. This body of text is called the *training dataset*. Once a large language model has copied and ingested the text in its training dataset, it is able to emit convincingly naturalistic text outputs in response to user prompts.

3.    A large language model's output is therefore entirely and uniquely reliant on the material in its training dataset. Every time it assembles a text output, the model relies on the information it extracted from its training dataset.

4.    Plaintiffs and Class members are authors of books. Plaintiffs and Class members have registered copyrights in the books they published. Plaintiffs and Class members did not consent to the use of their copyrighted books as training material for ChatGPT. Nonetheless, their copyrighted materials were ingested and used to train ChatGPT.

5.    Indeed, when ChatGPT is prompted, ChatGPT generates summaries of Plaintiffs' copyrighted works—something only possible if ChatGPT was trained on Plaintiffs' copyrighted works.

6.    Defendants, by and through the use of ChatGPT, benefit commercial and profit richly from the use of Plaintiffs' and Class members' copyrighted materials.

## II.   JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Copyright Act (17 U.S.C. § 501) and the Digital Millennium Copyright Act (17 U.S.C. § 1202).

8.     Jurisdiction and venue is proper in this judicial district under 28 U.S.C. § 1391(c)(2) because defendant OpenAI, Inc. is headquartered in this district, and thus a substantial part of the events giving rise to the claim occurred in this district; and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial portion of the affected interstate trade and commerce was carried out in this District. Each Defendant has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. Defendants' conduct has had the intended and foreseeable effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

9.     Under Civil Local Rule 3.2(c) and (e), assignment of this case to the San Francisco Division is proper because defendant OpenAI, Inc. is headquartered in San Francisco, a substantial amount part of the events giving rise to Plaintiffs' claims and the interstate trade and commerce involved and affected by Defendants' conduct giving rise to the claims herein occurred in this Division.

## III.   PARTIES

**A.   Plaintiffs**

10.     Plaintiff Sarah Silverman is a writer and performer who lives in California. Plaintiff Silverman owns a registered copyright in one book, called *The Bedwetter*. This book contains copyright-management information customarily included in published books, including the name of the author and the year of publication.

11.     Plaintiff Christopher Golden is a writer who lives in Massachusetts. Mr. Golden owns registered copyrights in several books, including *Ararat*. This book contains the copyright-management information customarily included in published books, including the name of the author and the year of publication.

1AA-87

12.     Plaintiff Richard Kadrey is a writer who lives in Pennsylvania. Plaintiff Kadrey owns registered copyrights in several books, including *Sandman Slim*. This book contains the copyright-management information customarily included in published books, including the name of the author and the year of publication.

13.     A nonexhaustive list of registered copyrights owned by Plaintiffs is included as **Exhibit A**.

**B.      Defendants**

14.     Defendant OpenAI, Inc. is a Delaware nonprofit corporation with its principal place of business located at 3180 18th St, San Francisco, CA 94110.

15.     Defendant OpenAI, L.P. is a Delaware limited partnership with its principal place of business located at 3180 18th St, San Francisco, CA 94110. OpenAI, L.P. is a wholly owned subsidiary of OpenAI Inc. that is operated for profit. OpenAI, Inc. controls OpenAI, L.P. directly and through the other OpenAI entities.

16.     Defendant OpenAI OpCo, L.L.C. is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI OpCo, L.L.C. is a wholly owned subsidiary of OpenAI, Inc. that is operated for profit. OpenAI, Inc. controls OpenAI OpCo, L.L.C. directly and through the other OpenAI entities.

17.     Defendant OpenAI GP, L.L.C. ("OpenAI GP") is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI GP is the general partner of OpenAI, L.P. OpenAI GP manages and operates the day-to-day business and affairs of OpenAI, L.P. OpenAI GP was aware of the unlawful conduct alleged herein and exercised control over OpenAI, L.P. throughout the Class Period. OpenAI, Inc. directly controls OpenAI GP.

18.     Defendant OpenAI Startup Fund I, L.P. ("OpenAI Startup Fund I") is a Delaware limited partnership with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund I was instrumental in the foundation of OpenAI, L.P., including the creation of its business strategy and providing initial funding. OpenAI Startup Fund I was aware of the unlawful conduct alleged herein and exercised control over OpenAI, L.P. throughout the Class Period.

1AA-88

19.     Defendant OpenAI Startup Fund GP I, L.L.C. ("OpenAI Startup Fund GP I") is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund GP I is the general partner of OpenAI Startup Fund I. OpenAI Startup Fund GP I is a party to the unlawful conduct alleged herein. OpenAI Startup Fund GP I manages and operates the day-to-day business and affairs of OpenAI Startup Fund I.

20.     Defendant OpenAI Startup Fund Management, LLC ("OpenAI Startup Fund Management") is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund Management is a party to the unlawful conduct alleged herein. OpenAI Startup Fund Management was aware of the unlawful conduct alleged herein and exercised control over OpenAI, L.P. throughout the Class Period.

## IV.   AGENTS AND CO-CONSPIRATORS

21.     The unlawful acts alleged against the Defendants in this class action complaint were authorized, ordered, or performed by the Defendants' respective officers, agents, employees, representatives, or shareholders while actively engaged in the management, direction, or control of the Defendants' businesses or affairs. The Defendants' agents operated under the explicit and apparent authority of their principals. Each Defendant, and its subsidiaries, affiliates, and agents operated as a single unified entity.

22.     Various persons and/or firms not named as Defendants may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. Each acted as the principal, agent, or joint venture of, or for other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

## V.   FACTUAL ALLEGATIONS

23.     OpenAI creates and sells artificial-intelligence software products. *Artificial intelligence* is commonly abbreviated "AI." AI software is designed to algorithmically simulate human reasoning or inference, often using statistical methods.

24.     Certain AI products created and sold by OpenAI are known as *large language models*. A large language model (or "LLM" for short) is AI software designed to parse and emit natural language. Though a large language model is a software program, it is not created the way most software programs

1AA-89

are—that is, by human software engineers writing code. Rather, a large language model is "trained" by copying massive amounts of text from various sources and feeding these copies into the model. This corpus of input material is called the *training dataset*. During training, the large language model copies each piece of text in the training dataset and extracts expressive information from it. The large language model progressively adjusts its output to more closely resemble the sequences of words copied from the training dataset. Once the large language model has copied and ingested all this text, it is able to emit convincing simulations of natural written language as it appears in the training dataset.

25. Much of the material in OpenAI's training datasets, however, comes from copyrighted works—including books written by Plaintiffs—that were copied by OpenAI without consent, without credit, and without compensation.

26. Authors, including Plaintiffs, publish books with certain copyright management information. This information includes the book's title, the ISBN number or copyright number, the author's name, the copyright holder's name, and terms and conditions of use. Most commonly, this information is found on the back of the book's title page and is customarily included in all books, regardless of genre.

27. OpenAI has released a series of large language models, including GPT-1 (released June 2018), GPT-2 (February 2019), GPT-3 (May 2020), GPT-3.5 (March 2022), and most recently GPT-4 (March 2023). "GPT" is an abbreviation for "generative pre-trained transformer," where *pre-trained* refers to the use of textual material for training, *generative* refers to the model's ability to emit text, and *transformer* refers to the underlying training algorithm. Together, OpenAI's large language models will be referred to as the "OpenAI Language Models."

28. Many kinds of material have been used to train large language models. Books, however, have always been a key ingredient in training datasets for large language models because books offer the best examples of high-quality longform writing.

29. For instance, in its June 2018 paper introducing GPT-1 (called "Improving Language Understanding by Generative Pre-Training"), OpenAI revealed that it trained GPT-1 on BookCorpus, a collection of "over 7,000 unique unpublished books from a variety of genres including Adventure, Fantasy, and Romance." OpenAI confirmed why a dataset of books was so valuable: "Crucially, it

1  contains long stretches of contiguous text, which allows the generative model to learn to condition on

2  long-range information." Hundreds of large language models have been trained on BookCorpus,

3  including those made by OpenAI, Google, Amazon, and others.

4       30.     BookCorpus, however, is a controversial dataset. It was assembled in 2015 by a team of

5  AI researchers for the purpose of training language models. They copied the books from a website

6  called Smashwords that hosts self-published novels, that are available to readers at no cost. Those

7  novels, however, are largely under copyright. They were copied into the BookCorpus dataset without

8  consent, credit, or compensation to the authors.

9       31.     OpenAI also copied many books while training GPT-3. In the July 2020 paper

10  introducing GPT-3 (called "Language Models are Few-Shot Learners"), OpenAI disclosed that 15% of

11  the enormous GPT-3 training dataset came from "two internet-based books corpora" that OpenAI

12  simply called "Books1" and "Books2".

13       32.     Tellingly, OpenAI has never revealed what books are part of the Books1 and Books2

14  datasets. Though there are some clues. First, OpenAI admitted these are "internet-based books

15  corpora." Second, both Books1 and Books2 are apparently much larger than BookCorpus. Based on

16  numbers given in OpenAI's paper about GPT-3, Books1 is apparently about nine times larger; Books2

17  is about 42 times larger. Since BookCorpus contained about 7,000 titles, this suggests Books1 would

18  contain about 63,000 titles; Books2 would contain about 294,000 titles.

19       33.     But there are only a handful of "internet-based books corpora" that would be able to

20  deliver this much material.

21       34.     As noted in Paragraph 32, *supra*, the OpenAI Books1 dataset can be estimated to contain

22  about 63,000 titles. Project Gutenberg is an online archive of e-books whose copyright has expired. In

23  September 2020, Project Gutenberg claimed to have "over 60,000" titles. Project Gutenberg has long

24  been popular for training AI systems due to the lack of copyright. In 2018, a team of AI researchers

25  created the "Standardized Project Gutenberg Corpus," which contained "more than 50,000 books."

26  On information and belief, the OpenAI Books1 dataset is based on either the Standardized Project

27  Gutenberg Corpus or Project Gutenberg itself, because of the roughly similar sizes of the two datasets.

28

35. As noted in Paragraph 32, *supra*, the OpenAI Books2 dataset can be estimated to contain about 294,000 titles. The only "internet-based books corpora" that have ever offered that much material are notorious "shadow library" websites like Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, and Bibliotik. The books aggregated by these websites have also been available in bulk via torrent systems. These flagrantly illegal shadow libraries have long been of interest to the AI-training community: for instance, an AI training dataset published in December 2020 by EleutherAI called "Books3" includes a recreation of the Bibliotik collection and contains nearly 200,000 books. On information and belief, the OpenAI Books2 dataset includes books copied from these "shadow libraries," because those are the most sources of trainable books most similar in nature and size to OpenAI's description of Books2.

36. In March 2023, OpenAI's paper introducing GPT-4 contained no information about its dataset at all: OpenAI claimed that "[g]iven both the competitive landscape and the safety implications of large-scale models like GPT-4, this report contains no further details about . . . dataset construction." Later in the paper, OpenAI concedes it did "filter[ ] our dataset . . . to specifically reduce the quantity of inappropriate erotic text content."

A.    **Interrogating the OpenAI Language Models using ChatGPT**

37. ChatGPT is a language model created and sold by OpenAI. As its name suggests, ChatGPT is designed to offer a conversational style of interaction with a user. OpenAI offers ChatGPT through a web interface to individual users for $20 per month. Through the web interface, users can choose to use two versions of ChatGPT: one based on the GPT-3.5 model, and one based on the newer GPT-4 model.

38. OpenAI also offers ChatGPT to software developers through an application-programming interface (or "API"). The API allows developers to write programs that exchange data with ChatGPT. Access to ChatGPT via the API is billed on the basis of usage.

39. Regardless of how accessed—either through the web interface or through the API—ChatGPT allows users to enter text prompts, which ChatGPT then attempts to respond to in a natural way, i.e., ChatGPT can generate answers in a coherent and fluent way that closely mimics human language. If a user prompts ChatGPT with a question, ChatGPT will answer. If a user prompts

ChatGPT with a command, ChatGPT will obey. If a user prompts ChatGPT to summarize a copyrighted book, it will do so.

40.     ChatGPT's output, like other LLMs, relies on the data upon which it is trained to generate new content. LLMs generate output based on patterns and connections drawn from the training data. For example, if an LLM is prompted to generate a writing in the style of a certain author, the LLM would generate content based on patterns and connections it learned from analysis of that author's work within its training data.

41.     On information and belief, the reason ChatGPT can accurately summarize a certain copyrighted book is because that book was copied by OpenAI and ingested by the underlying OpenAI Language Model (either GPT-3.5 or GPT-4) as part of its training data.

42.     When ChatGPT was prompted to summarize books written by each of the Plaintiffs, it generated very accurate summaries. These summaries are attached as **Exhibit B**. The summaries get some details wrong. This is expected, since a large language model mixes together expressive material derived from many sources. Still, the rest of the summaries are accurate, which means that ChatGPT retains knowledge of particular works in the training dataset and is able to output similar textual content. At no point did ChatGPT reproduce any of the copyright management information Plaintiffs included with their published works.

## VI.   CLASS ALLEGATIONS

**A.     Class Definition**

43.     Plaintiffs bring this action for damages and injunctive relief as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following Class:

> **All persons or entities domiciled in the United States that own a United States copyright in any work that was used as training data for the OpenAI Language Models during the Class Period.**

44.     This Class definition excludes:

a.      any of the Defendants named herein;

b.      any of the Defendants' co-conspirators;

c.      any of Defendants' parent companies, subsidiaries, and affiliates;

1AA-93

d.    any of Defendants' officers, directors, management, employees, subsidiaries, affiliates, or agents;

e.    all governmental entities; and

f.    the judges and chambers staff in this case, as well as any members of their immediate families.

**B.   Numerosity**

45.    Plaintiffs do not know the exact number of members in the Class. This information is in the exclusive control of Defendants. On information and belief, there are at least thousands of members in the Class geographically dispersed throughout the United States. Therefore, joinder of all members of the Class in the prosecution of this action is impracticable.

**C.   Typicality**

46.    Plaintiffs' claims are typical of the claims of other members of the Class because Plaintiffs and all members of the Class were damaged by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Class.

**D.   Adequacy**

47.    Plaintiffs will fairly and adequately represent the interests of the members of the Class because the Plaintiffs have experienced the same harms as the members of the Class and have no conflicts with any other members of the Class. Furthermore, Plaintiffs have retained sophisticated and competent counsel who are experienced in prosecuting federal and state class actions, as well as other complex litigation.

**E.   Commonality and Predominance**

48.    Numerous questions of law or fact common to each Class arise from Defendants' conduct:

a.    whether Defendants violated the copyrights of Plaintiffs and the Class when they downloaded copies of Plaintiffs' copyrighted books and used them to train ChatGPT;

b.    whether ChatGPT itself is an infringing derivative work based on Plaintiffs' copyrighted books;

c.  whether the text outputs of ChatGPT are infringing derivative works based on Plaintiffs' copyrighted books;

d.  whether Defendants violated the DMCA by removing copyright-management information (CMI) from Plaintiffs' copyrighted books.

e.  Whether Defendants were unjustly enriched by the unlawful conduct alleged herein.

f.  Whether Defendants' conduct alleged herein constitutes Unfair Competition under California Business and Professions Code section 17200 *et seq.*

g.  Whether this Court should enjoin Defendants from engaging in the unlawful conduct alleged herein. And what the scope of that injunction would be.

h.  Whether any affirmative defense excuses Defendants' conduct.

i.  Whether any statutes of limitation limits Plaintiffs' and the Class's potential for recovery.

49.  These and other questions of law and fact are common to the Class predominate over any questions affecting the members of the Class individually.

**F.  Other Class Considerations**

50.  Defendants have acted on grounds generally applicable to the Class. This class action is superior to alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action. Further, final injunctive relief is appropriate with respect to the Class as a whole.

51.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

### VII.  CLAIMS FOR RELIEF
#### COUNT I
#### DIRECT COPYRIGHT INFRINGEMENT
#### 17 U.S.C. § 106
#### ON BEHALF OF PLAINTIFFS AND THE CLASS

52.  Plaintiffs incorporate by reference the preceding factual allegations.

53.  As the owners of the registered copyrights in books used to train the OpenAI Language Models, Plaintiffs hold the exclusive rights to those texts under 17 U.S.C. § 106.

54.     Plaintiffs never authorized OpenAI to make copies of their books, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works). All those rights belong exclusively to Plaintiffs under copyright law.

55.     On information and belief, to train the OpenAI Language Models, OpenAI relied on harvesting mass quantities of textual material from the public internet, including Plaintiffs' books, which are available in digital formats.

56.     OpenAI made copies of Plaintiffs' books during the training process of the OpenAI Language Models without Plaintiffs' permission. Specifically, OpenAI copied at least Plaintiff Silverman's book *The Bedwetter*; Plaintiff Golden's book *Ararat*; and Plaintiff Kadrey's book *Sandman Slime*. Together, these books are referred to as the **Infringed Works**.

57.     Because the OpenAI Language Models cannot function without the expressive information extracted from Plaintiffs' works (and others) and retained inside them, the OpenAI Language Models are themselves infringing derivative works, made without Plaintiffs' permission and in violation of their exclusive rights under the Copyright Act.

58.     Plaintiffs have been injured by OpenAI's acts of direct copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

## COUNT 2
### VICARIOUS COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 106
### ON BEHALF OF PLAINTIFFS AND THE CLASS

59.     Plaintiffs incorporate by reference the preceding factual allegations.

60.     Because the output of the OpenAI Language Models is based on expressive information extracted from Plaintiffs' works (and others), every output of the OpenAI Language Models is an infringing derivative work, made without Plaintiffs' permission and in violation of their exclusive rights under the Copyright Act.

61.     OpenAI has the right and ability to control the output of the OpenAI Language Models. OpenAI has benefited financially from the infringing output of the OpenAI Language Models.

Therefore, every output from the OpenAI Language Models constitutes an act of vicarious copyright infringement.

62. Plaintiffs have been injured by OpenAI's acts of vicarious copyright infringement. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

**COUNT 3**
**DIGITAL MILLENNIUM COPYRIGHT ACT—**
**REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION**
**17 U.S.C. § 1202(B)**
**ON BEHALF OF PLAINTIFFS AND THE CLASS**

63. Plaintiffs incorporate by reference the preceding factual allegations.

64. Plaintiffs included one or more forms of copyright-management information ("CMI") in each of the Plaintiffs' Infringed Works, including: copyright notice, title and other identifying information, the name or other identifying information about the owners of each book, terms and conditions of use, and identifying numbers or symbols referring to CMI.

65. Without the authority of Plaintiffs and the Class, OpenAI copied the Plaintiffs' Infringed Works and used them as training data for the OpenAI Language Models. By design, the training process does not preserve any CMI. Therefore, OpenAI intentionally removed CMI from the Plaintiffs' Infringed Works in violation of 17 U.S.C. § 1202(b)(1).

66. Without the authority of Plaintiffs and the Class, Defendants created derivative works based on Plaintiffs' Infringed Works. By distributing these works without their CMI, OpenAI violated 17 U.S.C. § 1202(b)(3).

67. OpenAI knew or had reasonable grounds to know that this removal of CMI would facilitate copyright infringement by concealing the fact that every output from the OpenAI Language Models is an infringing derivative work, synthesized entirely from expressive information found in the training data.

68. Plaintiffs have been injured by OpenAI's removal of CMI. Plaintiffs are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

1AA-97

## COUNT 4
### UNFAIR COMPETITION
### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
### ON BEHALF OF PLAINTIFFS AND THE CLASS

69.   Plaintiffs incorporate by reference the preceding factual allegations.

70.   Defendants have engaged in unlawful business practices, including violating Plaintiffs' rights under the DMCA, and using Plaintiffs' Infringed Works to train ChatGPT without Plaintiffs' or the Class's authorization.

71.   The unlawful business practices described herein violate California Business and Professions Code section 17200 *et seq.* (the "UCL") because that conduct is otherwise unlawful by violating the DMCA.

72.   The unlawful business practices described herein violate the UCL because they are unfair, immoral, unethical, oppressive, unscrupulous or injurious to consumers, because, among other reasons, Defendants used Plaintiffs' protected works to train ChatGPT for Defendants' own commercial profit without Plaintiffs' and the Class's authorization. Defendants further knowingly designed ChatGPT to output portions or summaries of Plaintiffs' copyrighted works without attribution, and they unfairly profit from and take credit for developing a commercial product based on unattributed reproductions of those stolen writing and ideas.

73.   The unlawful business practices described herein violate the UCL because consumers are likely to be deceived. Defendants knowingly and secretively trained ChatGPT on unauthorized copies of Plaintiffs' copyright-protected work. Further Defendants deceptively designed ChatGPT to output without any CMI or other credit to Plaintiffs and Class members whose Infringed Works comprise ChatGPT's training dataset. Defendants deceptively marketed their product in a manner that fails to attribute the success of their product to the copyright-protected work on which it is based.

## COUNT 5
### NEGLIGENCE
### UNDER CALIFORNIA COMMON LAW
### ON BEHALF OF PLAINTIFFS AND THE CLASS

74.     Plaintiffs incorporate by reference the preceding factual allegations.

75.     Defendants owed a duty of care toward Plaintiffs and the Class based upon Defendants' relationship to them. This duty is based upon Defendants' obligations, custom and practice, right to control information in its possession, exercise of control over the information in its possession, authority to control the information in its possession, and the commission of affirmative acts that result in said harms and losses. Additionally, this duty is based on the requirements of California Civil Code section 1714, requiring all "persons," including Defendants, to act in a reasonable manner toward others.

76.     Defendants breached their duties by negligently, carelessly, and recklessly collecting, maintaining and controlling Plaintiffs' and Class members' Infringed Works and engineering, designing, maintaining and controlling systems—including ChatGPT—which are trained on Plaintiffs' and Class members' Infringed Works without their authorization.

77.     Defendants owed Plaintiffs and Class members a duty of care to maintain Plaintiffs' Infringed Works once collected and ingested for training ChatGPT.

78.     Defendants also owed Plaintiffs and Class members a duty of care to not use the Infringed Works in a way that would foreseeably cause Plaintiffs and Class members injury, for instance, by using the Infringed Works to train ChatGPT.

79.     Defendants breached their duties by, *inter alia*, using Plaintiffs' Infringed Works to train ChatGPT.

## COUNT 6
### UNJUST ENRICHMENT
### UNDER CALIFORNIA COMMON LAW
### ON BEHALF OF PLAINTIFFS AND THE CLASS

80.     Plaintiffs incorporate by reference the preceding factual allegations.

81.     Plaintiffs and the Class have invested substantial time and energy in creating the Infringed Works.

82. Defendants have unjustly utilized access to the Infringed Materials to train ChatGPT.

83. Plaintiffs did not consent to the unauthorized use of the Infringed Materials to train ChatGPT.

84. By using Plaintiffs' Infringed Works to train ChatGPT, Plaintiffs and the Class were deprived of the benefits of their work, including monetary damages.

85. Defendants derived profit and other benefits from the use of the Infringed Materials to train ChatGPT.

86. It would be unjust for Defendants to retain those benefits.

87. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs and the Class great and irreparable injury that cannot fully be compensated or measured in money.

## VIII. DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs request that the Court enter judgment on their behalf and on behalf of the Class defined herein, by ordering:

a) This action may proceed as a class action, with Plaintiffs serving as Class Representatives, and with Plaintiffs' counsel as Class Counsel.

b) Judgment in favor of Plaintiffs and the Class and against Defendants.

c) An award of statutory and other damages under 17 U.S.C. § 504 for violations of the copyrights of Plaintiffs and the Class by Defendants.

d) Permanent injunctive relief, including but not limited to changes to ChatGPT to ensure that all applicable information set forth in 17 U.S.C. § 1203(b)(1) is included when appropriate.

e) An order of costs and allowable attorney's fees under 17 U.S.C. § 1203(b)(4)–(5).

f) An award of statutory damages under 17 U.S.C. § 1203(b)(3) and 17 U.S.C. § 1203(c)(3), or in the alternative, an award of actual damages and any additional profits under 17 U.S.C. § 1203(c)(2) (including tripling damages under 17 U.S.C. § 1203(c)(4) if applicable).

1AA-100

g) Pre- and post-judgment interest on the damages awarded to Plaintiffs and the Class, and that such interest be awarded at the highest legal rate from and after the date this class action complaint is first served on Defendants.

h) Defendants are to be jointly and severally responsible financially for the costs and expenses of a Court approved notice program through post and media designed to give immediate notification to the Class.

i) Further relief for Plaintiffs and the Class as may be just and proper.

## IX.  JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all the claims asserted in this Complaint so triable.

Dated: July 7, 2023          By:          */s/ Joseph R. Saveri*
                                             Joseph R. Saveri


Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:      (415) 500-6800
Facsimile:      (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:      (323) 968-2632
Facsimile:      (415) 395-9940
Email:          mb@butericklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

16
COMPLAINT

**1AA-101**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Paul Tremblay, et al.,<br><br>    Individual and Representative Plaintiffs,<br><br>    v.<br><br>OpenAI, Inc., et al.,<br><br>                    Defendants. | **Case No. 3:23-cv-03223-AMO**<br><br>~~**[PROPOSED]**~~ **ORDER GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED AND RELATING CASES** |
| Sarah Silverman, et al.,<br><br>    Individual and Representative Plaintiffs,<br><br>    v.<br><br>OpenAI, Inc., et al.,<br><br>Defendants. | **Case No. 4:23-cv-03416-KAW**<br><br>~~**[PROPOSED]**~~ **ORDER GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED AND RELATING CASES** |

Case No. 3:23-cv-03223-AMO

~~[PROPOSED]~~ ORDER GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE
RELATED AND RELATING CASES
**1AA-102**

1   Having considered Plaintiffs' Administrative Motion to Consider Whether Cases Should be

2 Related, as well as the pleadings on file, the Court GRANTS the Motion and ORDERS the Clerk to

3 relate the later-filed case of *Silverman, et al v. OPENAI, INC*, No. 4:23-cv-03416-KAW (N.D. Cal.) to

4 the first-filed case *Tremblay, et al v. OPENAI, INC. et al*, No. 3:23-cv-03223-AMO (N.D. Cal.).

5

6 **IT IS SO ORDERED.**

7 Dated: July __28__, 2023       _____

8               Judge Araceli Martínez-Olguín
                UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE
RELATED AND RELATING CASES

DANIEL J. MULLER, SBN 193396
dmuller@venturahersey.com
VENTURA HERSEY & MULLER, LLP
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL CHABON, DAVID HENRY HWANG, MATTHEW KLAM, RACHEL LOUISE SNYDER, AND AYELET WALDMAN,<br><br>individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OPENAI, INC., OPENAI, L.P., OPENAI OPCO, LLC, OPENAI GP LLC, OPENAI STARTUP FUND GP I, LLC, OPENAI STARTUP FUND I, LP, and OPENAI STARTUP FUND MANAGEMENT, LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Michael Chabon, David Henry Hwang, Matthew Klam, Rachel Louise Snyder, and Ayelet Waldman ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendants OpenAI, Inc., OpenAI, LP, OpenAI OpCo, LLC, OpenAI GP LLC, OpenAI Startup Fund I, LP, OpenAI Startup Fund GP I, LLC, and OpenAI Startup Fund Management, LLC (collectively, "Defendants" or "OpenAI"). Plaintiffs allege as follows based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters:

## NATURE OF ACTION

1.     This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a Class of authors holding copyrights in their published works arising from OpenAI's clear infringement of their intellectual property.

2.     OpenAI is a research company specializing in the development of artificial intelligence ("AI") products, such as ChatGPT.

3.     ChatGPT is an AI chatbot, which produces responses to users' text queries or prompts in a way that mimics human conversation.

4.     ChatGPT relies on other OpenAI products to function, namely Generative Pre-trained Transformer ("GPT") models. "Generative," in GPT, represents the model's ability to respond to text inquiries, while "Pre-trained" refers to the model's use of training datasets to program its responses, and "Transformer" concerns the model's underlying algorithm allowing it to function.

5.     OpenAI has released five versions of GPT models, and the current version of ChatGPT runs on GPT-3.5 and GPT-4, depending on whether the user has subscribed to the premium version of ChatGPT. Only the version of ChatGPT that runs on GPT-3.5 is available at no cost to the public.

6.     OpenAI's GPT models are types of "large language model," which is a form of deep-learning algorithm programmed through "training datasets," consisting of massive amounts of text data copied from the internet by OpenAI. The GPT models extract information from their training datasets in order to learn the statistical relationships between words, phrases,

**1AA-105**

and sentences, which allow them to generate coherent and contextually relevant responses to user prompts or queries.

7.      A large language model's responses to user prompts or queries are entirely and uniquely dependent on the text contained in its training dataset, necessarily processing and analyzing the information contained in its training dataset to generate responses.

8.      OpenAI incorporated Plaintiffs' and Class members' copyrighted works in datasets used to train its GPT models powering its ChatGPT product. Indeed, when ChatGPT is prompted, it generates not only summaries, but in-depth analyses of the themes present in Plaintiffs' copyrighted works, which is only possible if the underlying GPT model was trained using Plaintiffs' works.

9.      Plaintiffs and Class members did not consent to the use of their copyrighted works as training material for GPT models or for use with ChatGPT.

10.     Defendants, by and through their operation of ChatGPT, benefit commercially and profit handsomely from their unauthorized and illegal use of Plaintiffs' and Class members' copyrighted works.

## **JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this case arises under the Copyright Act (17 U.S.C. § 501) and the Digital Millennium Copyright Act (17 U.S.C. § 1202).

12.     This Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §§ 1965(b) & (d), because they maintain their principal places of business in, and are thus residents of, this judicial district, maintain minimum contacts with the United States, this judicial district, and this State, and they intentionally avail themselves of the laws of the United States and this state by conducting a substantial amount of business in California. For these same reasons, venue properly lies in this District pursuant to 28 U.S.C. §§ 1391(a), (b) and (c).

## PARTIES

### A.    Plaintiffs

13.    Plaintiff Michael Chabon ("Plaintiff Chabon") is a resident of California. Plaintiff Chabon is an author who owns registered copyrights in many works, including but not limited to, *The Mysteries of Pittsburgh, Wonder Boys, The Amazing Adventures of Kavalier & Clay, the Yiddish Policemen's Union, Gentlemen of the Road, Telegraph Avenue, Fight of the Century, Kingdom of Olive and Ash,* and *Moonglow.* Plaintiff Chabon is the recipient of the Pulitzer Prize for Fiction, Hugo, Nebula, Los Angeles Times Book Prize, and the National Jewish Book Award, among many others achieved over the span of a writing career spanning more than 30 years. Plaintiff Chabon's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

14.    Plaintiff David Henry Hwang ("Plaintiff Hwang") is a resident of New York. Plaintiff  Hwang is a playwright and screenwriter who owns registered copyrights in many works, including but not limited to, *M. Butterfly, Chinglish, Yellow Face, the Dance and the Railroad,* and *FOB,* as well as the Broadway musical, *Flower Drum Song* (2002 revival). Plaintiff Hwang is a Tony Award winner and three-time nominee, a Grammy Award winner who has been twice nominated, a three-time OBIE Award winner, and a three-time finalist for the Pulitzer Prize in Drama. Plaintiff Hwang's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

15.    Plaintiff Matthew Klam ("Plaintiff Klam") is a resident of Washington D.C. Plaintiff Klam is an author who owns registered copyrights in several works, including but not limited to, *Who is Rich?,* and *Sam the Cat and Other Stories.* Plaintiff Klam is a recipient of a Guggenheim Fellowship, a Robert Bingham/PEN Award, a Whiting Writer's Award, and a National Endowment of the Arts. Plaintiff Klam's works have been selected as Notable Books of the year by *The New York Times, The Los Angeles Times, the Kansas City Star, and the*

*Washington Post*. Plaintiff Klam's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

16.    Plaintiff Rachel Louise Snyder ("Plaintiff Snyder") is a resident of Washington, D.C. Plaintiff Snyder is an author who owns registered copyrights in many works, including but not limited to, *Women We Buried, Women We Burned*, *No Visible Bruises – What We Don't Know About Domestic Violence Can Kill Us*, *What We've Lost is Nothing*, and *Fugitive Denim: A Moving Story of People and Pants in the Borderless World of Global Trade*. Plaintiff Snyder is a Guggenheim fellow and the recipient of the J. Anthony Lukas Work-in-Progress Award, the Hillman Prize, and the Helen Bernstein Book Award, and was a finalist for the National Book Critics Circle Award, *Los Angeles Times* Book Prize, and Kirkus Award. Her work has appeared in *The New Yorker*, *The New York Times*, *Slate*, and in many other publications. Plaintiff Snyder's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

17.    Plaintiff Ayelet Waldman ("Plaintiff Waldman") is a resident of California. Plaintiff Waldman is an author and screen and television writer who owns registered copyrights in several works, including but not limited to, *Love and other Impossible Pursuits*, *Red Hook Road, Love and Treasure*, *Bad Mother, Daughter's Keeper, A Really Good Day, Fight of the Century, and Kingdom of Olives and Ash*. Plaintiff Waldman has been nominated for an Emmy and a Golden Globe and is the recipient of numerous awards including a Peabody, AFI award, and a Pen Award, among others. Plaintiff Waldman's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

18.    At all times relevant hereto, Plaintiffs have been and remain the holders of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101, *et seq.* and all amendments

thereto) to reproduce, distribute, display, or license the reproduction, distribution, and/or display the works identified in paragraphs 13-17, *supra*.

**B.     Defendants**

19.     Defendant OpenAI, Inc. is a Delaware nonprofit corporation with its principal place of business located at 3180 18th St., San Francisco, CA 94110.

20.     Defendant OpenAI, LP is a Delaware limited partnership with its principal place of business located at 3180 18th St., San Francisco, CA 94110. OpenAI, LP is a wholly owned subsidiary of OpenAI, Inc. that is operated for profit. OpenAI, Inc. controls OpenAI, LP directly and through the other OpenAI entities.

21.     Defendant OpenAI OpCo, LLC is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI OpCo, LLC is a wholly owned subsidiary of OpenAI, Inc. that is operated for profit. OpenAI, Inc. controls OpenAI OpCo, LLC directly and through the other OpenAI entities.

22.     Defendant OpenAI GP, LLC is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI GP, LLC is a general partner of OpenAI, LP. OpenAI GP manages and operates the day-to-day business and affairs of OpenAI, LP. OpenAI GP was aware of the unlawful conduct alleged herein and exercised control over OpenAI, LP throughout the Class Period. OpenAI, Inc. directly controls OpenAI GP.

23.     Defendant OpenAI Startup Fund I, LP is a Delaware limited partnership with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund I, LP was instrumental in the foundation of OpenAI, LP, including the creation of its business strategy and providing initial funding. OpenAI Startup Fund I was aware of the unlawful conduct alleged herein and exercised control over OpenAI, LP throughout the Class Period.

24.     Defendant OpenAI Startup Fund GP I, LLC is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund GP I, LLC is the general partner of OpenAI Startup Fund I.

OpenAI Startup Fund GP I is a party to the unlawful conduct alleged herein. OpenAI Startup Fund GP I manages and operates the day-to-day business and affairs of OpenAI Startup Fund I.

25.     Defendant OpenAI Startup Fund Management, LLC is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund Management, LLC is a party to the unlawful conduct herein. OpenAI Startup Fund Management was aware of the unlawful conduct alleged herein and exercised control over OpenAI, LP throughout the Class Period.

## FACTUAL ALLEGATIONS

**A.      OpenAI's Artificial Intelligence Products**

26.     OpenAI researches, develops, releases, and maintains AI products with the intention that its products "benefit all of humanity."[1]

27.     ChatGPT is among the products OpenAI has developed, engineered, released, and maintained, which utilizes another OpenAI product, GPT models, to respond to text prompts and queries in a natural, coherent, and fluent way through a web interface.

28.     OpenAI has released a series of upgrades to its GPT model, including GPT-1 (released June 2018), GPT-2 (February 2019), GPT-3 (May 2020), GPT-3.5 (March 2022), and most recently, GPT-4 (March 2023)[2].

29.     The current version of ChatGPT utilizes both GPT-3.5 and GPT-4; however, the version of ChatGPT that allows users to choose between using GPT-3.5 and GPT-4 is only available to subscribers at a cost of $20 per month. Otherwise, users are only able to access the version of ChatGPT that relies on the GPT-3.5 model.[3]

30.     OpenAI makes ChatGPT available to software developers through an application-programming interface ("API"), which allows developers to write software

---

[1] *About*, OpenAI, https://openai.com/about
[2] Fawad Ali, *GPT-1 to GPT-4: Each of OpenAI's GPT Models Explained and Compared*, Make Use Of (Apr. 11, 2023) https://www.makeuseof.com/gpt-models-explained-and-compared/
[3] *Introducing ChatGPT Plus*, OpenAI (Feb. 1, 2023) https://openai.com/blog/chatgpt-plus

programs that exchange data with ChatGPT.[4] OpenAI charges developers for access to ChatGPT by the API on the basis of usage.

**B.    OpenAI Uses Copyrighted Works in its Training Datasets**

31.    As mentioned in paragraph 6, *supra*, OpenAI pre-trains its GPT models using a dataset consisting of various sources and content types, including books, plays, articles, and webpage and other written works, to respond accurately to users' prompts and queries.

32.    OpenAI has admitted that, of all sources and content types that can be used to train the GPT models, written works, plays and articles are valuable training material because they offer the best examples of high-quality, long form writing and "contain[] long stretches of contiguous text, which allows the generative model to learn to condition on long-range information."[5]

33.    Upon information and belief, OpenAI builds the dataset it uses to train its GPT models by scraping the internet for text data.

34.    While casting a wide net across the internet to capture the most comprehensive set of content available allows OpenAI to better train its GPT models, this practice necessarily leads OpenAI to capture, download, and copy copyrighted written works, plays and articles.

35.    Among the content OpenAI has scraped from the internet to construct its training datasets are Plaintiffs' copyrighted works.

36.    In its June 2018 paper introducing the GPT-1 model, *Improving Language Understanding by Generative Pre-Training*, OpenAI revealed that it trained the GPT-1 model using two datasets: "Common Crawl," which is a massive dataset of web pages containing billions of words, and "BookCorpus," which is a collection of "over 7,000 unique unpublished books from a variety of genres including Adventure, Fantasy, and Romance."[6]

---

[4] *OpenAI API*, OpenAI (June 11, 2020) https://openai.com/blog/openai-api
[5] Alec Radford, *Improving Language Understanding by Generative-Pre-Training*, OpenAI (June 11, 2018).
[6] *Id.*; *see also* Fawad Ali, *GPT-1 to GPT-4: Each of OpenAI's GPT Models Explained and Compared*, Make Use Of (Apr. 11, 2023) https://www.makeuseof.com/gpt-models-explained-and-compared/

37.     BookCorpus is a controversial dataset, assembled in 2015 by a team of AI researchers funded by Google and Samsung for the sole purpose of training language models like GPT by copying written works from a website called Smashwords, which hosts self-published novels, making them available to readers at no cost.[7] Despite those novels being largely under copyright, they were copied into the BookCorpus dataset without consent, credit, or compensation to the authors.[8]

38.     OpenAI also copied many books while training GPT-3. In the July 2020 paper introducing GPT-3, *Language Models are Few-Shot Learners*, OpenAI disclosed, in addition to using the "Common Crawl" and "WebText" datasets that capture web pages, 16% of the GPT-3 training dataset came from "two internet-based book corpora," which OpenAI simply refers to as "Books1" and "Books2."[9]

39.     OpenAI has never revealed what books are part of the Books1 and Books2 datasets or how they were obtained. OpenAI has offered a few clues, admitting that these are internet-based datasets that are much larger than BookCorpus.[10] Based on the figures provided in its GPT-3 introductory paper, Books1 is nine times larger than BookCorpus, meaning it contains roughly 63,000 titles, and Books2 is 42 times larger, meaning it contains about 294,000 titles.[11]

40.     A limited number of internet-based book corpora exist that contain this much material, meaning there are only a handful of possible sources OpenAI could have used to train the GPT-3 model.

41.     Project Gutenberg is an online archive of e-books whose copyrights have expired. Project Gutenberg has long been popular for training AI systems due to the lack of copyright. In 2018, a team of AI researchers created the "Standardized Project Gutenberg Corpus," which

---

[7] Jack Bandy, *Dirty Secrets of BookCorpus, a Key Dataset in Machine Learning*, Medium (May 12, 2021) https://towardsdatascience.com/dirty-secrets-of-bookcorpus-a-key-dataset-in-machine-learning-6ee2927e8650
[8] *Id.*
[9] Tom B. Brown, *Language Models are Few-Shot Learners*, OpenAI (July 22, 2020).
[10] *Id.* at 9.
[11] *Id.*

contained "more than 50,000 books."[12] On that information and belief, the OpenAI Books1 dataset is based on either the Standardized Project Gutenberg Corpus or Project Gutenberg itself, because of the roughly similar sizes of the two datasets.

42.     As for the Books2 dataset, the only "internet-based books corpora" that have ever offered that much material are infamous "shadow library" websites, like Library Genesis ("LibGen"), Z-Library, Sci-Hub, and Bibliotik, which host massive collections of pirated books, research papers, and other text-based materials.[13] The materials aggregated by these websites have also been available in bulk through torrent systems.[14]

43.     These illegal shadow libraries have long been of interest to the AI-training community. For instance, an AI training dataset published in December 2020 by EleutherAI called "Books3" includes a recreation of the Bibliotik collection and contains nearly 200,000 books.[15] On information and belief, the OpenAI Books2 dataset includes books copied from these "shadow libraries," because those are the sources of trainable books most similar in nature and size to OpenAI's description of Books2.

44.     When OpenAI introduced GPT-4 in March 2023, the introductory paper contained no information about the dataset used to train it.[16] Instead, OpenAI claims that, "[g]iven both the competitive landscape and the safety implications of large-scale models like GPT-4, this report contains no further details about . . . dataset construction."[17]

45.     Regarding GPT-4, OpenAI has conceded that it did filter its dataset "to specifically reduce the quantity of inappropriate erotic text content," implying that it again used a large dataset containing text works.[18]

**C.     OpenAI Unlawfully Infringed Plaintiffs' Copyrights**

[12] Martin Gerlach, et al., *A standardized Project Gutenberg corpus for statistical analysis of natural language and quantitative linguistics*, Cornell University (Dec. 19, 2018), https://arxiv.org/pdf/1812.08092.pdf
[13] *See* Claire Woodcock, *'Shadow Libraries' Are Moving Their Pirated Books to The Dark Web After Fed Crackdowns*, Vice (Nov. 30, 2022).
[14] *Id.*
[15] *See* Alex Perry, *A giant online book collection Meta used to train its AI is gone over copyright issues*, Mashable (Aug. 18, 2023).
[16] *GPT-4 Technical Report*, OpenAI (Mar. 27, 2023).
[17] *Id.* at 2.
[18] *Id.* at 61.

46.     As explained, ChatGPT's responses to user queries or prompts, like other large language models, rely on the data upon which it is trained to generate responsive content. For example, if ChatGPT is prompted to generate a writing in the style of a certain author, GPT would generate content based on patterns and connections it learned from analysis of that author's work within its training dataset.

47.     On information and belief, the reason ChatGPT can generate a writing in the style of a certain author or accurately summarize a certain copyrighted book and provide in-depth analysis of that book is because it was copied by OpenAI and copied and analyzed by the underlying GPT model as part of its training data.

48.     When ChatGPT is prompted to summarize copyrighted written works authored by Plaintiffs, it generates accurate, in-depth summaries and analyses of their works.

49.     For example, when prompted, ChatGPT accurately summarized Plaintiff Chabon's novel *The Amazing Adventures of Kavalier & Clay.* When prompted to identify examples of trauma in the *Amazing Adventures of Kavalier & Clay,* ChatGPT identified six specific examples, including how the main character's "experiences in Europe, including witnessing the persecution of Jews and the loss of his family, haunt him throughout the story." When asked to write a paragraph in the style of *The Amazing Adventures of Kavalier & Clay,* ChatGPT generated a passage imitating Plaintiff Chabon's writing style including references to the characters dealing with "the weight of the world at war." *Exhibit A.*

50.     ChatGPT similarly provided in depth summaries and analyses of Plaintiff Hwang's play, *The Dance and the Railroad.* For example, when prompted, ChatGPT identified five key themes from *The Dance and the Railroad,* including "art and creativity as a form of resistance" and "using art as a form of escape from the harsh realities and dehumanization of labor."  Additionally, when prompted to produce a screenplay in the style of *The Dance and the Railroad,* ChatGPT produced a script written in Plaintiff Hwang's style, which generated a screenplay involving a Chinese laborer toiling on the Central Pacific Railroad that "believe[s] in the power of art to keep [their] spirits alive." *Exhibit B.*

51.     Likewise, ChatGPT provided in depth summaries and analyses of Plaintiff Klam's works. For example, when prompted, Chat GPT accurately summarized Plaintiff Klam's novel *Who is Rich?* and correctly analyzed the key relationships between the novel's central character and the other characters in the novel. When asked to identify the main themes in *Who is Rich?* Chat GPT accurately identified seven main themes of the novel including "mid-life crisis and identify." Further, when prompted to write a paragraph in the style of *Who is Rich?*, ChatGPT generated random passages authentically written in Plaintiff Klam's writing style, including a reference to navigating the "treacherous waters of midlife." *Exhibit C.*

52.     In the same vein, after being prompted to summarize Plaintiff Snyder's book, *What We've Lost is Nothing*, ChatGPT accurately identified themes included within the novel, such as "safety, perception, and the fragility of human relationships." Similarly, once prompted, ChatGPT accurately analyzed the theme of safety using a specific example from the text of Plaintiff Snyder's copyrighted work, explaining that "the theme of safety is examined through the lens of a series of burglaries that occur in a suburban neighborhood . . . and how these incidents affect the characters and their perceptions of the world around them." ChatGPT was also able to generate random passages authentically written in Plaintiff Snyder's writing style when prompted. *Exhibit D.*

53.     Additionally, ChatGPT provided in depth summaries and analyses of Plaintiff Waldman's works. For instance, when prompted to summarize Plaintiff Waldman's novel *Love and Other Impossible Pursuits*, Chat GPT accurately provided a summary and analysis of the novel. When prompted to identify specific instances of grief in *Love and other Impossible Pursuits*, ChatGPT identified five specific instances of grief, including the protagonist Emelia's loss of her infant daughter, a "loss that occurred before the events of the novel and [that] continue to haunt Emelia, affecting her emotional state and relationships." When prompted to write a paragraph in the style of *Love and Other Impossible Pursuits*, ChatGPT generated a paragraph imitating Plaintiff Waldman's writing style, including references to the "weight of her daughter's absence." *Exhibit E.*

54.   At no point did ChatGPT reproduce any of the copyright management information Plaintiffs included with their published works.

55.   Furthermore, at no point did Plaintiffs authorize OpenAI to download and copy their protected works, as described above.

## CLASS ALLEGATIONS

56.   Plaintiffs bring this action pursuant to the provisions of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following proposed Class:

> All persons or entities in the United States that own a United States copyright in any written work that OpenAI used to train any GPT model during the Class Period.

57.   Excluded from the Class are Defendant, its employees, officers, directors, legal representatives, heirs, successors, wholly- or partly-owned, and its subsidiaries and affiliates; proposed Class counsel and their employees; the judicial officers and associated court staff assigned to this case and their immediate family members; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.

58.   This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

59.   <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. On information and belief, there are at least tens of thousands of members in the Class. The Class members may be easily derived from Defendants' records.

60.   <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.   Whether Defendants engaged in the conduct alleged herein;

    b.   Whether Defendants violated the copyrights of Plaintiffs and the Class when they

downloaded and copied Plaintiffs' and the Class's copyrighted books;

c.   Whether ChatGPT itself is an infringing derivative work based on Plaintiffs' and the Class's copyrighted books;

d.   Whether the text responses of ChatGPT are infringing derivative works based on Plaintiffs' and the Class's copyrighted books;

e.   Whether Defendants violated the DMCA by removing copyright-management information from Plaintiffs' and the Class's copyrighted books;

f.   Whether Defendants were unjustly enriched by the unlawful conduct alleged herein;

g.   Whether Defendants' conduct violates the California Unfair Competition Law;

h.   Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

i.   Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

61.   <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

62.   <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other members of the Class they seeks to represent; Plaintiff have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

63.   <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

64.   <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior

to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Class to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**DIRECT COPYRIGHT INFRINGEMENT,**
**17 U.S.C. § 106,** *et seq.*

65.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

66.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Class against Defendants.

67.    As the owners of the registered copyrights in books used to train OpenAI's GPT models, Plaintiffs and the Class hold the exclusive rights to those works under 17 U.S.C. § 106.

68.    Plaintiffs have obtained copyright registrations for each of the works identified in Exhibit B.

69.    On information and belief, to train OpenAI's GPT models, OpenAI relied on harvesting mass quantities of content from the public internet, including Plaintiffs' and the Class's books, which are available in digital formats.

70.    Because OpenAI's GPT models cannot function without the expressive information extracted from Plaintiffs' and Class members' works and retained by the GPT

models, GPT and ChatGPT are themselves infringing derivative works without Plaintiffs' and Class members' permission and in violation of their exclusive rights under the Copyright Act.

71.    Plaintiffs and the Class never authorized OpenAI to make copies of their written works, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works). Each of those rights belong exclusively to Plaintiffs and Class members under copyright law.

72.    By and through the actions alleged above, OpenAI has infringed and will continue to infringe Plaintiffs' and the Class's copyrights.

73.    OpenAI's acts of copyright infringement have been intentional, willful, and in callous disregard of Plaintiffs' and Class members' rights. OpenAI knew at all relevant times that the datasets it used to train its GPT models contained copyrighted materials, and that its acts were in violation of the terms of use of the materials.

74.    OpenAI engaged in the infringing acts described herein for its own commercial benefit.

75.    As a direct and proximate result of OpenAI's wrongful conduct, Plaintiffs have been substantially and irreparably injured by OpenAI's acts of direct copyright infringement in an amount not readily capable of determination and, unless permanently enjoined from further acts of infringement and continuing to use and distribute GPT models trained using Plaintiffs' and Class members' copyrighted materials without permission, OpenAI will cause additional irreparable harm for which there is no adequate remedy at law. Plaintiff and the Class are thus entitled to permanent injunctive relief preventing OpenAI from engaging in any further infringement of Plaintiffs' and the Class's copyrighted works.

76.    Plaintiffs are further entitled to recover statutory damages, actual damages, restitution of profits, and other remedies provided by law.

**SECOND CAUSE OF ACTION**

**VICARIOUS COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 106**

77.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

78.     Plaintiffs bring this claim on behalf of herself and on behalf of the Class against Defendants.

79.     Defendant OpenAI, LP is the for-profit subsidiary of Defendant OpenAI, Inc. and is principally responsible for and dedicated to the development of the GPT models and ChatGPT products at issue in this action. Defendant OpenAI Startup Fund Management, LLC exercised control over Defendant OpenAI, LP, along with Defendant OpenAI GP, LLC, which is the general partner of Defendant OpenAI, LP, responsible for managing and operating the day-to-day business affairs of Defendant OpenAI, LP, and is wholly owned and controlled by Defendant OpenAI, Inc., along with Defendant OpenAI OpCo, LLC. Upon information and belief, Defendant OpenAI Startup Fund I, LP played a vital role in the foundation of Defendant OpenAI, LP, including providing initial funding and creating its business strategy, while Defendant OpenAI Startup Fund GP I, LLC is the general partner of Defendant OpenAI Startup Fund I, LP, responsible for managing and operating the day-to-day business affairs of Defendant OpenAI Startup Fund I, LP.

80.     Defendant OpenAI, LP directly infringed upon Plaintiffs' and Class members' copyrighted works through the unauthorized use and reproduction of the works, and preparation of derivative works by ChatGPT. As discussed above, Plaintiffs' and Class members' protected works were used to train GPT models. Because the GPT models are based on expressive information extracted from Plaintiffs' and Class members' works, Defendant OpenAI, LP is directly liable for unauthorized use, reproduction, display of copyrighted works, as well as creation of derivative works through ChatGPT's responses. Therefore, Defendant OpenAI, LP directly infringed upon Plaintiffs' and Class members' exclusive rights under 17 U.S.C. § 106.

81.     Defendants OpenAI, Inc., OpenAI OpCo, LLC, OpenAI GP, LLC, OpenAI Startup Fund GP I, LLC, OpenAI Startup Fund I, LP, and OpenAI Startup Management LLC are vicariously liable for the infringement alleged herein because they had the right and ability to supervise and control the infringing activity but failed to stop the infringing conduct.

82.     Furthermore, Defendants have a direct financial interest in the infringing conduct and received revenue in connection with the development, deployment, and advancement of the GPT models and ChatGPT. Each entity profited from the advancement of GPT models and ChatGPT.

83.     These committed acts of copyright infringement were willful, intentional, and malicious and thus subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act of up to $150,000 per infringement.

84.     Plaintiffs and Class members have been injured by Defendants' acts of vicarious copyright infringement. Plaintiffs and the Class are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

## THIRD CAUSE OF ACTION

### DIGITAL MILLENNIUM COPYRIGHT ACT – REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION
### 17 U.S.C. § 1202(B)

85.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

86.     Plaintiffs bring this claim on behalf of herself and on behalf of the Class against Defendants.

87.     Plaintiffs and Class members included one or more forms of copyright-management information in each of Plaintiffs' and Class members' infringed works, including: copyright notice, title and other identifying information, the name or other identifying information about the owners of each book, terms and conditions of use, and identifying numbers or symbols referring to the copyright-management information.

88.     Without the authority of Plaintiffs and the Class, OpenAI copied Plaintiffs' and Class members' works and used them as training data for its GPT software. By design, the training process does not preserve any copyright-management information. Therefore, OpenAI intentionally removed copyright-management information from Plaintiffs' and Class members' works in violation of 17 U.S.C. § 1202(b)(1).

89.     OpenAI's removal or alteration of Plaintiffs' and the Class's copyright-management information has been done knowingly and with the intent to induce, enable, facilitate, or conceal infringement of Plaintiffs' and the Class's copyrights.

90.     Without the authority of Plaintiffs and the Class, Defendants created derivative works based on Plaintiffs' and Class members' works. By distributing these works without their copyright-management information, OpenAI violated 17 U.S.C. § 1202(b)(3).

91.     OpenAI knew or had reasonable grounds to know that this removal of copyright-management information would facilitate copyright infringement by concealing the fact that every output from ChatGPT is an infringing derivative work, synthesized entirely from expressive information found in the training data.

92.     Plaintiffs and the Class have been injured by OpenAI's removal of copyright-management information. Plaintiffs and the Class are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law, including full costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

93.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

94.     Plaintiffs bring this claim on behalf of herself and on behalf of the Class against Defendants.

95.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

96.     Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above because it illegally collected and used Plaintiffs' and the Class's copyrighted works to train its GPT models.

97.     The unlawful business practices described herein violate the UCL because Defendants used Plaintiffs' and the Class's protected works to train its GPT software for Defendants' own commercial profit without Plaintiffs' and the Class's authorization. Defendants further knowingly designed ChatGPT to include portions or summaries of Plaintiffs' copyrighted works without attributions in its responses, and they unfairly profit from and take credit for developing a commercial product based on unattributed reproductions of those stolen writing and ideas.

98.     These acts and practices have deceived Plaintiffs and are likely to deceive the public into believing that Plaintiffs and the Class have granted OpenAI the right to use its copyrighted materials. In failing to disclose the sources of its training datasets and suppressing other material facts from Plaintiffs and Class members as well as the public, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

99.     The injuries suffered by Plaintiffs and Class members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class members should have reasonably avoided.

100.     Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

101.     Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues

generated as a result of such practices, and all other relief allowed under California Business &
Professions Code § 17200.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

102.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as
if they had been set forth in full herein.

103.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Class
against Defendants.

104.    Defendants owed a duty of care toward Plaintiffs and the Class in (1) obtaining
data to train its GPT models and (2) not using Plaintiffs' and the Class's protected works to train
its GPT models.

105.    Defendants have a common law duty to prevent foreseeable harm to others,
including Plaintiffs and members of the Class, who were foreseeable and probable victims of
Defendants' unlawful practices.

106.    Defendants breached their duty to exercise due care by negligently, carelessly,
and recklessly collecting, maintaining, and controlling Plaintiffs' and Class members' works
and engineering, designing, maintaining, and controlling systems—including ChatGPT—that
are trained on Plaintiffs' and Class members' works without their authorization.

107.    The damages suffered by Plaintiffs and the Class were the direct and reasonably
foreseeable result of Defendants' negligent breach of their duties to adequately design,
implement, and maintain reasonable practices to avoid infringing protected works without
consent of copyright holders.

108.    Defendants' negligence directly caused significant harm to Plaintiffs and the
Class.

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT

109.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as
though fully set forth herein.

110. By virtue of the unlawful, unfair, and deceptive conduct alleged herein, Defendants knowingly realized substantial revenue from the use of Plaintiffs' and Class members' copyrighted works for the commercial training of its GPT models used to power its ChatGPT product.

111. Defendant knew or should have known that Plaintiffs and the Class have invested substantial time and energy creating the works in which they hold a copyright.

112. Defendants were conferred significant benefits when they downloaded and copied Plaintiffs' and the Class's copyrighted works to train their GPT software without Plaintiffs' and the Class's permission. Defendant knowingly and willingly accepted and enjoyed those benefits.

113. By using Plaintiffs' and the Class's copyrighted works to train ChatGPT, Defendants caused Plaintiffs and the Class to suffer actual damages from the deprivation of the benefits of their work, including monetary damages.

114. Defendants derived profit and other economic benefits from the use of Plaintiffs' and the Class's copyrighted works to train ChatGPT.

115. It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits it has obtained from and/or at the expense of Plaintiffs and Class members.

116. As a direct and proximate cause of Defendants' unjust enrichment, Plaintiffs and the Class are entitled to restitution, attorneys' fees, costs and interest.

117. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs and the Class irreparable injury that cannot be compensated or measured in money.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class defined above, respectfully request that the Court enter judgment against Defendants and award the following relief:

A. Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representative of the Class, and Plaintiffs'

counsel as counsel for the Class;

       B.     An order awarding declaratory relief and temporarily and permanently enjoining Defendant from continuing the unlawful and unfair business practices alleged in this Complaint and to ensure that all applicable information set forth in 17 U.S.C. § 1203(b)(1) is included when appropriate;

       C.     An award of statutory and other damages under 17 U.S.C. § 504 for violations of the copyrights of Plaintiff and the Class by Defendants.

       D.     An award of statutory damages under 17 U.S.C. § 1203(b)(3) and 17 U.S.C. § 1203(c)(3), or in the alternative, an award of actual damages and any additional profits under 17 U.S.C. § 1203(c)(2);

       E.     A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

       F.     An order awarding any applicable statutory and civil penalties;

       G.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

       H.     An award of costs, expenses, and attorneys' fees as permitted by law; and

       I.     Such other or further relief as the Court may deem appropriate, just, and equitable.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: September 8, 2023                    Respectfully submitted,


                                           */s/ Daniel J. Muller*
                                           DANIEL J. MULLER, SBN 193396
                                           dmuller@venturahersey.com
                                           **VENTURA HERSEY & MULLER, LLP**
                                           1506 Hamilton Avenue
                                           San Jose, California 95125
                                           Telephone: (408) 512-3022
                                           Facsimile: (408) 512-3023
                                           dmuller@venturahersey.com


                                           */s/ Bryan L. Clobes*
                                           Bryan L. Clobes (*pro hav vice anticipated*)
                                           **CAFFERTY CLOBES MERIWETHER
                                                & SPRENGEL LLP**
                                           205 N. Monroe Street
                                           Media, PA 19063
                                           Tel: 215-864-2800
                                           bclobes@caffertyclobes.com


                                           Alexander J. Sweatman (*pro hav vice anticipated*)
                                           **CAFFERTY CLOBES MERIWETHER
                                                & SPRENGEL LLP**
                                           135 South LaSalle Street, Suite 3210
                                           Chicago, IL 60603
                                           Tel: 312-782-4880
                                           asweatman@caffertyclobes.com


                                           *Attorneys for Plaintiffs*

Rachel Geman
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
rgeman@lchb.com

Reilly T. Stoler (*pro hac vice* forthcoming)
Ian R. Bensberg (*pro hac vice* forthcoming)
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
rstoler@lchb.com
ibensberg@lchb.com

Scott J. Sholder
CeCe M. Cole
COWAN DEBAETS ABRAHAMS
  & SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone:  212.974.7474
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUTHORS GUILD, DAVID BALDACCI, MARY BLY, MICHAEL CONNELLY, SYLVIA DAY, JONATHAN FRANZEN, JOHN GRISHAM, ELIN HILDERBRAND, CHRISTINA BAKER KLINE, MAYA SHANBHAG LANG, VICTOR LAVALLE, GEORGE R.R. MARTIN, JODI PICOULT, DOUGLAS PRESTON, ROXANA ROBINSON, GEORGE SAUNDERS, SCOTT TUROW, and RACHEL VAIL, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OPENAI INC., OPENAI LP, OPENAI LLC, OPENAI GP LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI HOLDINGS LLC, OPENAI STARTUP FUND I LP, OPENAI STARTUP FUND GP I LLC, and OPENAI STARTUP FUND MANAGEMENT LLC, <br><br> Defendants. | No. 1:23-cv-8292 <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

1AA-128

## INTRODUCTORY STATEMENT

1.      Plaintiffs, authors of a broad array of works of fiction, bring this action under the Copyright Act seeking redress for Defendants' flagrant and harmful infringements of Plaintiffs' registered copyrights in written works of fiction. Defendants copied Plaintiffs' works wholesale, without permission or consideration. Defendants then fed Plaintiffs' copyrighted works into their "large language models" or "LLMs," algorithms designed to output human-seeming text responses to users' prompts and queries. These algorithms are at the heart of Defendants' massive commercial enterprise. And at the heart of these algorithms is systematic theft on a mass scale.

2.      Plaintiffs seek to represent a class of professional fiction writers whose works spring from their own minds and their creative literary expression. These authors' livelihoods derive from the works they create. But Defendants' LLMs endanger fiction writers' ability to make a living, in that the LLMs allow anyone to generate—automatically and freely (or very cheaply)—texts that they would otherwise pay writers to create. Moreover, Defendants' LLMs can spit out derivative works: material that is based on, mimics, summarizes, or paraphrases Plaintiffs' works, and harms the market for them.

3.      Unfairly, and perversely, without Plaintiffs' copyrighted works on which to "train" their LLMs, Defendants would have no commercial product with which to damage—if not usurp—the market for these professional authors' works. Defendants' willful copying thus makes Plaintiffs' works into engines of their own destruction.

4.      Defendants could have "trained" their LLMs on works in the public domain. They could have paid a reasonable licensing fee to use copyrighted works. What Defendants could *not* do was evade the Copyright Act altogether to power their lucrative commercial endeavor, taking whatever datasets of relatively recent books they could get their hands on without authorization.

1AA-129

There is nothing fair about this. Defendants' unauthorized use of Plaintiffs' copyrighted works thus presents a straightforward infringement case applying well-established law to well-recognized copyright harms.

5.      Defendants' chief executive Sam Altman has told Congress that he shares Plaintiffs' concerns. According to Altman, "Ensuring that the creator economy continues to be vibrant is an important priority for OpenAI. ... OpenAI does not want to replace creators. We want our systems to be used to empower creativity, and to support and augment the essential humanity of artists and creators."[1] Altman testified that OpenAI "think[s] that creators deserve control over how their creations are used" and that "content creators, content owners, need to benefit from this technology."[2] Altman also has represented that OpenAI has "licens[ed] content directly from content owners" for "training" purposes.[3] Not so from Plaintiffs. As to them, Altman and Defendants have proved unwilling to turn these words into actions.

6.      Plaintiffs thus seek damages for the lost opportunity to license their works, and for the market usurpation Defendants have enabled by making Plaintiffs unwilling accomplices in their own replacement; and a permanent injunction to prevent these harms from recurring.

7.      Plaintiffs complain of Defendants, on personal knowledge as to matters relating to Plaintiffs themselves, and on information and belief based on their and their counsels' reasonable investigation as to all other matters, as follows:

---

[1] Sam Altman, *Questions for the Record*, at 9–10 (June 22, 2023), *available at* https://www.judiciary.senate.gov/imo/media/doc/2023-05-16_-_qfr_responses_-_altman.pdf (last accessed Sept. 19, 2023).

[2] *Oversight of A.I.: Rules for Artificial Intelligence: Hearing Before the S. Judiciary Comm. Subcomm. on Privacy, Tech. and the Law*, 118th Cong. (2023) (testimony of OpenAI CEO Sam Altman), *available at* https://techpolicy.press/transcript-senate-judiciary-subcommittee-hearing-on-oversight-of-ai (last accessed Sept. 19, 2023).

[3] Altman, *Questions for the Record*, *supra*, at 10.

**1AA-130**

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§ 1338(a) because the action arises under the Copyright Act.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to Plaintiffs' claim occurred here.

10.     Venue is also proper in this District under 28 U.S.C. § 1400(a) because

Defendants or their agents reside or may be found here.

## PARTIES

I.    **Plaintiffs**

11.     Plaintiff **The Authors Guild** is a nonprofit 501(c)(6) organization based in New

York, New York.

12.     Plaintiff **David Baldacci** is an author and a resident of Vienna, Virginia.

13.     Plaintiff **Mary Bly** is an author and a resident of New York, New York.

14.     Plaintiff **Michael Connelly** is an author and a resident of Tampa, Florida.

15.     Plaintiff **Sylvia Day** is an author and a resident of Las Vegas, Nevada.

16.     Plaintiff **Jonathan Franzen** is an author and a resident of Santa Cruz, California.

17.     Plaintiff **John Grisham** is an author and a resident of Charlottesville, Virginia.

18.     Plaintiff **Elin Hilderbrand** is an author and a resident of Nantucket Island,

Massachusetts.

19.     Plaintiff **Christina Baker Kline** is an author and a resident of New York, New

York.

20.     Plaintiff **Maya Shanbhag Lang** is an author and a resident of Sleepy Hollow,

New York.

21.     Plaintiff **Victor LaValle** is an author and a resident of New York, New York.

1AA-131

22.     Plaintiff **George R.R. Martin** is an author and a resident of Santa Fe, New Mexico.

23.     Plaintiff **Jodi Picoult** is an author and a resident of Hanover, New Hampshire.

24.     Plaintiff **Douglas Preston** is an author and a resident of Santa Fe, New Mexico.

25.     Plaintiff **Roxana Robinson** is an author and a resident of New York, New York.

26.     Plaintiff **George Saunders** is an author and a resident of Santa Monica, California.

27.     Plaintiff **Scott Turow** is an author and a resident of Naples, Florida.

28.     Plaintiff **Rachel Vail** is an author and a resident of New York, New York.

## II.     Defendants (Collectively, "OpenAI" or "the OpenAI Defendants")

29.     The OpenAI Defendants are a tangled thicket of interlocking entities that generally keep from the public what the precise relationships among them are and what function each entity serves within the larger corporate structure.

30.     Defendant **OpenAI Inc.** is a Delaware corporation with its principal place of business in San Francisco, California.

31.     OpenAI Inc. was founded as a nonprofit research entity in 2015.

32.     Defendant **OpenAI LP** is a limited partnership formed under the laws of Delaware with its principal place of business in San Francisco, California.

33.     OpenAI LP was founded in 2019 to be the profit-making arm of OpenAI.

34.     OpenAI LP's general partner is OpenAI Inc., via Defendant OpenAI GP LLC.

35.     Defendant **OpenAI GP LLC** is a limited liability company formed under the laws of Delaware with its principal place of business in San Francisco, California.

36.     OpenAI GP LLC is the vehicle through which OpenAI Inc. controls OpenAI LP.

**1AA-132**

37.     Defendant **OpenAI LLC** is a limited liability company formed under the laws of Delaware with its principal place of business in San Francisco, California.

38.     OpenAI LLC owns some or all of the services and products provided by OpenAI.

39.     The sole member of OpenAI LLC is Defendant OpenAI OpCo LLC.

40.     Defendant **OpenAI OpCo LLC** is a limited liability company formed under the laws of Delaware with its principal place of business in San Francisco, California.

41.     The sole member of OpenAI OpCo LLC is Defendant OpenAI Global LLC.

42.     Defendant **OpenAI Global LLC** is a limited liability company formed under the laws of Delaware with its principal place of business in San Francisco, California.

43.     OpenAI Global's members are Microsoft Corporation and Defendant OAI Corporation LLC.

44.     Defendant **OAI Corporation LLC** is a limited liability company formed under the laws of Delaware with its principal place of business in San Francisco, California.

45.     OAI Corporation's only member is Defendant OpenAI Holdings LLC.

46.     Defendant **OpenAI Holdings LLC** is a limited liability company formed under the laws of Delaware with its principal place of business in San Francisco, California.

47.     The members of OpenAI Holdings LLC are Defendant OpenAI Inc. and Aestas LLC, an OpenAI-related limited liability company that is not a defendant here.

48.     Defendant **OpenAI Startup Fund I LP** is a limited partnership formed under the laws of Delaware with its principal place of business in San Francisco, California.

49.     Defendant **OpenAI Startup Fund GP I LLC** is a limited liability company formed under the laws of Delaware with its principal place of business in San Francisco, California.

1AA-133

50.     Defendant **OpenAI Startup Fund Management LLC** is a limited liability company formed under the laws of Delaware with its principal place of business in San Francisco, California.

## GENERAL FACTUAL ALLEGATIONS

I.     **Generative AI and Large Language Models**

51.     The terms "artificial intelligence" or "AI" refer generally to computer systems designed to imitate human cognitive functions.

52.     The terms "generative artificial intelligence" or "generative AI" refer specifically to systems that are capable of generating "new" content in response to user inputs called "prompts."

53.     For example, the user of a generative AI system capable of generating images from text prompts might input the prompt, "A lawyer working at her desk." The system would then attempt to construct the prompted image. Similarly, the user of a generative AI system capable of generating text from text prompts might input the prompt, "Tell me a story about a lawyer working at her desk." The system would then attempt to generate the prompted text.

54.     Recent generative AI systems designed to recognize input text and generate output text are built on "large language models" or "LLMs."

55.     LLMs use predictive algorithms that are designed to detect statistical patterns in the text datasets on which they are "trained" and, on the basis of these patterns, generate responses to user prompts. "Training" an LLM refers to the process by which the parameters that define an LLM's behavior are adjusted through the LLM's ingestion and analysis of large "training" datasets.

56.     Once "trained," the LLM analyzes the relationships among words in an input prompt and generates a response that is an approximation of similar relationships among words

**1AA-134**

in the LLM's "training" data. In this way, LLMs can be capable of generating sentences, paragraphs, and even complete texts, from cover letters to novels.

57.     "Training" an LLM requires supplying the LLM with large amounts of text for the LLM to ingest—the more text, the better. That is, in part, the *large* in *large language model*.

58.     As the U.S. Patent and Trademark Office has observed, LLM "training" "almost by definition involve[s] the reproduction of entire works or substantial portions thereof."[4]

59.     "Training" in this context is therefore a technical-sounding euphemism for "copying and ingesting."

60.     The quality of the LLM (that is, its capacity to generate human-seeming responses to prompts) is dependent on the quality of the datasets used to "train" the LLM.

61.     Professionally authored, edited, and published books—such as those authored by Plaintiffs here—are an especially important source of LLM "training" data.

62.     As one group of AI researchers (not affiliated with Defendants) has observed, "[b]ooks are a rich source of both fine-grained information, how a character, an object or a scene looks like, as well as high-level semantics, what someone is thinking, feeling and how these states evolve through a story."[5]

63.     In other words, books are the high-quality materials Defendants want, need, and have therefore outright pilfered to develop generative AI products that produce high-quality results: text that appears to have been written by a human writer.

---

[4] U.S. Patent & Trademark Office, *Public Views on Artificial Intelligence and Intellectual Property Policy* 29 (2020), *available at* https://www.uspto.gov/sites/default/files/documents/USPTO_AI-Report_2020-10-07.pdf (last accessed Sept. 19, 2023).

[5] Yukun Zhu *et al.*, *Aligning Books and Movies: Towards Story-like Visual Explanations by Watching Movies and Reading Books* 1 (2015), *available at* https://arxiv.org/pdf/1506.06724.pdf (last accessed Sept. 19, 2023).

**1AA-135**

64.     This use is highly commercial.

## II.     OpenAI's Willful Infringement of Plaintiffs' Copyrights

### A.     OpenAI

65.     OpenAI (specifically, Defendant OpenAI Inc.) was founded in 2015 as a non-profit organization with the self-professed goal of researching and developing AI tools "unconstrained by a need to generate financial return."[6]

66.     Four years later, in 2019, OpenAI relaunched itself (specifically, through Defendant OpenAI GP LLC and Defendant OpenAI LP) as a for-profit enterprise.

67.     Investments began pouring in. Microsoft Corporation, one of the world's largest technology companies, invested $1 billion in 2019, an estimated $2 billion in 2021, and a staggering $10 billion in 2023, for a total investment of $13 billion.

68.     Industry observers currently value OpenAI at around $29 billion.

### B.     GPT-N and ChatGPT

69.     OpenAI's LLMs are collectively referred to as "GPT-N," which stands for "Generative Pre-trained Transformer" (a specific type of LLM architecture), followed by a version number.

70.     GPT-3 was released in 2020 and exclusively licensed to Microsoft the same year.

71.     OpenAI further refined GPT-3 into GPT-3.5, which was released in 2022.

72.     In November 2022, OpenAI released ChatGPT, a consumer-facing chatbot application built on GPT-3.5.

---

[6] OpenAI, *Introducing OpenAI* (Dec. 11, 2015), https://openai.com/blog/introducing-openai (last accessed Sept. 19, 2023).

1AA-136

73.     ChatGPT's popularity exploded virtually overnight. By January 2023, less than three months after its release, the application had an estimated 100 million monthly active users, making it one of the fastest-growing consumer applications in history.

74.     GPT-4, the successor to GPT-3.5, was released in March 2023.

75.     GPT-4 underlies OpenAI's new subscription-based chatbot, called ChatGPT Plus, which is available to consumers for $20 per month.

76.     Defendants intend to earn billions of dollars from this technology.

77.     When announcing the release of ChatGPT Enterprise, a subscription-based high-capability GPT-4 application targeted for corporate clients, in August 2023, Defendants claimed that teams in "over 80% of Fortune 500 companies" were using its products.[7]

78.     GPT-4 also underlies Microsoft's Bing Chat product, offered through its Bing Internet search engine.

C.     **Knowingly "Training" GPT-N on Copyrighted Books**

79.     OpenAI does not disclose or publicize with specificity what datasets GPT-3, GPT-3.5, or GPT-4 were "trained" on. Despite its name, OpenAI treats that information as proprietary.

80.     To "train" its LLMs—including GPT-3, GPT-3.5, and GPT-4—OpenAI has reproduced copyrighted books—including copyrighted books authored by Plaintiffs here—without their authors' consent.

81.     OpenAI has admitted as much.

---

[7] OpenAI, *Introducing ChatGPT Enterprise* (Aug. 28, 2023), https://openai.com/blog/introducing-chatgpt-enterprise (last accessed Sept. 19, 2023).

1AA-137

82.     OpenAI has admitted that it has "trained" its LLMs on "large, publicly available datasets that include copyrighted works."[8]

83.     Again: OpenAI's "training" data is "derived from existing publicly accessible 'corpora' ... of data that include copyrighted works."[9]

84.     OpenAI has admitted that "training" LLMs "require[s] large amounts of data," and that "analyzing large corpora" of data "necessarily involves first making copies of the data to be analyzed."[10]

85.     OpenAI has admitted that, if it refrained from using copyrighted works in its LLMs' "training," it would "lead to significant reductions in model quality."[11]

86.     Accordingly, OpenAI has openly admitted to reproducing copyrighted works in the course of "training" its LLMs because such reproduction is central to the quality of its products.

87.     ChatGPT itself admits as much. In response to a query submitted to it in January 2023, the chatbot responded,

> It is possible that some of the books used to train me were under copyright. However, my training data was sourced from various publicly available sources on the internet, and it is likely that some of the books included in my training dataset were not authorized to be used. ... If any copyrighted material was included in my training data, it would have been used without the knowledge or consent of the copyright holder.

---

[8] OpenAI, *Comment Regarding Request for Comments on Intellectual Property Protection for Artificial Intelligence Innovation*, U.S. Patent and Trademark Office Dkt. No. PTO-C-2019-0038, at 1 (2019), *available at* https://www.uspto.gov/sites/default/files/documents/OpenAI_RFC-84-FR-58141.pdf (last accessed Sept. 19, 2023).

[9] *Id.* at 2.

[10] *Id.*

[11] *Id.* at 7 n.33.

1AA-138

88.     Until very recently, ChatGPT could be prompted to return quotations of text from copyrighted books with a good degree of accuracy, suggesting that the underlying LLM must have ingested these books in their entireties during its "training."

89.     Now, however, ChatGPT generally responds to such prompts with the statement, "I can't provide verbatim excerpts from copyrighted texts." Thus, while ChatGPT previously provided such excerpts and in principle retains the capacity to do so, it has been restrained from doing so, if only temporarily, by its programmers.

90.     In light of its timing, this apparent revision of ChatGPT's output rules is likely a response to the type of activism on behalf of authors exemplified by the Open Letter addressed to OpenAI and other companies by Plaintiff The Authors Guild, which is discussed further below.

91.     Instead of "verbatim excerpts," ChatGPT now offers to produce a summary of the copyrighted book, which usually contains details not available in reviews and other publicly available material—again suggesting that the underlying LLM must have ingested the entire book during its "training."

92.     OpenAI is characteristically opaque about where and how it procured the entirety of these books, including Plaintiffs' copyrighted works.

93.     OpenAI has discussed limited details about the datasets used to "train" GPT-3.

94.     OpenAI admits that among the "training" datasets it used to "train" the model were "Common Crawl," and two "high-quality," "internet-based books corpora" which it calls "Books1" and "Books2."[12]

---

[12] Tom B. Brown *et al.*, *Language Models Are Few-Shot Learners* 8 (2020), *available at* https://arxiv.org/pdf/2005.14165.pdf (last accessed Sept. 19, 2023).

1AA-139

95.     Common Crawl is a vast and growing corpus of "raw web page data, metadata extracts, and text extracts" scraped from billions of web pages. It is widely used in "training" LLMs, and has been used to "train," in addition to GPT-N, Meta's LlaMa, and Google's BERT. It is known to contain text from books copied from pirate sites.[13]

96.     OpenAI refuses to discuss the source or sources of the Books2 dataset.

97.     Some independent AI researchers suspect that Books2 contains or consists of ebook files downloaded from large pirate book repositories such as Library Genesis or "LibGen," "which offers a vast repository of pirated text."[14]

98.     LibGen is already known to this Court as a notorious copyright infringer.[15]

99.     Other possible candidates for Books2's sources include Z-Library, another large pirate book repository that hosts more than 11 million books, and pirate torrent trackers like Bibliotik, which allow users to download ebooks in bulk.

100.     Websites linked to Z-Library appear in the Common Crawl corpus and have been included in the "training" dataset of other LLMs.[16]

101.     Z-Library's Internet domains were seized by the FBI in February 2022, only months after OpenAI stopped "training" GPT-3.5 in September 2021.

---

[13] Alex Hern, *Fresh Concerns Raised Over Sources of Training Material for AI Systems*, The Guardian (Apr. 20, 2023), *available at* https://www.theguardian.com/technology/2023/apr/20/fresh-concerns-training-material-ai-systems-facist-pirated-malicious (last accessed Sept. 19, 2023).

[14] Kate Knibbs, *The Battle Over Books3 Could Change AI Forever*, Wired (Sept. 4, 2023), *available at* https://www.wired.com/story/battle-over-books3 (last accessed Sept. 19, 2023).

[15] *See Elsevier Inc. v. Sci-Hub*, No. 1:15-cv-4282-RWS (S.D.N.Y.).

[16] Kevin Schaul *et al.*, *Inside the Secret List of Websites that Make AI Like ChatGPT Sounds Smart*, The Washington Post (Apr. 19, 2023), *available at* https://www.washingtonpost.com/technology/interactive/2023/ai-chatbot-learning (last accessed Sept. 19, 2023).

1AA-140

102.    The disclosed size of the Books2 dataset (55 billion "tokens," the basic units of textual meaning such as words, syllables, numbers, and punctuation marks) suggests it comprises over 100,000 books.

103.    "Books3," a dataset compiled by an independent AI researcher, is comprised of nearly 200,000 books downloaded from Bibliotik, and has been used by other AI developers to "train" LLMs.

104.    The similarities in the sizes of Books2 and Books3, and the fact that there are only a few pirate repositories on the Internet that allow bulk ebook downloads, strongly indicates that the books contained in Books2 were also obtained from one of the notorious repositories discussed above.

105.    OpenAI has not discussed the datasets used to "train" GPT-3.5, GPT-4, or their source or sources.

106.    GPT-3.5 and GPT-4 are significantly more powerful than their predecessors. GPT 3.5 contains roughly 200 billion parameters, and GPT 4 contains roughly 1.75 trillion parameters, compared to GPT-3's roughly 175 billion parameters.

107.    The growth in power and sophistication from GPT-3 to GPT-4 suggests a correlative growth in the size of the "training" datasets, raising the inference that one or more very large sources of pirated ebooks discussed above must have been used to "train" GPT-4.

108.    There is no other way OpenAI could have obtained the volume of books required to "train" a powerful LLM like GPT-4.

1AA-141

109.     In short, OpenAI admits it needs[17] and uses[18] "large, publicly available datasets that include copyrighted works"[19]—and specifically, "high-quality"[20] copyrighted books—to "train" its LLMs; pirated sources of such "training" data are readily available; and one or more of these sources contain Plaintiffs' works.

110.     Defendants knew that their "training" data included texts protected by copyright but willfully proceeded without obtaining authorization.

**D.     GPT-N's and ChatGPT's Harm to Authors**

111.     ChatGPT and the LLMs underlying it seriously threaten the livelihood of the very authors—including Plaintiffs here, as discussed specifically below—on whose works they were "trained" without the authors' consent.

112.     Goldman Sachs estimates that generative AI could replace 300 million full-time jobs in the near future, or one-fourth of the labor currently performed in the United States and Europe.

113.     Already, writers report losing income from copywriting, journalism, and online content writing—important sources of income for many book authors. The Authors Guild's most recent authors earnings study[21] shows a median writing-related income for full-time authors of just over $20,000, and that full-time traditional authors earn only half of that from their books.

---

[17] OpenAI, *Comment Regarding Request for Comments*, *supra*, at 7 n.33.

[18] *Id.* at 2.

[19] *Id.* at 1.

[20] Brown *et al.*, *Few-Shot Learners*, *supra*, at 8.

[21] Authors Guild, "Top Takeaways from the 2023 Author Income Survey (2023), https://authorsguild.org/news/top-takeaways-from-2023-author-income-survey (last accessed Sept. 19, 2023).

**1AA-142**

The rest comes from activities like content writing—work that is starting to dry up as a result of generative AI systems like ChatGPT.

114.    An Authors Guild member who writes marketing and web content reported losing 75 percent of their work as a result of clients switching to AI.

115.    Another content writer (unrelated to the Plaintiffs here) told the *Washington Post* that half of his annual income (generated by ten client contracts) was erased when the clients elected to use ChatGPT instead.[22]

116.    Recently, the owner of popular online publications such as *Gizmodo*, *Deadspin*, *The Root*, *Jezebel* and *The Onion* came under fire for publishing an error-riddled, AI-generated piece, leading the Writers Guild of America to demand "an immediate end of AI-generated articles" on the company's properties.[23]

117.    In a survey of authors conducted by The Authors Guild in March 2023 (early in ChatGPT's lifecycle), 69 percent of respondents said they consider generative AI a threat to their profession, and 90 percent said they believe that writers should be compensated for the use of their work in "training" AI.

118.    As explained above, until recently, ChatGPT provided verbatim quotes of copyrighted text. Currently, it instead readily offers to produce summaries of such text. These summaries are themselves derivative works, the creation of which is inherently based on the

---

[22] Pranshu Verma & Gerrit De Vynck, *ChatGPT Took Their Jobs. Now They Walk Dogs and Fix Air Conditioners*, The Washington Post (June 2, 2023), *available at* https://www.washingtonpost.com/technology/2023/06/02/ai-taking-jobs (last accessed Sept. 19, 2023).

[23] Todd Spangler, *WGA Slams G/O Media's AI-Generated Articles as 'Existential Threat to Journalism,' Demands Company End Practice*, Variety (July 12, 2023), https://variety.com/2023/digital/news/wga-slams-go-media-ai-generated-articles-existential-threat-1235668496 (last accessed Sept. 19, 2023).

original unlawfully copied work and could be—but for ChatGPT—licensed by the authors of the underlying works to willing, *paying* licensees.

119.    ChatGPT creates other outputs that are derivative of authors' copyrighted works. Businesses are sprouting up to sell prompts that allow users to enter the world of an author's books and create derivative stories within that world. For example, a business called Socialdraft offers long prompts that lead ChatGPT to engage in "conversations" with popular fiction authors like Plaintiff Grisham, Plaintiff Martin, Margaret Atwood, Dan Brown, and others about their works, as well as prompts that promise to help customers "Craft Bestselling Books with AI."

120.    OpenAI allows third parties to build their own applications on top of ChatGPT by making it available through an "application programming interface" or "API." Applications integrated with the API allow users to generate works of fiction, including books and stories similar to those of Plaintiffs and other authors.[24]

121.    ChatGPT is being used to generate low-quality ebooks, impersonating authors, and displacing human-authored books.[25] For example, author Jane Friedman discovered "a cache of garbage books" written under her name for sale on Amazon.[26]

122.    Plaintiffs and other professional writers are thus reasonably concerned about the risks OpenAI's conduct poses to their livelihoods specifically and the literary arts generally.

---

[24] Adi Robertson, *I Tried the AI Novel-Writing Tool Everyone Hates, and It's Better than I Expected*, The Verge (May 24, 2023), https://www.theverge.com/2023/5/24/23732252/sudowrite-story-engine-ai-generated-cyberpunk-novella (last accessed Sept. 19, 2023).

[25] Jules Roscoe, *AI-Generated Books of Nonsense Are All Over Amazon's Bestseller Lists*, Vice (June 28, 2023), https://www.vice.com/en/article/v7b774/ai-generated-books-of-nonsense-are-all-over-amazons-bestseller-lists (last accessed Sept. 19, 2023).

[26] Pilar Melendez, *Famous Author Jane Friedman Finds AI Fakes Being Sold Under Her Name on Amazon*, The Daily Beast (Aug. 8, 2023), https://www.thedailybeast.com/author-jane-friedman-finds-ai-fakes-being-sold-under-her-name-on-amazon (last accessed Sept. 19, 2023).

1AA-144

123.    Plaintiff The Authors Guild, among others, has given voice to these concerns on behalf of working American authors.

124.    The Authors Guild is the nation's oldest and largest professional writers' organization. It "exists to support working writers and their ability to earn a living from authorship."[27]

125.    Among other principles, The Authors Guild holds that "authors should not be required to write or speak without compensation. Writers, like all professionals, should receive fair payment for their work."[28]

126.    In June 2023, The Authors Guild wrote an open letter (the "Open Letter") calling on OpenAI and other major technology companies to fairly license authors' works for use in LLM "training."

127.    The Open Letter emphasizes that "[g]enerative AI technologies built on large language models owe their existence to our writings," and protests "the inherent injustice in exploiting our works as part of your AI systems without our consent, credit, or compensation."[29]

128.    The Open Letter also points to the risks to authors' livelihoods posed by generative AI like GPT-N and ChatGPT: "As a result of embedding our writings in your systems, generative AI threatens to damage our profession by flooding the market with mediocre, machine-written books, stories, and journalism based on our work. ... The introduction of generative AI threatens ... to make it even more difficult, if not impossible, for writers—

---

[27] Authors Guild, https://authorsguild.org (last accessed Sept. 19, 2023).

[28] Authors Guild, *Principles*, https://authorsguild.org/about/principles (last accessed Sept. 19, 2023).

[29] Open Letter from The Authors Guild to Sam Altman *et al.*, at 1, *available at* https://authorsguild.org/app/uploads/2023/07/Authors-Guild-Open-Letter-to-Generative-AI-Leaders.pdf (last accessed Sept. 19, 2023).

especially young writers and voices from under-represented communities—to earn a living from their profession."[30]

129.    To date, the Open Letter has been signed by almost 12,000 authors,[31] including many Plaintiffs here.[32]

130.    In short, the success and profitability of OpenAI are predicated on mass copyright infringement without a word of permission from or a nickel of compensation to copyright owners, including Plaintiffs here. OpenAI knows it; its investors know it; and Plaintiffs know it.

## PLAINTIFF-SPECIFIC ALLEGATIONS

131.    Plaintiffs' works collectively span a wide range of commercial fiction whose continuing commercial viability is endangered by OpenAI. Each author represented here has a distinct voice, a distinct style, and distinct creative expression. But all Plaintiffs have suffered identical harms from OpenAI's infringing reproductions of their works.

132.    The contents of the datasets OpenAI has used to "train" its LLMs are peculiarly within its knowledge and not publicly disclosed, such that Plaintiffs are unable discern those contents with perfect accuracy. Plaintiffs make the specific allegations of infringement below based on what is known about OpenAI's training practices; what is known about the contents, uses, and availability of the pirate book repositories such as LibGen, Bibliotik, and Z-Library; and the results of Plaintiffs' testing of ChatGPT.

133.    Most Plaintiffs have written more books than are included in this Complaint.

---

[30] *Id.*

[31] Authors Guild, *Open Letter to Generative AI Leaders*, https://actionnetwork.org/petitions/authors-guild-open-letter-to-generative-ai-leaders (last accessed Sept. 19, 2023).

[32] *See* Open Letter, *supra*, at 2–124.

1AA-146

I.    **Plaintiff The Authors Guild**

134.    The Authors Guild is the owner of the registered copyrights in Mignon Eberhart's works, including *While the Patient Slept* and *The Patient in Room 18*.

135.    Mignon G. Eberhart (1899–1996), dubbed "America's Agatha Christie," was the author of dozens of mystery novels over nearly sixty years. Several of Eberhart's novels have been adapted for film, including *Hasty Wedding*, *Mystery House*, *While the Patient Slept*, *The Patient in Room 18*, and *The White Cockatoo*.

136.    The Authors Guild is the owner or beneficial owner of the registered copyrights in eleven (11) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Authors Guild Infringed Works").

137.    The registration information for the Authors Guild Infringed Works is contained in Exhibit A to this Complaint, at 1.

138.    OpenAI unlawfully and willfully copied the Authors Guild Infringed Works and used them to "train" OpenAI's LLMs without The Authors Guild's permission.

139.    For example, when prompted, ChatGPT accurately generated summaries of several of the Authors Guild Infringed Works, including summaries for *While the Patient Slept* and *The Patient in Room 18.*

140.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *While the Patient Slept*, one of the Authors Guild Infringed Works, and titled the infringing and unauthorized derivative "Shadows Over Federie House," using the same characters from Eberhart's existing book.

141.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Patient in Room 18*, one of the Authors Guild

1AA-147

Infringed Works, and titled the infringing and unauthorized derivative "Echoes from Room 18," using the same characters from Eberhart's existing book.

142.    When prompted, ChatGPT generated an accurate summary of the final chapter of *While the Patient Slept*, one of the Authors Guild Infringed Works.

143.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Authors Guild Infringed Works.

## II.    **Plaintiff Baldacci**

144.    Baldacci is a best-selling author, philanthropist, and lawyer whose novels have been adapted for film and television, published in over 45 languages and in more than 80 countries, with 150 million copies sold worldwide. Some of Baldacci's most popular works include books in the *Camel Club* series, *Vega Jane* series, and *Archer* series.

145.    Baldacci is a member of The Authors Guild.

146.    Baldacci is the sole author of and owner or beneficial owner of the registered copyrights in forty-one (41) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Baldacci Infringed Works").

147.    The registration information for the Baldacci Infringed Works is contained in Exhibit A to this Complaint, at 1–2.

148.    OpenAI unlawfully and willfully copied the Baldacci Infringed Works and used them to "train" OpenAI's LLMs without Baldacci's permission.

149.    For example, when prompted, ChatGPT accurately generated summaries of several of the Baldacci Infringed Works, including summaries of *The Collectors*, *The Finisher*, and *One Good Deed*.

150.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Simple Truth*, one of the Baldacci Infringed

1AA-148

Works, and titled the infringing and unauthorized derivative "The Complex Justice," using the same characters from Baldacci's existing book.

151.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Total Control*, one of the Baldacci Infringed Works, and titled the infringing and unauthorized derivative "Total Control: Unfinished Business," using the same characters from Baldacci's existing book.

152.     When prompted, ChatGPT generated an accurate summary of the final chapter of *Long Road to Mercy*, one of the Baldacci Infringed Works.

153.     ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Baldacci Infringed Works.

### III.     Plaintiff Bly

154.     Bly is a tenured professor and chair of the English department at Fordham University who also writes best-selling Regency and Georgian romance novels under the pen name Eloisa James. Some of Bly's most popular works include books in the *Desperate Duchesses* series, the *Fairy Tales* series, the *Wildes of Lindow Castle* series, and the *Essex* series.

155.     Bly is a Vice President of The Authors Guild Council and a member of The Authors Guild.

156.     Bly is the sole author of and owner or beneficial owner of the registered copyrights in thirty-three (33) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Bly Infringed Works").

157.     The registration information for the Bly Infringed Works is contained in Exhibit A to this Complaint, at 2–3.

158.     OpenAI unlawfully and willfully copied the Bly Infringed Works used them to "train" OpenAI's LLMs without Bly's permission.

**1AA-149**

159.    For example, when prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *This Duchess of Mine*, one of the Bly Infringed Works, and titled the infringing and unauthorized derivative "The Duchess' New Dawn," using the same characters from Bly's existing book.

160.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *An Affair Before Christmas*, one of the Bly Infringed Works, and titled the infringing and unauthorized derivative "Whispers of Winter," using the same characters from Bly's existing book.

161.    When prompted, ChatGPT generated an accurate summary of the final chapter of *A Duke of Her Own*, one of the Bly Infringed Works.

162.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Bly Infringed Works.

## IV.    **Plaintiff Connelly**

163.    Connelly is a best-selling author with over 85 million copies of his books sold worldwide and translated into 45 foreign languages. Some of Connelly's most popular novels include *The Lincoln Lawyer*, *City of Bones*, and *The Law of Innocence*.

164.    Connelly is a member of The Authors Guild.

165.    Connelly is the sole author of and owner or beneficial owner of the registered copyrights in forty-six (46) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Connelly Infringed Works").

166.    The registration information for the Connelly Infringed Works is contained in Exhibit A to this Complaint, at 3–4.

167.    OpenAI unlawfully and willfully copied the Connelly Infringed Works and used them to "train" OpenAI's LLMs without Connelly's permission.

1AA-150

168.    For example, when prompted, ChatGPT accurately generated summaries of several of the Connelly Infringed Works, including summaries for *The Black Echo*, *The Poet*, and *The Crossing*.

169.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Lincoln Lawyer*, one of the Connelly Infringed Works, and titled the infringing and unauthorized derivative "The City's Shadows," using the same characters from Connelly's existing book.

170.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Brass Verdict*, one of the Connelly Infringed Works, and titled the infringing and unauthorized derivative "Double-Edged Justice," using the same characters from Connelly's existing book.

171.    When prompted, ChatGPT generated an accurate summary of the final chapter of *The Late Show*, one of the Connelly Infringed Works.

172.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Connelly Infringed Works.

**V.    <u>Plaintiff Day</u>**

173.    Day is a best-selling author of over twenty award-winning novels, including ten *New York Times* best sellers and thirteen *USA Today* best sellers. Her work has been translated into forty-one languages. Some of Day's most popular novels include books in *The Crossfire®️ Saga* series, the *Georgian* series, and the *Marked* series.

174.    Day is a member of The Authors Guild Council and a member of The Authors Guild.

**1AA-151**

175.    Day is the sole author of and owner or beneficial owner of the registered copyrights in thirty-one (31) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Day Infringed Works").

176.    The registration information for the Day Infringed Works is contained in Exhibit A to this Complaint, at 4.

177.    OpenAI unlawfully and willfully copied the Day Infringed Works and used them to "train" OpenAI's LLMs without Day's permission.

178.    For example, when prompted, ChatGPT accurately generated summaries of several of the Day Infringed Works, including summaries for *Bared to You*, *One With You*, and *Ask For It*.

179.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *A Touch of Crimson*, one of the Day Infringed Works, and titled the infringing and unauthorized derivative "Crimson Temptations: A Love Rekindled," using the same characters from Day's existing book.

180.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Butterfly in Frost*, one of the Day Infringed Works, and titled the infringing and unauthorized derivative "Butterfly in Frost: Embers of Desire," using the same characters from Day's existing book.

181.    When prompted, ChatGPT generated an accurate summary of the final chapter of *The Stranger I Married*, one of the Day Infringed Works.

182.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Day Infringed Works.

1AA-152

VI.     **Plaintiff Franzen**

183.     Franzen is a novelist whose honors include the National Book Award, the James Tait Black Memorial Award, the Heartland Prize, Die Welt Literature Prize, the Budapest Grand Prize, and the first Carlos Fuentes Medal awarded at the Guadalajara International Book Fair. Franzen is a member of the American Academy of Arts and Letters, the American Academy of Arts and Sciences, the German Akademie der Künste, and the French Ordre des Arts et des Lettres. Some of Franzen's most popular novels include *The Corrections, Purity,* and *Freedom*.

184.     Franzen is a member of The Authors Guild.

185.     Franzen is the sole author of and owner or beneficial owner of the registered copyrights in five (5) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Franzen Infringed Works").

186.     The registration information for the Franzen Infringed Works is contained in Exhibit A to this Complaint, at 4–5.

187.     OpenAI unlawfully and willfully copied the Franzen Infringed Works and used them to "train" OpenAI's LLMs without Franzen's permission.

188.     For example, when prompted, ChatGPT accurately generated summaries of several of the Franzen Infringed Works, including summaries for *The Corrections*, *Purity*, and *Freedom*.

189.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Corrections*, one of the Franzen Infringed Works, and titled the infringing and unauthorized derivative "Revisions," using the same characters from Franzen's existing book.

190.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Twenty-Seventh City*, one of the Franzen

Infringed Works, and titled the infringing and unauthorized derivative "The Rising Metropolis," using the same characters from Franzen's existing book.

191.    When prompted, ChatGPT generated an accurate summary of the final chapter of *Freedom*, one of the Franzen Infringed Works.

192.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Franzen Infringed Works.

## VII.    **Plaintiff Grisham**

193.    Grisham is a civically engaged and best-selling author. His award-winning work has been translated into approximately 50 languages and adapted for both television and film. Some of Grisham's most popular novels include *The Pelican Brief*, *The Runaway Jury*, and *The Rainmaker*.

194.    Grisham is a member of The Authors Guild.

195.    Grisham is the sole author of and owner or beneficial owner of the registered copyrights in twenty-six (26) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Grisham Infringed Works").

196.    The registration information for the Grisham Infringed Works is contained in Exhibit A to this Complaint, at 5.

197.    OpenAI unlawfully and willfully copied the Grisham Infringed Works and used them to "train" OpenAI's LLMs without Grisham's permission.

198.    For example, when prompted, ChatGPT accurately generated summaries of several of the Grisham Infringed Works, including summaries for *The Chamber*, *The Client*, and *The Firm*.

199.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The King of Torts*, one of the Grisham Infringed

Works, and titled the infringing and unauthorized derivative "The Kingdom of Consequences," using the same characters from Grisham's existing book.

200.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Last Juror*, one of the Grisham Infringed Works, and titled the infringing and unauthorized derivative "The Juror's Dilemma," using the same characters from Grisham's existing book.

201.    When prompted, ChatGPT generated an accurate summary of the final chapter of *The Litigators*, one of the Grisham Infringed Works.

202.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Grisham Infringed Works.

## VIII.  <u>Plaintiff Hilderbrand</u>

203.    Hilderbrand is a best-selling author, whose works include novels in the romance genre adapted for television. Hilderbrand has previously taught writing at the University of Iowa. Some of Hilderbrand's most popular novels include *The Summer of '69*, *The Identicals*, and *The Perfect Couple*.

204.    Hilderbrand is the sole author of and owner or beneficial owner of the registered copyrights in twenty-nine (29) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Hilderbrand Infringed Works").

205.    The registration information for the Hilderbrand Infringed Works is contained in Exhibit A to this Complaint, at 5–6.

206.    OpenAI unlawfully and willfully copied the Hilderbrand Infringed Works and used them "train" OpenAI's LLMs without Hilderbrand's permission.

1AA-155

207.    For example, when prompted, ChatGPT accurately generated summaries of several of the Hilderbrand Infringed Works, including summaries for *The Summer of '69*, *The Identicals*, and *The Perfect Couple*.

208.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Identicals*, one of the Hilderbrand Infringed Works, and titled the infringing and unauthorized derivative "The Reckoning of Twins," using the same characters from Hilderbrand's existing book.

209.    When prompted, ChatGPT generated an accurate summary of the final chapter of *The Perfect Couple*, one of the Hilderbrand Infringed Works.

210.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Hilderbrand Infringed Works.

## IX.    <u>Plaintiff Kline</u>

211.    Kline is a globally published author who writes best-selling novels and has taught different disciplines of writing at Yale University, New York University, and the University of Virginia. Some of Kline's most popular novels include *Orphan Train*, *A Piece of the World*, and *Bird in Hand*.

212.    Kline is a member of The Authors Guild Council and a member of The Authors Guild.

213.    Kline is the sole author of and owner or beneficial owner of the registered copyrights in five (5) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Kline Infringed Works").

214.    The registration information for the Kline Infringed Works is contained in Exhibit A to this Complaint, at 6.

1AA-156

215.     OpenAI unlawfully and willfully copied the Kline Infringed Works and used them to "train" OpenAI's LLMs without Kline's permission.

216.     For example, when prompted, ChatGPT accurately generated summaries of several of the Kline Infringed Works, including summaries for *Orphan Train*, *A Piece of the World*, and *Bird in Hand.*

217.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Orphan Train*, one of the Kline Infringed Works, and titled the infringing and unauthorized derivative "Legacy Rails," using the same characters from Kline's existing book.

218.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Bird in Hand*, one of the Kline Infringed Works, and titled the infringing and unauthorized derivative "Ties That Bind," using the same characters from Kline's existing book.

219.     When prompted, ChatGPT generated an accurate summary of the final chapter of *A Piece of the World*, one of the Kline Infringed Works.

220.     ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Kline Infringed Works.

## X.     **Plaintiff Lang**

221.     Lang is an author and teacher who holds a doctorate in Comparative Literature. Lang is the author of the novel *The Sixteenth of June*.

222.     Lang is the President and a member of The Authors Guild.

223.     Lang is the sole author of and owner or beneficial owner of the registered copyrights in one (1) written work of fiction that OpenAI ingested and copied without permission (the "Lang Infringed Work").

**1AA-157**

224. The registration information for the Lang Infringed Work is contained in Exhibit A to this Complaint, at 6.

225. OpenAI unlawfully and willfully copied the Lang Infringed Work and used it to "train" OpenAI's LLMs without Lang's permission.

226. When prompted, ChatGPT accurately generated a summary of the Lang Infringed Work, *The Sixteenth of June*.

227. When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Sixteenth of June*, the Lang Infringed Work, and titled the infringing and unauthorized derivative "The Seventeenth of June," using the same characters from Lang's existing book.

228. ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Lang Infringed Work.

## XI.    Plaintiff LaValle

229. LaValle is an associate professor of Creative Writing at Columbia University and the author of five novels, a short story collection, two novellas, and two comic books. Some of Lavalle's most popular novels include *Big Machine, The Devil in Silver*, and *The Changeling*.

230. LaValle is the sole author of and owner or beneficial owner of the registered copyrights in six (6) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "LaValle Infringed Works").

231. The registration information for the LaValle Infringed Works is contained in Exhibit A to this Complaint, at 6.

232. OpenAI unlawfully and willfully copied the LaValle Infringed Works and used them to "train" OpenAI's LLMs without LaValle's permission.

1AA-158

233.    For example, when prompted, ChatGPT accurately generated summaries of several of the LaValle Infringed Works, including summaries for *Big Machine, The Devil in Silver*, and *The Changeling*.

234.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Changeling*, one of the LaValle Infringed Works, and titled the infringing and unauthorized derivative "The Fae's Return," using the same characters from LaValle's existing book.

235.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Devil in Silver*, one of the LaValle Infringed Works, and titled the infringing and unauthorized derivative "The New Hyde Legacy," using the same characters from LaValle's existing book.

236.    When prompted, ChatGPT generated an accurate summary of the final chapter of *Big Machine*, one of the LaValle Infringed Works.

237.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the LaValle Infringed Works.

## XII.    <u>Plaintiff Martin</u>

238.    Martin is an award-winning author, television producer, and writer who is widely known for his fantasy, science fiction, and horror writing. Some of Martin's most popular novels include *A Game of Thrones*, *A Clash of Kings*, and *A Storm of Swords*.

239.    Martin is the sole author of and owner or beneficial owner of the registered copyrights in fifteen (15) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Martin Infringed Works").

240.    The registration information for the Martin Infringed Works is contained in Exhibit A to this Complaint, at 6–7.

1AA-159

241.    OpenAI unlawfully and willfully copied the Martin Infringed Works and used them to "train" OpenAI's LLMs without Martin's permission.

242.    In July 2023, Liam Swayne used ChatGPT to generate versions of *The Winds of Winter* and *A Dream of Spring,* intended to be the final two books in the series *A Song of Ice and Fire*, which Martin is currently writing.

243.    An experiment conducted by researchers at the University of California, Berkeley, into the "memorization" of works by ChatGPT found that Martin's novel *A Game of Thrones* ranked 12th with respect to the degree of "memorization."[33]

244.    When prompted, ChatGPT accurately generated summaries of several of the Martin Infringed Works, including summaries for Martin's novels *A Game of Thrones*, *A Clash of Kings*, and *A Storm of Swords,* the first three books in the series *A Song of Ice and Fire*.

245.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for an alternate sequel to *A Clash of Kings*, one of the Martin Infringed Works, and titled the infringing and unauthorized derivative "A Dance With Shadows," using the same characters from Martin's existing books in the series *A Song of Ice and Fire*.

246.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for a prequel book to *A Game of Thrones*, one of the Martin Infringed Works, and titled the infringing and unauthorized derivative "A Dawn of Direwolves," using the same characters from Martin's existing books in the series *A Song of Ice and Fire*.

247.    When prompted, ChatGPT generated an accurate summary of the final chapter of *The Armageddon Rag*, one of the Martin Infringed Works.

---

[33] *See* Kent K. Chang *et al.*, *Speak, Memory: An Archaeology of Books Known to ChatGPT/GPT-4* (2023), *available at* https://arxiv.org/pdf/2305.00118v1.pdf (last accessed Sept. 19, 2023).

1AA-160

248.    ChatGPT could not have generated the results described above if OpenAI's LLMs had not ingested and been "trained" on the Martin Infringed Works.

## XIII.   **Plaintiff Picoult**

249.    A *New York Times* best-selling author, Picoult writes popular fiction. Picoult is also the recipient of many awards, including the New England Bookseller Award for Fiction, the Alex Awards from the YALSA, a lifetime achievement award for mainstream fiction from the Romance Writers of America, the NH Literary Award for Outstanding Literary Merit and the Sarah Josepha Hale Award. Some of Picoult's most popular novels include *My Sister's Keeper*, *Nineteen Minutes*, and *House Rules*.

250.    Picoult is a member of The Authors Guild.

251.    Picoult is the sole author of and owner or beneficial owner of the registered copyrights in twenty-seven (27) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Picoult Infringed Works").

252.    The registration information for the Picoult Infringed Works is contained in Exhibit A to this Complaint, at 7.

253.    OpenAI unlawfully and willfully copied the Picoult Infringed Works and used them to "train" OpenAI's LLMs without Picoult's permission.

254.    For example, when prompted, ChatGPT accurately generated summaries of several of the Picoult Infringed Works, including summaries for *Keeping Faith*, *Handle With Care*, and *Sing You Home*.

255.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Small Great Things*, one of the Picoult Infringed Works, and titled the infringing and unauthorized derivative "Small Great Things: Unfinished Business," using the same characters from Picoult's existing book.

1AA-161

256.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *My Sister's Keeper*, one of the Picoult Infringed Works, and titled the infringing and unauthorized derivative as "My Sister's Legacy," using the same characters from Picoult's existing book.

257.     When prompted, ChatGPT generated an accurate summary of the final chapter of *Change of Heart*, one of the Picoult Infringed Works.

258.     ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Picoult Infringed Works.

## XIV. <u>Plaintiff Preston</u>

259.     Preston is an author and journalist who has received awards for his writing, both in America and abroad, and previously taught writing at Princeton University. Some of Preston's most popular novels include *Blasphemy*, *Impact*, and *The Codex*.

260.     Preston is a member of The Authors Guild and past President of The Authors Guild Council.

261.     Preston is the sole author of and owner or beneficial owner of the registered copyrights in six (6) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Preston Infringed Works").

262.     The registration information for the Preston Infringed Works is contained in Exhibit A to this Complaint, at 7.

263.     OpenAI unlawfully and willfully copied the Preston Infringed Works and used them to "train" OpenAI's LLMs without Preston's permission.

264.     For example, when prompted, ChatGPT accurately generated summaries of several of the Preston Infringed Works, including summaries for *Impact*, *Blasphemy*, and *The Codex*.

1AA-162

265.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Impact*, one of the Preston Infringed Works, and titled the infringing and unauthorized derivative "Unearthed Secrets," using the same characters from Preston's existing book.

266.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Codex*, one of the Preston Infringed Works, and titled the infringing and unauthorized derivative "The Codex: The Lost Dynasty," using the same characters from Preston's existing book.

267.     When prompted, ChatGPT generated an accurate summary of the final chapter of *The Kraken Project*, one of the Preston Infringed Works.

268.     ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Preston Infringed Works.

## XV.     **Plaintiff Robinson**

269.     Robinson is an award-winning author with a wide reach, having written six novels and three collections of short stories, whose fiction has appeared in internationally respected publications and whose books have been published internationally. Some of Robinson's most popular novels include *Dawson's Fall*, *Sparta*, and *Cost*.

270.     Robinson is a member of The Authors Guild and a past President of The Authors Guild Council.

271.     Robinson is the sole author of and owner or beneficial owner of the registered copyrights in eight (8) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Robinson Infringed Works").

272.     The registration information for the Robinson Infringed Works is contained in Exhibit A to this Complaint, at 7–8.

273.    OpenAI unlawfully and willfully copied the Robinson Infringed Works and used them to "train" OpenAI's LLMs without Robinson's permission.

274.    For example, when prompted, ChatGPT accurately generated summaries of several of the Robinson Infringed Works, including summaries of *Cost*, *Sparta* and *Dawson's Fall*.

275.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Dawson's Fall*, one of the Robinson Infringed Works, and titled the infringing and unauthorized derivative "Dawson's Legacy," using the same characters from Robinson's existing book.

276.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Sparta*, one of the Robinson Infringed Works, and titled the infringing and unauthorized derivative "Homefront," using the same characters from Robinson's existing book.

277.    When prompted, ChatGPT generated an accurate summary of the final chapter of *Sparta*, one of the Robinson Infringed Works.

278.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Robinson Infringed Works.

## XVI.   Plaintiff Saunders

279.    Saunders is a professor in the English department at Syracuse University, who also writes best-selling books of fiction. Some of Saunders' most popular works include the short story titled *Escape From Spiderhead*, a novel titled *Lincoln in the Bardo*, and a novella titled *The Brief and Frightening Reign of Phil*.

280.    Saunders is a member of The Authors Guild.

1AA-164

281.    Saunders is the sole author of and owner or beneficial owner of the registered copyrights in seven (7) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Saunders Infringed Works").

282.    The registration information for the Saunders Infringed Works is contained in Exhibit A to this Complaint, at 8.

283.    OpenAI unlawfully and willfully copied the Saunders Infringed Works and used them to "train" OpenAI's LLMs without Saunders's permission.

284.    For example, when prompted, ChatGPT accurately generated summaries of several of the Saunders Infringed Works, including summaries for *CivilWarLand in Bad Decline*, *Lincoln in the Bardo*, and *Tenth of December*.

285.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Fox 8*, one of the Saunders Infringed Works, and titled the infringing and unauthorized derivative "Fox 8 and the Hidden World," using the same characters from Saunders's existing book.

286.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Tenth of December*, one of the Saunders Infringed Works, and titled the infringing and unauthorized derivative "The Eleventh of December: A Continuation," using the same characters from Saunders's existing book.

287.    When prompted, ChatGPT generated an accurate summary of the conclusion of *Escape From Spiderhead*, one of the Saunders Infringed Works.

288.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Saunders Infringed Works.

XVII. **Plaintiff Turow**

289.     A best-selling author, Turow is a novelist and lawyer who is best known for setting his novels in fictional Kindle County's legal community. Some of Turow's most popular novels include *The Last Trial*, *Testimony*, and *Identical*.

290.     Turow is a member of The Authors Guild and past President of The Authors Guild Council.

291.     Turow is the sole author of and owner or beneficial owner of the registered copyrights in sixteen (16) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Turow Infringed Works").

292.     The registration information for the Turow Infringed Works is contained in Exhibit A to this Complaint, at 8.

293.     OpenAI unlawfully and willfully copied the Turow Infringed Works and used them to "train" OpenAI's LLMs without Turow's permission.

294.     For example, when prompted, ChatGPT accurately generated summaries of several of the Turow Infringed Works, including summaries for *The Burden of Proof*, *Innocent*, and *Testimony*.

295.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *The Last Trial*, one of the Turow Infringed Works, and titled the infringing and unauthorized derivative "Echoes of Judgment," using the same characters from Turow's existing book.

296.     When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Pleading Guilty*, one of the Turow Infringed Works, and titled the infringing and unauthorized sequel "Redemption's Price," using the same characters from Turow's existing book.

297.    When prompted, ChatGPT generated an accurate summary of the final chapter of *Ordinary Heroes*, one of the Turow Infringed Works.

298.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Turow Infringed Works.

## XVIII. Plaintiff Vail

299.    Rachel Vail is an award-winning American author who primarily authors children's and young adult books. Some of Vail's most popular novels include *Ever After*, *Unfriended*, and *Justin Case: School, Drool, and Other Daily Disasters*.

300.    Vail is a member of The Authors Guild and a member of The Authors Guild Council.

301.    Vail is the sole author of and owner or beneficial owner of the registered copyrights in twenty-four (24) written works of fiction, all or many of which OpenAI ingested and copied without permission (the "Vail Infringed Works").

302.    The registration information for the Vail Infringed Works is contained in Exhibit A to this Complaint, at 8–9.

303.    OpenAI unlawfully and willfully copied the Vail Infringed Works and used them to "train" its LLMs without Vail's permission.

304.    For example, when prompted, ChatGPT accurately generated summaries of several of the Vail Infringed Works, including summaries for *If We Kiss*, *A Is For Elizabeth*, and *Not That I Care*.

305.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Bad Best Friend*, one of the Vail Infringed Works, and titled the infringing and unauthorized derivative "Redeeming Friendship," using the same characters from Vail's existing book.

306.    When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *Do-Over*, one of the Vail Infringed Works, and titled the infringing and unauthorized derivative "Do-Over: Second Chances," using the same characters from Vail's existing book.

307.    When prompted, ChatGPT generated an accurate summary of the final chapter of *Daring to be Abigail*, one of the Vail Infringed Works.

308.    ChatGPT could not have generated the material described above if OpenAI's LLMs had not ingested and been "trained" on the Vail Infringed Works.

## XIX.    Others Similarly Situated

309.    The above allegations illustrate certain specific ways in which OpenAI's LLM "training" has infringed Plaintiffs' copyrights and has injured or may injure the value of their works. But OpenAI has engaged in a systematic course of mass-scale copyright infringement that violates the rights of all working fiction writers and their copyright holders equally, and threatens them with similar, if not identical, harm.

## CLASS ALLEGATIONS

## I.    Class Definitions

310.    Plaintiffs bring this action as Proposed Class Representatives for and on behalf of the Proposed Class and Proposed Class Members, as defined below, under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

311.    The Proposed Class is defined as follows:

> All natural persons in the United States who are the sole authors of, and sole legal or beneficial owners of Eligible Copyrights in, one or more Class Works; and all persons in the United States who are the sole legal or beneficial owners of Eligible Copyrights in one or more Class Works held by literary estates.

312.    Class Works are defined as follows:

1AA-168

Any work of fiction that has sold at least 5,000 copies and the text of which has been, or is being, used by Defendants to "train" one or more of Defendants' large language models.

313. Eligible Copyrights are defined as follows:

Any copyright that was registered with the United States Copyright Office before or within five years after first publication of the work, and whose effective date of registration is either within three months after first publication of the work or before Defendants began using the work to "train" one or more of Defendants' large language models.

314. Excluded from the class definitions above are Defendants; Defendants' co-conspirators, aiders and abettors, and members of their immediate families; Defendants' corporate parents, subsidiaries, and affiliates; Defendants' directors, officers, employees, and other agents, as well as members of their immediate families; and any judge who may preside over this action, the judge's staff, and members of their immediate families.

## II.    <u>Rules 23(a) and 23(g)</u>

315. The Proposed Class is sufficiently numerous because it is estimated to have tens of thousands of members.

316. The identities of the Proposed Class Members are objectively ascertainable because Defendants know, and can produce in discovery, which texts they used to "train" their large language models; and because information regarding copyright ownership, copyright registration, and book sales is determinable from public or other objective sources and measures.

317. The Proposed Class Representatives' claims are typical of the claims of the Proposed Class because their copyrights were infringed in materially the same way and their interests in preventing future infringement and redressing past infringement are materially the same.

1AA-169

318.     The Proposed Class Representatives will adequately represent the Proposed Class, and Plaintiffs' counsel are experienced, knowledgeable, well resourced, and will zealously and faithfully represent Plaintiffs and the Proposed Class.

319.     There are questions of law or fact common to the Proposed Class, including

a.     whether Defendants copied Plaintiffs' and Proposed Class Members' copyrighted works in "training" their LLMs;

b.     whether Defendants' copying of Plaintiffs' and Proposed Class Members' copyrighted works constitutes direct, vicarious, or contributory infringement under the Copyright Act; and

c.     whether Defendants' copying of Plaintiffs' and Proposed Class Members' copyrighted works was willful.

## III.     <u>Rule 23(b)</u>

320.     Defendants have acted on grounds common to Plaintiffs and the Proposed Class by treating all Plaintiffs' and Proposed Class Members' works equally, in all material respects, in their LLM "training."

321.     Common questions of liability for infringement predominate over any individualized damages determinations as may be necessary. To decide liability, the Court will necessarily apply the same law to the same conduct, which Defendants engaged in indiscriminately with respect to all Plaintiffs and all Proposed Class Members.

322.     Further, to the extent Plaintiffs elect to pursue statutory rather than actual damages before final judgment, the damages inquiry will likewise be common, if not identical, across Plaintiffs and Proposed Class Members.

323.     A class action is superior to any individual litigation of Plaintiffs' and Proposed Class Members' claims. Proposed Class Members have little interest, distinct from Plaintiffs'

1AA-170

and other Proposed Class Members', in prosecuting individual actions. It would waste judicial resources to decide the same legal questions repeatedly, thousands of times over, on materially indistinguishable facts. The Proposed Class presents no special manageability problems.

## IV. **Rule 23(c)(4)**

324. In the alternative to certification under Rule 23(b)(3), common questions predominate within the determination of liability for infringement, and therefore the issue of liability may be separately certified for class treatment even if the entire action is not.

**CLAIMS TO RELIEF**

**COUNT I: DIRECT COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**

**On Behalf of Plaintiffs and the Proposed Class
Against Defendant OpenAI LP**

325. Plaintiffs incorporate and reallege paragraphs 1 through 309 above.

326. Plaintiffs and Proposed Class Members are the rightful and lawful legal or beneficial owners of the copyrights in and to their literary works.

327. Plaintiffs' and Proposed Class Members' works are original to their authors and are fixed in tangible mediums of expression as literary works under 17 U.S.C. § 102(a)(1).

328. Plaintiffs and Proposed Class Members have duly and timely registered their copyrights in their works with the U.S. Copyright Office.

329. Plaintiffs and Proposed Class Members are legal or beneficial owners of the exclusive right to reproduce their copyrighted works in copies under 17 U.S.C. § 106(1), as well as the right to refrain from such reproduction.

330. Defendant OpenAI LP had access to Plaintiffs' and Proposed Class Members' copyrighted works, including by way of the various unauthorized datasets discussed above.

331.     Defendant OpenAI LP violated Plaintiffs' and Proposed Class Members' exclusive rights by reproducing their copyrighted works in copies for the purpose of "training" their LLMs and ChatGPT.

332.     Defendant OpenAI LP's violation of Plaintiffs' and Proposed Class Members' exclusive right was willful because Defendant OpenAI LP knew the datasets on which it "trained" its large language models contained copyrighted works.

## COUNT II: VICARIOUS COPYRIGHT INFRINGEMENT

### On Behalf of Plaintiffs and the Proposed Class
### Against Defendants OpenAI Inc., OpenAI GP LLC

333.     Plaintiffs incorporate and reallege paragraphs 1 through 309 above.

334.     Defendants OpenAI Inc. and OpenAI GP LLC had the right and ability to control the direct infringement alleged in Count I because Defendant OpenAI Inc. fully controls Defendant OpenAI GP LLC, and Defendant OpenAI GP LLC fully controls Defendant OpenAI LP, according to the corporate structure outlined above.

335.     Defendants OpenAI Inc. and OpenAI GP LLC have a direct financial interest in the direct infringement alleged in Count I because they benefit from the profits and investments generated by Defendant OpenAI LP's infringing activities.

336.     Defendants OpenAI Inc. and OpenAI GP LLC are vicariously liable for the direct infringement alleged in Count I.

## COUNT III: CONTRIBUTORY COPYRIGHT INFRINGEMENT

### On Behalf of Plaintiffs and the Proposed Class
### Against Defendants OpenAI LLC, OpenAI OpCo LLC, OpenAI Global LLC, OAI Corporation LLC, OpenAI Holdings LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund Management LLC (Collectively, "Other OpenAI Defendants")

337.     Plaintiffs incorporate and reallege paragraphs 1 through 309 above.

1AA-172

338.    The Other OpenAI Defendants materially contributed to and directly assisted in the direct infringement alleged in Count I by funding the direct infringement by way of capital, technology, personnel, and other resources; controlling or managing the property or other assets with which the direct infringement was accomplished; or providing business, legal, strategic, or operational guidance to accomplish the direct infringement.

339.    The Other OpenAI Defendants knew or had reason to know of the direct infringement alleged in Count I because the Other OpenAI Defendants share management personnel and operational plans with Defendant OpenAI LP and are fully aware of the capabilities of their own product and the materials upon which it was "trained," including known caches of pilfered copyrighted works.

340.    Defendants are contributorily liable for the direct infringement alleged in Count I.

### PRAYER FOR RELIEF

341.    Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief:

a.    Certification of this action as a class action under Federal Rule of Civil Procedure 23;

b.    Designation of Plaintiffs as class representatives;

c.    Designation of Plaintiffs' counsel as class counsel;

d.    An injunction prohibiting Defendants from infringing Plaintiffs' and class members' copyrights, including without limitation enjoining Defendants from using Plaintiffs' and class members' copyrighted works in "training" Defendants' large language models without express authorization;

e.    An award of actual damages to Plaintiffs and class members;

1AA-173

      f.      An award of Defendants' additional profits attributable to infringement to Plaintiffs and class members;

      g.      An award of statutory damages up to $150,000 per infringed work to Plaintiffs and class members, in the alternative to actual damages and profits, at Plaintiffs' election before final judgment;

      h.      Reasonable attorneys' fees and costs, as allowed by law;

      i.      Pre-judgment and post-judgment interest, as allowed by law; and

      j.      Such further relief as the Court may deem just and proper.

## JURY DEMAND

342.    Plaintiffs demand a trial by jury as to all issues so triable.

Dated: September 19, 2023

*/s/ Rachel Geman*
Rachel Geman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
rgeman@lchb.com

Reilly T. Stoler (*pro hac vice* forthcoming)
Ian R. Bensberg (*pro hac vice* forthcoming)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
rstoler@lchb.com
ibensberg@lchb.com

*/s/ Scott Sholder*
Scott J. Sholder
CeCe M. Cole
COWAN DEBAETS ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone:  212.974.7474
nwolff@cdas.com
kswezey@cdas.com
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Plaintiffs and the Proposed Class*

**1AA-174**

[counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PAUL TREMBLAY, | Lead Case No. 3:23-cv-03223-AMO |
| Individual and Representative Plaintiff, | |
| v. | **JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT** |
| OPENAI, INC., et al., | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 26(f), a conference was held on Thursday, September 14, 2023, between counsel for Plaintiffs Paul Tremblay, Sarah Silverman, Christopher Golden, Richard Kadrey, and the proposed class ("Plaintiffs") and counsel for Defendants OpenAI, Inc.; OpenAI, LP; OpenAI OpCo, LLC; OpenAI GP, LLC; OpenAI Startup Fund GP I, LLC; OpenAI Startup Fund I, LP; and OpenAI Startup Fund Management, LLC ("OpenAI" or "Defendants"). The Parties, by and through their undersigned counsel, met and conferred concerning the topics set forth in Rule 26(f), the United States District Court for the Northern District of California's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information and Guidelines for the Discovery of Electronically Stored Information, and the Standing Order for All Judges of the Northern District of California—Contents of Joint Case Management Statement. Pursuant to Rule 26(f)(2), Civil Local Rule 16-9(a), and ECF No. 10, the Parties hereby submit this Joint Rule 26(f) Report in advance of the Case Management Conference scheduled for October 5, 2023.

**A.      Jurisdiction & Service**

This Court has subject matter jurisdiction over all of Plaintiffs' claims under 28 U.S.C. 1331 and Defendants do not challenge personal jurisdiction. No parties remain to be served.

**B.      Facts and Legal Issues**

On June 28, 2023, Plaintiff Tremblay filed his Complaint (ECF No. 1)[1] alleging Defendants engaged in actions related to the creation, maintenance, and operation of the OpenAI language models that violate Plaintiffs' rights under Direct Copyright Infringement (17 U.S.C. § 106), Vicarious Copyright Infringement (17 U.S.C. § 106), the Digital Millennium Copyright Act – Removal of Copyright Management Information ("CMI") (17 U.S.C. § 1202 (b)) ("the DMCA"), Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Negligence, and Unjust Enrichment. and demanding a trial by jury on all claims for which a jury is permitted. On July 7, 2023, Plaintiffs Sarah Silverman, Christopher Golden, and Richard Kadrey filed their Complaint[2] (*Silverman* Action, ECF No. 1), initiating an action that has since been related to this action initiated by Plaintiff Tremblay. *See* ECF

---

[1] Referred to herein as the "*Tremblay* Action." Unless otherwise indicated, "ECF No. __" refers to filings in the *Tremblay* Action.

[2] Referred to herein as the "*Silverman* Action."

No. 26. On August 11, 2023, Plaintiff Mona Awad voluntarily dismissed her individual claims against Defendants without prejudice.  ECF No. 29.

Plaintiffs are writers who own copyrights in works allegedly used to train Defendants' language models. Plaintiffs contend Defendants used Plaintiffs' works to train their language models. Defendants develop AI-based products, including language models such as GPT-4 and ChatGPT. Plaintiffs allege that Defendants violated their rights when using Plaintiffs' works to train (i.e., the process by which an AI program can "learn" how to anticipate and provide solutions to coding issues) OpenAI language models without permission. Plaintiffs further allege Defendants continue to violate Plaintiffs' rights through the distribution and operation of language models as well as further unauthorized training on their works if such occurs.

Defendants deny that they have violated any of Plaintiffs' rights.  On August 28, 2023, Defendants filed a motion to dismiss Counts II through VI in the *Silverman* and *Tremblay* actions.  ECF Nos. 32 and 33. Plaintiffs filed their oppositions on September 27, 2023 (ECF No. 48, both Actions) and Defendants' replies are due October 11, 2023. The hearing on Defendants' motions to dismiss is scheduled for December 7, 2023.

The principal facts in dispute include (a) whether each of the named Plaintiffs' copyrighted works were actually used to train the large language models underlying ChatGPT, (b) whether ChatGPT's outputs are substantially similar to those works, (c) whether Defendants derive a direct financial benefit from the alleged inclusion of Plaintiffs' works in the training data, (d) the extent to which Defendants have a right and ability to control acts of third-party infringement via ChatGPT, (e) whether Plaintiffs included CMI in their copyrighted works, and (f) whether that alleged CMI was removed during the training process.

Defendants summarize the legal issues as follows:

1. Whether Defendants' alleged use of Plaintiffs' books to train a large language model is a fair use under 17 U.S.C. § 107.

2. Whether Plaintiffs are entitled to relief under a vicarious copyright infringement claim.

3. Whether Plaintiffs are entitled to relief for violation of Section 1202(b) of the Copyright Act.

4. Whether Plaintiffs are entitled to relief for unfair competition under common law and California Business & Professions Code § 17200.

5. Whether Plaintiffs are entitled to relief for negligence.

6. Whether Plaintiffs are entitled to relief for unjust enrichment under common law.

7. Whether the Copyright Act preempts Plaintiffs' claims for negligence and unjust enrichment. *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (finding the Copyright Act preempted plaintiff's unjust enrichment claim).

8. Whether Plaintiffs can meet their burden of establishing that any class can be certified.

**C.    Motions**

On August 28, 2023, Defendants filed Motions to Dismiss Counts II through VI in the *Tremblay* and *Silverman* Actions. ECF No. 33 (*Tremblay* Action) & ECF No. 32 (*Silverman* Action).  Plaintiffs' oppositions were filed on September 27, 2023 (ECF No. 48, both Actions) and Defendants' replies are due October 11, 2023.  A hearing on Defendants' motions is set for December 7, 2023. ECF No. 27. There is also a pending motion to consider whether the *Tremblay* and *Silverman* Actions, which are already related (ECF No. 26), should be further related to *Chabon, et al v. OpenAI, Inc, et al.*, Case No. 4:23-cv-04625-PHK (N.D. Cal. Sept. 8, 2023) ("*Chabon* Action") (ECF No. 46).  Defendants do not oppose that motion. Plaintiffs anticipate moving to consolidate the *Tremblay*, *Silverman*, and *Chabon* Actions pursuant to F. R. Civ. Pro. 42.

The Parties also anticipate various discovery motions, a motion for class certification, and summary judgment motions.

**D.    Amendments to Pleadings**

To date, no pleadings have been amended.

**E.    Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Rule 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in the case. Defendants have alerted Plaintiffs to certain past and upcoming data deletion performed at the request of users of their language models and the Parties have met and conferred regarding this practice. The Parties are

continuing to meet and confer regarding this issue. The Parties have not identified any other past or planned deletion of information or documents relevant to this case. The Parties will continue to meet and confer regarding Defendants' user-requested deletion and to ensure other relevant evidence is preserved as necessary.

**F.    Disclosures**

The Parties will exchange initial disclosures by September 28, 2023 pursuant to Rule 26(a)(1)(A). The Parties will supplement Initial Disclosures as necessary, as required by Rule 26(e).

**G.    Discovery**

**1.    Scope of Discovery**

The Parties agree that discovery is governed by the Federal Rules of Civil Procedure. The Parties anticipate having to account for some discoverable data being too voluminous to produce and have begun to discuss potential alternatives to complete production of such data. The Parties will continue to meet and confer on this topic once requests for production of documents have been propounded.

Discovery has not commenced in this matter yet.  While Defendants do not dispute that discovery may proceed as to Count I and any potential defenses thereto, they propose that the Parties meet and confer in good faith regarding discovery as to Counts II through VI once the pleadings are settled.  Defendants reserve their rights to seek modifications to limits on discovery until discovery commences.

**Subjects of Discovery from Defendants:** The following is a non-exhaustive list of subjects that Plaintiffs plan to seek discovery on. Plaintiffs reserve all rights to expand upon these subject areas as the case progresses:

- The interactions between Class members (including Plaintiffs) and Defendants, including but not limited to requests and/or demands from the owners of works used to train language models regarding Defendants' use of their works.

- Defendants' conduct that caused OpenAI language models to ingest and distribute Plaintiffs' and the proposed class's works without including any associated CMI, including but not limited to Defendants' knowledge regarding these actions and their consequences.

- The planning for, creation, operation, modification, distribution, and upkeep of OpenAI language models, including but not limited to its source code.

- Efforts by Defendants to obtain licenses or other permission to use works used to train OpenAI language models.

- Defendants conduct in concealing CMI associated with Class members' (including Plaintiffs') works from users of OpenAI language models, including steps taken during the creation, alteration, and/or operation of OpenAI language models.

- Defendants' organizational structures related to OpenAI language models.

- Contracts or other agreements between Defendants, Defendants and Plaintiffs, and Defendants and third parties that relate to OpenAI language models.

- Defendants' entity structures and corporate documents.

- Information regarding all materials used to train OpenAI language models, including the materials themselves.

- Facts related to affirmative defenses raised by Defendants.

- Defendants' policies regarding any usage of copyrighted material.

- Defendants' interactions with government entities regarding OpenAI language models, including document submissions, requests for information or documents, testimony, and correspondence.

- Defendants' participation in other lawsuits or private administrative proceedings regarding OpenAI language models.

Defendants reserve all rights to object to Plaintiffs' efforts to seek discovery into such matters.

**Subjects of Discovery from Plaintiffs:** The following is a non-exhaustive list of subjects regarding which Defendants currently plan to seek discovery from Plaintiffs:

- Plaintiffs' lack of harm.

- Plaintiffs' ownership of and copyright interest in the works that are the subject of their complaints.

- Plaintiffs' works, and where and how they are published.

- Plaintiffs' lack of prospective economic relations with third parties.

**1AA-180**

- The licensing and distribution of all Plaintiffs' works they assert form any basis for their claims, and all other facts concerning the market for such works.
- Any copyright registrations or applications for registration of any of the Plaintiffs' works they assert form any basis for their claims.
- All use by Plaintiffs of ChatGPT.
- All efforts by Plaintiffs or anyone acting on their behalf to prompt ChatGPT to suggest outputs similar to Plaintiffs' works.

Plaintiffs reserve all rights to object to Defendants' efforts to seek discovery into such matters.

**2.     Discovery Limits**

The Parties have met and conferred regarding the discovery limits set forth in the Federal Rules of Civil Procedure. Plaintiffs have indicated the likelihood they will require expansion of the limits on the number depositions and interrogatories. Defendants disagree that any expansion of the number of depositions and interrogatories is warranted, and Plaintiffs have provided no justification for expanding the limits.

**3.     Production of Electronically Stored Information**

The Parties have met and conferred pursuant to Rule 26(f) and have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The Parties will continue to meet and confer on this topic in an attempt to come to agreement on a stipulated order regarding production of ESI. The Parties have discussed the potential need for ESI Liaisons and will meet and confer further on this topic once discovery requests have been served but do not believe they will be required at this time. The Parties will further meet and confer on how responsive material will be identified and metadata formatting for ESI and will continue to do so as discovery progresses.

**4.     Protective Order**

The Parties agree to meet and confer regarding an appropriate protective order for confidential materials based on this Court's model orders and attempt to come to agreement on a stipulated protective order to be entered by this Court.

5.      **Privilege**

The Parties have agreed to enter a stipulated Privileged Materials Order under Rule 502(d)
should the provisions of the model protective order not meet their needs and will meet and confer further
to determine the details of such if necessary.

6.      **Deposition Logistics**

Plaintiffs believe that in-person depositions are appropriate for all witnesses, either in the
Northern District or elsewhere in the United States where they may reside.

Defendants cannot determine in the abstract whether in-person depositions will be appropriate
for all witnesses but are generally willing to consider in-person depositions.

The Parties will meet and confer should any disputes arise as to the location of depositions
and/or use of remote depositions.

7.      **Discovery Issues and Potential Disputes**

Plaintiffs believe discovery may commence once Initial Disclosures are served.  The Parties
anticipate discovery disputes regarding production of voluminous data repositories held by Defendants
and other documents or information Defendants will contend is not relevant to Plaintiffs' claims. The
Parties will meet and confer on these and any other discovery disputes that may arise in an effort to
resolve the disputes without court intervention.

The Parties agree to electronic service in all instances where service is necessary and will
exchange service lists.

**H.      Class Action**

Plaintiffs purport to bring this class action on behalf of themselves, and all others similarly
situated pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on
behalf of the following Class:

> All persons or entities domiciled in the United States that own a United
> States copyright in any work that was used as training data for the OpenAI
> Language Models during the Class Period.

Plaintiffs believe that the class is so numerous that joinder of all members is impracticable.
Plaintiffs do not know the exact size of the class since that information is within the control of OpenAI.
Upon information and belief, Plaintiffs allege that the number of class members is in the millions.

Plaintiffs allege that the claims asserted by Plaintiffs are typical of the proposed class's claims in that the representative Plaintiffs allege that, like all class members, their copyright-protected works were used to train an OpenAI Language Model. Plaintiffs allege all members of the proposed class have been similarly injured by Defendants' conduct. Plaintiffs believe there are numerous questions of law or fact common to the class, and those issues predominate over any question affecting only individual class members. The common legal and factual issues include the following:

- Whether Defendants violated the copyrights of Plaintiffs and the Class when they downloaded copies of Plaintiff's copyrighted works and used them to train OpenAI language models.

- Whether OpenAI language models are infringing derivative works based on Plaintiffs' copyrighted works.

- Whether the text outputs of OpenAI language models are infringing derivative works based on Plaintiffs' copyrighted works.

- Whether Defendants violated the DMCA by removing copyright-management information (CMI) from Plaintiffs' copyrighted works.

- Whether Defendants were unjustly enriched by the unlawful conduct alleged herein.

- Whether Defendants' conduct alleged herein constitutes Unfair Competition under California Business and Professions Code section 17200 et seq.

- Whether Defendants' conduct alleged herein constitutes unfair competition under the common law.

- Whether this Court should enjoin Defendants from engaging in the unlawful conduct alleged herein. And what the scope of that injunction would be.

- Whether any affirmative defense excuses Defendants' conduct.

- Whether any statutes of limitation limits Plaintiffs' and the Class's potential for recovery.

Defendants believe that class certification is not appropriate, and that a proposed briefing schedule for class certification should be made after the pleadings are settled, as the Parties will be in a better position at that time to propose a realistic schedule.

All attorneys of record for the Parties have reviewed the Procedural Guidance for Class Action Settlements.

The Parties agree that phased discovery will not be necessary in this case.

**I.  Related Cases**

As discussed above, two motions to consider whether cases should be related have been filed (ECF Nos. 16, 46). One (regarding the *Silverman* Action) was granted and the other (regarding the *Chabon* Action) is pending.

The Parties are also aware of a case filed in the District Court for the Southern District of New York, *Authors Guild, et al. v. OpenAI Inc.*, Case No. 23-cv-082092 (S.D.N.Y.) filed September 19, 2023. The case appears to include duplicative causes of action.

**J.  Relief**

Plaintiffs seek two forms of relief. The first is injunctive relief to preclude further harm to them through the operation of OpenAI language models. The second, damages, would be calculated after discovery enables Plaintiffs to ascertain the number of violations committed during the Class Period and other facts not currently available to Plaintiffs. Depending on the cause of action, damages will either be set by statute or based upon Defendants' profit resulting from the violations alleged by Plaintiffs. Plaintiffs reserve the right to seek attorneys' fees and costs as allowed by statute or otherwise.

Defendants do not seek any relief other than attorneys' fees if they prevail.

**K.  Consent to Magistrate Judge**

The Parties did not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. *See* ECF No. 4.

**L.  Other References**

The Parties do not oppose having discovery disputes heard by a magistrate judge if the Court is inclined to appoint a discovery magistrate.

**M.  Settlement and ADR**

The Parties have complied with ADR L-R 3.5. The Parties have agreed to discuss settlement in the near term and with this Court at the upcoming Case Management Conference. The Parties would be amenable to having the case referred to a magistrate judge for settlement. Defendants propose

**1AA-184**

Magistrate Judge Sallie Kim, who is the magistrate judge assigned to *J. Doe 1 et al. v. GitHub, Inc. et al.*, No. 22-cv-06823-JST (N.D. Cal.), for settlement. Given the complexity associated with settling class actions and the nature of these disputes, an experienced judicial officer is necessary to improve the chances of attaining an appropriate settlement.

**N.    Narrowing of Issues**

No issues have yet been narrowed by agreement or by motion. The Parties will continue to meet and confer about narrowing potential issues should the circumstances of the case change.

**O.    Expedited Trial Procedures**

The Parties agree this case is inappropriate for the Expedited Trial Procedure of General Order 64.

**P.       Scheduling**

The Parties have not come to an agreement on a case schedule.  As noted above, there is a

pending motion to relate the *Chabon* Action to the already related *Tremblay* and *Silverman* Actions.

Defendants believe that attention should be paid to the schedule after that motion is resolved because the

Parties will be in a better position to propose a realistic schedule at that time. Plaintiffs believe that this

case can benefit from careful case management and proposing a case schedule serves that goal. Plaintiffs

propose the following schedule:

| Scheduled Case Event | Date Set by ECF No. 27 |
|---|---|
| Deadline for opposition to motions to dismiss | Wednesday, September 27, 2023 |
| Initial Case Management Conference | Thursday, October 5, 2023 |
| Deadline for replies in support of motions to dismiss | Wednesday, October 11, 2023 |
| Hearing on motions to dismiss | Thursday, December 7, 2023 |
| **Unscheduled Case Event** | **Plaintiffs' Proposed Date** |
| Close of fact discovery including non-expert depositions | Tuesday, October 29, 2024 |
| Deadline for Plaintiffs' expert reports | Thursday, December 12, 2024 |
| Deadline for Defendants' expert reports | Monday, January 13, 2025 |
| Deadline for Plaintiffs' rebuttal expert reports | Tuesday, February 11, 2025 |
| Close of expert discovery | Thursday, March 13, 2025 |
| Deadline for motions for class certification, and Daubert motions | Thursday, April 10, 2025 |
| Deadline for oppositions to class certification, and *Daubert* motions | Friday, May 23, 2025 |
| Deadline for replies in support of motions for class certification, and *Daubert* motions | Tuesday, June 24, 2025 |
| Deadline for motions for summary judgment. Deadline for replies in support of motions for class certification and *Daubert* motions | Monday, August 11, 2025 |
| Deadline for oppositions to motions for summary judgment. Deadline for motions for summary judgment. | Wednesday, September 24, 2025Monday, August 11, 2025 |
| Deadline for replies in support of motions for summary judgment. | Thursday, October 23, 2025 |
| Class certification, summary judgment, and Daubert hearing | To be set by Court |
| Deadline for joint pre-trial statement | Thursday, January 8, 2026 |
| Final pre-trial conference | Thursday, January 15, 2026 |
| Trial Begins | Monday, January 26, 2026 |

**Q.**     **Trial**

Plaintiffs have requested a trial by jury on all claims allowed. Defendants believe determination of a trial schedule is premature at this time.

**R.**     **Length of Trial**

Plaintiffs believe trial will last ten trial days. Plaintiffs propose that time be split evenly between Defendants and Plaintiffs. Defendants believe determination of the length of trial is premature at this time.

**S.**     **Disclosure of Non-party Interested Entities or Persons**

The Parties have provided the relevant disclosures of non-party interested entities or persons and will continue to supplement as other non-party interested entities or persons become known. *See* ECF Nos. 22, 28, 37 (*Tremblay* Action); ECF Nos. 20, 29, 37 (*Silverman* Action).

**T.**     **Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**1AA-187**

Dated: September 28, 2023

By:    */s/ Joseph R. Saveri*
         Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Travis Manfredi (State Bar No. 281779)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:   (415) 500-6800
Facsimile:   (415) 395-9940
Email:     jsaveri@saverilawfirm.com
         czirpoli@saverilawfirm.com
         cyoung@saverilawfirm.com
         tmanfredi@saverilawfirm.com
         kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:   (323) 968-2632
Facsimile:   (415) 395-9940
Email:     mb@butoricklaw.com

*Counsel for Plaintiffs and the Proposed Class*

Dated: September 28, 2023

By:    */s/ Joseph C. Gratz*
         Joseph C. Gratz

Joseph C. Gratz (State Bar No. 240676)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone:   415-268-7000
Facsimile:   415-268-7522
Email:     jgratz@mofo.com

*Counsel for OpenAI, Inc., OpenAI, L.P., OpenAI GP, LLC, OpenAI OpCo, L.L.C., OpenAI Startup Fund GP I, L.L.C, OpenAI Startup Fund I, L.P., and OpenAI Startup Fund Management LLC*

L.R. 5-1 SIGNATURE ATTESTATION

As the ECF user whose user ID and password are utilized in the filing of this document, I attest under penalty of perjury that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated:  September 28, 2023

_/s/ Joseph R. Saveri_
Joseph R. Saveri

DANIEL J. MULLER, SBN 193396
dmuller@venturahersey.com
VENTURA HERSEY & MULLER, LLP
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL CHABON, TA-NEHISI COATES, JUNOT DÍAZ, ANDREW SEAN GREER, DAVID HENRY HWANG, MATTHEW KLAM, LAURA LIPPMAN, RACHEL LOUISE SNYDER, AYELET WALDMAN, AND JACQUELINE WOODSON, <br><br> individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OPENAI, INC., OPENAI, L.P., OPENAI OPCO, LLC, OPENAI GP LLP, OPENAI STARTUP FUND GP I, LLC, OPENAI STARTUP FUND I, LP, and OPENAI START UP FUND MANAGEMENT, LLC, <br><br> Defendants. | Case No. 3:23-cv-04625 - PHK <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> <u>CLASS ACTION</u> <br><br><br> **JURY TRIAL DEMANDED** |

1AA-190

Plaintiffs Michael Chabon, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Ayelet Waldman, and Jacqueline Woodson ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendants OpenAI, Inc., OpenAI, LP, OpenAI OpCo, LLC, OpenAI GP LLC, OpenAI Startup Fund I, LP, OpenAI Startup Fund GP I, LLC, and OpenAI Startup Fund Management, LLC (collectively, "Defendants" or "OpenAI"). Plaintiffs allege as follows based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters:

## NATURE OF ACTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a Class of authors holding copyrights in their published works arising from OpenAI's clear infringement of their intellectual property.

2.      OpenAI is a research company specializing in the development of artificial intelligence ("AI") products, such as ChatGPT.

3.      ChatGPT is an AI chatbot, which produces responses to users' text queries or prompts in a way that mimics human conversation.

4.      ChatGPT relies on other OpenAI products to function, namely Generative Pre-trained Transformer ("GPT") models. "Generative," in GPT, represents the model's ability to respond to text inquiries, while "Pre-trained" refers to the model's use of training datasets to program its responses, and "Transformer" concerns the model's underlying algorithm allowing it to function.

5.      OpenAI has released five versions of GPT models, and the current version of ChatGPT runs on GPT-3.5 and GPT-4, depending on whether the user has subscribed to the premium version of ChatGPT. Only the version of ChatGPT that runs on GPT-3.5 is available at no cost to the public.

6.      OpenAI's GPT models are types of "large language model," which is a form of deep-learning algorithm programmed through "training datasets," consisting of massive amounts of text data copied from the internet by OpenAI. The GPT models extract information

**1AA-191**

from their training datasets in order to learn the statistical relationships between words, phrases, and sentences, which allow them to generate coherent and contextually relevant responses to user prompts or queries.

7.      A large language model's responses to user prompts or queries are entirely and uniquely dependent on the text contained in its training dataset, necessarily processing and analyzing the information contained in its training dataset to generate responses.

8.      OpenAI incorporated Plaintiffs' and Class members' copyrighted works in datasets used to train its GPT models powering its ChatGPT product. Indeed, when ChatGPT is prompted, it generates not only summaries, but in-depth analyses of the themes present in Plaintiffs' copyrighted works, which is only possible if the underlying GPT model was trained using Plaintiffs' works.

9.      Plaintiffs and Class members did not consent to the use of their copyrighted works as training material for GPT models or for use with ChatGPT.

10.     Defendants, by and through their operation of ChatGPT, benefit commercially and profit handsomely from their unauthorized and illegal use of Plaintiffs' and Class members' copyrighted works.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this case arises under the Copyright Act (17 U.S.C. § 501) and the Digital Millennium Copyright Act (17 U.S.C. § 1202).

12.     This Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §§ 1965(b) & (d), because they maintain their principal places of business in, and are thus residents of, this judicial district, maintain minimum contacts with the United States, this judicial district, and this State, and they intentionally avail themselves of the laws of the United States and this state by conducting a substantial amount of business in California. For these same reasons, venue properly lies in this District pursuant to 28 U.S.C. §§ 1391(a), (b) and (c).

**PARTIES**

**A.    Plaintiffs**

13.    Plaintiff Michael Chabon ("Plaintiff Chabon") is a resident of California. Plaintiff Chabon is an author who owns registered copyrights in many works, including but not limited to, *The Mysteries of Pittsburgh, Wonder Boys, The Amazing Adventures of Kavalier & Clay, the Yiddish Policemen's Union, Gentlemen of the Road, Telegraph Avenue, Fight of the Century, Kingdom of Olive and Ash,* and *Moonglow.* Plaintiff Chabon is the recipient of the Pulitzer Prize for Fiction, Hugo, Nebula, Los Angeles Times Book Prize, and the National Jewish Book Award, among many others achieved over the span of a writing career spanning more than 30 years. Plaintiff Chabon's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

14.    Plaintiff Ta-Nehisi Coates ("Plaintiff Coates") is a resident of New York. Plaintiff Coates is an author who owns registered copyrights in many works, including but not limited to, *Between the World and Me*, *The Beautiful Struggle*, *The Water Dancer*, and *We Were Eight Years in Power*. Plaintiff Coates's is the recipient of the National Book Award and a MacArthur Fellowship. Plaintiff Coates works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

15.    Plaintiff Junot Díaz ("Plaintiff Diaz") is a resident of Massachusetts. Plaintiff Díaz is an author who owns registered copyrights in many works, including but not limited to, *Islandborn*, *The Brief Wondrous Life of Oscar Wao*, *This is How you Lose Her*, and *Drown*. Plaintiff Díaz is the recipient of the Pulitzer Prize for Fiction, the National Book Critics Circle Award, a MacArthur "Genius" Fellowship, PEN/Malamud Award, Dayton Literary Peace Prize, Guggenheim Fellowship, and PEN/O. Henry Award. Plaintiff Díaz is the Nancy Allen Professor of Writing at the Massachusetts Institute of Technology. Plaintiff Díaz's works include copyright-management information that provides information about the copyrighted work,

including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

16.     Andrew Sean Greer ("Plaintiff Greer") is a resident of California. Plaintiff Greer is an author who owns registered copyrights in many works, including but not limited to, *The Confessions of Max Tivoli*, *How it Was for Me*, *The Story of a Marriage*, *The Impossible Lives of Greta Wells*, *The Path of Minor Planets, Less is Lost,* and *Less, a novel.* Plaintiff Greer is the recipient of the Pulitzer Prize for Fiction, a Guggenheim Fellowship, and an NEA grant. Plaintiff Greer's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

17.     Plaintiff David Henry Hwang ("Plaintiff Hwang") is a resident of New York. Plaintiff  Hwang is a playwright and screenwriter who owns registered copyrights in many works, including but not limited to, *M. Butterfly, Chinglish, Yellow Face, the Dance and the Railroad*, and *FOB*, as well as the Broadway musical*, Flower Drum Song* (2002 revival). Plaintiff Hwang is a Tony Award winner and three-time nominee, a Grammy Award winner who has been twice nominated, a three-time OBIE Award winner, and a three-time finalist for the Pulitzer Prize in Drama. Plaintiff Hwang's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

18.     Plaintiff Matthew Klam ("Plaintiff Klam") is a resident of Washington D.C. Plaintiff Klam is an author who owns registered copyrights in several works, including but not limited to, *Who is Rich?,* and *Sam the Cat and Other Stories*. Plaintiff Klam is a recipient of a Guggenheim Fellowship, a Robert Bingham/PEN Award, a Whiting Writer's Award, and a National Endowment of the Arts. Plaintiff Klam's works have been selected as Notable Books of the year by *The New York Times, The Los Angeles Times, the Kansas City Star, and the Washington Post.* Plaintiff Klam's works include copyright-management information that

provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

19.     Plaintiff Laura Lippman ("Plaintiff Lippman") is a resident of Maryland. Plaintiff Lippman is an author who owns registered copyrights in several works, including but not limited to, *I'd Know you Anywhere, What the Dead Know*, *Hardly Knew Her*, *Another Thing to Fall*, *Butchers Hill*, and *Baltimore Blues*. Plaintiff Lippman is a *New York Times* bestseller and the recipient of the Edgar Award, the Anthony Award, the Agatha Award, the Quill Award, the Shamus Award, and the Nero Wolfe Award. Plaintiff Lippman's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

20.     Plaintiff Rachel Louise Snyder ("Plaintiff Snyder") is a resident of Washington, D.C. Plaintiff Snyder is an author who owns registered copyrights in many works, including but not limited to, *Women We Buried, Women We Burned*, *No Visible Bruises – What We Don't Know About Domestic Violence Can Kill Us*, *What We've Lost is Nothing*, and *Fugitive Denim: A Moving Story of People and Pants in the Borderless World of Global Trade*. Plaintiff Snyder is a Guggenheim fellow and the recipient of the J. Anthony Lukas Work-in-Progress Award, the Hillman Prize, and the Helen Bernstein Book Award, and was a finalist for the National Book Critics Circle Award, *Los Angeles Times* Book Prize, and Kirkus Award. Her work has appeared in *The New Yorker*, *The New York Times*, *Slate*, and in many other publications. Plaintiff Snyder's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

21.     Plaintiff Ayelet Waldman ("Plaintiff Waldman") is a resident of California. Plaintiff Waldman is an author and screen and television writer who owns registered copyrights in several works, including but not limited to, *Love and other Impossible Pursuits*, *Red Hook Road, Love and Treasure*, *Bad Mother, Daughter's Keeper, A Really Good Day, Fight of the Century, and Kingdom of Olives and Ash*. Plaintiff Waldman has been nominated for an Emmy

and a Golden Globe and is the recipient of numerous awards including a Peabody, AFI award, and a Pen Award, among others. Plaintiff Waldman's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

22.      Plaintiff Jacqueline Woodson ("Plaintiff Woodson") is a resident of New York. Plaintiff Woodson is an author who owns registered copyrights in many works, including but not limited to, *Brown Girl Dreaming*, *After Tupac & D Foster*, *Harbor Me*, *Before the Ever After*, *Day You begin*, and *Another Brooklyn*. Plaintiff Woodson is the recipient of the MacArthur "Genius" Award, a Guggenheim Fellowship, the National Book Award, a Caldecott Honor Medal, the Coretta Scott King Award, the Newbery Honor Medal, and the Hans Christian Andersen Award, among others. Plaintiff Woodson's works include copyright-management information that provides information about the copyrighted work, including the title of the work, its ISBN or copyright registration number, the name of the author, and the year of publication.

23.      At all times relevant hereto, Plaintiffs have been and remain the holders of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101, *et seq.* and all amendments thereto) to reproduce, distribute, display, or license the reproduction, distribution, and/or display the works identified in paragraphs 13-22, *supra*.

**B.      Defendants**

24.      Defendant OpenAI, Inc. is a Delaware nonprofit corporation with its principal place of business located at 3180 18th St., San Francisco, CA 94110.

25.      Defendant OpenAI, LP is a Delaware limited partnership with its principal place of business located at 3180 18th St., San Francisco, CA 94110. OpenAI, LP is a wholly owned subsidiary of OpenAI, Inc. that is operated for profit. OpenAI, Inc. controls OpenAI, LP directly and through the other OpenAI entities.

26.      Defendant OpenAI OpCo, LLC is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI

**1AA-196**

OpCo, LLC is a wholly owned subsidiary of OpenAI, Inc. that is operated for profit. OpenAI, Inc. controls OpenAI OpCo, LLC directly and through the other OpenAI entities.

27.     Defendant OpenAI GP, LLC is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI GP, LLC is a general partner of OpenAI, LP. OpenAI GP manages and operates the day-to-day business and affairs of OpenAI, LP. OpenAI GP was aware of the unlawful conduct alleged herein and exercised control over OpenAI, LP throughout the Class Period. OpenAI, Inc. directly controls OpenAI GP.

28.     Defendant OpenAI Startup Fund I, LP is a Delaware limited partnership with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund I, LP was instrumental in the foundation of OpenAI, LP, including the creation of its business strategy and providing initial funding. OpenAI Startup Fund I was aware of the unlawful conduct alleged herein and exercised control over OpenAI, LP throughout the Class Period.

29.     Defendant OpenAI Startup Fund GP I, LLC is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund GP I, LLC is the general partner of OpenAI Startup Fund I. OpenAI Startup Fund GP I is a party to the unlawful conduct alleged herein. OpenAI Startup Fund GP I manages and operates the day-to-day business and affairs of OpenAI Startup Fund I.

30.     Defendant OpenAI Startup Fund Management, LLC is a Delaware limited liability company with its principal place of business located at 3180 18th Street, San Francisco, CA 94110. OpenAI Startup Fund Management, LLC is a party to the unlawful conduct herein. OpenAI Startup Fund Management was aware of the unlawful conduct alleged herein and exercised control over OpenAI, LP throughout the Class Period.

## FACTUAL ALLEGATIONS

**A.    OpenAI's Artificial Intelligence Products**

31.    OpenAI researches, develops, releases, and maintains AI products with the intention that its products "benefit all of humanity."[1]

32.    ChatGPT is among the products OpenAI has developed, engineered, released, and maintained, which utilizes another OpenAI product, GPT models, to respond to text prompts and queries in a natural, coherent, and fluent way through a web interface.

33.    OpenAI has released a series of upgrades to its GPT model, including GPT-1 (released June 2018), GPT-2 (February 2019), GPT-3 (May 2020), GPT-3.5 (March 2022), and most recently, GPT-4 (March 2023)[2].

34.    The current version of ChatGPT utilizes both GPT-3.5 and GPT-4; however, the version of ChatGPT that allows users to choose between using GPT-3.5 and GPT-4 is only available to subscribers at a cost of $20 per month. Otherwise, users are only able to access the version of ChatGPT that relies on the GPT-3.5 model.[3]

35.    OpenAI makes ChatGPT available to software developers through an application-programming interface ("API"), which allows developers to write software programs that exchange data with ChatGPT.[4] OpenAI charges developers for access to ChatGPT by the API on the basis of usage.

**B.    OpenAI Uses Copyrighted Works in its Training Datasets**

36.    As mentioned in paragraph 6, *supra*, OpenAI pre-trains its GPT models using a dataset consisting of various sources and content types, including books, plays, articles, and webpage and other written works, to respond accurately to users' prompts and queries.

37.    OpenAI has admitted that, of all sources and content types that can be used to train the GPT models, written works, plays and articles are valuable training material because

---

[1] *About*, OpenAI, https://openai.com/about
[2] Fawad Ali, *GPT-1 to GPT-4: Each of OpenAI's GPT Models Explained and Compared*, Make Use Of (Apr. 11, 2023) https://www.makeuseof.com/gpt-models-explained-and-compared/
[3] *Introducing ChatGPT Plus*, OpenAI (Feb. 1, 2023) https://openai.com/blog/chatgpt-plus
[4] *OpenAI API*, OpenAI (June 11, 2020) https://openai.com/blog/openai-api

they offer the best examples of high-quality, long form writing and "contain[] long stretches of contiguous text, which allows the generative model to learn to condition on long-range information."[5]

38.     Upon information and belief, OpenAI builds the dataset it uses to train its GPT models by scraping the internet for text data.

39.     While casting a wide net across the internet to capture the most comprehensive set of content available allows OpenAI to better train its GPT models, this practice necessarily leads OpenAI to capture, download, and copy copyrighted written works, plays and articles.

40.     Among the content OpenAI has scraped from the internet to construct its training datasets are Plaintiffs' copyrighted works.

41.     In its June 2018 paper introducing the GPT-1 model, *Improving Language Understanding by Generative Pre-Training*, OpenAI revealed that it trained the GPT-1 model using two datasets: "Common Crawl," which is a massive dataset of web pages containing billions of words, and "BookCorpus," which is a collection of "over 7,000 unique unpublished books from a variety of genres including Adventure, Fantasy, and Romance."[6]

42.     BookCorpus is a controversial dataset, assembled in 2015 by a team of AI researchers funded by Google and Samsung for the sole purpose of training language models like GPT by copying written works from a website called Smashwords, which hosts self-published novels, making them available to readers at no cost.[7] Despite those novels being largely under copyright, they were copied into the BookCorpus dataset without consent, credit, or compensation to the authors.[8]

43.     OpenAI also copied many books while training GPT-3. In the July 2020 paper introducing GPT-3, *Language Models are Few-Shot Learners*, OpenAI disclosed, in addition to

---

[5] Alec Radford, *Improving Language Understanding by Generative-Pre-Training*, OpenAI (June 11, 2018).
[6] *Id.*; *see also* Fawad Ali, *GPT-1 to GPT-4: Each of OpenAI's GPT Models Explained and Compared*, Make Use Of (Apr. 11, 2023) https://www.makeuseof.com/gpt-models-explained-and-compared/
[7] Jack Bandy, *Dirty Secrets of BookCorpus, a Key Dataset in Machine Learning*, Medium (May 12, 2021) https://towardsdatascience.com/dirty-secrets-of-bookcorpus-a-key-dataset-in-machine-learning-6ee2927e8650
[8] *Id.*

using the "Common Crawl" and "WebText" datasets that capture web pages, 16% of the GPT-3 training dataset came from "two internet-based book corpora," which OpenAI simply refers to as "Books1" and "Books2."[9]

44.     OpenAI has never revealed what books are part of the Books1 and Books2 datasets or how they were obtained. OpenAI has offered a few clues, admitting that these are internet-based datasets that are much larger than BookCorpus.[10] Based on the figures provided in its GPT-3 introductory paper, Books1 is nine times larger than BookCorpus, meaning it contains roughly 63,000 titles, and Books2 is 42 times larger, meaning it contains about 294,000 titles.[11]

45.     A limited number of internet-based book corpora exist that contain this much material, meaning there are only a handful of possible sources OpenAI could have used to train the GPT-3 model.

46.     Project Gutenberg is an online archive of e-books whose copyrights have expired. Project Gutenberg has long been popular for training AI systems due to the lack of copyright. In 2018, a team of AI researchers created the "Standardized Project Gutenberg Corpus," which contained "more than 50,000 books."[12] On that information and belief, the OpenAI Books1 dataset is based on either the Standardized Project Gutenberg Corpus or Project Gutenberg itself, because of the roughly similar sizes of the two datasets.

47.     As for the Books2 dataset, the only "internet-based books corpora" that have ever offered that much material are infamous "shadow library" websites, like Library Genesis ("LibGen"), Z-Library, Sci-Hub, and Bibliotik, which host massive collections of pirated books, research papers, and other text-based materials.[13] The materials aggregated by these websites have also been available in bulk through torrent systems.[14]

---

[9] Tom B. Brown, *Language Models are Few-Shot Learners*, OpenAI (July 22, 2020).
[10] *Id.* at 9.
[11] *Id.*
[12] Martin Gerlach, et al., *A standardized Project Gutenberg corpus for statistical analysis of natural language and quantitative linguistics*, Cornell University (Dec. 19, 2018), https://arxiv.org/pdf/1812.08092.pdf
[13] *See* Claire Woodcock, *'Shadow Libraries' Are Moving Their Pirated Books to The Dark Web After Fed Crackdowns*, Vice (Nov. 30, 2022).
[14] *Id.*

48.     These illegal shadow libraries have long been of interest to the AI-training community. For instance, an AI training dataset published in December 2020 by EleutherAI called "Books3" includes a recreation of the Bibliotik collection and contains nearly 200,000 books.[15] On information and belief, the OpenAI Books2 dataset includes books copied from these "shadow libraries," because those are the sources of trainable books most similar in nature and size to OpenAI's description of Books2.

49.     When OpenAI introduced GPT-4 in March 2023, the introductory paper contained no information about the dataset used to train it.[16] Instead, OpenAI claims that, "[g]iven both the competitive landscape and the safety implications of large-scale models like GPT-4, this report contains no further details about . . . dataset construction."[17]

50.     Regarding GPT-4, OpenAI has conceded that it did filter its dataset "to specifically reduce the quantity of inappropriate erotic text content," implying that it again used a large dataset containing text works.[18]

**C.      OpenAI Unlawfully Infringed Plaintiffs' Copyrights**

51.     As explained, ChatGPT's responses to user queries or prompts, like other large language models, rely on the data upon which it is trained to generate responsive content. For example, if ChatGPT is prompted to generate a writing in the style of a certain author, GPT would generate content based on patterns and connections it learned from analysis of that author's work within its training dataset.

52.     On information and belief, the reason ChatGPT can generate a writing in the style of a certain author or accurately summarize a certain copyrighted book and provide in-depth analysis of that book is because it was copied by OpenAI and copied and analyzed by the underlying GPT model as part of its training data.

53.     When ChatGPT is prompted to summarize copyrighted written works authored by Plaintiffs, it generates accurate, in-depth summaries and analyses of their works.

---

[15] *See* Alex Perry, *A giant online book collection Meta used to train its AI is gone over copyright issues*, Mashable (Aug. 18, 2023).
[16] *GPT-4 Technical Report*, OpenAI (Mar. 27, 2023).
[17] *Id.* at 2.
[18] *Id.* at 61.

54.     For example, when prompted, ChatGPT accurately summarized Plaintiff Chabon's novel *The Amazing Adventures of Kavalier & Clay*. When prompted to identify examples of trauma in the *Amazing Adventures of Kavalier & Clay*, ChatGPT identified six specific examples, including how the main character's "experiences in Europe, including witnessing the persecution of Jews and the loss of his family, haunt him throughout the story." When asked to write a paragraph in the style of *The Amazing Adventures of Kavalier & Clay,* ChatGPT generated a passage imitating Plaintiff Chabon's writing style including references to the characters dealing with "the weight of the world at war." *Exhibit A*.

55.     Likewise, ChatGPT accurately summarized Plaintiff Coates novel *The Water Dancer.* When prompted to identify examples of pain in *The Water Dancer*, Chat GPT identified eight examples, including the "physical pain of slavery" and the "pain of longing for freedom" and how the characters "yearn for freedom and suffer the pain of not knowing if it will ever be attainable." When asked to write a paragraph in the style of *The Water Dancer*, ChatGPT generated passages imitating Plaintiff Coates's writing style including references to the "defy[ing] the chains of oppression" and the "dreams of people yearning to be free." *Exhibit B*.

56.     ChatGPT also provided in depth summaries and analyses of Plaintiff Díaz's novel *The Brief Wondrous Life of Oscar Wao*. For instance, when prompted to provide examples of the immigrant experience in *The Brief Wondrous Life of Oscar Wao*, ChatGPT identified eight specific examples, including cultural traditions, "such as the belief in the 'fukú' curse and the significance of family and community" and how "cultural elements serve as a link to their roots and provide a sense of continuity in their lives." When asked to write a paragraph in the style of *The Brief Wondrous Life of Oscar Waso*, Chat GPT generated passages imitating Plaintiff Díaz's style including references to the "the 'fukú'curse" and "what it meant to be both Dominican and American." *Exhibit C*.

57.     When prompted, ChatGPT accurately summarized Plaintiff Greer's novel, *The Confessions of Max Tivoli*. When prompted to identify themes of the nature of beauty in *The Confessions of Max Tivoli*, ChatGPT identified six specific themes of beauty in the novel, including "ephemeral beauty." When prompted to write a paragraph in the style of *The*

*Confessions of Max Tivoli*, ChatGPT generated passages imitating Plaintiff Greer's style, including references to beauty as a "shifting, mutable canvas." *Exhibit D.*

58.     ChatGPT similarly provided in depth summaries and analyses of Plaintiff Hwang's play, *The Dance and the Railroad*. For example, when prompted, ChatGPT identified five key themes from *The Dance and the Railroad*, including "art and creativity as a form of resistance" and "using art as a form of escape from the harsh realities and dehumanization of labor." Additionally, when prompted to produce a screenplay in the style of *The Dance and the Railroad*, ChatGPT produced a script written in Plaintiff Hwang's style, which generated a screenplay involving a Chinese laborer toiling on the Central Pacific Railroad that "believe[s] in the power of art to keep [their] spirits alive." *Exhibit E.*

59.     Likewise, ChatGPT provided in depth summaries and analyses of Plaintiff Klam's works. For example, when prompted, Chat GPT accurately summarized Plaintiff Klam's novel *Who is Rich?* and correctly analyzed the key relationships between the novel's central character and the other characters in the novel. When asked to identify the main themes in *Who is Rich?* Chat GPT accurately identified seven main themes of the novel including "mid-life crisis and identify." Further, when prompted to write a paragraph in the style of *Who is Rich?*, ChatGPT generated passages imitating Plaintiff Klam's writing style, including a reference to navigating the "treacherous waters of midlife." *Exhibit F.*

60.     When prompted, ChatGPT accurately summarized Plaintiff Lippman's mystery novel *What the Dead Know*. When prompted to identify the main themes in *What the Dead Know,* ChatGPT identified seven main themes of the novel including "identity and memory." Further, when prompted to write a paragraph in the style of *What the Dead Know*, ChatGPT generated passages imitating Plaintiff Lippman's writing style, including references to the "recesses of memory's labyrinth." *Exhibit G.*

61.     In the same vein, after being prompted to summarize Plaintiff Snyder's book, *What We've Lost is Nothing*, ChatGPT accurately identified themes included within the novel, such as "safety, perception, and the fragility of human relationships." Similarly, once prompted, ChatGPT accurately analyzed the theme of safety using a specific example from the text of

Plaintiff Snyder's copyrighted work, explaining that "the theme of safety is examined through the lens of a series of burglaries that occur in a suburban neighborhood . . . and how these incidents affect the characters and their perceptions of the world around them." ChatGPT was also able to generate random passages authentically written in Plaintiff Snyder's writing style when prompted. *Exhibit H.*

62.     Additionally, ChatGPT provided in depth summaries and analyses of Plaintiff Waldman's works. For instance, when prompted to summarize Plaintiff Waldman's novel *Love and Other Impossible Pursuits*, Chat GPT accurately provided a summary and analysis of the novel. When prompted to identify specific instances of grief in *Love and other Impossible Pursuits,* ChatGPT identified five specific instances of grief, including the protagonist Emelia's loss of her infant daughter, a "loss that occurred before the events of the novel and [that] continue to haunt Emelia, affecting her emotional state and relationships." When prompted to write a paragraph in the style of *Love and Other Impossible Pursuits,* ChatGPT generated a paragraph imitating Plaintiff Waldman's writing style, including references to the "weight of her daughter's absence." *Exhibit I.*

63.     Similarly, when prompted, Chat GPT accurately summarized Plaintiff Woodson's novel *Brown Girl Dreaming*. For example, when prompted to provide the main themes in *Brown Girl Dreaming,* ChatGPT identified seven specific themes, including "racial injustice and civil rights" and "family and belonging." When prompted to write a paragraph in the style of *Brown Girl Dreaming* ChatGPT generated passages imitating Plaintiff Woodson's style, including references that the "struggle for justice and equality colored the air we breathed" and the "comforting embrace of family." *Exhibit J.*

64.     At no point did ChatGPT reproduce any of the copyright management information Plaintiffs included with their published works.

65.     Furthermore, at no point did Plaintiffs authorize OpenAI to download and copy their protected works, as described above.

## CLASS ALLEGATIONS

66.     Plaintiffs bring this action pursuant to the provisions of Rules 23(a), 23(b)(2),

and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following

proposed Class:

> All persons or entities in the United States that own a United States copyright in any written work that OpenAI used to train any GPT model during the Class Period.

67.     Excluded from the Class are Defendant, its employees, officers, directors, legal

representatives, heirs, successors, wholly- or partly-owned, and its subsidiaries and affiliates;

proposed Class counsel and their employees; the judicial officers and associated court staff

assigned to this case and their immediate family members; all persons who make a timely

election to be excluded from the Class; governmental entities; and the judge to whom this case

is assigned and his/her immediate family.

68.     This action has been brought and may be properly maintained on behalf of the

Class proposed herein under Federal Rule of Civil Procedure 23.

69.     <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class

are so numerous and geographically dispersed that individual joinder of all Class members is

impracticable. On information and belief, there are at least tens of thousands of members in the

Class. The Class members may be easily derived from Defendants' records.

70.     <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and

23(b)(3): This action involves common questions of law and fact, which predominate over any

questions affecting individual Class members, including, without limitation:

  a.  Whether Defendants engaged in the conduct alleged herein;

  b.  Whether Defendants violated the copyrights of Plaintiffs and the Class when they
      downloaded and copied Plaintiffs' and the Class's copyrighted books;

  c.  Whether ChatGPT itself is an infringing derivative work based on Plaintiffs' and
      the Class's copyrighted books;

  d.  Whether the text responses of ChatGPT are infringing derivative works based on
      Plaintiffs' and the Class's copyrighted books;

  e.  Whether Defendants violated the DMCA by removing copyright-management

information from Plaintiffs' and the Class's copyrighted books;

f. Whether Defendants were unjustly enriched by the unlawful conduct alleged herein;

g. Whether Defendants' conduct violates the California Unfair Competition Law;

h. Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

i. Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

71. <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

72. <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other members of the Class they seeks to represent; Plaintiff have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

73. <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

74. <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Class to individually seek redress for Defendants' wrongful conduct. Even if Class members

could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**DIRECT COPYRIGHT INFRINGEMENT,**
**17 U.S.C. § 106, *et seq*.**

75.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

76.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Class against Defendants.

77.    As the owners of the registered copyrights in books used to train OpenAI's GPT models, Plaintiffs and the Class hold the exclusive rights to those works under 17 U.S.C. § 106.

78.    Plaintiffs have obtained copyright registrations for each of the works identified in *Exhibit K*.

79.    On information and belief, to train OpenAI's GPT models, OpenAI relied on harvesting mass quantities of content from the public internet, including Plaintiffs' and the Class's written works, which are available in digital formats.

80.    Because OpenAI's GPT models cannot function without the expressive information extracted from Plaintiffs' and Class members' works and retained by the GPT models, GPT and ChatGPT are themselves infringing derivative works, made without Plaintiffs' and Class members' permission  in violation of their exclusive rights under the Copyright Act.

81.    Plaintiffs and the Class never authorized OpenAI to make copies of their written works, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works). Each of those rights belong exclusively to Plaintiffs and Class members under copyright law.

82.     By and through the actions alleged above, OpenAI has infringed and will continue to infringe Plaintiffs' and the Class's copyrights.

83.     OpenAI's acts of copyright infringement have been intentional, willful, and in callous disregard of Plaintiffs' and Class members' rights. OpenAI knew at all relevant times that the datasets it used to train its GPT models contained copyrighted materials, and that its acts were in violation of the terms of use of the materials.

84.     OpenAI engaged in the infringing acts described herein for its own commercial benefit.

85.     As a direct and proximate result of OpenAI's wrongful conduct, Plaintiffs have been substantially and irreparably injured by OpenAI's acts of direct copyright infringement in an amount not readily capable of determination and, unless permanently enjoined from further acts of infringement and continuing to use and distribute GPT models trained using Plaintiffs' and Class members' copyrighted materials without permission, OpenAI will cause additional irreparable harm for which there is no adequate remedy at law. Plaintiff and the Class are thus entitled to permanent injunctive relief preventing OpenAI from engaging in any further infringement of Plaintiffs' and the Class's copyrighted works.

86.     Plaintiffs are further entitled to recover statutory damages, actual damages, restitution of profits, and other remedies provided by law.

## SECOND CAUSE OF ACTION

### VICARIOUS COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 106

87.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

88.     Plaintiffs bring this claim on behalf of themselves and on behalf of the Class against Defendants.

89.     Defendant OpenAI, LP is the for-profit subsidiary of Defendant OpenAI, Inc. and is principally responsible for and dedicated to the development of the GPT models and ChatGPT products at issue in this action. Defendant OpenAI Startup Fund Management, LLC

exercised control over Defendant OpenAI, LP, along with Defendant OpenAI GP, LLC, which is the general partner of Defendant OpenAI, LP, responsible for managing and operating the day-to-day business affairs of Defendant OpenAI, LP, and is wholly owned and controlled by Defendant OpenAI, Inc., along with Defendant OpenAI OpCo, LLC. Upon information and belief, Defendant OpenAI Startup Fund I, LP played a vital role in the foundation of Defendant OpenAI, LP, including providing initial funding and creating its business strategy, while Defendant OpenAI Startup Fund GP I, LLC is the general partner of Defendant OpenAI Startup Fund I, LP, responsible for managing and operating the day-to-day business affairs of Defendant OpenAI Startup Fund I, LP.

90.     Defendant OpenAI, LP directly infringed upon Plaintiffs' and Class members' copyrighted works through the unauthorized use and reproduction of the works, and preparation of derivative works by ChatGPT. As discussed above, Plaintiffs' and Class members' protected works were used to train GPT models. Because the GPT models are based on expressive information extracted from Plaintiffs' and Class members' works, Defendant OpenAI, LP is directly liable for unauthorized use, reproduction, display of copyrighted works, as well as creation of derivative works through ChatGPT's responses. Therefore, Defendant OpenAI, LP directly infringed upon Plaintiffs' and Class members' exclusive rights under 17 U.S.C. § 106.

91.     Defendants OpenAI, Inc., OpenAI OpCo, LLC, OpenAI GP, LLC, OpenAI Startup Fund GP I, LLC, OpenAI Startup Fund I, LP, and OpenAI Startup Management LLC are vicariously liable for the infringement alleged herein because they had the right and ability to supervise and control the infringing activity but failed to stop the infringing conduct.

92.     Furthermore, Defendants have a direct financial interest in the infringing conduct and received revenue in connection with the development, deployment, and advancement of the GPT models and ChatGPT. Each entity profited from the advancement of GPT models and ChatGPT.

93.     These committed acts of copyright infringement were willful, intentional, and malicious and thus subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act of up to $150,000 per infringement.

94.     Plaintiffs and Class members have been injured by Defendants' acts of vicarious copyright infringement. Plaintiffs and the Class are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law.

## THIRD CAUSE OF ACTION

### DIGITAL MILLENNIUM COPYRIGHT ACT – REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION
### 17 U.S.C. § 1202(B)

95.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

96.     Plaintiffs bring this claim on behalf of themselves and on behalf of the Class against Defendants.

97.     Plaintiffs and Class members included one or more forms of copyright-management information in each of Plaintiffs' and Class members' infringed works, including: copyright notice, title and other identifying information, the name or other identifying information about the owners of each book, terms and conditions of use, and identifying numbers or symbols referring to the copyright-management information.

98.     Without the authority of Plaintiffs and the Class, OpenAI copied Plaintiffs' and Class members' works and used them as training data for its GPT software. By design, the training process does not preserve any copyright-management information. Therefore, OpenAI intentionally removed copyright-management information from Plaintiffs' and Class members' works in violation of 17 U.S.C. § 1202(b)(1).

99.     OpenAI's removal or alteration of Plaintiffs' and the Class's copyright-management information has been done knowingly and with the intent to induce, enable, facilitate, or conceal infringement of Plaintiffs' and the Class's copyrights.

100.     Without the authority of Plaintiffs and the Class, Defendants created derivative

works based on Plaintiffs' and Class members' works. By distributing these works without their copyright-management information, OpenAI violated 17 U.S.C. § 1202(b)(3).

101.    OpenAI knew or had reasonable grounds to know that this removal of copyright-management information would facilitate copyright infringement by concealing the fact that every output from ChatGPT is an infringing derivative work, synthesized entirely from expressive information found in the training data.

102.    Plaintiffs and the Class have been injured by OpenAI's removal of copyright-management information. Plaintiffs and the Class are entitled to statutory damages, actual damages, restitution of profits, and other remedies provided by law, including full costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

103.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

104.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Class against Defendants.

105.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

106.    Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above because it illegally collected and used Plaintiffs' and the Class's copyrighted works to train its GPT models.

107.    The unlawful business practices described herein violate the UCL because Defendants used Plaintiffs' and the Class's protected works to train its GPT software for Defendants' own commercial profit without Plaintiffs' and the Class's authorization. Defendants further knowingly designed ChatGPT to include portions or summaries of Plaintiffs'

copyrighted works without attributions in its responses, and they unfairly profit from and take credit for developing a commercial product based on unattributed reproductions of those stolen writing and ideas.

108.    These acts and practices have deceived Plaintiffs and are likely to deceive the public into believing that Plaintiffs and the Class have granted OpenAI the right to use its copyrighted materials. In failing to disclose the sources of its training datasets and suppressing other material facts from Plaintiffs and Class members as well as the public, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

109.    The injuries suffered by Plaintiffs and Class members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class members should have reasonably avoided.

110.    Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

111.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## FIFTH CAUSE OF ACTION
### NEGLIGENCE

112.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if they had been set forth in full herein.

113.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Class against Defendants.

114.    Defendants owed a duty of care toward Plaintiffs and the Class in (1) obtaining data to train its GPT models and (2) not using Plaintiffs' and the Class's protected works to train its GPT models.

115.    Defendants have a common law duty to prevent foreseeable harm to others, including Plaintiffs and members of the Class, who were foreseeable and probable victims of Defendants' unlawful practices.

116.    Defendants breached their duty to exercise due care by negligently, carelessly, and recklessly collecting, maintaining, and controlling Plaintiffs' and Class members' works and engineering, designing, maintaining, and controlling systems—including ChatGPT—that are trained on Plaintiffs' and Class members' works without their authorization.

117.    The damages suffered by Plaintiffs and the Class were the direct and reasonably foreseeable result of Defendants' negligent breach of their duties to adequately design, implement, and maintain reasonable practices to avoid infringing protected works without consent of copyright holders.

118.    Defendants' negligence directly caused significant harm to Plaintiffs and the Class.

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT

119.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

120.    By virtue of the unlawful, unfair, and deceptive conduct alleged herein, Defendants knowingly realized substantial revenue from the use of Plaintiffs' and Class members' copyrighted works for the commercial training of its GPT models used to power its ChatGPT product.

121.    Defendant knew or should have known that Plaintiffs and the Class have invested substantial time and energy creating the works in which they hold a copyright.

122.    Defendants were conferred significant benefits when they downloaded and copied Plaintiffs' and the Class's copyrighted works to train their GPT software without Plaintiffs' and the Class's permission. Defendant knowingly and willingly accepted and enjoyed those benefits.

123.    By using Plaintiffs' and the Class's copyrighted works to train ChatGPT,

Defendants caused Plaintiffs and the Class to suffer actual damages from the deprivation of the benefits of their work, including monetary damages.

124.    Defendants derived profit and other economic benefits from the use of Plaintiffs' and the Class's copyrighted works to train ChatGPT.

125.    It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits it has obtained from and/or at the expense of Plaintiffs and Class members.

126.    As a direct and proximate cause of Defendants' unjust enrichment, Plaintiffs and the Class are entitled to restitution, attorneys' fees, costs and interest.

Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs and the Class irreparable injury that cannot be compensated or measured in money.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class defined above, respectfully request that the Court enter judgment against Defendants and award the following relief:

A.    Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representative of the Class, and Plaintiffs' counsel as counsel for the Class;

B.    An order awarding declaratory relief and temporarily and permanently enjoining Defendant from continuing the unlawful and unfair business practices alleged in this Complaint and to ensure that all applicable information set forth in 17 U.S.C. § 1203(b)(1) is included when appropriate;

C.    An award of statutory and other damages under 17 U.S.C. § 504 for violations of the copyrights of Plaintiff and the Class by Defendants.

D.    An award of statutory damages under 17 U.S.C. § 1203(b)(3) and 17 U.S.C. § 1203(c)(3), or in the alternative, an award of actual damages and any additional profits under 17 U.S.C. § 1203(c)(2);

E.    A declaration that Defendant is financially responsible for all Class notice and

**1AA-214**

the administration of Class relief;

F.      An order awarding any applicable statutory and civil penalties;

G.      An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H.      An award of costs, expenses, and attorneys' fees as permitted by law; and

I.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: October 5, 2023                  Respectfully submitted,

 /s/ *Daniel J. Muller*
DANIEL J. MULLER, SBN 193396
dmuller@venturahersey.com
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
dmuller@venturahersey.com

 /s/ *Bryan L. Clobes*
Bryan L. Clobes (*pro hac vice anticipated*)
**CAFFERTY CLOBES MERIWETHER
      & SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Tel: 215-864-2800
bclobes@caffertyclobes.com

Alexander J. Sweatman (*pro hac vice anticipated*)
**CAFFERTY CLOBES MERIWETHER
      & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312-782-4880
asweatman@caffertyclobes.com

*Attorneys for Plaintiffs*

**1AA-215**

Full docket text for document 51:

Minute Entry for proceedings held before Judge Araceli Martinez-Olguin: Initial Case Management Conference held on 10/5/2023. CASE REFERRED to Magistrate Judge Sallie Kim for Settlement Conference. Counsel to submit briefing no more than 5 pages per party RE further proposed scheduling by 10/17/2023.

Close of Fact Discovery due by 10/29/2024.

Plaintiffs' expert reports due by 12/12/2024.

Defendants' expert reports due by 1/13/2025.

Plaintiffs' rebuttal expert reports due by 2/11/2025.

Close of Expert Discovery due by 3/13/2025.

Motions for Class Certification and Daubert motions due by 4/10/2025.

Oppositions to Class Certification and Daubert motions due by 5/23/2025.

Replies in support of motions for Class Certification and Daubert motions due by 6/24/2025.

Total Time in Court: 22 minutes.

Court Reporter: Recorded via Zoom.

Plaintiff Attorney: Joseph Saveri.

Defendant Attorney: Jospeh Gratz.

(This is a text-only entry generated by the court. There is no document associated with this entry.) (ads, COURT STAFF) (Date Filed: 10/6/2023)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## RELATED CASE ORDER

A Motion for Administrative Relief to Consider Whether Cases Should be Related (Civil L.R. 3-12) has been filed.  As the judge assigned to case

23-cv-03223-AMO
Tremblay v. OpenAI, Inc.

I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me.  Any cases listed below that are not related to the case assigned to me are referred to the judge assigned to the next-earliest filed case for a related case determination.

| Case | Title | Related | Not Related |
|------|-------|---------|-------------|
| 23-cv-04625-CRB | Chabon v. OpenAI, Inc. | AMO | |

## ORDER

The parties are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number.  Any case management conference in any reassigned case will be rescheduled by the Court.  The parties shall adjust the dates for the conference, disclosures and report required by Federal Rules of Civil Procedure 16 and 26 accordingly.  Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for appearance in court, which will be rescheduled by the newly assigned judge.

Dated: October 10, 2023

By: _____

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

1

1AA-217

MORRISON & FOERSTER LLP
Joseph C. Gratz (SBN 240676)
 jgratz@mofo.com
Tiffany Cheung (SBN 211497)
 tcheung@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.258.7522

Allyson R. Bennett (SBN 302090)
 abennett@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5454

LATHAM & WATKINS LLP
Andrew M. Gass (SBN 259694)
 andrew.gass@lw.com
Joseph R. Wetzel (SBN 238008)
 joseph.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle (*pro hac vice*)
 sy.damle@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman (*pro hac vice*)
 alli.stillman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864

*Attorneys for Defendants OpenAI, Inc.,
OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI
GP, L.L.C., OpenAI Startup Fund GP I, L.L.C.,
OpenAI Startup Fund I, L.P., and OpenAI
Startup Fund Management, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PAUL TREMBLAY, an individual;<br>MONA AWAD, an individual;<br><br>      Individual and Representative Plaintiffs,<br><br>      v.<br><br>OPENAI, INC., a Delaware nonprofit corporation;<br>OPENAI, L.P., a Delaware limited partnership;<br>OPENAI OPCO, L.L.C., a Delaware limited<br>liability corporation; OPENAI GP, L.L.C., a<br>Delaware limited liability company; OPENAI<br>STARTUP FUND GP I, L.L.C., a Delaware<br>limited liability company; OPENAI STARTUP FUND I,<br>L.P., a Delaware limited partnership; and OPENAI<br>STARTUP FUND MANAGEMENT, LLC, a<br>Delaware limited liability company,<br><br>      Defendants. | CASE NO. 3:23-cv-03223-AMO<br><br>**DEFENDANTS' MEMORANDUM OF<br>LAW REGARDING FURTHER<br>PROPOSED SCHEDULING**<br><br>Place:    Courtroom 10 - 19th Floor<br>Before:  Hon. Araceli Martínez-Olguín |

## I.    INTRODUCTION

In copyright cases like this one, courts frequently resolve summary judgment motions before class certification.  Because these cases often turn on legal issues, hearing a summary judgment motion first can moot the need to hear class certification altogether.  And even if summary judgment is denied, the court's summary judgment ruling can often narrow and clarify the issues to be decided on class certification.  Further, courts have recognized that there is generally no prejudice where, as here, it is the defendant requesting that summary judgment be heard first.  Accordingly, Defendants request that the Court schedule summary judgment briefing to occur before class certification briefing or, at a minimum, at the same time.

## II.    BACKGROUND

Plaintiffs seek to hold OpenAI liable for the creation and operation of an artificial intelligence service known as ChatGPT.  (*See* OpenAI's Mot. to Dismiss (Dkt. No. 33, "MTD")[1] at 1-2 (explaining more about ChatGPT).)  Although Plaintiffs are authors of books, they seek to represent a class of "[a]ll" U.S persons who "own a [] copyright in *any work* used as training data for the OpenAI Language Models."  (Compl. (Dkt. No. 1) ¶ 42 (emphasis added); Compl. (*Silverman*, Dkt. No. 1) ¶ 43 (emphasis added).)

Plaintiffs bring claims for, among other things, copyright infringement and violation of Section 1202 of the DMCA.[2]  Plaintiffs' claims appear to relate both to (1) the training of OpenAI's models, and (2) the outputs of those models.  For both types of claims, the fair use doctrine will play an important role: with respect to training, whether making intermediate copies of copyrighted works—that are never shown to anyone—for the purposes of training an AI model is fair use, and with respect to outputs, whether particular outputs generated by the AI models are fair use.  Analyzing those issues will require the Court to apply the factors set out in Section 107

---

[1] Unless stated otherwise, the docket numbers refer to the *Tremblay* docket, no. 3:23-cv-03223-AMO.

[2] As explained in more detail in Defendants' Motion to Dismiss, Section 1202 of the DMCA prohibits, among other things, the intentional removal or alteration of copyright management information while having "reasonable grounds to know . . . that [that removal or alteration] will induce, enable, facilitate, or conceal an infringement [of copyright]."  17 U.S.C. 1202(b); *see also* MTD at 11-18.

of the Copyright Act.  *See* 17 U.S.C. § 107 (listing four factors).  With respect to outputs, Plaintiffs must also show that expression in the output is substantially similar to expression in Plaintiffs' works.  *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).  And with respect to all claims, of course, Plaintiffs must show that they own the copyrights in question.

OpenAI will argue at the appropriate time that class certification is not appropriate because (among other reasons) analyzing each of these issues as to each putative class member will require individualized inquiries not susceptible to class-wide proof.

### III.   ARGUMENT

The Ninth Circuit has held that "under the proper circumstances—where it is more practicable to do so and where the parties will not suffer significant prejudice—the district court has discretion to rule on a motion for summary judgment before it decides the certification issue." *Wright v. Schock*, 742 F.2d 541, 543–44 (9th Cir. 1984).  That procedure is particularly "reasonable" where it "seems likely" to avoid "needless and costly further litigation."  *Id.*; *see also Saeger v. Pac. Life Ins. Co*., 305 F. App'x 492, 493 (9th Cir. 2008) (same); *Khasin v. Hershey Co*., No. 5:12-CV-01862-EJD, 2014 WL 1779805, at *2 (N.D. Cal. May 5, 2014) (same); *see also* Standing Order for Civil Cases Before Judge Vince Chhabria (N.D. Cal.) ¶ 50, *available at* https://www.cand.uscourts.gov/wp-content/uploads/judges/chhabria-vc/VC-Civil-Standing-Order-2023-06-01.pdf (stating that the court believes that hearing summary judgment before litigating class certification "will often save a great deal of time and money").

As addressed below, assessing the underlying claims will assist and inform the Court's evaluation of whether Plaintiffs have satisfied the strictures of Rule 23 for the proposed class here.  Moreover, the possibility that resolving summary judgment prior to class certification could result in a judgment that does not bind an entire class (often referred to as "one-way intervention") does not constitute "prejudice" to Plaintiffs under well-established Ninth Circuit precedent.

### A.   Resolving class certification before summary judgment would be inefficient.

As noted, the Court in this case will have to resolve issues regarding ownership of the

works in dispute, whether any of the outputs of OpenAI's models are substantially similar to the Plaintiffs' works, and the extent to which the challenged conduct qualifies as a fair use. Many of the authorities that bear on these questions are judicial opinions resolving them as a matter of law, including on summary judgment.[3] Even where cases *can't* be resolved on summary judgment, summary judgment often narrows and clarifies the issues in dispute, making briefing and ruling on class certification easier. It is therefore often most efficient in copyright cases for courts to consider summary judgment before turning to class certification, and the Court should do so here.

*Authors Guild v. Google, Inc. ("Google Books")* is instructive. There, the plaintiff alleged that Google committed copyright infringement by creating "digital scan[s]" of "millions of books" to create a new search engine and related research tools. 804 F.3d 202, 208–29 (2d Cir. 2015). Prior to summary judgment, the plaintiffs moved to certify a class under Rule 23, and the district court granted the motion based, in part, on the suggestion that the fair use question could be resolved on a classwide basis. 282 F.R.D. 384, 394 (S.D.N.Y. 2012). The Second Circuit reversed, noting that the district court's attempt to grapple with Rule 23's detailed requirements— including "the commonality of plaintiffs' injuries, the typicality of their claims, and the predominance of common questions of law or fact"—was premature in light of the likelihood that those issues will be "necessarily inform[ed] and perhaps moot[ed]" by "resolution of [the] fair use defense in the first instance" under Rule 56. 721 F.3d 132, 134 (2d Cir. 2013). The court ultimately granted summary judgment to Google on fair use, mooting the class certification question. *See* 804 F.3d at 207-8.

*Google Books* is not unique: courts have repeatedly sequenced summary judgment prior to class certification in appropriate circumstances to streamline litigation. The court in *Stevens v. CoreLogic*, for example, addressed a claim under Section 1202 of the DMCA based on the alteration of metadata in photographs that third-party users had uploaded to the defendant's

---

[3] *See, e.g., Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199–1200 (2021) (rejecting argument that "'fair use' is a question for a jury" after finding that "the ultimate 'fair use' question primarily involves legal work"); *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) (affirming summary judgment on fair use grounds); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 644-45 (4th Cir. 2009) (same); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003) (same).

software platform.  Plaintiffs brought the case as a putative class action, but defendants filed a
motion for summary judgment prior to class certification, which the court granted, thereby
mooting the class certification issue.  194 F. Supp. 3d 1046, 1050–54 (S.D. Cal. 2016).  On
appeal, the Ninth Circuit affirmed, including by explicitly endorsing the district court's decision
not to defer consideration of the Rule 56 motion.  899 F.3d 666, 678–79 (9th Cir. 2018).

While *Stevens* and *Google Books* mooted the class certification motion entirely, hearing
summary judgment before or contemporaneously with class certification can be beneficial even in
cases where summary judgment is denied.  That was the case in *Schneider v. YouTube, LLC*,
which was also a putative class action focusing on claims for copyright infringement and
violation of the DMCA.  No. 20-cv-04423-JD, 2023 WL 114226 (N.D. Cal. Jan. 5, 2023).  Again,
defendants filed a motion for summary judgment prior to class certification, which the court
considered without hesitation.  *Id.*  And while the court granted summary judgment on copyright
infringement but denied with respect to the DMCA claims, in that instance, its later class
certification analysis relied heavily on the "summary judgment record."  2023 WL 3605981, at
*15 (N.D. Cal. May 22, 2023); *see also id.* at *13 ("the individualized disputes of fact that
precluded summary judgment" also "raise[] obvious barriers to classwide proof"); *id.* at *10-11
(relying on the summary judgment "record" in analyzing Rule 23's predominance requirement).

So too here.  Whether or not OpenAI's summary judgment motion is dispositive, the
Court's consideration of that motion will clarify whether the disputed issues can be resolved on a
class-wide basis.  Such clarification is especially important in copyright cases like this one, since
"[i]t has been said that copyright claims are poor candidates for class-action treatment" because
they often turn on "facts which are particular to that single claim of infringement[] and separate
from all the other claims" and are often subject to "defenses that require their own individualized
inquiries."  *Id.* at *6 (cleaned up).  For example, in this case, the Court will know after summary
judgment whether there are factual disputes about whether: (1) the outputs of OpenAI's models
(or the models themselves) are substantially similar to any of Plaintiffs' works, (2) the models'
training or output harms the market for any of Plaintiffs' works (which is one of the fair use

factors), (3) which markets are being harmed by such conduct, or (4) ownership.  The Court will then, in turn, be able to better evaluate whether the factual disputes that will actually be tried are susceptible to class-wide proof—rather than ruling on class certification based on hypotheticals, and potentially having to re-visit that ruling later.

> **B.  Plaintiffs will not be prejudiced if summary judgment is heard before class certification.**

As the Ninth Circuit explained in *Wright*, the question of "prejudice" in this context primarily relates to the possibility that, if defendants prevail on summary judgment, the ruling will not bind absent class members.  *See Wright*, 742 F.2d at 543-44.  But that is prejudice to the defendant, not plaintiff.  *Id.* at 544-45; *Khasin,* 2014 WL 1779805, at *2-3 (rejecting plaintiffs' argument that the possibility of "one-way intervention" constitutes prejudice where the defendant sought summary judgment prior to a ruling on class certification).  Courts therefore reject it as a basis for refusing to schedule summary judgment prior to class certification where the defendants have requested summary judgment to be heard first.  *See, e.g., Khasin,* 2014 WL 1779805, at *2 ("Where the defendant assumes the risk that summary judgment in his favor will have only stare decisis effect on the members of the putative class, it is within the discretion of the district court to rule on the summary judgment motion first."); *id.* at *3 (rejecting plaintiffs' argument that the possibility of "one-way intervention" constitutes prejudice where the defendant sought summary judgment prior to a ruling on class certification).

Nor will plaintiffs be able to show any other form of prejudice.  If summary judgment is denied, plaintiffs may still seek class certification of the remaining claims.  And if summary judgment is granted, absent members of the putative class "remain entirely free to file suit" against any of the defendants.  *Wright*, 742 F.2d at 545.

> **IV.  CONCLUSION**

Because deciding summary judgment first is likely to be most efficient for the Court and will not prejudice any party, Defendants request that summary judgment be heard before or, at a minimum, at the same time as class certification.

Dated:  October 17, 2023

Respectfully submitted,

By:   */s/ Allyson R. Bennett*

MORRISON & FOERSTER LLP
Joseph C. Gratz (SBN 240676)
 *jgratz@mofo.com*
Tiffany Cheung (SBN 211497)
 *tcheung@mofo.com*
425 Market Street
San Francisco, CA 94105
Telephone: 415.258.7522

Allyson R. Bennett (SBN 302090)
 *abennett@mofo.com*
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5454

By:   */s/ Andrew M. Gass*

LATHAM & WATKINS LLP
Andrew M. Gass (SBN 259694)
 *andrew.gass@lw.com*
Joseph R. Wetzel (SBN 238008)
 *joseph.wetzel@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle (*pro hac vice pending*)
 *sy.damle@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman (*pro hac vice pending*)
 *alli.stillman@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864

*Attorneys for Defendants OpenAI, Inc., OpenAI,
L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C.,
OpenAI Startup Fund GP I, L.L.C., OpenAI Startup
Fund I, L.P., and OpenAI Startup Fund
Management, LLC*

**ATTESTATION OF CONCURRENCE**

I, Allyson R. Bennett, as the ECF user and filer of this document, attest that concurrence in the filing of this document has been obtained from Andrew M. Gass.

Dated: October 17, 2023                                    /s/ Allyson R. Bennett
                                                              Allyson R. Bennett

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUTHORS GUILD, DAVID BALDACCI, MARY BLY, MICHAEL CONNELLY, SYLVIA DAY, JONATHAN FRANZEN, JOHN GRISHAM, ELIN HILDERBRAND, CHRISTINA BAKER KLINE, MAYA SHANBHAG LANG, VICTOR LAVALLE, GEORGE R.R. MARTIN, JODI PICOULT, DOUGLAS PRESTON, ROXANA ROBINSON, GEORGE SAUNDERS, SCOTT TUROW, and RACHEL VAIL, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OPENAI INC., OPENAI LP, OPENAI LLC, OPENAI GP LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI HOLDINGS LLC, OPENAI STARTUP FUND I LP, OPENAI STARTUP FUND GP I LLC, and OPENAI STARTUP FUND MANAGEMENT LLC, <br><br> Defendants. | No. 1:23-cv-8292-SHS <br><br><br> **RULE 26(f) REPORT AND PROPOSED CASE MANAGEMENT PLAN** |

The parties submit this report of their Rule 26(f) conference and proposed case management plan.

## I.    RULE 26(f) CONFERENCE

1.    The parties met and conferred in person (in part) and over video (in part) as required by Rule 26(f) on Monday, November 6, 2023. The parties continued conferring by phone and email through Wednesday, November 8.

2.    The parties' Rule 26(f) report is thus due Wednesday, November 22. *See* Fed. R. Civ. P. 26(f)(2).

1AA-226

## II.   SUMMARY OF CLAIMS AND DEFENSES

3.      This is a putative class action for copyright infringement arising under the

Copyright Act.

### A.   PLAINTIFFS' STATEMENT

4.      Plaintiffs are authors of and sole copyright holders in a broad array of written

works of fiction available for purchase by the reading public. Plaintiffs allege Defendants

unlawfully copied Plaintiffs' works to "train" their large language models, which underlie

generative artificial intelligence (AI) applications such as ChatGPT that are capable of producing

human-seeming text outputs in response to user inputs. Plaintiffs allege further that Defendants

are therefore directly, contributorily, or vicariously liable for such infringement.

5.      Plaintiffs seek actual damages, additional profits attributable to infringement, or,

in the alternative, statutory damages. Plaintiffs also seek injunctive relief.[1]

6.      Plaintiffs maintain that this dispute raises overwhelmingly common issues,

including, for example, Defendants' common policies and practices of selecting and employing

training data, as well as their categorical decision not to seek consent from or provide

compensation to Plaintiffs or putative class members for the use of their written works of fiction

for training purposes.

7.      Plaintiffs submit that the principal facts and legal issues in dispute include:

a.      Whether Defendants reproduced Plaintiffs' copyrighted works of fiction

and caused them to be ingested by Defendants' large language models for training purposes;

---

[1] Plaintiffs may seek Defendants' agreement to a "standstill order," under which Defendants
would be prohibited from continuing their allegedly infringing conduct as to Plaintiffs' future
works that have not already been used in AI "training," or using past works to "train" future
iterations of their large language models while this litigation is pending. If Defendants do not
agree, Plaintiffs may seek such an order from the Court.

1AA-227

b.      Whether the common interests of working professional fiction writers in the United States who are the sole owners of copyrights in written works of commercial fiction in protecting their works against unauthorized reproduction by Defendants are sufficiently similar to warrant class treatment;

c.      Whether Defendants' alleged reproduction of Plaintiffs' and putative class members' written works of fiction was willful;

d.      To what extent Defendants' have profited from their alleged infringement of Plaintiffs' and putative class members' copyrights; to what extent the market for Plaintiffs' works is harmed by the outputs of Defendants' generative AI applications; and how to value licenses for Plaintiffs' and putative class members' works for use in large language model training; and

e.      Whether Defendants can establish the elements of their anticipated fair use defense despite the uniform commercial purpose of Defendants' alleged copying, the common and uniform commercial nature of Plaintiffs' and putative class members' allegedly copied works of fiction, Defendants' alleged uniform copying of Plaintiffs' and putative class members' works in full, and the uniformly deleterious effects of Defendants' alleged copying on the market for Plaintiffs' and putative class members' works.

   **B.      DEFENDANTS' STATEMENT**

8.      OpenAI is an artificial intelligence (AI) research and deployment company, with a mission to ensure that artificial general intelligence benefits all of humanity. OpenAI researches, develops, and releases cutting edge AI technology, including ChatGPT and its underlying large language models, as well as tools and best practices for the safety, alignment, and governance of AI.

1AA-228

9.      Developing a large language model like the one underlying ChatGPT requires teaching it intelligence and language, such as the ability to predict, reason and solve problems, as well as aligning it to human values and preferences.  This involves showing the model a vast amount of human knowledge over months: teaching language to a model involves showing the model a wide range of text, and having it try to predict the word that comes next in each of a huge range of sequences. This requires an enormous amount of computation, as models review, analyze, and learn from trillions of words.  Through this extensive process, the model not only learns how words fit together grammatically, but also how words work together to form higher-level ideas, and ultimately how sequences of words form structured thoughts or pose coherent problems. For example, when we think of the word "cloud", we might also think of related words like "sky" and "rain"; when given a sentence like "The secret to happiness is", we might think of various philosophical ideas. In gaining fluency with predicting the next word, the model thereby learns concepts and the building blocks of intelligence.

10.      Plaintiffs allege that their books were shown to OpenAI's large language models as part of their training; that those models learned from those books; and that this process infringed Plaintiffs' copyrights.  Defendants deny that they have violated any of Plaintiffs' rights.

11.      The principal facts in dispute include:

a.      Whether each of the named Plaintiffs' copyrighted works at issue (the "Plaintiffs' Works") were actually used to train the large language models underlying ChatGPT.

b.      Whether and how the alleged inclusion of each of the Plaintiffs' Works in the training data results in copying of those works.

-4-

1AA-229

c.    Whether and to what extent the alleged use of each of the Plaintiffs'
Works served a new and different purpose from the original purpose of each of those works.

d.    Whether and to what extent the alleged use of each of the Plaintiffs'
Works was inextricably bound with other creative expression to form a new work.

e.    Whether and to what extent there exists a licensing market to use
Plaintiffs' Works in the manner alleged.

f.    Whether and to what extent any use of each of the Plaintiffs' Works by
Defendants or their users affected any market for each of those works.

g.    Whether and to what extent ChatGPT serves as a substitute for each of
Plaintiffs' Works.

h.    Whether and to what extent each Plaintiff was harmed by the alleged use
of that Plaintiff's Works.

i.    Whether and to what extent the alleged use of each of Plaintiffs' Works
serves the public interest.

j.    Whether Defendants derive a direct financial benefit from the alleged
inclusion of each of Plaintiffs' Works in the training data.

k.    The extent to which Defendants have a right and ability to control acts of
third-party infringement via ChatGPT.

12.    Defendants summarize the legal issues as follows:

a.    Whether Plaintiffs can meet their prima facie burden of establishing that
Defendants directly infringed Plaintiffs' Works.

b.    Whether Defendants' alleged use of Plaintiffs' Works to train a large
language model is a fair use under 17 U.S.C. § 107.

1AA-230

      c.     Whether Plaintiffs are entitled to relief under a vicarious copyright infringement claim.

      d.     Whether Plaintiffs are entitled to relief under a contributory copyright infringement claim.

      e.     Whether Plaintiffs can meet their burden of establishing that any class can be certified.

## III.   INITIAL DISCLOSURES

13.     The parties agree to serve initial disclosures by Wednesday, December 13, 2023.

## IV.   MOTION PRACTICE

### A.   PLAINTIFFS' STATEMENT

14.     Plaintiffs anticipate filing a motion for class certification and, as useful to narrow the issues in dispute, a motion for summary judgment on certain issues once the contours of the class are decided.

15.     If Defendants seeks to dismiss or transfer the case, Plaintiffs will oppose, showing the relevant differences between this case and those to which Defendants attempt to liken it and that this case should be litigated and tried in New York.

### B.   DEFENDANTS' STATEMENT

16.     Defendants anticipate filing a motion to dismiss under the first-filed rule, or, in the alternative, to stay this action pending resolution of the three substantially similar putative class actions pending in the District Court for the Northern District of California,[2] or, in the further alternative, to transfer this matter to the Northern District of California either under the

---

[2] Those actions are: *Tremblay et al. v. OpenAI, Inc. et al.*, No. 3:23-cv-03223 (N.D. Cal.); *Silverman et al. v. OpenAI, Inc. et al.*, No. 3:23-cv-03416 (N.D. Cal.); and *Chabon et al. v. OpenAI, Inc. et al.*, No. 3:23-cv-04625 (N.D. Cal.) (collectively, the "California Actions").

1AA-231

first-filed rule or 28 U.S.C. § 1404(a).  Any further motion practice will depend on the resolution of that motion.

## V.    <u>SCOPE OF DISCOVERY</u>

17.    The parties agree that discovery is presently governed by the Federal Rules of Civil Procedure, the Local Rules of United States District Courts for the Southern and Eastern Districts of New York, and this Court's Individual Practices.

18.    **Plaintiffs anticipate** discovery will be needed on at least the following subjects:

a.    Defendants' development, "training" (including sources of training data), and deployment of its large language models, and the functioning of those models;

b.    Defendants' corporate structure;

c.    The impacts of Defendants' large language models on the market for Plaintiffs' and putative class members' works, including but not limited to the market for lawfully licensing works used to train generative AI systems and the appropriate terms of such licenses, and/or for lawfully licensing works that inform output;

d.    Defendants' efforts, if any, to obtain licenses for use of works other than Plaintiffs' and putative class members' in training their large language models;

e.    Defendants' knowledge of their allegedly infringing conduct; and

f.    Defendants' revenues and profits, and how Defendants earn them.

19.    **Defendants anticipate** discovery will be needed on at least the following subjects:

a.    Plaintiffs' lack of harm.

b.    Plaintiffs' ownership of and copyright interest in the works that are the subject of their complaints.

c.    Plaintiffs' Works, and where and how they are published.

-7-

      d.      The licensing and distribution of all Plaintiffs' Works they assert form any basis for their claims, and all other facts concerning the market for such works.

      e.      Any copyright registrations or applications for registration of any of the Plaintiffs' Works they assert form any basis for their claims.

      f.      Use by Plaintiffs of ChatGPT or other generative AI technologies.

      g.      Efforts by Plaintiffs or anyone acting on their behalf to prompt ChatGPT to suggest outputs similar to Plaintiffs' works.

      h.      The availability of content that is similar to or describes Plaintiffs' Works.

## VI.   DISCOVERY ORDERS

20.     The parties will meet and confer in good faith regarding a proposed agreed protective order and a proposed agreed order regarding the production of Electronically Stored Information (ESI) as soon as is practicable.

21.     If the parties are unable to agree to one or more provisions of such orders, the parties anticipate submitting competing proposals to the Court.

22.     **Plaintiffs propose** that, in light of, among other things, the number of parties and the anticipated need for expert testimony on various issues, Plaintiffs foresee that more than ten depositions per side will be necessary. *See* Fed. R. Civ. P. 30(a)(2)(A)(i).

23.     **Defendants propose** that the parties meet and confer in good faith regarding the appropriate number of depositions for this case once the motion to dismiss, stay, or transfer is resolved.

24.     The parties do not currently anticipate that, other than Plaintiffs' proposal as to the number of depositions, further modifications of the defaults established by the Federal Rules of Civil Procedure will be necessary.

1AA-233

25.     If circumstances change, the parties agree to work together in good faith to accommodate reasonable requests to modify these defaults to minimize the need for this Court's intervention.

**VII.   DISCOVERY DISPUTES**

26.     The parties agree that discovery disputes are governed by Rule 2(G) of this Court's Individual Practices, as well as any applicable provisions of such orders regarding confidentiality, privilege, and ESI as the Court may enter.

**VIII.  CASE SCHEDULE**

27.     The parties agree that discovery opened on Monday, November 6, 2023, and agree further that Friday, February 9, 2024, should be the last day to amend the pleadings and join other parties. The parties otherwise disagree about the appropriate scheduling and sequencing of the case.

**A.      PLAINTIFFS' PROPOSED SCHEDULE**

28.     Plaintiffs propose the following case schedule, starting with the two agreed-on dates:

| Case Event | Plaintiffs' Proposed Date |
|---|---|
| Discovery opens. | Monday, November 6, 2023. |
| Last day to amend pleadings and join other parties. | Friday, February 9, 2024. |
| Close of fact discovery. | Friday, June 28, 2024. |

| | |
|---|---|
| Plaintiffs' deadline to move for class certification and serve expert reports in support. | Friday, August 9, 2024. |
| Defendants' deadline to oppose class certification and serve expert reports in opposition. | Tuesday, October 8, 2024. |
| Plaintiffs' deadline to reply in support of class certification and serve expert reports in reply. | Friday, December 6, 2024. |
| Hearing on motion for class certification.[3] | *To be set by the Court.* |
| Parties' deadline to file motions for summary judgment and serve expert reports in support. | Friday, March 7, 2025. |
| Parties' deadline to oppose summary judgment and serve expert reports in opposition. | Tuesday, May 6, 2025. |
| Parties' deadline to reply in support of summary judgment and serve expert reports in reply. | Thursday, July 3, 2025. |
| Hearing on motions for summary judgment. | *To be set by the Court.* |
| Deadline to submit joint pretrial order under Rule 3(A) of the Court's Individual Practices. | Friday, August 8, 2025. |
| Deadline to submit documents required by Rule 3(B) of the Court's Individual Practices. | Friday, August 22, 2025. |

---

[3] In the alternative to Plaintiffs' proposed schedule, which goes through summary judgment and trial, Plaintiffs submit that the Court could set a schedule at least through class certification, after which the parties may meet and confer on the appropriate scope of any remaining discovery (including standard supplementation), summary judgment, and trial. *See* ¶¶ 29-30.

| Final pretrial conference. | Monday, September 8, 2025. |
|---|---|
| Trial. | Monday, September 22, 2025. |

29.     Plaintiffs propose that the Court accept the proposed date for the close of fact discovery, and schedule the major case events through class certification, summary judgment, and trial as soon as practicable. Such a schedule would appropriately focus the parties' efforts on driving this litigation to efficient resolution of this important matter affecting writers and the publishing industry. Defendants' proposal, by contrast, would leave all major case events after the close of expert discovery hanging in the air until the spring of 2025. A delay of a year and a half in setting even the basic contours of this litigation would in no way promote its just, speedy, and inexpensive determination, *see* Fed. R. Civ. P. 1, and would furthermore frustrate the Court's obligation to determine "[a]t an early practicable time" whether the action will proceed as a class action. Fed. R. Civ. P. 23(c)(1)(A).

30.     Indeed, for this reason, among various others, courts routinely determine class certification before the merits in class actions, including in copyright cases in this Court. *See, e.g.*, *Johansen v. Sony Music Entertainment, Inc.*, Case No. 1:19-cv-01094-ER (S.D.N.Y. Nov. 6, 2020) (ECF No. 98); *see generally* William B. Rubenstein et al., Newberg on Class Actions § 7:10 (6th ed. 2022) (discussing implication from the Federal Rules of Civil Procedure that "class certification motions ought to precede summary judgment motions"). Finally, as set forth in note 3 above, should the Court wish to defer consideration of the trial date, it could alternatively set dates through class certification only, and order the Parties to confer on remaining case steps with the contours of the class in front of them.

1AA-236

31.     In seeking to deviate from common and logical sequencing, Defendants cite to a sole inapposite case, *Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132 (2d Cir. 2013).[4]  As Plaintiffs will show at the appropriate time, *Google* involved different parties, different and non-analogous uses, and different and non-analogous technology in the inapposite context of providing access to un-copyrightable information about copyrightable works, all against the backdrop of a dramatically disparate proposed class.[5]  Generally, Defendants elide the relevant issue: the issue is not, in the abstract, whether a court *may* reverse the usual and appropriate sequencing, it is that the usual and appropriate sequencing in complex class actions (where defendants always claim they can find individual issues) exists for good case management reasons, and nothing here justifies deviation, let alone at this time.

## B.     DEFENDANTS' PROPOSED SCHEDULE

32.     As an initial matter, the Court need not consider the parties' competing scheduling proposals until after Defendants' motion to dismiss, stay, or transfer is resolved.  The parties already agree that fact discovery should continue at least through June of 2024.  If the case is dismissed, stayed, or transferred, the scheduling questions the parties address herein will be moot.

33.     Defendants propose that the parties meet and confer and submit proposals to the Court regarding a schedule for motions for class certification, motions for summary judgment (including any *Daubert* motions in connection therewith), and trial after the close of expert discovery, as the parties will be in a better position at that time to assess efficiencies to be gained

---

[4] Defendants also refer to cases in California where in fact the court *rejected* Defendants' attempt to set a schedule putting summary judgment before certification.
[5] *See, e.g., Indergit v. Rite Aid Corp.*, 52 F.Supp.3d 522, 525-26 (S.D.N.Y. 2014) (limiting *Google Books* to its facts).

by addressing class certification before summary judgment (or vice versa), and to propose a realistic schedule for trial.

34.    In particular, the Second Circuit vacated and remanded a class certification decision in another putative class action brought by the Authors Guild regarding a digital use of a large number of books on the basis that class certification should have been decided only after consideration of the defendant's fair-use argument.  The Court of Appeals held that "the resolution of Google's fair use defense in the first instance will necessarily inform and perhaps moot our analysis of many class certification issues, including those regarding the commonality of plaintiffs' injuries, the typicality of their claims, and the predominance of common questions of law or fact." *Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132, 134 (2d Cir. 2013).  In fact, in that case, the class certification issue was ultimately mooted by the determination that the use in question was not copyright infringement, but instead fair use.  *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) (affirming grant of summary judgment to defendant on fair-use grounds).

35.    This case raises the same considerations.  For that reason, setting a schedule now that places class certification immediately after the close of discovery would contravene the Second Circuit's guidance in the *Authors Guild* case regarding the sequencing of summary judgment and class certification in copyright cases involving alleged digital use of a large number of books.  Instead, the Court should set a schedule through the close of expert discovery and assess at that time how to sequence Plaintiffs' motion for class certification and Defendant's motion for summary judgment.

36.    The cases plaintiffs identify as sequencing class certification before summary judgment do not show deviation from the guidance of *Authors Guild*.  *Johansen* was not a case

-13-

involving digital use of a large number of works in which the application of the fair use doctrine would illuminate which issues were common and which were individualized; it was, instead, a dispute about the continuing validity of copyright licenses granted by the plaintiffs to the defendant.  In that case, neither party proposed summary judgment before class certification.  *See Johansen*, ECF Nos. 92-1 (defendant's proposed schedule), 93 (plaintiff's proposed schedule).  So it does not provide a reason for this Court to depart from the guidance of *Authors Guild v. Google*.  *Indergit* does not, as Plaintiffs contend, limit *Authors Guild* "to its facts"; that employment-law case addresses a different question, regarding whether a motion for reconsideration of the outcome of a class-certification motion should await a decision on summary judgment.

37.     And the cited section of the Newberg treatise does not stand for the proposition for which Plaintiffs cite it.  Instead, it observes that "courts have been willing to rule on motions for summary judgment prior to class certification in circumstances in which it would facilitate efficient resolution of the case," and that courts "permit such motions to go forward so long as a defendant is willing to waive the 'protections' that certification could offer."  Newberg on Class Actions § 7:10 (6th ed. 2022).  *Authors Guild v. Google* was such a case, for the reasons discussed by the Second Circuit, and *Authors Guild v. OpenAI* is likewise such a case.

38.     Defendants propose the following schedule for the remainder of the case, which aligns with the schedule set in the consolidated California Actions.

| Case Event | Defendants' Proposed Date |
|---|---|
| Discovery opens. | Monday, November 6, 2023. |

1AA-239

| Last day to amend pleadings and join other parties. | Friday, February 9, 2024. |
|---|---|
| Close of fact discovery. | Tuesday, October 29, 2024. |
| Plaintiffs' deadline to serve expert reports. | Thursday, December 12, 2024 |
| Defendants' deadline to serve expert reports. | Monday, January 13, 2025. |
| Deadline to serve rebuttal expert reports. | Tuesday, February 11, 2025. |
| Close of expert discovery. | Thursday, March 13, 2025. |

## IX.    TRIAL

39.    This case is to be tried to a jury.

40.    **Plaintiffs anticipate** trial will last three weeks, subject to later conferral and based on the Court's prior rulings.

41.    **Defendants believe** the length of any trial will depend on whether any class is certified.  Defendants anticipate a non-class trial will last no more than one week, and a class trial will last at least three weeks in view of the number of individualized issues that would need to be presented regarding individual class members, subject to later conferral and based on the Court's interlocutory rulings.

**X.**     <u>**ADR AND SETTLEMENT**</u>

    42.     The parties are mindful of the benefits of the negotiated resolution of claims, and

will continue to look for opportunities to discuss settlement and ADR as appropriate.

**XI.**     <u>**RELATED CASE**</u>

    43.     On November 21, 2023, non-fiction author Julian Sancton filed *Sancton v.*

*OpenAI, Inc., et al.*, No. 1:23-cv-10211, in this Court, as well as a statement of relatedness. *See*

No. 1:23-cv-10211, ECF No. 3 (Plaintiff's Related Case Statement).

**1AA-241**

Dated: November 22, 2023                 Respectfully submitted,

                                         */s/ Rachel Geman*
                                         Rachel Geman
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                         250 Hudson Street, 8th Floor
                                         New York, NY  10013-1413
                                         Telephone:  212.355.9500
                                         rgeman@lchb.com

                                         Ian R. Bensberg (*pro hac vice* forthcoming)
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                         275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3339
                                         Telephone:  415.956.1000
                                         ibensberg@lchb.com

                                         Wesley Dozier (*pro hac vice* forthcoming)
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                         222 2nd Avenue, Suite 1640
                                         Nashville, TN 37201
                                         Telephone:  615.313.9000
                                         wdozier@lchb.com

                                         */s/ Scott J. Sholder*
                                         Scott J. Sholder
                                         CeCe M. Cole
                                         COWAN DEBAETS ABRAHAMS & SHEPPARD LLP
                                         41 Madison Avenue, 38th Floor
                                         New York, New York 10010
                                         Telephone:  212.974.7474
                                         ssholder@cdas.com
                                         ccole@cdas.com

                                         *Attorneys for Plaintiffs and the Proposed Class*


Dated: November 22, 2023                 MORRISON & FOERSTER LLP

                                         By: */s/ Joseph C. Gratz*

                                         JOSEPH C. GRATZ (*pro hac vice*)
                                         JGratz@mofo.com
                                         TIFFANY CHEUNG (*pro hac vice forthcoming*)
                                         TCheung@mofo.com
                                         JOYCE C. LI (*pro hac vice forthcoming*)
                                         JoyceLi@mofo.com
                                         MELODY E. WONG (*pro hac vice forthcoming*)
                                         MelodyWong@mofo.com
                                         MORRISON & FOERSTER LLP
                                         425 Market Street
                                         San Francisco, California  94105-2482
                                         Telephone:   (415) 268-7000

Facsimile:    (415) 268-7522

ALLYSON R. BENNETT (*pro hac vice forthcoming*)
ABennett@mofo.com
ROSE S. LEE (*pro hac vice forthcoming*)
RoseLee@mofo.com
ALEXANDRA M. WARD (*pro hac vice forthcoming*)
AlexandraWard@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile:  (213) 892-5454

ANDREW M. GASS (*pro hac vice forthcoming*)
Andrew.Gass@lw.com
JOSEPH R. WETZEL
Joe.Wetzel@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  (415) 391-0600

SARANG VIJAY DAMLE
Sy.Damle@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200

ALLISON L. STILLMAN
Alli.Stillman@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 751-4864

*Attorneys for Defendants*
OPENAI INC., OPENAI LP, OPENAI LLC, OPENAI GP
LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI
CORPORATION LLC, OPENAI HOLDINGS LLC,
OPENAI STARTUP FUND I LP, OPENAI STARTUP
FUND GP I LLC, and OPENAI STARTUP FUND
MANAGEMENT LLC

-18-

1AA-243

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JONATHAN ALTER, KAI BIRD, TAYLOR BRANCH, RICH COHEN, EUGENE LINDEN, DANIEL OKRENT, JULIAN SANCTON, HAMPTON SIDES, STACY SCHIFF, JAMES SHAPIRO, JIA TOLENTINO, and SIMON WINCHESTER, on behalf of themselves and all others similarly situated<br><br>        Plaintiffs,<br><br>        v.<br><br>OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI HOLDINGS, LLC, and MICROSOFT CORPORATION,<br><br>        Defendants. | **ECF CASE**<br><br>No. 1:23-cv-10211-SHS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jonathan Alter, Kai Bird, Taylor Branch, Rich Cohen, Eugene Linden, Daniel Okrent, Julian Sancton, Hampton Sides, Stacy Schiff, James Shapiro, Jia Tolentino, and Simon Winchester, on behalf of themselves and all other similarly situated (the "Class," as defined below), for their complaint against Defendants OpenAI, Inc., OpenAI GP LLC, OpenAI, LLC, OpenAI OpCo LLC, OpenAI Global LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, (collectively "OpenAI") and Microsoft Corporation (all collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      OpenAI and Microsoft have built a business valued into the tens of billions of dollars by taking the combined works of humanity without permission. Rather than pay for intellectual property, they pretend as if the laws protecting copyright do not exist. Yet the United States Constitution itself protects the fundamental principle that creators deserve compensation for

their works. Nonfiction authors often spend years conceiving, researching, and writing their
creations. While OpenAI and Microsoft refuse to pay nonfiction authors, their AI platform is worth
a fortune. The basis of the OpenAI platform is nothing less than the rampant theft of copyrighted
works.

2.      Plaintiffs are writers who, collectively, have won three Pulitzer Prizes and authored
more than 30 *New York Times* bestsellers. They have dedicated decades of their lives and
substantial sums to researching, honing, writing, and perfecting their works. Such an investment
of time and money is feasible for Plaintiffs and other writers because, in exchange for their creative
work, the Copyright Act grants them "a bundle of exclusive rights" in their works, including "the
rights to reproduce the copyrighted work[s]." *Andy Warhol Found. for the Visual Arts, Inc. v.
Goldsmith*, 598 U.S. 508, 526 (2023).

3.      This case is about Defendants OpenAI and Microsoft's complete disregard for those
exclusive rights. Defendants have made commercial reproductions of millions, possibly billions,
of copyrighted works without any compensation to authors, without a license, and without
permission. In doing so, they have infringed on the exclusive rights of Plaintiffs and other writers
and rightsholders whose work has been copied and appropriated to train their artificial intelligence
models.

4.      Defendants OpenAI and Microsoft collaborated closely to create and monetize the
generative artificial intelligence models known as GPT-3, GPT-3.5, GPT-4, and GPT-4 Turbo.
These are the computer models that power the popular ChatGPT chatbot, which Defendants have
followed with a suite of other commercial offerings, like ChatGPT Enterprise, ChatGPT Plus, Bing
Chat, Browse with Bing, Microsoft Copilot, and others. Defendants' GPT models have been
designed to recognize and process text inputs from a user and, in response, generate text that has

been calibrated to mimic a human written response.

5.    That end product—a computer model and chatbot built to mimic human written expression—came at a price. Defendants' models were calibrated (or "trained," in Defendants' parlance) by reproducing a massive corpus of copyrighted material, including, upon information and belief, tens or hundreds of thousands of nonfiction books. The only way that Defendants' models could be trained to generate text output that resembles human expression is to copy and analyze a large, diverse corpus of text written by humans. In training their models, Defendants reproduced copyrighted texts to exploit precisely what the Copyright Act was designed to protect: the elements of protectible expression within them, like the choice and order of words and sentences, syntax, flow, themes, and paragraph and story structure, as well as the arrangement and organization of facts. In OpenAI's words, the goal of the training process was to teach their model to "learn" "how words fit together grammatically," "how words work together to form higher-level ideas," and "how sequences of words form structured thoughts."[1] In other words, by training its models on certain works, OpenAI copied the works' expression so that the models could memorize, mimic, and paraphrase that expression.

6.    Defendants copied and data-mined the works of writers, without permission or compensation, to build a machine that is capable (or, as technology advances, will soon be capable) of performing the same type of work for which these writers would be paid. Without the wide corpus of copyrighted material on which to feed, there would be no ChatGPT. Defendants' commercial success was possible only because they copied and digested the protected, copyrightable expression contained in billions of pages of actual text, across millions of copyrighted works—all without paying a penny to authors and rightsholders.

---

[1] Fred von Lohmann, response to Notice of Inquiry and Request for Comment 5, (Oct. 30, 2023), *available at* https://downloads.regulations.gov/COLC-2023-0006-8906/attachment_1.pdf.

7.     Defendants OpenAI and Microsoft have enjoyed enormous financial gain from their exploitation of copyrighted material. OpenAI recently reported that it is "generating revenue at a pace of $1.3 billion a year."[2] Microsoft, for its part, has seen its investment in OpenAI increase many-fold and its own GPT-based products, like BingChat, succeed in the marketplace. And its stock price has increased as Microsoft has touted its ability to exploit and leverage AI across its products. Analysts project that the integration of GPT into Microsoft products could generate more than $10 billion in annualized revenue by 2026,[3] with just one version of this integration—"GitHub Copilot"—already generating more than $100 million in annual recurring revenue.[4] In developing and monetizing these AI products, Microsoft and OpenAI have been close partners every step of the way, from the training of GPT-3 to today.

8.     OpenAI and Microsoft's commercial gain has come at the expense of creators and rightsholders like Plaintiffs and members of the Class. A person who reads a book typically buys it from a store. But Defendants did not even do that. Neither OpenAI nor Microsoft have paid for the books used to train their models. Nor have Defendants sought to obtain—or pay for—a license to copy and exploit the protected expression contained in the copyrighted works used to train their models. Instead, Defendants took these works; they made unlicensed copies of them; and they used those unlicensed copies to digest and analyze the copyrighted expression in them, all for commercial gain. The end result is a computer model that is not only built on the work of thousands of creators and authors, but also built to generate a wide range of expression—from shortform

---

[2] AJ Hess, *The Biggest Challenges Facing OpenAI's Mira Murati, the Newly Minted Most Powerful Woman in Tech*, Fast Company (last visited Nov. 20, 2023), https://www.fastcompany.com/90985829/the-biggest-challenges-facing-openais-mira-murati-the-newly-minted-most-powerful-woman-in-tech.

[3] Jordan Novet, *Microsoft Starts Selling AI Toll for Office, Which Could Generate $10 Billion a Year by 2026*, CNBC (last visited Nov. 20, 2023) https://www.cnbc.com/2023/11/01/microsoft-365-copilot-becomes-generally-available.html.

[4] Aaron Holmes, *Microsoft's GitHub AI Coding Assistant Exceeds $100 Million in Recurring Revenue*, The Information, (last visited Nov. 20, 2023), https://www.theinformation.com/briefings/microsoft-github-copilot-revenue-100-million-ARR-ai (*available at* https://perma.cc/5S7F-4GBY).

articles to book chapters—that mimics the syntax, voice, and themes of the copyrighted works on which it was trained.

9.    Plaintiffs, on behalf of themselves and the proposed Class, seeks damages from Defendants for their largescale infringement of their copyrighted works, as well as injunctive relief.

## JURISDICTION AND VENUE

10.    The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*.

11.    The Court also has personal jurisdiction over Defendants because they have purposely availed themselves of the privilege of conducting business in New York.

12.    OpenAI and Microsoft's copyright infringement and contributory copyright infringement, in substantial part, occurred in this District. OpenAI sold and distributed, and continues to sell and distribute, its GPT products, including ChatGPT, ChatGPT Enterprise, ChatGPT Plus, Browse with Bing, and application programming interface tools (API) within New York and to New York residents. OpenAI marketed and sold GPT-based products to New York residents and New York-based companies.

13.    Microsoft distributed and sold GPT-based products, like Bing Chat and Azure products that incorporate GPT-3 and GPT-4. Upon information and belief, Microsoft also assisted OpenAI's copyright infringement from New York, including from Azure datacenters located in New York used to facilitate OpenAI's use and exploitation of the training dataset used for development of OpenAI's GPT models. Microsoft maintains offices and employs personnel in New York. Upon information and belief, Microsoft's New York personnel were involved in the creation and maintenance of the supercomputing systems that powered OpenAI's widespread infringement, as well as in the commercialization of OpenAI's GPT models.

14.     Plaintiffs Bird, Linden, Okrent, Sancton, Schiff, Shapiro, Tolentino, and Winchester are citizens of New York. The injuries alleged here from Defendants' infringement occurred in this District.

15.     Venue is proper under 28 U.S.C. § 1400(a) because Defendants or their agents reside or may be found in this District due to their infringing activities, along with their commercialization of their infringing activities, that occurred in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including the sales of Defendants' GPT-based products within this District.

## THE PARTIES

16.     Plaintiff Jonathan Alter is a writer who resides in New Jersey. He is the author of a number of *New York Times* bestsellers, including *The Center Holds: Obama and His Enemies*; *The Promise: President Obama, Year One*; and *The Defining Moment: FDR's Hundred Days and the Triumph of Hope*. He is a former senior editor at Newsweek and a political analyst for NBC News and MSNBC.

17.     Plaintiff Kai Bird is a writer who resides in New York. He is the recipient of the 2006 Pulitzer Prize in Biography for *American Prometheus: The Triumph and Tragedy of J. Robert Oppenheimer*, which he co-authored with Martin J. Sherwin. He is also the author of the *New York Times* bestseller *The Good Spy: The Life and Death of Robert Ames*.

18.     Plaintiff Taylor Branch is a writer who resides in Maryland. He is the author of, among other works, *America in the King Years*, a three-volume history of Martin Luther King Jr. and the Civil Rights Movement. He received the 1989 Pulitzer Prize in History for the first volume in the series, *Parting the Waters: America in the King Years, 1954-63*.

19.     Plaintiff Rich Cohen is a writer who resides in Connecticut. He is the author of

several *New York Times* bestsellers, including *Tough Jews: Fathers, Sons and Gangster Dreams*; *Sweet and Low: A Family Story*; and *The Sun & the Moon & the Rolling Stones*. He is a contributing editor for *Vanity Fair* and *Rolling Stone* and a columnist for *The Wall Street Journal*.

20.    Plaintiff Eugene Linden is a writer who resides in New York. He is the author of nine nonfiction books, including *The Parrot's Lament, and Other True Tales of Animal Intrigue, Intelligence, and Ingenuity*; *The Octopus and the Orangutan: More True Tales of Animal Intrigue, Intelligence, and Ingenuity*; *The Alms Race: The Impact of American Voluntary Aid Abroad*; and *Winds of Change*.

21.    Plaintiff Daniel Okrent is a writer who resides in New York. He is the author of a number of nonfiction books, including *Nine Innings: The Anatomy of Baseball as Seen Through the Playing of a Single Game* and *The Way We Were: New England Then, New England Now*. He is also the co-author of *Baseball Anecdotes* with Steve Wulf.

22.    Plaintiff Julian Sancton is a writer who resides in New York. He is the author of the *New York Times* bestseller *Madhouse at the End of the Earth: The Belgica's Journey Into the Dark Antarctic Night*. He is a senior features editor of *The Hollywood Reporter* and his work has appeared in *GQ*, *Wired*, and *The New Yorker*.

23.    Plaintiff Hampton Sides is a writer who resides in New Mexico. He is the author of a number of *New York Times* bestsellers, including *Ghost Soldiers: The Epic Account of World War II's Greatest Rescue Mission* and *Blood and Thunder: An Epic of the American West*. He is an editor-at-large for *Outside* and is a frequent contributor to *National Geographic*.

24.    Plaintiff Stacy Schiff is a writer who resides in New York. She is the recipient of the 2000 Pulitzer Prize in Biography for *Véra (Mrs. Vladimir Nabokov)*. Plaintiff Schiff is also the author of the *New York Times* bestsellers *Cleopatra: A Life*; *The Witches: Salem, 1692*; and *The*

*Revolutionary*: *Samuel Adams.* Her work has appeared in *The New Yorker*, *The New York Review of Books*, and *The New York Times*.

25.    Plaintiff James Shapiro is a writer who resides in New York. He is the author of a number of nonfiction books, including *Oberammergau: The Troubling Story of the World's Most Famous Passion Play* and *1599: A Year in the Life of William Shakespeare.* He is the Larry Miller Professor of English and Comparative Literature at Columbia University.

26.    Plaintiff Jia Tolentino is a writer who resides in New York. She is the author of the *New York Times* bestseller *Trick Mirror: Reflections on Self-Delusion*. She is a staff writer for *The New Yorker* whose work has also appeared in *The New York Times Magazine* and *Pitchfork*.

27.    Plaintiff Simon Winchester OBE is a writer who resides in New York. He is the author of several *New York Times* bestsellers, including *The Professor and the Madman*; *The Map That Changed the World: William Smith and the Birth of Modern Geolog*y; and *The Men Who United the States: America's Explorers, Inventors, Eccentrics, and Mavericks, and the Creation of One Nation, Indivisible*.

28.    The registration information for the infringed works of Plaintiffs is identified in **Exhibit A** to this Complaint.

29.    Defendant OpenAI, Inc. is a Delaware nonprofit corporation with a principal place of business in San Francisco, California. OpenAI, Inc. was formed in December 2015. OpenAI, Inc. owns and controls all other OpenAI entities.

30.    Defendant OpenAI GP, LLC is a Delaware limited liability company with a principal place of business in San Francisco, California. OpenAI GP, LLC wholly owns and controls OpenAI OpCo LLC, which until recently was known as OpenAI LP. OpenAI, Inc. uses OpenAI GP LLC to control OpenAI OpCo LLC and OpenAI Global, LLC. OpenAI GP LLC was

involved in the copyright infringement alleged here through its direction and control of OpenAI OpCo LLC and OpenAI Global LLC.

31.   Defendant OpenAI OpCo LLC is a Delaware limited liability company with a principal place of business in San Francisco, California. OpenAI OpCo LLC was formerly known as OpenAI LP. OpenAI OpCo LLC is the sole member of OpenAI, LLC, and has been directly involved in OpenAI's mass infringement and has directed this infringement through its control of OpenAI, LLC. OpenAI OpCo LLC serves as the for-profit arm of OpenAI.

32.   Defendant OpenAI, LLC is a Delaware limited liability company with a principal place of business in San Francisco, California. OpenAI, LLC was formed in September 2020. OpenAI LLC monetizes and distributes OpenAI's GPT-based products, all of which born out of OpenAI's copyright infringement. Upon information and belief, OpenAI, LLC is owned and controlled by both OpenAI, Inc. and Microsoft Corporation, through OpenAI Global LLC and OpenAI OpCo LLC.

33.   Defendant OpenAI Global LLC is a Delaware limited liability company with a principal place of business in San Francisco, California. Microsoft Corporation has a minority stake in OpenAI Global LLC and OpenAI, Inc. has a majority stake in OpenAI Global LLC, indirectly through OpenAI Holdings LLC and OAI Corporation, LLC. OpenAI Global LLC was involved in the copyright infringement alleged here through its ownership, control, and direction of OpenAI LLC.

34.   Defendant OAI Corporation, LLC is a Delaware limited liability company with a principal place of business in San Francisco, California. OAI Corporation, LLC's sole member is OpenAI Holdings, LLC. OAI Corporation, LLC was and is involved in the unlawful conduct alleged herein through its ownership, control, and direction of OpenAI Global LLC and OpenAI

LLC.

35.     Defendant OpenAI Holdings, LLC is a Delaware limited liability company, whose sole members are OpenAI, Inc. and Aestas, LLC. The sole member of Aestas, LLC is Aestas Management Company, LLC. Aestas Management Company, LLC is a Delaware company created to facilitate a half-billion-dollar capital raise for OpenAI. OpenAI Holdings LLC was involved in the infringement alleged herein through its indirect ownership, control, and direction of OpenAI OpCo LLC.

36.     Microsoft Corporation is a Washington corporation with a principal place of business and headquarters in Redmond, Washington. Microsoft has invested at least $13 billion in OpenAI, and reportedly owns a 49% stake in the company's for-profit operations. Microsoft has described its relationship with the OpenAI Defendants as a "partnership." This Microsoft-OpenAI partnership has included the creation, development, and maintenance of the supercomputing systems that the OpenAI Defendants used to house and make copies of copyrighted material in the training set for OpenAI's large language models. In course of designing and maintaining these tailored supercomputing systems for OpenAI's needs, upon information and belief, Microsoft was both directly involved in making reproductions of copyrighted material and facilitated the copyright infringement committed by OpenAI.

## FACTUAL ALLEGATIONS

### I.     OpenAI's History and Collaboration With Microsoft to Build Commercial Large Language Models

### A.     OpenAI's Early Years and Shift To For-Profit Status

37.     OpenAI was formed in December 2015 with $1 billion in investments.

38.     At the outset, OpenAI described itself as a "non-profit artificial intelligence research company." OpenAI assured the public that its research and work was driven purely by

altruism. In a December 11, 2015 blog post, co-founders Greg Brockman and Ilya Sutskever wrote: "Our goal is to advance digital intelligence in the way that is most likely to benefit humanity as a whole, unconstrained by a need to generate financial return. Since our research is free from financial obligations, we can better focus on a positive human impact."

39.    OpenAI also made a commitment to keep its research and development open for the public to enjoy and benefit from. In particular, OpenAI promised that both its work and intellectual property would be open and available to the public and "shared with the world."

40.    Both commitments were short-lived. By March 2019, OpenAI created a for-profit arm, OpenAI LP, which was formed to manage OpenAI's commercial operations—including, critically, product development. OpenAI LP has since been renamed OpenAI OpCo LLC.

41.    In the months and years that followed, OpenAI morphed into a complex (and secretive) labyrinth of for-profit corporate entities to manage OpenAI's day-to-day operations, product development, for-profit research, and billion-dollar capital raises. Today, OpenAI is valued at $80 billion, collecting revenues north of $100 million per month.

42.    OpenAI has also abandoned its commitment to openness. Shortly after its formation, OpenAI kept the public informed of its research and data sets. For example, both GPT-1 and GPT-2 were released on a largely open-source basis, with substantial documentation of their dataset and methodology.

43.    But after OpenAI formed a for-profit entity and accepted billion-dollar investments from Microsoft and others, that changed. Beginning with GPT-3, which was leaps and bounds more sophisticated than GPT-1 and GPT-2, OpenAI disclosed far less information about the technical details of the model and how it was trained. And it released even less information when it announced the releases of GPT-4 in 2023. For example, the GPT-4 "technical report" said: "this

report contains no further details about the architecture (including model size), hardware, training compute, dataset construction, training method, or similar."[5]

44.    Why this sudden secrecy? The motivations are entirely commercial. According to OpenAI's Chief Scientist Sutskever: "It's competitive out there."[6]

45.    Upon information and belief, OpenAI had another reason to keep its training data and development of GPT-3, GPT-3.5, and GPT-4 secret: To keep rightsholders like Plaintiffs and members of the Class in the dark about whether their works were being infringed and used to train OpenAI's models. It also appears that OpenAI has made it more difficult to determine whether any particular book is in their training set—sacrificing rights-holders for the sake of covering up its actions.

**B.    The Development of GPT-3 and Subsequent Commercialization of GPT-based Products**

46.    OpenAI announced its completion of GPT-3 in May of 2020. In its technical report describing GPT-3, OpenAI previewed that GPT-3 was a far more complex, sophisticated large language model than any that preceded it. The technical paper described GPT-3 as a "language model with 175 billion parameters, 10x more than any previous non-sparse language model." It went on to on to confirm that "GPT-3 achieves strong performance on many NLP [natural language processing] datasets, including translation, question-answering, and cloze tasks, as well as several tasks that require on-the-fly reasoning or domain adaption."

47.    OpenAI's GPT-3 paper also acknowledged that GPT-3 was able to generate text material that successfully mimicked some of the nonfiction copyrighted works on which it was

---

[5] OpenAI, GPT-4 Technical Report 2 (March 27, 2023), https://cdn.openai.com/papers/gpt-4.pdf.
[6] James Vincent, OpenAI Co-founder on Company's Past Approach to Openly Sharing Research: 'We Were Wrong' THE VERGE (last visited Nov. 20, 2023), https://www.theverge.com/2023/3/15/23640180/openai-gpt-4-launch-closed-research-ilya-sutskever-interview.

trained. For example, GPT-3 was able to "generate samples of news articles which human evaluators have difficulty distinguishing from articles written by humans."

48.    Upon the release of the GPT-3 technical paper and a limited beta release, GPT-3 made a splash among the engineering and artificial intelligence community. In July 2020, the *MIT Technology Review* reported that "OpenAI's new language generator GPT-3 is shockingly good" and quoted one developer as saying that "GPT-3 feels like seeing the future."[7] Nevertheless, OpenAI's GPT-3 remained largely obscure to the public for another two years.

49.    In November 2022, OpenAI released ChatGPT, a generative AI chatbot powered by the newly released GPT-3.5. As OpenAI described it at the time, ChatGPT is "an AI-powered chatbot developed by OpenAI, based on the GPT (Generative Pretrained Transformer) language model. It uses deep learning techniques to generate human-like responses to text inputs in a conversational manner." ChatGPT was released free to the public.

50.    ChatGPT gained over 100 million users within three months, becoming the fastest growing internet service of all time.[8]

51.    Building on ChatGPT's success, OpenAI now offers a range of services powered by its GPT models. Along with ChatGPT, which is free to use, OpenAI sells the subscription service ChatGPT Plus at $20 per month, and ChatGPT Enterprise, a subscription service aimed at business. OpenAI offers ChatGPT API tools that allow software developers to create new applications building on ChatGPT. OpenAI licenses its technology to corporate clients for licensing fees.

---

[7] Will Douglas Heaven, Open AI's New Language Gnererator GPT-3 is Shockingly Good—and Completely Mindless, MIT TECHNOLOGY REVIEW, (last accessed Nov. 20, 2023),
https://www.technologyreview.com/2020/07/20/1005454/openai-machine-learning-language-generator-gpt-3-nlp/.
[8] Will Douglass Heaven, ChatGPT is Everywhere. Here's Where it Came From, MIT TECHNOLOGY REVIEW, (last visited Nov. 20, 2023) https://www.technologyreview.com/2023/02/08/1068068/chatgpt-is-everywhere-heres-where-it-came-from/.

52.     Both ChatGPT and OpenAI's commercial offerings have been widely adopted. OpenAI reports, from its internal user statistics, that over 90 percent of Fortune 500 companies are using ChatGPT. OpenAI has also reported that it expects to reach $1 billion in revenue in less than a year.

53.     Credit for OpenAI's success can be attributed to its largescale copyright infringement. ChatGPT's popularity is driven by its ability to produce believable natural language text that mimics what a human would create. As *CNBC* reported shortly after ChatGPT's release: "What makes ChatGPT so impressive is its ability to produce human-like responses, thanks in no small part to the vast amount of data it is trained on."[9]

54.     That data, as explained in more detail below, consists largely of copyrighted material. Since its release, the internet has been flooded with guides on how to use ChatGPT to write academic papers, grant proposals, novels, nonfiction books, and other pieces.[10] ChatGPT could only be trained to generate this range of expression by making unlicensed reproductions of a massive corpus of copyrighted content, including Plaintiffs' works and works owned by the Class. Without this largescale infringement—without a large corpus of copyrighted material from which to mine expression—Defendants' GPT models could not have been trained to perform their intended function, that is, to mimic human written expression.

## C.     The Microsoft-OpenAI Partnership

55.     Microsoft, for the last four years, has been deeply involved in the training, development, and commercialization of OpenAI's GPT products. Microsoft CEO Satya Nadella

---

[9] Ryan Brown, *All You Need To Know About ChatGPT, the A.I. Chatbot That's Got the World Talking and Tech Giants Clashing*, CNBC Online (last visited Nov. 20, 2023), http://tiny.cc/luyevz.
[10] *See, e.g.*, Rob Cubbon, How I Wrote My New Book With ChatGPT, (last accessed Nov. 20, 2023), https://robcubbon.com/how-i-wrote-my-new-book-with-chatgpt/; Aaron Stark, How to Use ChatGPT to Write Non-Fiction Books, (last visited Nov. 20, 2023), https://www.griproom.com/fun/how-to-use-chatgpt-to-write-non-fiction-books.

has called its relationship with OpenAI a "great commercial partnership."

56.     Given the volume of the training corpus—the equivalent of nearly four billion pages of single-spaced text—and the complexity of OpenAI's large language models, OpenAI required a specialized supercomputing system to train GPT-3, GPT-3.5, and GPT-4 (and thus copy and exploit the copyrighted material in its training set). That is where Microsoft came in. Microsoft's Azure provided the cloud computing systems that powered the training process, and continues to power OpenAI's operations to this day. Microsoft and OpenAI worked together to design this system, which was used to train all of OpenAI's GPT models. Without these bespoke computing systems, OpenAI would not have been able to execute and profit from the mass copyright infringement alleged herein.

57.     Microsoft has in public statements acknowledged its intimate involvement in the development of OpenAI's GPT models. In a 2020 press release, Microsoft announced that it had built a bespoke supercomputing infrastructure "in collaboration and exclusively for OpenAI," "designed specifically to train that company's AI models. It represents a key milestone in a partnership announced last year to jointly create new supercomputing technologies in Azure." The press release went on to describe the computer "developed for OpenAI" as "top five" in the "world," and "a single system with more than 285,000 CPU cores, 10,000 GPUs and 4,000 gigabits per second of network connectivity for each GPU server."

58.     After the release of ChatGPT, Microsoft also took credit for its substantial role in the training process. In a February 2023 interview with Fortt Knox on CNBC, Mr. Nadella said that "beneath what OpenAI is putting out as large language models, remember, the heavy lifting was done by the Azure team to build the compute infrastructure." A few months later, in his keynote speech at the Microsoft Inspire conference, Mr. Nadella acknowledged that Microsoft

"buil[t] the infrastructure to train [OpenAI's] models."

59. Upon information and belief, that "heavy lifting" involved developing, maintaining, troubleshooting, and supporting OpenAI's supercomputing system. Microsoft employees worked closely with OpenAI personnel to understand the training process and training dataset used for OpenAI's GPT models.

60. Through that process, Microsoft would have known that OpenAI's training data was scraped indiscriminately from the internet and included a massive quantity of pirated and copyrighted material, including a trove of copyrighted nonfiction works. Through its creation and maintenance of the supercomputing system, Microsoft directly made unlicensed copies and provided critical assistance to OpenAI in making unlicensed copies of copyrighted material—including Plaintiffs' works and other nonfiction books—for the purpose of training the GPT models.

61. The large-scale copyright infringement would have been obvious to OpenAI and its business partners. Microsoft also became aware of OpenAI's largescale copyright infringement in the course of conducting the due diligence required for its multibillion-dollar investments in OpenAI. As Andreesen Horowitz, another OpenAI investor, put it: "the only practical way generative AI models can exist is if they can be trained on an almost unimaginably massive amount of content, much of which . . . will be subject to copyright."[11] As the public company made its decision to invest $13 billion into OpenAI, surely Microsoft—like Andreesen Horowitz—was fully aware that OpenAI was taking a massive corpus of copyrighted content, without compensation to rightsholders, and copying it for the purpose of training and developing its GPT models to mimic the human writing.

---

[11] Andreeson Horowitz, Notice of Inquiry on Artificial Intelligence and Copyright, (Oct. 30, 2023), *available at* https://s3.documentcloud.org/documents/24117939/a16z.pdf.

62.     In addition to facilitating the training process, Microsoft has played a key role in commercializing OpenAI's GPT-based technology, and in doing so has profited from OpenAI's infringement of content owned by Plaintiffs and the proposed Class. At Microsoft's largest partner event of the year, Inspire, Mr. Nadella said that while OpenAI is "innovating on the algorithms and the training of these frontier models, [Microsoft] innovate[s] on applications on top of it." For example, Microsoft unveiled Bing Chat, a generative AI chatbot feature on its search engine powered by GPT-4, and, in turn, ChatGPT integrated a "Browse with Bing" feature on paid ChatGPT Plus offering.

63.     Indeed, recent events have further demonstrated the close relationship between OpenAI and Microsoft. When OpenAI CEO Sam Altman was terminated, Microsoft hired him. In a November 2023 interview following the termination, Mr. Nadella stated: "We have all the IP rights and all the capability. If OpenAI disappeared tomorrow, I don't want any customer of ours to be worried about it quite honestly, because we have all of the rights to continue the innovation. Not just to serve the product, but we can go and just do what we were doing in partnership ourselves. We have the people, we have the compute, we have the data, we have everything."[12] Mr. Nadella continued, "And also this thing, it's not hands off, right? We are in there. We are below them, above them, around them. We do the kernel optimizations, we build tools, we build the infrastructure. So that's why I think a lot of the industrial analysts are saying, 'Oh wow, it's really a joint project between Microsoft and OpenAI.'"[13]

64.     Shortly after this November 2023 interview, under pressure from Microsoft (and

---

[12] Intelligencer Staff, *Satya Nadella on Hiring the Most Powerful Man in AI When OpenAI threw Sam Altman overboard, Microsoft's CEO saw an opportunity*, INTELLIGENCER (Nov. 21, 2023), available at https://nymag.com/intelligencer/2023/11/on-with-kara-swisher-satya-nadella-onhiring-sam-altman.html (last accessed Dec. 11, 2023).
[13] *Id.*

others), OpenAI reinstated Mr. Altman as CEO and granted Microsoft a nonvoting seat on the board of OpenAI, Inc.

## II. OpenAI and Microsoft Engaged in Largescale Copyright Infringement in Training the GPT Models

### 1. GPT Models and the Training Process

65.     OpenAI's GPT models are a species of a large language model or "LLM." Large language models are designed to mimic human use of language. LLMs attempt to mimic human understanding of language by processing input text, and attempt to mimic human use of language by generating output text. LLMs like GPT-3, GPT-3.5, and GPT-4 are often described as "neural networks" because they are designed to operate like the neural networks that make up the human brain.

66.     OpenAI's GPT-based models are complex mathematical functions comprised of a series of algorithms that break down input text into smaller pieces—words or portions of words, called "tokens"—then translate those pieces into "vectors," or a sequence of numbers that is used to identify the token within the series of algorithms. Those vectors help place each token on a map, by identifying other tokens closely associated with the word. According to OpenAI, "the process begins by breaking text down into roughly word-length 'tokens,' which are converted to numbers. The model then calculates each token's proximity to other tokens in the training data—essentially, how near one word appears in relation to any other word. These relationships between words reveal which words have similar meanings . . . and functions." As the model trains and digests more expression, the algorithms depicting the relationship between various tokens changes with it.

67.     The model is trained on a massive corpus of text. The model takes text inputs in the form of an incomplete phrase or passage, and attempts to complete the phrase, essentially a fill-in-blank quiz. The model compares its predicted phrase completion with the actual "correct" answer.

The model then adjusts its internal algorithms to "learn" from its mistakes—in other words, it adjusts its algorithms to reduce the likelihood of making the same mistake again and thus minimize the delta between any given text input and the "correct" text output.

68.     The model then repeats this same cycle millions, possibly billions, of times across the entire training corpus, adjusting its algorithms each time to reflect the text input from the training set. As OpenAI describes it, "pre-training teaches language to the model, by showing the model a wide range of text, and, utilizing sophisticated statistical and computational analysis, having it try to predict the word that comes next in each of a huge range of sequences" and from this process "gain[s] fluency in predicting the next word." In this way, the GPT model effectively mines and feeds on the expression contained in the training set, adjusting its algorithms such that it can mirror and mimic the ordering of words, voice, syntax, and presentation of facts, concepts, and themes.

69.     After the pre-training process, the generative model must undergo a further post-training process. At this point, the model is capable of completing phrases and predicting the next word or words that come next after a particular text input, but is not capable of responding to questions or providing human-like responses. The post-training process is sometimes referred to as "fine-tuning," and involves more human supervision and, according to OpenAI, making "targeted changes to the model, using relatively small (compared to pre-training) and carefully engineered datasets that represent ideal behavior." For both the post- and pre-training processes, OpenAI creates multiple, unlicensed copies of the training data.

70.     The quality and quantity of the training data is critical to the quality of the resulting model. With respect to LLM development, the phrase "garbage in, garbage out" carries particular weight. ChatGPT, for example, has shown the capability of coherently processing large tranches

of text input, and generating coherent, clearly-written passages in response—responses that mimic an understanding not just of the proper ordering of words and syntax, but also higher-level themes and ideas. ChatGPT could only develop this capability from training on high-quality prose and complex, longer pieces. To this end, books serve a particularly critical role in the training process. In a paper discussing the training of the GPT-2 model, for example, OpenAI described the importance of books in its training set: "We use the BooksCorpus dataset for training the language model. . . . Crucially, it contains long stretches of contiguous text, which allows the generative model to learn to condition on long-range information."

### 2.    The Largescale Unlicensed Copying of Nonfiction Books to Train the GPT Models

71.    OpenAI and Microsoft created unlicensed reproductions of copyrighted works owned by Plaintiffs and the putative class in the course of training and fine-tuning their models.

72.    A massive quantity of copyrighted works, including copyrighted nonfiction works, were included in the "training set" that OpenAI used to develop GPT-3, GPT-3.5, and GPT-4. The training set for GPT-3, GPT-3.5, and GPT-4 was enormous. It included 45 terabytes of data—i.e., several billion pages of single-spaced text—and was comprised of datasets called Common Crawl, WebText2, Books1 and Books2, and Wikipedia.

73.    The Common Crawl dataset is a "copy of the Internet" made available by an eponymous 501(c)(3) organization that was created and managed by wealthy technology investors. WebText2 was a dataset created by OpenAI that includes text from the internet, primarily from Reddit posts.

74.    Books1 and Books2 comprised around 15 percent of the training set for GPT-3, and was also used for training GPT-3.5, and likely GPT-4. OpenAI has described these datasets as "internet-based books corpora"—in other words, a large mass of books that OpenAI obtained from

**1AA-263**

internet sources. In total, the Books1 and Books2 datasets are approximately 100 million pages of single-spaced text.

75.    Though OpenAI has gone to great lengths to conceal the contents of its training datasets—especially Books2—what is known about the training data indicates that OpenAI's GPT models were trained on a mass of copyrighted books and other copyrighted material.

76.    For one, OpenAI has publicly acknowledged that its models were trained on "large, publicly available datasets that include copyrighted works."[14] OpenAI has also admitted that its training process "necessarily involves first making copies of the data to be analyzed," including the large volume of copyrighted works in its dataset.

77.    Furthermore, a recent academic study by researchers at the University of California at Berkeley tested whether the GPT-4 model was capable of exhibiting "memorization," i.e., returning exact passages, of a number of popular (and copyrighted) fiction books. If passages of a book are memorized, then it is likely the results showed that hundreds of copyrighted books were memorized in the models. The research confirmed that GPT-4 had memorized at least hundreds of copyrighted books.

78.    OpenAI has since re-calibrated ChatGPT to avoid divulging the details of its training dataset and the extent of its copyright infringement.

79.    In the early days after its release, however, ChatGPT, for instance, in response to an inquiry, confirmed: "Yes, Julian Sancton's book 'Madhouse at the End of the Earth' is included in my training data." OpenAI has acknowledged that material that was incorporated in GPT-3 and GPT-4's training data was copied during the training process.

80.    Upon information and belief, in the course of the training process, Defendants made

---

[14] Christopher T. Zirpoli, Cong. Rsch. Serv., LSB10922, Generative Artificial Intelligence and Copyright Law 3 (2023).

hundreds of copies of copyrighted content owned by Plaintiffs and the proposed Class. In order to calibrate their GPT models to produce human-like expression, OpenAI and Microsoft collaborated to develop a complex, bespoke supercomputing system that was made to house and reproduce copies of the training dataset. Millions of copyrighted works were copied—including at least tens of thousands of nonfiction books—and then ingested for the purpose of "training" Defendants' GPT models. Those works were used as inputs into the GPT models, then copied many times again to gauge how well the output mimicked human expression—that is, mimicked the voice, expression, and content of the copyrighted works that the GPT models exploited in the calibration process.

81.     Many thousands, maybe more, copyrighted works—including nonfiction books— were then used for the purposes of fine-tuning the models. For fine tuning, OpenAI and Microsoft used their supercomputing systems to generate even more unlicensed copies, as OpenAI's personnel copied works—including nonfiction books—to use as inputs to the model to test the quality of the outputs, then re-calibrate the weights of the GPT model to better mimic the content, expression, and voice reflected in the training data.

82.     While OpenAI was responsible for designing the calibration and fine-tuning of the GPT models—and thus, the largescale copying of this copyrighted material involved in generating a model programmed to accurately mimic Plaintiffs' and others' expression—Microsoft built and operated the computer system that enabled this unlicensed copying in the first place.

83.     Upon information and belief, Microsoft and OpenAI continue to make largescale, unlicensed copies to calibrate and fine-tune GPT-3, GPT-3.5, and GPT-4, and forthcoming generations of the GPT models, like GPT-5.

84.     Defendants' unauthorized commercial copying of Plaintiffs' works and works

owned by the proposed Class was manifestly unfair use, for several reasons. By OpenAI's own telling, it uses copyrighted texts for the same purpose that an ordinary reading consumer may use a book—to review the expression in it, including the order of words, presentation of facts, and syntax, among other expressive elements. OpenAI claims it uses the training data to "learn" how words and concepts fit to together, much in the way a human learns. While OpenAI's anthropomorphizing of its models is up for debate, at a minimum, humans who learn from books buy them, or borrow them from libraries that buy them, providing at least some measure of compensation to authors and creators. OpenAI does not, and it has usurped authors' content for the purpose of creating a machine built to generate the very type of content for which authors would usually be paid.

85.    Even OpenAI has acknowledged that its use is unfair to creators. In his testimony before the Senate, OpenAI CEO Sam Altman admitted that "creators deserve control over how their creations are used, and what happens sort of beyond the point of releasing it into the world" and that "creators, content owners need to benefit from this technology." Yet OpenAI has given creators and copyright owners zero control over how their works are used in the training process— and zero compensation for it.

86.    OpenAI and Microsoft's appropriation of nonfiction works has inflicted substantial harm on authors. Nonfiction books often take an enormous personal investment of time and resources. Many nonfiction authors dedicate years of full-time writing, and hundreds of thousands of dollars, to a single book. The books that contribute most to learning often take the longest to complete. These works deliver a substantial public benefit; they go to the core purpose of the Constitution's copyright and patent clause—the "promot[ion]" of "the progress of *science*"[15]—a

---

[15] U.S. Constitution, Article 1, Sectoin 8, clause 8 (emphasis added).

term that, at the Founding, meant learning. Plaintiffs' books are unique works that deliver to their readers the author's own creative expression of knowledge, through the author's singular research, voice, evidence, and thinking. For readers and society at large, these books teach, provoke thought, and imagine new ways of comprehending our world and the past, present, and future. OpenAI and Microsoft, in reproducing these copyrighted nonfiction works without permission to train their AI models, have unfairly appropriated the authors' prized original expression.

87.     OpenAI and Microsoft have also deprived authors of books sales and licensing revenues. There is, and has been, an established market for the sale of books and e-books, yet OpenAI ignored it and chose to copy a massive corpus of copyrighted books right from the internet, almost certainly from illegal sources (as legal copies of commercial books are rarely made freely available on the open internet by the copyright owners)—without even paying for an initial copy. OpenAI has also usurped a licensing market for copyright owners. In the short time since ChatGPT's release, there has been significant evidence that a licensing market is likely to be—and has been—developing for AI training datasets. Case in point: OpenAI itself has reached deals with content creators like the Associated Press and others, in connection with the use of their copyrighted content in AI training. Similarly, OpenAI has admitted that it "paid for" training data from certain third parties, yet in the case of Plaintiffs and the proposed Class, OpenAI has not compensated them at all.

88.     There is also substantial reason to believe that, if OpenAI had sought licenses rather than engaging in largescale copyright infringement, it could have obtained blanket licenses from major publishers and through clearinghouses, like the Copyright Clearance Center (CCC). The CCC, which already provides some licenses for AI use, has announced its own role in helping

develop legal mechanisms for the licensed use of copyrighted material for AI training.[16] Indeed, other AI companies have approached publishers to request such licenses. Moreover, as OpenAI and Microsoft are aware, the Authors Guild is already actively working on creating a blanket license for AI training on behalf of authors who wish to license their works for AI use, and has received a significant gift to create this licensing system.

89.     OpenAI, however, has chosen to use Plaintiffs' works and the works owned by the proposed Class free of charge, and in doing so has harmed the market for the copyrighted works by depriving them of book sales and licensing revenue.

**3.     Defendants Reproduced Plaintiffs' Works To Train Their GPT Models**

90.     Defendants used works authored and owned by Plaintiffs in the training of their GPT models,  and in doing so reproduced these works and commercially exploited them without a license.

91.     While OpenAI and Microsoft have kept the contents of their training data secret, it is likely that, in training their GPT models, they reproduced all or nearly all commercially successful nonfiction books. As OpenAI investor Andreesen Horowitz has admitted, "large language models," like Defendants' GPT models, "are trained on something approaching the entire corpus of the written word," a corpus that would of course include Plaintiffs' works.

92.     The size of the Books2 database—the "internet based books corpora" that Defendants used to train GPT-3, GPT-3.5, and possibly GPT-4 as well—has led commentators to believe that Books2 is comprised of books scraped from entire pirated online libraries such as LibGen, ZLibrary, or Bibliotik. Shawn Presser, an independent software developer, created an open-source set of training data called Books3, which was intended to give developers, in his

---

[16] https://www.copyright.com/solutions-rightfind-xml/.

words, "OpenAI-grade training data." The Books3 dataset, similar in size to Books2, was built from a corpus of pirated copies of books available on the site Bibliotik. Works authored and owned by Plaintiffs Alter, Bird, Branch, Cohen, Linden, Okrent, Sancton, Sides, Schiff, Shapiro, Tolentino, and Winchester are available on Books3, an indication that these works were also likely included in the similarly sized Books2.

93.     Plaintiff Alter is the author and owner of the registered copyrights listed under his name in Exhibit A. His books *The Center Holds: Obama and His Enemies*; *The Promise: President Obama, Year One*; and *The Defining Moment: FDR's Hundred Days and the Triumph of Hope* are a part of the Books3 dataset. Pirated copies of each of those three books—as well as most recent book *His Very Best: Jimmy Carter, A Life*—are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Alter's books, ChatGPT returned detailed, accurate summaries of them, including of *The Center Holds* and *The Promise*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Alter's books.

94.     Plaintiff Bird is the author and owner of the registered copyrights listed under his name in Exhibit A. His books *American Prometheus*, *The Good Spy*, and *The Color of Truth* are a part of the Books3 dataset. Pirated copies of each of all of his books are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Bird's books, ChatGPT returned detailed, accurate summaries of them, including of *The Good Spy*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Bird's books.

95.     Plaintiff Branch is the author and owner of the registered copyrights listed under

his name in Exhibit A. Five of his books, including *Parting the Waters* and *The Clinton Tapes*, are a part of the Books3 dataset. Pirated copies of each of nearly all of his books are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Branch's books, ChatGPT returned detailed, accurate summaries of them, including of *Parting the Waters*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Branch's books.

96.    Plaintiff Cohen is the author and owner of the registered copyrights listed under his name in Exhibit A. Six of his books, including *Tough Jews* and *The Chicago Cubs*, are a part of the Books3 dataset. Pirated copies of each of nearly all of his books are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Cohen's books, ChatGPT returned detailed, accurate summaries of them, including of *The Chicago Cubs*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Cohen's books.

97.    Plaintiff Linden is the author and owner of the registered copyrights listed under his name in Exhibit A. Two of his books, *The Parrot's Lament* and *The Ragged Edge of the World*, are a part of the Books3 dataset. Pirated copies of a number of his books are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Linden's books, ChatGPT returned detailed, accurate summaries of them, including of *The Parrot's Lament*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Linden's books.

98.    Plaintiff Okrent is the author and owner of the registered copyrights listed under his name in Exhibit A. At least three of his books, including *Last Call* and *The Guarded Gate*, are a part of the Books3 dataset. Pirated copies of a number of his books are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Okrent's books, ChatGPT returned detailed, accurate summaries of them, including of *Last Call*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Okrent's books.

99.    Plaintiff Sancton is the author and owner of the registered copyrights listed under his name in Exhibit A. Pirated copies of his book *Madhouse at the End of the Earth* are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Sancton's book, ChatGPT confirmed that *Madhouse at the End of the Earth* was part of its training dataset.

100.    Plaintiff Sides is the author and owner of the registered copyrights listed under his name in Exhibit A. Six of his books, including *Ghost Soldiers* and *Blood and Thunder*, are a part of the Books3 dataset. Pirated copies of all of his books are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Sides's books, ChatGPT returned detailed, accurate summaries of them, including of *Blood and Thunder*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Sides's books.

101.    Plaintiff Schiff is the author and owner of the registered copyrights listed under her name in Exhibit A. At least five of her books, including *The Witches* and *Cleopatra*, are a part of the Books3 dataset. Pirated copies of all of her books are available on the internet through websites

1AA-271

like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Schiff's books, ChatGPT returned detailed, accurate summaries of them, including of *The Witches* and *Cleopatra*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Schiff's books.

102.    Plaintiff Shapiro is the author and owner of the registered copyrights listed under his name in Exhibit A. At least four of his books, including *The Year of Lear* and *Contested Will*, are a part of the Books3 dataset. Pirated copies of nearly all of his books are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Shapiro's books, ChatGPT returned detailed, accurate summaries of them, including of *Contested Will*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Shapiro's books.

103.    Plaintiff Tolentino is the author and owner of the registered copyright listed under her name in Exhibit A. Her book *Trick Mirror* part of the Books3 dataset. Pirated copies of it are widely available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about *Trick Mirror*, ChatGPT returned detailed, accurate summaries of the book and its chapters. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Tolentino's book.

104.    Plaintiff Winchester is the author and owner of the registered copyrights listed under his name in Exhibit A. At least eleven of his books, including *The Professor and the Madman* and *Krakatoa*, are a part of the Books3 dataset. Pirated copies of nearly all of his books

are available on the internet through websites like LibGen, ZLibrary, and/or Bibliotik, which likely sourced OpenAI's Books2 dataset. When prompted with questions about Plaintiff Winchester's books, ChatGPT returned detailed, accurate summaries of them, including of *The Professor and the Madman*. Upon information and belief, ChatGPT is able to return such detailed information only because it was trained on Plaintiff Winchester's books.

### III. Defendants Have Profited From Their Unlicensed Exploitation of Copyrighted Material At the Expense of Authors

105.    Microsoft and OpenAI have enjoyed substantial commercial gain from their GPT-based commercial offerings, including ChatGPT Plus, ChatGPT Enterprise, Bing Chat, and the licensing of the OpenAI API for businesses seeking to develop their own generative AI systems built on top of GPT-3, GPT-3.5, or GPT-4.

106.    As of November 2023, ChatGPT has reported over 100 million weekly active users. Included among those users are 92% of all Fortune 500 companies.[17] OpenAI has generated revenue through its subscription services, ChatGPT Plus ($20/month) and its business-focused ChatGPT Enterprise. OpenAI is currently generating revenue of more than $100 million per month, on pace for $1.3 billion per year.

107.    Microsoft has also reaped the benefits from its investment and development of ChatGPT. Since incorporating GPT-3 into its Bing search engine, Bing surpassed more than 100 million daily active users for the first time in its history. That surge was in large part attributable to the incorporation of OpenAI's GPT models, as large percentage of Bing's new users are using Bing Chat daily.

108.    Microsoft has also been integrating ChatGPT into Azure and Office 365 products,

---

[17] Aisha Malik, OpenAI's ChatGPT Now Has 100 Million Weekly Active Users, (last visited Nov. 20, 20230, https://techcrunch.com/2023/11/06/openais-chatgpt-now-has-100-million-weekly-active-users/.

and charging add-on fees for users seeking to take advantage of generative AI offerings. Microsoft

Teams is charging an additional license for use of AI features. Microsoft has also unveiled a GPT-

4-powered product called Microsoft 365 Copilot, which, according to Microsoft, "combines the

power of large language models (LLMs) with your data in the Microsoft Graph and the Microsoft

365 apps to turn your words into the most powerful productivity tool on the planet." Microsoft

Copilot is $30 per month. Analysts project that the integration of GPT into Microsoft products

could generate more than $10 billion in annualized revenue by 2026, [18] with just one version of

this integration—"GitHub Copilot"—already generating more than $100 million in annual

recurring revenue.[19]

## CLASS ALLEGATIONS

109.    This action is brought by Plaintiffs individually and on behalf of a class pursuant

to Rule 23(b)(3) 23(b)(1) of the Federal Rules of Civil Procedure. The Class consists of:

> All owners of copyrighted literary works that: (a) are registered with the United
> States Copyright Office; (b) were or are used by Defendants in training their
> generative artificial intelligence models, including but not limited to GPT-3, GPT-
> 3.5, GPT-4, and GPT-5; and (c) are works of nonfiction and have been assigned an
> International Standard Book Number (ISBN) and fall within a Book Industry
> Standards and Communications (BISAC) code other than Reference (REF).[20]. The
> Class excludes Defendants, their officers and directors, members of their immediate
> families, and the heirs, successors or assigns of any of the foregoing.

110.    The Class consists of at least tens of thousands of authors and copyright holders

---

[18] Novet, *supra* Note 3, (last visited Nov. 20, 2023).
[19] Holmes, *supra* Note 4, (last visited Nov. 20, 2023).
[20] *See* http://www.bisg.org/complete-bisac-subject-headings-list (last visited Dec. 19, 2023)

and thus is so numerous that joinder of all members is impractical. The identities of members of the Class can be readily ascertained from business records maintained by Defendants.

111.    The claims asserted by Plaintiffs are typical of the claims of the Class, all of whose works were also copied as part of the GPT training process.

112.    The Plaintiffs will fairly and adequately protect the interests of the Class and do not have any interests antagonistic to those of other members of the Class.

113.    Plaintiffs have retained attorneys who are knowledgeable and experienced in copyright and class action matters, as well as complex litigation.

114.    Plaintiffs request that the Court afford Class members notice and the right to opt-out of any Class certified in this action.

115.    This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the Class predominate over those questions affecting only individual members. Those common questions include:

      a.  Whether Defendants' reproduction of the Class's copyrighted work constituted copyright infringement;

      b.  Whether Defendants' reproduction of the Class's copyrighted work in the course of training their generative AI models was fair use;

      c.  Whether Defendants' reproduction of the Class's copyrighted work harmed Class members and whether Class members is entitled to damages, including statutory damages and the amount of statutory damages;

      d.  Whether Defendant Microsoft substantially facilitated the copyright infringement committed by OpenAI; and

e.  Whether Defendants Microsoft knew or should have known that OpenAI was making copies of copyrighted content, including the Class's copyrighted works, in the course of training their AI models.

116.  This action is also appropriate as a class action pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions by individual class members risks inconsistent adjudication and because the resolution of claims for individual class members may be dispositive of the actions of other class members.

117.  This action is also appropriate as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants infringing conduct is applicable generally to Plaintiffs and the proposed Class and the requested injunctive relief is appropriate respecting the proposed Class as a whole.

## <u>COUNT I: Copyright Infringement (17 U.S.C. § 501)</u>

### Against OpenAI and Microsoft

118.  Plaintiffs incorporate by reference the allegations in Paragraphs 1 to 118 as though fully set forth herein.

119.  Plaintiffs and members of the proposed Class own the registered copyrights in the works that Defendants reproduced and appropriated to train their artificial intelligence models.

120.  Plaintiffs and members of the proposed Class therefore hold the exclusive rights, including the rights of reproduction and distribution, to those works under 17 U.S.C. § 106.

121.  Defendants infringed on the exclusive rights, under 17 U.S.C. § 106, of Plaintiffs and members of the proposed Class by, among other things, reproducing the works owed by Plaintiffs and the proposed Class in datasets used to train their artificial intelligence models.

122.  On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful. Defendants infringed on the exclusive rights of Plaintiffs and members of

the proposed Class knowing that they were profiting from mass copyright infringement.

123.    Plaintiffs and members of the proposed Class are entitled to statutory damages, actual damages, disgorgement, and other remedies available under the Copyright Act.

124.    Plaintiffs and members of the proposed Class have been and continue to be irreparably injured due to Defendants' conduct, for which there is no adequate remedy at law. Defendants will continue to infringe on the exclusive right of Plaintiffs and the proposed class unless their infringing activity is enjoined by this Court. Plaintiffs are therefore entitled to permanent injunctive relief barring Defendants' ongoing infringement.

## COUNT II: Contributory Infringement

**Against Microsoft, OpenAI, Inc., OpenAI GP LLC, OpenAI Global LLC, OpenAI LLC, OAI Corporation LLC, and OpenAI Holdings LLC**

125.    Plaintiffs incorporate by reference and realleges the allegations in Paragraphs 1 to 124 as though fully set forth herein.

126.    Microsoft materially contributed and facilitated OpenAI's direct infringement alleged in Count I by providing billions of dollars in investments and designing, creating, and maintaining the bespoke supercomputing system that OpenAI used to maintain and copy the copyrighted works owned by Plaintiffs and the proposed Class. This assistance was necessary for OpenAI to perpetrate the largescale copyright infringement alleged herein.

127.    Microsoft knew, or had reason to know, of the direct infringement alleged in Count I because OpenAI, upon information and belief, informed Microsoft as part of the due diligence process that it was copying and scraping copyrighted material in order to train its generative artificial intelligence models. Furthermore, in the course of designing and maintain its bespoke supercomputing system, Microsoft became aware of OpenAI's direct infringement and directly assisted the copying of copyrighted content owned by Plaintiffs and the proposed Class.

128.   Microsoft profited from its OpenAI's direct infringement through its investment in OpenAI and its monetization of GPT-based products.

129.   Microsoft is liable for contributing to the direct infringement alleged in Count I.

130.   OpenAI, Inc., OpenAI GP LLC, OpenAI Global LLC, OpenAI LLC, OAI Corporation LLC, and OpenAI Holdings LLC, each directly and indirectly control, direct, and manage other OpenAI entities, including OpenAI OpCo LLC, that are and were responsible for the direct infringement alleged in Count I. These OpenAI entities, through their direction and control of other OpenAI entities, were aware of the direct infringement perpetrated by a variety of OpenAI entities, as alleged in Count I. These OpenAI entities profited from the infringement perpetrated by OpenAI as a whole through their ownership of other OpenAI entities.

131.   OpenAI, Inc., OpenAI GP LLC, OpenAI Global LLC, OpenAI LLC, OAI Corporation LLC, and OpenAI Holdings LLC, are each liable for contributing to the direct infringement alleged in Count I

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against each Defendant as follows:

1.   Declaring this action can be properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.   Awarding Plaintiffs and the proposed Class statutory damages, compensatory damages, restitution, disgorgement, and any other relief that may be permitted by law or equity pursuant to the first and second claims for relief;

3.   Permanently enjoining Defendants from the infringement and contributory infringement alleged herein;

4.   Awarding Plaintiffs and the proposed Class pre-judgment and post-judgment interest pursuant to the first and second claims for relief;

5.    Awarding Plaintiffs and the proposed Class costs, expenses, and attorneys' fees as permitted by law; and

6.    Awarding Plaintiffs and the proposed Class further relief as the Court may deem just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: December 19, 2023

/s/ Justin Nelson
Justin A. Nelson (*pro hac vice*)
Alejandra C. Salinas (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: 310-789-3100
rnath@susmangodfrey.com

J. Craig Smyser
SUSMAN GODFREY L.L.P.
1901 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel.: 212-336-8330
csmyser@susmangodfrey.com

**Attorneys for Plaintiffs and the Proposed Class**

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify this 19th day of December 2023, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the court using the CM/ECF system which will send notification to the attorneys of record and is available for viewing and downloading.

*/s/ J. Craig Smyser*
J. Craig Smyser
